IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| THE STATE OF TEXAS, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PENGUIN GROUP (USA), INC., *et al.*,<br><br>                    Defendants. | Civil Action No. 12-cv-3394 (DLC)<br><br>ECF Case |
| IN RE ELECTRONIC BOOKS<br>ANTITRUST LITIGATION | Civil Action No. 11-md-2293 (DLC)<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF PENGUIN GROUP (USA), INC.'S
MOTION FOR A JURY TRIAL ON THE PLAINTIFF STATES' CLAIMS**

Daniel Ferrel McInnis
Larry Tanenbaum
Carolyn Perez
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Ave., NW
Washington, DC 20036
Tel:  (202) 887-4000
Fax:  (212) 887-4288
dmcinnis@akingump.com
ltanenbaum@akingump.com
cperez@akingump.com

*Counsel for Defendant Penguin Group (USA), Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT ...........................................................................................................................6

      I.   THE SEVENTH AMENDMENT TO THE CONSTITUTION GUARANTEES
          PENGUIN A JURY TRIAL ON ALL OF THE STATES' CLAIMS .....................7

      A.  Penguin Enjoys A Right To A Jury Trial On The States' Antitrust Claims............8

      B.  The Court Cannot Try The States' Claims Without A Jury Consistently With the
          Seventh Amendment...............................................................................................10

    II.   PENGUIN'S RIGHT TO A JURY TRIAL ON THE STATES' CLAIMS HAS
          BEEN PROPERLY PRESERVED ....................................................................13

      A.  Penguin Did Not Formally Waive Its Seventh Amendment Right......................14

      B.  Penguin Did Not Waive Its Seventh Amendment Right Through Conduct. ........16

      C.  Penguin's Agreement To A Bench Trial On The DOJ's Claims, Which Sought
          Only Equitable Relief, Did Not Constitute A Waiver As To The States' Claims. 19

      D.  The Court Should Exercise Its Discretion To Vindicate Penguin's Seventh
          Amendment Jury-Trial Rights. ............................................................................22

CONCLUSION......................................................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aetna Ins. Co. v. Kennedy ex rel. Bogash,*
    301 U.S. 389 (1937)..................................................................................................13

*Arnstein v. Porter,*
    154 F.2d 464 (2d Cir. 1946)........................................................................................8

*Beacon Theatres, Inc. v. Westover,*
    359 U.S. 500 (1959)...................................................................8, 11, 12, 13, 23

*Byrd v. Blue Ridge Rural Elec. Coop., Inc.,*
    356 U.S. 525 (1958)....................................................................................................7

*Cascone v. Ortho Pharm. Corp.,*
    702 F.2d 389 (2d Cir. 1983)......................................................................................22

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,*
    494 U.S. 558 (1990)....................................................................................................8

*Curtis v. Loether,*
    415 U.S. 189 (1974).............................................................................................8, 10

*Dairy Queen, Inc. v. Wood,*
    369 U.S. 469 (1962)......................................................................................8, 11, 23

*Davidson Pipe Co., Inc., v. Laventhol & Horwath,*
    125 F.R.D. 363 (S.D.N.Y. 1989) ...............................................................................10

*DeGioia v. U.S. Lines Co.,*
    304 F.2d 421 (2d Cir. 1962)......................................................................................14

*Dell'Orfano v. Romano,*
    962 F.2d 199 (2d Cir. 1992)................................................................................7, 10

*Dimick v. Schiedt,*
    293 U.S. 474 (1935)............................................................................................7, 13

*Discover Fin. Servs. v. Visa U.S.A. Inc.,*
    598 F. Supp. 2d 394 (S.D.N.Y. 2008)........................................................................20

*Gargiulo v. Delsole,*
    769 F.2d 77 (2d Cir. 1985).............................................................................7, 13, 14, 15

*Granfinanciera, S.A. v. Nordberg,*
  492 U.S. 33 (1989)................................................................................12, 22

*Heyman v. Kline,*
  456 F.2d 123 (2d Cir. 1972)...............................................................13, 14, 15, 17

*Higgins v. Boeing Co.,*
  526 F.2d 1004 (2d Cir. 1975) (per curiam)........................................................8, 23

*Hill v. Airborne Freight Corp.,*
  93 F. App'x 260 (2d Cir. 2004) ..................................................................18

*Hoag v. Cellco P'ship,*
  3:05CV1185 SRU, 2007 WL 549738 (D. Conn. Feb. 16, 2007)...........................................22

*In re Hooker Invs., Inc.,*
  937 F.2d 833 (2d Cir. 1991)....................................................................8, 23

*Jacob v. City of New York,*
  315 U.S. 752 (1942).............................................................................7, 13

*LeBlanc-Sternberg v. Fletcher,*
  67 F.3d 412 (2d Cir. 1995)......................................................................11, 20

*Lytle v. Household Mfg., Inc.,*
  494 U.S. 545 (1990)...........................................................................7, 12, 23

*M.O.C.H.A. Soc'y, Inc. v. City of Buffalo,*
  689 F.3d 263 (2d Cir. 2012).....................................................................18

*Morrison v. Nat'l Australia Bank Ltd.,*
  130 S.Ct. 2869 (2010)..........................................................................15

*National Equipment Rental, Ltd. v. Hendrix,*
  565 F.2d 255 (2d Cir. 1977)....................................................................13, 23

*Phlo Corp. v. Stevens,*
  No. 00 Civ. 3619 (DC), 2001 WL 1313387 (S.D.N.Y. Oct. 25, 2001) ...........................18, 19

*Rachal v. Ingram Corp.,*
  795 F.2d 1210 (5th Cir. 1986) ..................................................................10

*Rosen v. Dick,*
  639 F.2d 82 (2d Cir. 1980).......................................................................10

*Ross v. Bernhard,*
  396 U.S. 531 (1970)...............................................................................11

*Royal Am. Managers, Inc. v. IRC Holding Corp.*,
    885 F.2d 1011 (2d Cir. 1989)..............................................................18

*Sullivan v. Ajax Navigation Corp.*,
    881 F. Supp. 906 (S.D.N.Y. 1995).......................................................13

*Tanvir v. Laporte*,
    169 F.R.D. 292 (S.D.N.Y. 1996) ....................................................18, 22

*Tray-Wrap, Inc. v. Six L's Packing Co. Inc.*,
    984 F.2d 65 (2d Cir. 1993)..........................................7, 14, 15, 16, 17

*Tull v. United States*,
    481 U.S. 412 (1987)...........................................................................8, 9

*Wade v. Orange Cnty. Sheriff's Office*,
    844 F.2d 951 (2d Cir. 1988)................................................................10

*Washington v. New York City Bd. of Estimate*,
    709 F.2d 792 (2d Cir. 1983)................................................................14

**STATUTES**

15 U.S.C.
    § 1....................................................................................................2
    § 4.............................................................................................3, 20
    § 15.............................................................................................2, 8
    § 16(a)..........................................................................................20

28 U.S.C.
    § 1407(g)........................................................................................3

U.S. Const., Amendment VII............................................................7

**RULES**

Fed. R. Civ. P. 38
    (a) ...............................................................................................7
    (b) .............................................................................................10
    (d) .............................................................................................10

Fed. R. Civ. P. 39
    (a) .............................................................................................15
    (a)(1) .........................................................................................14
    (b) .............................................................................................22

Fed. R. Civ. P. 42(b) ........................................................................11

**OTHER AUTHORITIES**

9 C. Wright & A. Miller, Federal Practice & Procedure, § 2334 (1971)......................................22

## PRELIMINARY STATEMENT

The Seventh Amendment to the U.S. Constitution guarantees Penguin Group (USA), Inc. a jury trial on all of the States' claims seeking legal (monetary) remedies.  This constitutional right, which is one of the few procedural protections related to civil trials enshrined in the Constitution, is fundamental.  The jury trial right was timely invoked in this case and attaches to the antitrust claims for treble damages and civil penalties asserted by the 33 State plaintiffs.  By rule, once a jury trial is properly demanded, that right may be withdrawn only by clear and unequivocal consent of the parties, either through a written stipulation or an oral stipulation on the record.  Penguin made neither type of stipulation here.  Accordingly, Penguin remains entitled to, and respectfully asserts, its right to have the States' monetary claims heard by a jury.

To be sure, the procedural contours of this case are complex, with multiple actions consolidated for discovery, both governmental and private plaintiffs, and different settlements at different times between different parties.  That is presumably why the Court, after recognizing the "important rights that are at stake here" from Penguin's perspective, afforded Penguin the full opportunity to argue why it is entitled to have a jury decide the States' legal claims against it. Penguin deeply regrets the inconvenience to the Court if its actions have led to a misunderstanding regarding the Court's plan for the June 3, 2013 trial in light of Penguin's settlement with the United States.  But the Constitution, the federal rules, and controlling precedent all point in the same direction:  the common-law right to a jury trial at law is too important to relinquish through anything less than a clear and unequivocal waiver.  Silence, ambiguity, or (at worst) the simple misunderstanding the States assert here simply will not do. And in the absence of anything approaching a clear and unequivocal waiver of Penguin's constitutional rights, Penguin is entitled to defend against the States' claims before a jury.

## BACKGROUND

The three related antitrust actions consolidated before the Court for discovery purposes are based on the same alleged scheme to raise the retail price of electronic books, or "e-books." Although all three suits are premised on the same alleged price-fixing scheme, the plaintiffs in each action seek different forms of relief.

In *United States v. Apple, Inc.*, 12-cv-2826 (DLC) (the "DOJ action"), the federal government seeks relief that is purely equitable in nature. The Complaint alleges a price-fixing conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and seeks solely declaratory and injunctive relief. (*United States v. Apple, Inc.*, 12-cv-2826 (DLC), Dkt. No. 1, DOJ Compl., at ¶¶ 91–104).

In *State of Texas et al. v. Penguin Group (USA), Inc. et al.*, 12-cv-3394 (DLC) (the "States' action"), the States seek both equitable relief and monetary damages in a *parens patriae* representative capacity on behalf of state consumers. The States' Second Amended Complaint, filed May 17, 2012, alleges violations of Section 1 of the Sherman Act and various state statutes, and requests treble damages under the Clayton Act, 15 U.S.C. § 15, civil penalties under state law, and equitable relief. (*State of Texas et al. v. Penguin Group (USA), Inc. et al.*, 12-cv-3394 (DLC), Dkt. No. 95, Second Am. Compl., at ¶¶ 119–98; Prayer for Relief) ("Second Am. Compl."). The States also demand a jury trial "on all issues triable as of right by jury." (*Id.* at 45.)

Finally, in *In re Elec. Books Antitrust Litig.*, 11-md-2293 (DLC) (the "class action"), a putative class of individual plaintiffs alleges violations of the Sherman Act and various state statutes and, as in the States' action, requests damages, including actual, treble, and punitive damages, and equitable relief. (*In re Elec. Books Antitrust Litig.*, 11-md-2293 (DLC), Dkt. No. 47, Consolidated Amended Class Action Compl., at 81–82; Prayer for Relief). Also like the

States, the putative class demands a jury trial "of all the claims asserted" in the Class Complaint. (*Id.* at ¶ 285).

Although all three actions were consolidated for discovery purposes in this Court, from the outset of the litigation the DOJ action was "in a different place" than the other actions. (April 18, 2012 Hearing Tr. at 12:8–13:1).  The DOJ trial was fast-tracked because the Sherman Act provides for priority of the federal government's claims.  *See* 15 U.S.C. § 4 (in antitrust actions commenced by the government, "the court shall proceed, as soon as may be, to the hearing and determination of the case").  In addition, the DOJ action was formally consolidated only for discovery purposes, not for trial, because the multi-district litigation statute does not "apply to any action in which the United States is a complainant arising under the antitrust laws."  28 U.S.C. § 1407(g).

Nevertheless, the Court early on expressed interest in consolidating the trials of the DOJ action, the States action, and the putative class action, to the extent the parties could agree to do so.  The first substantive discussion regarding the trial schedule for the three antitrust suits took place at a June 22, 2012 conference, at which the court expressed the desire to have a single trial before a jury.  *See* June 22, 2012 Hearing Tr. 14:21–22, 15:10–16 (although "obviously we need to put a jury in the position to be making its fact-finding based on a record that is reliable, *** I think there are enormous efficiencies for one and all for having a single trial," and "I'm a little confused about why anyone would support, and I'm not sure anyone is, really, two trials.").  It was at this hearing that the court first heard a proposal from Apple to hold a fast-tracked bench trial on the antitrust claims brought by the DOJ, which had requested only equitable relief.  (*See id.* at 23:3–7).  Penguin objected to having a joint trial on that expedited schedule.  (*Id.* at 66:14-15.)

The Court ultimately adopted Apple's proposal and set a bench trial date of June 3, 2013 for the DOJ trial.  (*See* June 22, 2012 Hearing Tr. at 72:15-18.)  But, consistently with Penguin's objection to a joint trial in June, the court made clear that "[w]ho will be participating in the non-jury trial is yet to be decided but it will be at least DOJ and non-settling defendants, whoever they might be, and the trial would begin June 3rd."  (*Id.*).

On June 25, 2012, the Court formally scheduled the bench trial date of June 3, 2013 for the DOJ action.  (*United States v. Apple*, *Inc.*, 12-cv-2826, Dkt. No. 71, Scheduling Order, June 25, 2012 ("June 25, 2012 Scheduling Order"), at ¶ 12).  The scheduling order did not mention which parties would participate as plaintiffs.  The next day, the States suggested that they would be "amenable to a bench trial before the Court on issues of liability and injunctive relief," and requested that "the Court enter an appropriate order permitting" it to proceed "on the same track" as the bench trial in the DOJ action.  (Ltr. from Plaintiff States to the Hon. Judge Cote, June 26, 2012).

This Court, however, never granted the States' request and never entered any order granting them leave to participate in the DOJ trial.  In fact, the question of whether the States would participate in the trial remained open and under discussion for at least the next several months.  In a colloquy about the prospective litigation schedule at the September 10, 2012 conference, for example, the Court acknowledged that "I know we haven't decided that issue [of the DOJ trial participants] and I think we need to address that sooner rather than later."  (Sept. 10, 2012 Hearing Tr. at 20:23–21:8).  The Court later confirmed that "I don't think I've ruled that the class action is going to trial in June. I think it's just the DOJ action. I had an application from the states to try their case in June. That hasn't been decided."  (*Id.* at 21:18–22).  On October 19, 2012, the Court issued an order in the DOJ action that reconfirmed a June 3, 2013 DOJ trial date,

but still did not rule on whether the States would be participating.  (*United States v. Apple*, *Inc.*, 12-cv-2826, Dkt. No. 143, Scheduling Order, Oct. 19, 2012).

The first time the Court tentatively agreed to the States' participation at the DOJ trial was at the October 26, 2012 conference.  The Court remarked, "I think I know that at the June trial, on the plaintiffs' side of the table will be DOJ and the states," and further that "I think it would be helpful to know which states are going to be at the table."  (Oct. 26, 2012 Hearing Tr. at 53:7–15).  In response, counsel for the States indicated that all 33 states listed in the caption of the *State of Texas et al. v. Penguin et al.* action "are currently seeking to participate in the June 3rd trial."  (*Id.* at 53:20–25.)  The Court then stated, "Okay.  So what we have then is DOJ and the states against Apple, MacMillan and Penguin."  (*Id.* at 54:6–7.)  The Court never issued a formal order memorializing the States' participation in the DOJ trial.

On December 18, 2012, Penguin and the DOJ entered into a settlement agreement resolving *United States v. Apple, Inc.*, 12-cv-2826 (DLC).  Without admitting liability, Penguin agreed to essentially the same injunctive relief that was sought by the DOJ and the States in their final judgments with the other settling publishers.

On Tuesday, February 19, 2013, in an email exchange between the States and Penguin, Penguin learned for the first time that the States still anticipated that Penguin would be a defendant in the DOJ trial even though Penguin had settled the DOJ action.  (Exhibit 4 to Ltr. From Plaintiff States to Hon. Judge Cote, Feb. 25, 2013).  Penguin promptly requested that the Court clarify that Penguin would not be participating as a defendant in the June 3 trial, and the Court heard argument at a February 26, 2013 telephone conference.  Penguin objected to participating as a defendant in the DOJ bench trial on the States' claims:  "Penguin objects to going forward with the June 3rd trial without a jury."  (Feb. 26, 2013 Hearing Tr. at 22:25–23:2).

Recognizing that, from Penguin's perspective, "these are *** important rights that are at stake here," the Court afforded Penguin the "full opportunity to set forth [its] legal analysis and justification for [its] position that [it does] not have to participate in the June trial to resolve the case brought against [it] by the states in terms of both liability and issuance of an injunction." (*Id.* at 25:21-26:3; *see also In re: Elec. Books Antitrust Litig.*, 11-md-2293, Dkt. No. 294, Order, Feb. 27, 2013 (instructing Penguin to brief the issue of whether it would "assert its right not to defend against the lawsuit brought by Plaintiff States at the June 2013 trial")).

## ARGUMENT

The Seventh Amendment to the U.S. Constitution guarantees Penguin the right to a jury trial on the States' federal and state antitrust damages claims. Penguin accordingly is asserting its constitutional right to have the States' legal (monetary) claims heard by a jury. The June 3, 2013 trial date has consistently been characterized as a non-jury trial because, initially, it was a trial to be conducted by the federal government seeking equitable relief and thus a trial to which the Seventh Amendment right would not attach. Penguin's objection to the trial date of June 3 has thus derived from the fact that the trial date has always been a trial for equitable relief to which the Seventh Amendment would not apply. Because the parties and the nature of the claims being litigated have now changed to the type of legal claims to which Penguin's jury trial right attaches, Penguin must object to that trial going forward, at least as a non-jury trial.

The June trial is now 80 days away. Penguin respectfully proposes, for the reasons explained below, that the Court preserve Penguin's right to a jury by ordering the States to prove liability and seek injunctive relief as part of the already-contemplated separate State and class action damages trial. The Court has the power to do so under Federal Rule of Civil Procedure 42(b), which specifically mandates that such separate-trial orders "preserve any federal right to a

6

jury trial." Alternatively, if the Court prefers that Penguin participate as a defendant with regard to the States' claims at the June 3 DOJ trial, Penguin respectfully asserts its right to have a jury hear and decide those claims.

**I.   THE SEVENTH AMENDMENT TO THE CONSTITUTION GUARANTEES PENGUIN A JURY TRIAL ON ALL OF THE STATES' CLAIMS**

The Seventh Amendment guarantees that "the right of trial by jury shall be preserved" in suits at common law. U.S. Const., amend. VII. The civil jury trial right is "one of the few procedural rights in civil cases that is enshrined in the Constitution," *Tray-Wrap, Inc. v. Six L's Packing Co. Inc.*, 984 F.2d 65, 66 (2d Cir. 1993), and is "a basic and fundamental feature of our system of federal jurisprudence," *Jacob v. City of New York*, 315 U.S. 752, 752 (1942). This constitutional right underlies "the federal policy favoring jury decisions of disputed fact questions." *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 538 (1958); *see Dimick v. Schiedt*, 293 U.S. 474, 485-86 (1935) (noting that "trial by jury has always been, and still is, generally regarded as the normal and preferable mode of disposing of issues of fact in civil cases at law as well as in criminal cases"). This right is also expressly affirmed and embodied in Federal Rule of Civil Procedure 38(a), which declares that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution *** is preserved to the parties inviolate." Fed. R. Civ. P. 38(a).

This right is so fundamental, in fact, that the appropriate remedy on appeal for a district court's "wrongful denial of a [plaintiff's] right to a jury trial on legal issues" is to "reverse[] and remand[] each case in its entirety for a trial before a jury." *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 552-553 (1990); *see, e.g.*, *Tray-Wrap*, 984 F.2d at 65 (reversing and remanding for a new trial); *Dell'Orfano v. Romano*, 962 F.2d 199, 202 (2d Cir. 1992) (same); *Gargiulo v. Delsole*, 769 F.2d 77, 79 (2d Cir. 1985) (same). In addition, "a clear line of cases hold[s] that when an

otherwise unappealable order denies a claimed right to a jury trial, immediate review may be obtained by way of a petition for mandamus." *In re Hooker Invs., Inc.*, 937 F.2d 833, 837 (2d Cir. 1991); *see, e.g.*, *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511 (1959); *Higgins v. Boeing Co.*, 526 F.2d 1004, 1006 (2d Cir. 1975) (per curiam).

**A.     Penguin Enjoys A Right To A Jury Trial On The States' Antitrust Claims.**

Penguin enjoys the right to have the States' antitrust claims that seek treble damages and civil penalties under federal antitrust statutes and corresponding state laws tried before a jury. The Seventh Amendment right applies to "suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990).  The same analysis applies to causes of action created by Congress, so that if the "statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law," the right to a jury trial attaches.  *Curtis v. Loether*, 415 U.S. 189, 194 (1974); *see Tull v. United States*, 481 U.S. 412, 417 (1987).

At issue are the States' claim for damages, penalties, and equitable relief under various state and federal antitrust statutes, including treble damages under the Clayton Act.  15 U.S.C. § 15; *see* Second Am. Compl. at 42 (seeking, *inter alia*, "treble damages for injury to natural persons under Section 4c of the Clayton Act and applicable state laws," civil fines, and penalties). These claims indisputably implicate Penguin's jury trial right under the Seventh Amendment, as "the right to trial by jury applies to treble damage suits under the antitrust laws." *Beacon Theatres,* 359 U.S. at 504; *see also Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946) ("[A]n action for treble damages under the Sherman Act *** is triable at 'law' and by jury as of right.").

Moreover, civil penalties are "a type of remedy at common law that could only be enforced in courts of law," which means that parties enjoy the "constitutional right to a jury trial to determine [their] liability on [] legal claims" for a civil penalty.  *Tull*, 481 U.S. at 422, 425.

Indeed, the Court and parties have operated from the beginning on the assumption that the parties enjoyed the right to a jury trial in both the States' action and the class action.  The States and class plaintiffs both timely demanded jury trials in their complaints, and the clerk docketed both as jury trials.  At the June 22 conference, moreover, the Court began the hearing with the premise that the trial would be before a jury.  *See, e.g.*, June 22, 2012 Hearing Tr. at 14:21-22 (noting that "we need to put a jury in the position to be making its fact-finding based on a record that is reliable"); *id.* at 19:23-20:3 ("I am assuming that the plaintiffs will be proceeding on both a per se theory and a rule of reason theory at trial and that both will be charged to the jury[.]").  It is true that the court agreed to Apple's proposal of a bench trial with respect to the DOJ's case alone, *see id.* at 72:15-19, on the ground that the DOJ's case did not involve a jury demand and sought only equitable relief, *see id.* at 23:3-7 ("THE COURT: Are you suggesting there would be a non-jury trial?  MR. FLOYD: In the DOJ case, because it is an injunctive relief case.  THE COURT: Okay.").  But the court reiterated that, while it would "convert[] *** the June 3rd trial into a non-jury trial," "those parts of this litigation that require a jury trial and summary judgment practice will be split off."  *Id.* at 73:1-5.

Finally, the States themselves have acknowledged that their claims seek at least some legal relief by invoking a jury trial on "all issues" so triable.  Second Am. Compl. at 45 (May 17, 2012); *see also State of Texas et al. v. Penguin Group (USA), Inc. et al.*, 12-cv-3394 (DLC), Dkt. Nos. 1, 7 , Compl. at 40 (April 11, 2012) (same); First Am. Compl. at 40 (Apr. 18, 2012) (same).  Penguin properly relied on those assertions that a jury trial is needed as preserving its own jury

trial right because, "[o]nce a proper jury demand is made, all other parties to the action affected by the demand may rely on it with respect to the issues that it embraces." *Davidson Pipe Co., Inc., v. Laventhol & Horwath*, 125 F.R.D. 363, 366 (S.D.N.Y. 1989); *see Dell'Orfano,* 962 F.2d at 202. Accordingly, the States may not withdraw their jury demand unilaterally, but rather "only if the parties consent" via a written or oral stipulation. Fed. R. Civ. P. 38(b), (d); *see id.* 39(a) ("[w]hen a jury trial has been demanded under Rule 38, ***[t]he trial on all issues so demanded must be by jury unless *** the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record"). As Penguin justifiably read the States' demand as encompassing its own jury trial right, that right may be withdrawn only with Penguin's consent.[1]

### B. The Court Cannot Try The States' Claims Without A Jury Consistently With the Seventh Amendment.

Although the States' claims seek both legal and equitable relief, Penguin has the right to have all of their claims tried before a jury because they all hinge on the same liability determination, as the right to a jury trial in cases involving legal and equitable claims extends to "all issues common to both claims." *Curtis,* 415 U.S. at 196 n. 11. More specifically, "[w]hen an action involves both legal and equitable claims that have common issues of fact, and a jury trial has been properly demanded with respect to the legal claims, the parties have a right under the Seventh Amendment to have the legal claims tried to a jury." *Wade v. Orange Cnty. Sheriff's Office*, 844 F.2d 951, 954 (2d Cir. 1988).

---

[1] Rule 38(d) "embodies the equitable principles of reasonable reliance," thereby "ensur[ing] that one party may rely on another's jury demand." *Rosen v. Dick*, 639 F.2d 82, 87, 91 (2d Cir. 1980); *see Rachal v. Ingram Corp.*, 795 F.2d 1210, 1214 (5th Cir. 1986) ("Rule 38(d) *** allows other parties to rely on one party's demand by providing that a proper demand can only be withdrawn with the consent of the parties."). Courts "will not require the formal making of a superfluous second demand, nor will they penalize a party who has reasonably relied on an existing demand." *Rosen*, 639 F.2d at 91.

To safeguard parties' Seventh Amendment rights, "the general rule is that the jury must be allowed to decide the legal claims prior to the court's determination of the equitable claims." *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 432 (2d Cir. 1995); *see Dairy Queen,* 369 U.S. at 479 (same).  This rule preserves the right to a jury trial on the legal claims, which "must not be infringed" by a bench trial on the equitable claims.  *Ross v. Bernhard*, 396 U.S. 531, 537–38 (1970).  Thus, although courts are generally permitted under Federal Rule of Civil Procedure 42 to order separate trials of issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize," in doing so they "must preserve any federal right to a jury trial."  Fed. R. Civ. P. 42(b).

The rule requiring that legal claims be first tried to a jury derives from *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959), a case that also involved a treble damages claim under the antitrust laws.  The plaintiff in *Beacon Theatres* sought to avoid a threatened antitrust suit by preemptively seeking a declaratory judgment and an injunction against that suit.  The defendant counterclaimed for treble damages and demanded a jury trial, but the district court decided that it would hear the plaintiff's suit for equitable relief before the bench before submitting the counterclaim to a jury, and the Court of Appeals affirmed.  The Supreme Court reversed.  It held that if the equitable claims were tried first, the defendant would be precluded by collateral estoppel from relitigating issues common to the two claims before a jury.  *Id.* at 504.  While a trial judge has limited discretion in determining the sequence of legal and equitable issues, the Court concluded that the judge's discretion "must, wherever possible, be exercised to preserve a jury trial."  *Id.* at 510.

*Beacon Theatres* and its progeny control here.  The Second Amended Complaint seeks both damages and equitable relief on claims involving common factual issues, and yet the States

propose to try "all issues of liability and injunctive relief" at the June 3 DOJ trial and thus to use a bench trial to determine the factual liability questions on which any relief would hinge.  (Ltr. from Plaintiff States to the Hon. Judge Cote, June 26, 2012).  If the Court were to determine Penguin's liability on the States' claims at the DOJ trial, in a subsequent damages trial on those same claims the Court and parties "might have to be delving into a lot of the facts that were presented at the first trial," with the substantial potential of the very "collateral estoppel effect[s]," June 22, 2012 Hearing Tr. at 15:23-16:4, that *Beacon Theatres* forbade.  The resolution of such common factual issues at a bench trial would necessarily deprive Penguin of its fundamental jury trial rights.  *See Beacon Theatres,* 359 U.S. at 508 (trial court's use of separate-trial discretion to deprive party "of a full jury trial on" jury-triable claims "cannot be justified"); *Lytle*, 494 U.S. at 552 (A "district court may not deprive a litigant of his right to a jury trial by resolving an equitable claim before a jury hears a legal claim raising common issues.").

The States seek to avoid this conclusion by arguing that two separate liability trials—one against Apple and another against Penguin—would be "redundant and a waste of judicial resources."  (Ltr. from Plaintiff States to the Hon. Judge Cote, Feb. 25, 2013, at 1–2; *see also* Feb. 26, 2013 Hearing Tr. at 24:17-24 (similar)).  That fails for two reasons.  First, Penguin is not asking the States to participate in additional or redundant trials; it is instead seeking that any trial on their claims be tried before a jury, as the Seventh Amendment guarantees.  Second and in any event, the Supreme Court has been explicit that considerations of efficiency and expense "are insufficient to overcome the clear command of the Seventh Amendment." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 62 (1989) (internal citation and quotation marks omitted).  Nor could delay and expense in the form of "providing a jury trial in the same action" as a bench trial ever override the *Beacon Theatres* rule.  *Id.* at 64 n.18 (quotation and citation omitted).  For these

reasons, the Court must "preserve the integrity of the seventh amendment guarantee" by allowing Penguin to defend against the States' claims in front of a jury.  *Heyman v. Kline*, 456 F.2d 123, 130 (2d Cir. 1972).

## II.  PENGUIN'S RIGHT TO A JURY TRIAL ON THE STATES' CLAIMS HAS BEEN PROPERLY PRESERVED

In their February 25, 2013 letter, the States do not dispute that Penguin is entitled to a jury resolution of their claims under the Seventh Amendment.  Instead, they contend that, "[t]o the extent" Penguin's constitutional jury trial right is implicated, Penguin waived it.  (Ltr. from Plaintiff States to the Hon. Judge Cote, Feb. 25, 2013, at 1–2).  But "[i]t is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally."  *National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977).  For that reason, a waiver of a jury trial right "is not lightly to be inferred," *Gargiulo*, 769 F.2d at 79, and courts, in fact, "indulge every reasonable presumption against waiver," *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937).  *See Jacob*, 315 U.S. at 752 (Seventh Amendment jury trial right "should be jealously guarded by the courts").  "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."  *Beacon Theatres*, 359 U.S. at 501 (quoting *Dimick*, 293 U.S. at 486).

Moreover, "[t]he burden of proving that a waiver was knowing and intentional rests with the party attempting to enforce the purported waiver."  *Sullivan v. Ajax Navigation Corp.*, 881 F. Supp. 906, 910-11 (S.D.N.Y. 1995) (citing *National Equipment Rental*, 565 F.2d at 258).   The States cannot meet that burden here.

### A.     Penguin Did Not Formally Waive Its Seventh Amendment Right.

As a preliminary matter, the States can make no plausible showing that Penguin knowingly and intentionally waived its jury trial right in the manner set forth in the Federal Rules of Civil Procedure.  Where, as here, a timely jury trial demand has been made under Rule 38, Rule 39(a) provides "stringent formal safeguards against an inadvertent subsequent waiver." *Washington v. New York City Bd. of Estimate*, 709 F.2d 792, 797 n.4 (2d Cir. 1983).  Rule 39(a) sets forth two and only two mechanisms for an effective jury waiver:  a written stipulation filed with the court or an oral stipulation on the record. Fed. R. Civ. P. 39(a)(1); *see DeGioia v. U.S. Lines Co.*, 304 F.2d 421, 424 n.1 (2d Cir. 1962) (jury trial demand "can be waived *only* by an oral stipulation made in open court and entered in the record, or by written stipulation") (emphasis added).  Courts have recognized that this Rule has "cloaked the waiver process in a ritual that is almost sacramental," *Tray-Wrap, Inc.*, 984 F.2d at 68; *see Heyman*, 456 F.2d at 129 ("The Federal Rules of Civil Procedure have worked out a careful scheme by which defendants may waive their right to jury trial.").  By prescribing a particular "ceremony" to surround the waiver process, Rule 39(a) "assures that the precious right to a jury trial will not be frittered away by casual findings of waiver."  *Tray-Wrap, Inc.*, 984 F.2d at 66.

Penguin never stipulated orally or on the record to waiver, as required by Rule 39(a), and there was accordingly no formal waiver in this case.  *E.g., Gargiulo*, 769 F.2d at 79 (reversing a finding of waiver where "[t]here was no *** written or oral stipulation on the record").  The States have not identified any such affirmative conduct.  They cite instead Penguin's failure to object to the States' June 26, 2012 letter suggesting that the States would be "amenable to a bench trial before the Court on issues of liability and injunctive relief" and requesting that "the Court enter an appropriate order permitting" them to proceed "on the same track" as the bench

trial in the DOJ action.  (Ltr. from Plaintiff States to Hon. Judge Cote, June 26, 2012).  But the Court never issued such an Order, and months later it had still not ruled on that request or on the ultimate issue of consolidating the DOJ and States' actions.  *See, e.g.*, Sept. 10, 2012 Hearing Tr. at 21:18–22 ("I don't think I've ruled that the class action is going to trial in June.  I think it's just the DOJ action.  I had an application from the states to try their case in June.  That hasn't been decided."); *see also id.* at 20:23–21:8.  Mere silence is not and cannot be a "written or oral stipulation."  Fed. R. Civ. P. 39(a); *see Tray-Wrap*, *Inc.,* 984 F.2d at 68 ("Certainly, when dealing with so fundamental a right as a jury trial," ambiguity or informality "flies in the teeth of the meticulous provision made in Rule 39 for jury waivers."); *cf. Morrison v. Nat'l Australia Bank Ltd.,* 130 S.Ct. 2869, 2883 (2010) (where "clear indication" required, "uncertain indications do not suffice").

The States also argue that there was a "stipulat[ion] on the record to participate in a *** bench trial" at the October 26, 2012 conference.  Feb. 26, 2013 Hearing Tr. at 25:7-12.  But as the Court recognized at that very conference, the most that can be said is that Penguin had "nothing to add."  *Id.* at 19:12-19.  That does not suffice.  The "conduct said to constitute a waiver must be clear and unequivocal," *Tray-Wrap*, *Inc.*, 984 F.2d at 68, such that a mere failure to object will not do.  *See, e.g., Tray-Wrap, Inc.,* 984 F.2d at 68 (rejecting defendant's attempts "to cobble a written stipulation out of" plaintiff's informal letters to the judge, or an oral stipulation out of ambiguous events during "a conference call"); *Gargiulo*, 769 F.2d at 78 (finding "no merit" in argument that "plaintiffs failed to preserve their right to a jury trial by failing to object to the court notice that the case was on a nonjury calendar"); *Heyman,* 456 F.2d at 129 (counsel's "failure to object" to Judge's statement "in passing that this was a 'non jury trial'" was not waiver where "attorneys did not affirmatively agree to this suggestion and they

may well have understood it to refer only to the hearing on the preliminary injunction"). Quite the opposite, at the hearing Penguin maintained the status quo and expressly eschewed coming forth with an explicit renunciation of its jury trial right.

To be sure, the Court at that October 26 conference seemed to reach a tentative decision that the States would be joining the DOJ's June 3 trial. (Oct. 26, 2012 Hearing Tr. at 53:7–15 ("I think I know that at the June trial, on the plaintiffs' side of the table will be DOJ and the states[.]"); *id.* at 54:6–7 ("Okay. So what we have then is DOJ and the states against Apple, MacMillan and Penguin.")). But that does not change the fact that there was never any written or oral response from Penguin that remotely approached "stipulati[ng]" to a waiver of its jury trial right for the States' claims. What is more, there never was any formal order filed memorializing the Court's tentative decision, and Penguin immediately and vociferously objected upon first learning that it was expected to defend against the States' claims without a jury during the DOJ trial. (Feb. 26, 2013 Hearing Tr. at 22:25-23:2.) The States thus cannot meet their burden of showing formal written or oral stipulation here.[2]

### B.   Penguin Did Not Waive Its Seventh Amendment Right Through Conduct.

Nor can the States overcome the presumption against waiver on the ground that Penguin somehow demonstrated waiver through conduct. Because "waivers are never to be lightly inferred," a party loses the right to a jury trial only upon a showing of a "*clear and unequivocal*" waiver. *Tray–Wrap, Inc.*, 984 F.2d at 68 (emphasis added). That is because "[t]he right to jury trial is too important, and the usual procedure for waiver of the right too clearly set out by the

---

[2] In their February 25, 2013 letter, the States also cite a November 19, 2012 joint stipulation regarding the expert discovery schedule, but that order cannot be construed as a waiver of the jury trial right as to the States' claims. As the Court is aware, these cases have all been consolidated for discovery purposes, and thus all non-settling parties – even those, like class plaintiffs' counsel, who are not participating in the June 3 DOJ trial at all, *see* Oct. 26, 2012 Hearing Tr. at 54:2–5 – signed that proposed order.

Civil Rules for courts to find a knowing and voluntary relinquishment of the right in a doubtful situation." *Heyman*, 456 F.2d at 129 (internal citations omitted).  Penguin's actions here, which involve no knowing and voluntary relinquishment of the jury trial right—indeed, no affirmative conduct at all—cannot be construed as a waiver.

Binding and on-point precedent is clear that a mere failure to object before trial is not "clear and unequivocal" and does not constitute a waiver.  For example, the court in *Tray–Wrap* reversed a holding that plaintiff had waived its Seventh Amendment right waiver and ordered a new trial before a jury.  984 F.2d at 68.  In doing so, the court specifically ruled that neither the plaintiff's "failure to object" to the defendant's written assertion that "the trial was to be non-jury," nor a judge's post-conference notation that the case was to be a bench trial when there was no indication "whether plaintiff's counsel affirmatively stipulated to a bench trial or merely fell silent when the matter was discussed," was insufficient to constitute a waiver by conduct.  *Id.* at 68 ("It is impossible to construct a waiver on so skimpy a record.").

Likewise, in *Heyman,* 456 F.2d at 129, the court ordered a new jury trial after concluding that an "attorney's failure to object to the judge's statement" about having a "non jury trial" could not constitute an affirmative waiver.   The Second Circuit recognized that the judge had made the comment about having a non-jury trial "in passing," the attorneys "did not affirmatively agree to this suggestion," and in fact they did not appear to have understood the import of the Judge's suggestion.  *Id.*  The court emphasized that "[t]he right to [a] jury trial is too important" to find a "knowing and voluntary relinquishment" in that "doubtful situation."  *Id.*

Finally, this Court itself has declined to find a waiver by plaintiff even in a situation where "plaintiff's counsel *told the defendants' counsel and the Court that the plaintiff was willing to waive his right to a jury*" at a pre-trial conference, as there was no "clear evidence of a

fully consummated agreement to waive a jury trial." *Tanvir v. Laporte*, 169 F.R.D. 292, 293-94 (S.D.N.Y. 1996) (emphasis added).   As in *Tanvir*, since Penguin never made any such statement and, in fact, affirmatively objected to the bench trial "long before the completion of [] pre-trial discovery, the completion of a pre-trial order, or the beginning of a trial," Penguin's conduct simply cannot "support an inference of waiver" here.  *Id.* at 294.

That is not to say that conduct can *never* result in the waiver of the Seventh Amendment right.  But the Second Circuit has generally confined such waivers to instances of a party's actual "participation in a bench trial without objection[.]"  *Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1018 (2d Cir. 1989).  In fact, all of the States' cases cited in its February 25 letter involved just such a complete failure to object until the bench trial started.  In two of them, the waiving parties had already fully participated, without objection, in bench proceedings that decided the very issues for which they subsequently demanded a jury trial.  *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 282 (2d Cir. 2012) ("[Plaintiff] argues that it should have been permitted to re-litigate before a jury the question resolved in favor of [defendant] at the bench trial.");  *Hill v. Airborne Freight Corp.*, 93 F. App'x 260, 262 (2d Cir. 2004) ("[Plaintiffs] participated with counsel in bench proceedings to resolve the remaining *** issues, still without objection.").  And in the third case, the plaintiff in question saved its objection until the day of the bench trial itself, having raised no objection at the pretrial conference four days earlier even though "it was clear to everyone, including [plaintiff's] counsel, that the case was to be tried to the Court without a jury."  *Phlo Corp. v. Stevens*, No. 00 Civ. 3619 (DC), 2001 WL 1313387 at *2 (S.D.N.Y. Oct. 25, 2001).  Furthermore, the court in *Phlo Corp.* also concluded that the plaintiff was acting in bad faith:  it "obviously was attempting to use its previous jury

demand—asserted in the now-dismissed complaint—to delay the trial in hopes of obtaining the presence of the non-party witness." *Id.*

Needless to say, Penguin has not participated in a bench trial without objection. Nor is this case on the eve of trial. Rather, Penguin objected as soon as it became clear that the parties had different understandings of who was to participate in the DOJ trial, and it did so more than three months before the DOJ trial is set to begin. (Feb. 26, 2013 Hearing Tr. at 22:25-23:2 ("Penguin objects to going forward with the June 3rd trial without a jury.")). Similarly, the States allege no eve-of-trial gamesmanship here. On the contrary, the States acknowledge that this involves, at worst, a genuine misunderstanding. (*See* Ltr. From Plaintiff States to Hon. Judge Cote, June 25, 2012 at 2 n.2 & attached Exhibit 4.)

To the extent that Penguin's conduct has in any way misunderstood this Court's prior indications or has caused the Court any inconvenience, Penguin offers its sincerest apology to the Court. But at the end of the day, miscommunications and misunderstandings do not constitute an express waiver of a constitutional right. Second Circuit law flatly forecloses grounding the waiver of the fundamental right to a jury trial on a failure to object at a single pretrial conference more than seven months in advance of a trial date, particularly when Penguin recognized the misunderstanding and promptly sought to correct it approximately 100 days before the scheduled trial.

**C.     Penguin's Agreement To A Bench Trial On The DOJ's Claims, Which Sought Only Equitable Relief, Did Not Constitute A Waiver As To The States' Claims.**

There is no question that Penguin 'agreed' to a bench trial of the *DOJ's* claims. Penguin could hardly have done otherwise. The Seventh Amendment has no application to a jury trial on equitable claims that, unlike the States' claims, sought only injunctive relief and not damages. (*See*, *e.g.*, June 22, 2012 Hearing Tr. at 23:3-6.) Because the DOJ's claims received priority, *see*

19

15 U.S.C. § 4, there was also no question that the DOJ's case was going to be tried first in a bench trial before any of the other claims in the litigation.

Moreover, the parties and the Court reasonably understood that a verdict in favor of DOJ at the June 3 trial would have had collateral estoppel effect in future litigation.  (*See, e.g.*, June 22, 2012 Hearing Tr. at 15:22–16:2 (The Court: "And, of course, if the defendants lost at trial in which the DOJ was playing [a role] there would be automatic collateral estoppel effect on liability[.]").)  That is because Section 5(a) of the Clayton Act provides that prior final judgments or decrees (though not consent decrees) obtained by the government "shall be prima facie evidence against such defendant in any action or proceeding brought by any other party" under the antitrust laws.  15 U.S.C. § 16(a).  In addition, this Court has given collateral estoppel effect to government antitrust verdicts in subsequent private suits, based on the theory that "an issue that [a defendant] has litigated unsuccessfully in another action is also available to a new plaintiff when the defendant had essentially the same opportunity and incentive to litigate the issue fully and fairly in the other suit."  *LeBlanc-Sternberg,* 67 F.3d at 433-34; *see, e.g., Discover Fin. Servs. v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394 (S.D.N.Y. 2008) (affording offensive collateral estoppel effect to DOJ antitrust action).

In short, the DOJ had an uncontested right to proceed first on issues that were only triable before the bench, with any verdict in its favor carrying presumptive collateral estoppel effect in subsequent private litigation.  In that circumstance, even if all parties had the same understanding regarding the States' participation in the DOJ trial, Penguin had no occasion to object on Seventh Amendment grounds as long as it remained a defendant in the DOJ suit.  The States (along with the class plaintiffs) would be entitled to the collateral estoppel effect of any liability finding in favor of the DOJ either way.  Moreover, as the Court recognized, in the situation where the DOJ

was already suing all defendants, it was in everyone's "interest to have one trial" because of the potential "automatic collateral estoppel effect on liability" and general efficiencies related to factfinding on liability and damages.  (June 22, 2012 Hearing Tr. at 15:15-16:7.)  In other words, because the DOJ would already be attempting to prove that Penguin and the other nonsettling defendants entered into an illegal conspiracy in violation of Section 1 of the Sherman Act, it made sense for the States, which had an interest in proving the same thing, to participate in the same trial.

Yet the minute Penguin settled with DOJ on December 18, 2012, all of those considerations materially changed.  The DOJ trial was a fast-tracked trial without a jury, so once Penguin settled and was no longer a defendant in the DOJ action, the specter of being forced to participate in a bench trial with presumptive offensive collateral estoppel effect evaporated.  By contrast, the States, which are suing on behalf of consumers for damages, are not entitled to a bench trial—priority or otherwise—at all.   In other words, Penguin could not assert a constitutional right to avoid a priority bench trial with the DOJ as to liability, but it indisputably has such a right with respect to the States' claims.

By the same token, once Penguin and the DOJ settled, the anticipated efficiencies in terms of collateral estoppel and the necessity of a trial on damages that was separated from the DOJ case likewise vanished.  Because Penguin is no longer a defendant in the government action, the DOJ will not be putting on evidence or otherwise trying to prove that non-defendant Penguin is culpable during the DOJ trial.  The evidence against Penguin will have to come, if it comes at all, from the States themselves.  Given that the States always understood that they will be required to have a separate trial against Penguin as to damages, there is no efficiency interest that requires the States to prove Penguin's *liability* on the States' claims at the DOJ trial instead of at

the already-contemplated separate damages trial.  And even if it were otherwise, any arguable efficiencies cannot justify trenching on Penguin's constitutional rights.  *See Granfinanciera, S.A.*, 492 U.S. at 62 (noting that considerations of efficiency and expense "are insufficient to overcome the clear command of the Seventh Amendment").

> ### D.   The Court Should Exercise Its Discretion To Vindicate Penguin's Seventh Amendment Jury-Trial Rights.

Finally, the materially changed post-settlement circumstances provide an additional reason why Penguin is entitled to vindicate its jury trial right in connection with the States' damages claims.  Even in cases of waiver, courts have broad discretion to "order a jury trial on any issue for which a jury might have been demanded."  Fed. R. Civ. P. 39(b).  This court must "approach each application under Rule 39(b) with an open mind and an eye to the factual situation in that particular case[.]"  *Cascone v. Ortho Pharm. Corp.*, 702 F.2d 389, 392 (2d Cir. 1983) (quoting 9 C. Wright & A. Miller, Federal Practice & Procedure, § 2334 at 116 (1971)).

This factual situation counsels in favor of the Court exercising its discretion under Rule 39(b) to guarantee Penguin's constitutional rights to a jury trial on the States' claims.  *See, e.g.*, *Tanvir*, 169 F.R.D. at 294 ("Even if a waiver could be inferred from the conduct of the parties, the plaintiff persuasively argues that the Court should use its discretion to reinstate the plaintiff's jury demand" under Rule 39(b).).  Such a decision would be particularly appropriate where, as here, the States will suffer no prejudice.  Penguin brought this issue to the Court's attention in time to ensure that no parties are prejudiced in the exercise of Penguin's constitutional rights.  "[B]ecause trial in this case is *** several months away, *** the parties [have] time to adapt."  *Hoag v. Cellco P'ship*, CIVA 3:05CV1185 SRU, 2007 WL 549738, at *2 (D. Conn. Feb. 16, 2007).  Penguin proposes having the States' claims as to liability and damages heard concurrently at the already-contemplated damages trial with the States and class action.

Alternatively, Penguin is willing to agree to an aggressive schedule to ensure that it can fairly remain a participant in a June 3 jury trial as to the States' claims (again, Penguin is no longer a defendant in the DOJ action).  Either of those options would keep any conceivable prejudice to the States – who are already participating in two trials and who will be forced to prove Penguin's liability without the help of the DOJ regardless – to a minimum.

In contrast, the prejudice to Penguin of wrongfully denying its constitutional right to a jury trial would be immense.  The right to trial by jury is a "fundamental" right secured by the Seventh Amendment, *National Equipment Rental*, 565 F.2d at 258, and is so important that Penguin would be entitled to seek "immediate review" of any wrongful denial "by way of a petition for mandamus," *In re Hooker Invs., Inc.*, 937 F.2d at 837.  *See, e.g.*, *Dairy Queen,* 369 U.S. at 472; *Beacon Theatres,* 359 U.S. at 511; *Higgins*, 526 F.2d at 1006.   If Penguin is nevertheless forced to participate in a bench trial over its Seventh Amendment objections, it would also be entitled after appeal to an entirely new trial before a jury.  *See Lytle*, 494 U.S. at 552-553.

## CONCLUSION

For the foregoing reasons, Penguin respectfully requests that the Court exercise its discretion under Federal Rule of Civil Procedure 42 to allow the States' claims to be heard at the already-contemplated damages trial with the States and class.   In the alternative, Penguin respectfully requests that the Court grant its request to have the States' claims decided before a jury at the DOJ trial.

Dated: March 15, 2013                 Respectfully submitted,

                                      _____/s/ Daniel Ferrel McInnis_____
                                      Daniel Ferrel McInnis
                                      Larry Tanenbaum
                                      Carolyn Perez
                                      Akin Gump Strauss Hauer & Feld, LLP
                                      1333 New Hampshire Ave., NW
                                      Washington, DC 20036
                                      Tel.:  202-887-4000
                                      Fax:  202-887-4288
                                      dmcinnis@akingump.com
                                      ltanenbaum@akingump.com
                                      cperez@akingump.com

                                      *Counsel for Defendant Penguin Group (USA), Inc.*