UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE STATE OF TEXAS *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PENGUIN GROUP (USA) INC. *et al.*, <br><br> Defendants. | Civil Action No. 12-cv-3394 (DLC) <br><br> ECF Case |
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | Civil Action No. 11-md-2293 (DLC) <br><br> ECF Case |

**MEMORANDUM IN SUPPORT OF MOTION APPLICATION OF PENGUIN GROUP (USA), INC. TO PRESENT THE LIVE DIRECT TESTIMONY OF <u>DAVID SHANKS AND JOHN MAKINSON</u>**

Defendant Penguin Group (USA), Inc. ("Penguin") respectfully requests permission to have the option to present the live testimony of its Chief Executive Officer David Shanks and Chairman and Chief Executive, John Makinson, either in its direct case-in-chief or as re-direct if these witnesses are crossed as part of the States' case-in-chief. This live testimony would be in addition to, not in lieu of, trial declarations required as part of the Court's procedures.

Penguin fully respects the judicial efficiency procedures that this Court has established for handling complex cases, including the Court's general practice of requiring the submission of affidavits in lieu of live direct testimony. Here, however, the credibility of key witnesses is central to both sides of the case, and good cause exists for the Court to take exception with its general practice and permit the live direct testimony of the two central Penguin decision-makers.

At its core, this case is about whether or not there was a publisher and Apple conspiracy regarding eBook pricing.  The States' case relies solely on circumstantial evidence that will require the Court to make leaps of faith about whether, when and how the publishers allegedly conspired with one another and Apple to fix eBook prices.  For example, the Plaintiffs will likely present naked phone records and ask the Court to infer from these records that the publishers called each other to agree to illegal acts.  Plaintiffs will further ask the Court to infer from attendance at industry events and dinner meetings that the publishers discussed and agreed to a concrete and specific alleged conspiracy.

Penguin will offer testimony directly refuting these inferences.  Rather than relying on mere inferences as to Penguin intent and the actuality or subject matter of any phone call, event, or meeting, Penguin will present the direct testimony of David Shanks and John Makinson, the actual decision makers.  Both will testify unequivocally that they did not conspire to fix prices.  Further, Mr. Shanks and Mr. Makinson, to the best of their memories, will explain that the meetings and phone calls in question were about legitimate joint venture activity, other perfectly legal industry business, or simply for social reasons or other non-conspiratorial purposes.

Hence, the Plaintiff States' case against Penguin will hinge on whether the Court disbelieves Mr. Shanks' and Mr. Makinson's testimony.  We believe that there would be a severe disadvantage to Penguin were the Court required to make such a judgment call—essentially an evaluation of Mr. Shank's and Mr. Makinson's credibility and character—based solely on written affidavits drafted by lawyers and the witnesses' live testimony answering hostile questions on cross examination.  We believe that such a credibility determination should more appropriately involve the opportunity for the witnesses to testify directly live and eye-to-eye with the Court.

While the Court's procedures do allow for the live cross-examination of these witnesses, Penguin argues that with respect to these two key witnesses (and only these two witnesses), live cross examination may not be adequate to present the vitality and fullness of Penguin's case from the two people who know it best. It is difficult to evaluate the credibility on cross-examination without the benefit of observing their demeanor on direct and whether that demeanor changes. However, to the extent that the Court's procedures will allow for a full opportunity for Penguin's counsel to seek re-direct testimony from these witnesses (for example allowing sufficient leeway on re-direct after cross), this may be an efficient means to the deal with the disadvantage Penguin and its key witnesses will otherwise face related to the Court making a credibility determination.

For all these reasons, Penguin requests that the Court permit the presentation of Mr. Shanks' and Mr. Makinson's live direct testimony at the June 3, 2013 trial, or otherwise clarify that Penguin will be granted the opportunity to seek fulsome, live, re-direct testimony of these witnesses.

Dated: March 15, 2013

Respectfully submitted,

  /s/ Daniel F. McInnis_____
Daniel Ferrel McInnis
Larry Tanenbaum
Carolyn Perez
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Ave., NW
Washington, DC 20036
Tel.:  202-887-4000
Fax:  202-887-4288
dmcinnis@akingump.com
ltanenbaum@akingump.com
cperez@akingump.com

*Attorneys for Defendant Penguin Group (USA), Inc*