**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x
                                                               :
IN RE ELECTRONIC BOOKS ANTITRUST                               :
LITIGATION                                                     :    11-MD-02293 (DLC)
                                                               :
                                                               :
-------------------------------------------------------------- x

This Document Relates to:

-------------------------------------------------------------- x
                                                               :
THE STATE OF TEXAS,                                            :
THE STATE OF CONNECTICUT, *et al.*,                            :
                                                               :
                Plaintiffs,                                    :
                                                               :
        v.                                                     :    12 Civ. 03394 (DLC)
                                                               :
PENGUIN GROUP (USA) INC., *et al.*,                            :
                                                               :
                Defendants.                                    :
                                                               :
-------------------------------------------------------------- x

**DEFENDANT APPLE INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS FOR LACK OF JURISDICTION**
**OR, IN THE ALTERNATIVE, TO COMPEL THE**
**PLAINTIFF STATES TO SEEK CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND ..................................................................... 2

SUMMARY OF ARGUMENT ................................................................. 3

ARGUMENT ............................................................................................ 4

I.   This Case Should Be Dismissed Because The Plaintiff States Lack Article III Standing. ...............................................................................................4

    A.   The Plaintiff States Purport To Bring This Damages Action Only In Their Quasi-Sovereign Capacity. ...................................................................6

    B.   The Injury That Plaintiff States Seek To Redress Is Not An Injury To Their Quasi-Sovereign Interests. ...............................................................6

    C.   Section 4c Of The Clayton Act Does Not Confer Article III Standing On The Plaintiff States For The Type Of Damages Action They Assert. ...................12

        1.   The So-Called "Parens Patriae" Action Described In Section 4c Of The Clayton Act Is Not Actually A Parens Patriae Action. ...........................13

        2.   Congress May Not Eliminate The Article III Standing Requirements. .................16

II.  If This Action Proceeds, the Court Should Require the Plaintiff States to Seek Class Certification. ...............................................................................................19

    A.   The Plaintiff States' So-Called "Parens Patriae" Action Is A Class Action That Is Governed By Rule 23. ...................................................................19

    B.   Allowing This Representative Action To Proceed Without Satisfying Rule 23 Would Violate Due Process. ...................................................................22

CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
    458 U.S. 592 (1982) ............................................................................... 6, 8, 9

*Allen v. Wright,*
    468 U.S. 737 (1984) ...................................................................................... 7

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................. 20, 22

*Arbaugh v. Y&H Corp.,*
    546 U.S. 500 (2006) ...................................................................................... 5

*AT&T Mobility LLC v. Concepcion,*
    131 S. Ct. 1740 (2011) ............................................................................. 24, 25

*Bridge v. Phx. Bond & Indem. Co.,*
    553 U.S. 639 (2008) .................................................................................... 22

*Broussard v. Meineke Discount Muffler Shops, Inc.,*
    155 F.3d 331 (4th Cir. 1998) ....................................................................... 25

*California v. Frito-Lay, Inc.,*
    474 F.2d 774 (9th Cir. 1973) ................................................................... 14, 15

*Carrera v. Bayer Corp.,*
    727 F.3d 300 (3d Cir. 2013) ........................................................................ 23

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
    433 F.3d 181 (2d Cir. 2005) .......................................................................... 5

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426 (2013) .................................................................................. 1

*Connecticut v. Am. Elec. Power Co.,*
    582 F.3d 309 (2d Cir. 2009) .......................................................................... 3

*Connecticut v. Cahill,*
    217 F.3d 93 (2d Cir. 2000) ........................................................................... 6

*Connecticut v. Physician Health Servs. of Conn., Inc.,*
    287 F.3d 110 (2d Cir. 2002) ............................................................... 6, 10, 11

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ...................................................................................... 7

*DeFunis v. Odegaard,*
    416 U.S. 312 (1974) ...................................................................................... 5

*Eisen v. Carlisle & Jacquelin,*
    479 F.2d 1005 (2d Cir. 1973) ..................................................................... 25

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*F. Hoffman-La Roche Ltd. v. Empagran S.A.*,
542 U.S. 155 (2004) ........................................................................... 7

*Fox v. Bd. of Trustees of the State Univ. of N.Y.*,
42 F.3d 135 (2d Cir. 1994) ................................................................. 5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ........................................................................... 7

*FW/PBS, Inc. v. City of Dall.*,
493 U.S. 215 (1990) ........................................................................... 5

*Georgia v. Pa. R.R.*,
324 U.S. 439 (1945) ........................................................................ 7, 9

*Georgia v. Tenn. Copper Co.*,
206 U.S. 230 (1907) ........................................................................... 8

*Hansberry v. Lee*,
311 U.S. 32 (1940) ........................................................................... 23

*Hawaii v. Standard Oil Co. of Ca.*,
405 U.S. 251 (1972) ................................................... 7, 8, 13, 14, 15

*Hollingsworth v. Perry*,
133 S. Ct. 2652 (2013) ....................................................... 3, 4, 16, 17

*Illinois v. Life of Mid-Am. Ins. Co.*,
805 F.2d 763 (7th Cir. 1986) ........................................................... 20

*In re Baldwin-United Corp.*,
770 F.2d 328 (2d Cir. 1985) ........................................................... 10

*In re General Motors Corp. Pick-Up Fuel Tank Prods. Liability Litig.*,
55 F.3d 768 (3d Cir. 1995) .............................................................. 23

*Kansas v. Colorado*,
185 U.S. 125 (1902) ........................................................................... 8

*Kansas v. Colorado*,
206 U.S. 46 (1907) ......................................................................... 8, 9

*Kansas v. UtiliCorp United, Inc.*,
497 U.S. 199 (1990) ......................................................................... 17

*Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States*,
136 U.S. 1 (1890) ............................................................................... 7

*Linda R.S. v. Richard D.*,
410 U.S. 614 (1973) ........................................................................... 5

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) ......................................................................... 17

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Louisiana v. Texas*,
176 U.S. 1 (1900) ............................................................................................ 9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............................................................................... 4, 5, 12

*Martin v. Wilks*,
490 U.S. 755 (1989) ........................................................................................ 23

*Maryland People's Counsel v. Fed. Energy Reg. Comm'n*,
760 F.2d 318 (D.C. Cir. 1985) ................................................................. 12, 18

*Massachusetts v. EPA*,
549 U.S. 497 (2007) ..................................................................................... 8, 12

*Matsushita Elec. Indus. Co., Ltd. v. Epstein*,
516 U.S. 367 (1996) ........................................................................................ 23

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008) ...................................................................... 22, 25

*Missouri v. Illinois*,
180 U.S. 208 (1901) .......................................................................................... 8

*New York ex rel. Abrams v. 11 Cornwell Co.*,
695 F.2d 34 (2d Cir. 1982) ............................................................................. 11

*New York ex rel. Vacco v. Reebok Int'l Ltd.*,
903 F. Supp. 532 (S.D.N.Y. 1995) ................................................................. 22

*New York ex rel. Vacco v. Reebok Int'l Ltd.*,
96 F.3d 44 (2d Cir. 1996) ............................................................................... 21

*New York v. New Jersey*,
256 U.S. 296 (1921) .......................................................................................... 8

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) ........................................................................... 22

*North Dakota v. Minnesota*,
263 U.S. 365 (1923) .......................................................................................... 8

*Oregon v. Legal Servs. Corp.*,
552 F.3d 965 (9th Cir. 2009) .......................................................................... 12

*Pennsylvania ex rel. Schapp v. Kleppe*,
533 F.2d 668 (D.C. Cir. 1976) .......................................................................... 8

*Pfizer, Inc. v. Lord*,
522 F.2d 612 (8th Cir. 1975) .......................................................................... 22

*Philip Morris USA v. Williams*,
549 U.S. 346 (2007) ........................................................................................ 22

iv

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Powers v. Ohio,*
499 U.S. 400 (1991) .................................................................... 16

*Purdue Pharma L.P. v. Kentucky,*
704 F.3d 208 (2d Cir. 2013) .................................................. 10, 18

*Richards v. Jefferson Cty., Ala.,*
517 U.S. 793 (1996) .................................................................... 23

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
559 U.S. 393 (2010) ................................................................. 4, 19

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,*
554 U.S. 269 (2008) .................................................................... 17

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998) ........................................................................ 5

*Taylor v. Sturgell,*
553 U.S. 880 (2008) .......................................................... 4, 22, 23

*Texas v. Scott & Fetzer Co.,*
709 F.2d 1024 (5th Cir. 1983) .................................................... 21

*Thomas v. City of N.Y.,*
143 F.3d 31 (2d Cir. 1998) ........................................................... 5

*Tulsa Prof'l Collection Servs., Inc. v. Pope,*
485 U.S. 478 (1988) .................................................................... 17

*Valley Forge Christian College v. Ams. United for Separation of Church and State, Inc.,*
454 U.S. 464 (1982) .................................................................... 12

*Vermont Agency of Natural Resources v. U.S. ex rel. Stevens,*
529 U.S. 765 (2000) ............................................................... 17, 18

*W. Virginia v. Chas. Pfizer & Co.,*
440 F.2d 1079 (2d Cir. 1971) ................................................. 10, 14

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011) ................................................................ 22

*Warth v. Seldin,*
422 U.S. 490 (1975) ................................................................. 5, 16

*Wyoming v. Colorado,*
259 U.S. 419 (1922) ...................................................................... 8

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

**Statutes**

15 U.S.C. § 15c ................................................................................................... 7

15 U.S.C. § 15c(a)(1) .......................................................... 3, 4, 13, 15, 20, 21

15 U.S.C. § 15c(a)(2) ....................................................................................... 18

15 U.S.C. § 15c(b)(3) .................................................................................. 20, 24

15 U.S.C. § 15d ............................................................................................... 25

15 U.S.C. § 15e ............................................................................................... 20

15 U.S.C. § 15e(2) ........................................................................................... 24

15 U.S.C. § 26 ................................................................................................... 7

28 U.S.C. § 1367(c)(3) ..................................................................................... 18

**Rules**

Fed. R. Civ. P. 1 .............................................................................................. 19

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 5

Fed. R. Civ. P. 23(a) .................................................................................. 19, 21

**Other Authorities**

122 Cong. Rec. 29,342 (1976) ......................................................................... 21

122 Cong. Rec. 30,874 (1976) ......................................................................... 17

122 Cong. Rec. 30,879 (1976) ......................................................................... 21

122 Cong. Rec. 30,883 (1976) ............................................................... 17, 20, 21

2 Joseph M. McLaughlin, McLaughlin on Class Actions (3d ed. Supp. Dec. 2006) ................... 25

Black's Law Dictionary 284 (9th ed.) ............................................................. 20

Clayton Act, Section 16 ..................................................................................... 2

Clayton Act, Section 4 .......................................................................... 13, 14, 15

Clayton Act, Section 4c .................................. 1, 2, 3, 4, 7, 11, 12, 13, 15, 16, 18, 20

Hart-Scott-Rodino Antitrust Improvement Act of 1976, Pub. L. 94-435 ........... 13, 15, 20

Richard H. Fallon, Jr. et al., Hart & Wechsler's
The Federal Courts and the Federal System 289 (5th ed. 2003) ................ 9

S. Rep. No. 94-803 (1976) ......................................................................... 17, 21

## PRELIMINARY STATEMENT

Two parallel actions are pending before this Court.  Both are being litigated by plaintiffs who seek to represent a class of e-book consumers.  Both assert the same antitrust claims against the same defendants.  Both seek the same damages for alleged overcharges on the same products.

In one action, the named plaintiffs are private consumers who purport to be members of the class they seek to represent and claim to have made e-book purchases that resulted in the same type of injury as the rest of the class.  But the named plaintiffs can represent the other consumers only if the trial court concludes, "after a rigorous analysis," that Rule 23 is satisfied, protecting the due process rights of both the defendants and the absent class members.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citation and quotation marks omitted).

In the other action, the named plaintiffs are the Attorneys General of various States.  The States *do not* purport to be part of the class they seek to represent and *do not* claim to have purchased e-books or suffered any specific injury.  Nevertheless, the Plaintiff States contend that they should be permitted to represent the absent consumers without satisfying *any* of the requirements of Rule 23, simply because Congress, in enacting Section 4c of the Clayton Act, labeled their litigation a "parens patriae" action.

The Plaintiff States are incorrect.  In fact, under well-settled principles of federal jurisprudence, recently reaffirmed and amplified by the Supreme Court, this Court lacks subject matter jurisdiction over the Plaintiff States' damages action because the States do not allege that they—separate and apart from individual e-book purchasers—have suffered any injury-in-fact and therefore do not have Article III standing.  Congress cannot exempt States from the limits of Article III by labeling their lawsuit a "parens patriae" action when it falls outside the States' inherent parens patriae authority, which, unlike this action, satisfies Article III because it is

1

grounded in unique injury to the States themselves.  Thus, this Court should dismiss the States' action for lack of jurisdiction.  Further, even if the "parens patriae" action were allowed to proceed, the States must meet the rigorous requirements of Rule 23, just like their counterparts in the private class action.  Congress did not (and could not) exempt the States from requirements that protect the constitutional due process rights of defendants and absent class members.

## FACTUAL BACKGROUND

Thirty-one States, the District of Columbia, and the Commonwealth of Puerto Rico (the "Plaintiff States") are pursuing this parens patriae action under Sections 4c and 16 of the Clayton Act and various state antitrust laws, on behalf of millions of consumers in their respective jurisdictions who purchased e-books between April 2010 and May 2012 from five of the largest trade-book publishers in the United States (the "Publisher Defendants").  The Plaintiff States contend that Apple Inc.—in connection with its entry into the Amazon-dominated e-book market in January 2010, when Apple concluded contracts that allowed it to include the iBookstore in its iPad launch—joined and participated in a conspiracy with the Publisher Defendants to fix prices for e-books, in violation of Section 1 of the Sherman Act and various state antitrust laws.  The allegations focus particularly on the Publisher Defendants' decisions to switch from a wholesale pricing model to an agency pricing model in late 2009 and early 2010.

This Court held a bench trial to determine whether Defendants conspired in restraint of trade and, if so, to award appropriate injunctive relief, with a trial on damages to follow if needed.  The Court found that Apple joined and participated in a conspiracy among the Publisher Defendants and awarded injunctive relief.  (Doc. #237 in 12-cv-03394 (DLC).)  Apple has noticed an appeal to the Second Circuit.  In the meantime, the Plaintiff States' damages action remains to be tried in this Court, with trial scheduled for May 2014.

In a parallel putative class action, private plaintiffs have asserted the same allegations on behalf of e-book consumers in the remaining States.  This Court ordered the plaintiffs in that case to file a motion for class certification under Rule 23, which they did on October 11, 2013.  In a separate filing today, Apple opposes that motion.

## SUMMARY OF ARGUMENT

This Court should dismiss the Plaintiff States' damages action for lack of jurisdiction.  The Plaintiff States lack Article III standing to bring their parens patriae damages claims because they are seeking only damages allegedly suffered by others—namely, individual consumers in their respective States.  In order to have Article III standing, a plaintiff must *itself* "have suffered a concrete and particularized injury".  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659 (2013).  But the Plaintiff States do not allege that *they* have suffered *any* injury whatsoever.  The Plaintiff States claim to satisfy the Article III injury-in-fact requirement because Section 4c of the Clayton Act, 15 U.S.C. § 15c(a)(1), purports to authorize them as "parens patriae" to bring individual damage actions.  But, regardless of the words invoked by Congress, to have Article III standing to sue as parens patriae, a State "must articulate an interest apart from the interests of particular private parties," and "the Court must make a finding that the individuals [upon whose behalf the State is suing] could not obtain complete relief through a private suit."  *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 336 (2d Cir. 2009) (alteration in original, citations and internal quotation marks omitted), *rev'd on other grounds* 131 S. Ct. 2527 (2011).  The Plaintiff States' damages action under Section 4c fails that test—the law itself creates no rights on the part of the States that were allegedly injured, nor have the States articulated any interest apart from the interests of the allegedly injured private consumers who are capable of obtaining relief on their own, just as consumers from the remaining States are attempting to do in the parallel class

action.  Merely allowing an uninjured party to sue on behalf of another does not create standing.  *See Hollingsworth*, 133 S. Ct. at 2665-67.  Accordingly, the States lack Article III standing.

If the Court disagrees and this action proceeds, then the Court should require the Plaintiff States to seek class certification in order to represent the interests of the consumers in their respective jurisdictions.  The Plaintiff States believe that Section 4c of the Clayton Act exempts them from Rule 23's class certification requirements.  *See* 15 U.S.C. § 15c(a)(1).  Thus, they have not filed a class certification motion.  But their so-called parens patriae action is simply a consumer class action by another name, and nothing in the Clayton Act expressly obviates the need for the Plaintiff States to meet Rule 23's requirements before proceeding in a representative capacity on behalf of a group of allegedly injured parties.  Instead, "Rule 23 provides a one-size-fits-all formula for deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010), and its requirements are "grounded in due process," *Taylor v. Sturgell*, 553 U.S. 880, 901 (2008).  Thus, the Plaintiff States' damages action cannot proceed unless and until they meet the same Rule 23 requirements that the plaintiffs are required to satisfy in the related class action—something the States have not even attempted to do.

## ARGUMENT

## I.   THIS CASE SHOULD BE DISMISSED BECAUSE THE PLAINTIFF STATES LACK ARTICLE III STANDING.

"For there to be . . . a case or controversy, it is not enough that the party invoking the power of the court have a keen interest in the issue.  That party must also have 'standing.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659 (2013); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.").  A plaintiff has standing only if he has "suffered 'injury in fact'—an invasion of a legally protected interest which is (a) concrete

and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("A federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.'" (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973))).[1]

In this case, the plaintiffs are various States and other U.S. jurisdictions.  Thus, in order for this Court to have jurisdiction over their damages claims, the States must demonstrate that *they* have suffered an injury in fact.  *See Lujan*, 504 U.S. at 563 ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured." (quotation marks and citation omitted)).  Parens patriae actions typically satisfy this Article III requirement because, in order to bring a parens patriae action, a State must assert an injury to its *own* quasi-sovereign interests.  *See Connecticut v. Am. Elec. Power Co.*, 582 F.3d 335 (2d Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 2527 (2011) (describing the "test for parens patriae standing," which "ensure[s] that a state . . . properly asserts a case or controversy sufficient for Article III standing purposes"); *see also id.* at 338 ("injury to a state as a quasi-sovereign is a sufficiently concrete injury to be cognizable under Article III"); *Connecticut v. Physician Health Servs. of Conn., Inc.*, 287 F.3d 110, 120 (2d Cir.

---

[1]     Because of the jurisdictional nature of Article III's requirements, *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam), this Court has a "'special obligation to satisfy itself . . . of its own jurisdiction'" at all times throughout the litigation, *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198-99 (2d Cir. 2005) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998)).  "Defect[s] in subject matter jurisdiction" under Article III "cannot be waived," *Fox v. Bd. of Trustees of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994), irrespective of when a party first raises them.  *See also FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 230-31 (1990); *Thomas v. City of N.Y.*, 143 F.3d 31, 34 (2d Cir. 1998).  Thus, "[t]he objection that a federal court lacks subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

2002) (recognizing distinction between "*parens patriae* standing under Article III" and "statutory standing").  Where, as here, however, a State does *not* assert any injury to its quasi-sovereign interests, then the suit is not properly described as a parens patriae action.  *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600-01 (1982) ("[I]f the State is only a nominal party without a real interest of its own—then it will not have standing under the parens patriae doctrine.  Rather, to have such standing the State must assert an injury to . . . a 'quasi-sovereign' interest" (internal citations omitted)).  And where, as here, a State asserts no *other* injury to its own interests, it lacks Article III standing.

### A.    The Plaintiff States Purport To Bring This Damages Action Only In Their Quasi-Sovereign Capacity.

The Second Circuit has explained that States may bring suit in federal court in three capacities: "(1) proprietary suits in which the State sues much like a private party suffering a direct, tangible injury; (2) sovereignty suits requesting adjudication of boundary disputes or water rights; or (3) parens patriae suits in which States litigate to protect 'quasi-sovereign' interests."  *Connecticut v. Cahill*, 217 F.3d 93, 97 (2d Cir. 2000).

In this case, the Plaintiff States do not allege any injury in their proprietary capacity—they do not claim that *they* overpaid for e-books.  And there is no sovereign interest at stake in this case (no border or water dispute with other States).  Rather, the States purport to sue *only* in their parens patriae capacity to redress injuries to their quasi-sovereign interests.  *See* SAC ¶ 11, Doc. #95 in 12-cv-03394 (DLC) ("The Attorneys General of the Plaintiff States . . . bring [these] actions . . . as parens patriae on behalf of consumers[.]").

### B.    The Injury That Plaintiff States Seek To Redress Is Not An Injury To Their Quasi-Sovereign Interests.

Although the Plaintiff States purport to sue in their parens patriae capacity, the injury that they assert is *not* an injury to their quasi-sovereign interests.  Instead, they seek *only*

retrospective damages for antitrust injuries allegedly suffered by their citizens.  *See* SAC, Prayer

for Relief, ¶ 4 (demanding "treble damages for injury *to natural persons* under Section 4c of the

Clayton Act") (emphasis added).[2]  Thus, they have failed to satisfy the injury-in-fact requirement

of Article III standing.

More than 100 years ago, the Supreme Court explained that the "prerogative of *parens*

*patriae* is inherent in the supreme power of every state."  *Late Corp. of the Church of Jesus*

*Christ of Latter-Day Saints v. United States*, 136 U.S. 1, 57 (1890).  "The concept of parens

patriae is derived from the English constitutional system."  *Hawaii,* 405 U.S. at 257.

"Traditionally, the term was used to refer to the King's power as guardian of persons under legal

disabilities to act for themselves," a category which included "infants, idiots, and lunatics."  *Id.*

(citation omitted).  Following American independence, "royal prerogative and the 'parens

patriae' function of the King passed to the States."  *Id.* (citations omitted).

---

[2]    The Plaintiff States arguably had standing to pursue injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, because States have a quasi-sovereign interest in protecting their citizens from ongoing economic harm.  *See Georgia v. Pa. R.R.*, 324 U.S. 439 (1945). Nevertheless, "[a] plaintiff must demonstrate standing for *each claim* he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (emphasis added); s*ee also Allen v. Wright*, 468 U.S. 737, 752 (1984) ("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the *particular claims* asserted." (emphasis added)).  And even with respect to a particular claim, "a plaintiff must demonstrate standing separately for each form of relief sought."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  Thus, regardless of whether they had standing to bring their Section 16 claim for injunctive relief, the Plaintiff States must show that they have standing to bring their *damages claim* under Section 4c of the Clayton Act, 15 U.S.C. § 15c.  In any event, the Plaintiff States' claims for injunctive and declaratory relief are no longer at issue at the trial court level because the Court already declared that Apple participated in an antitrust conspiracy and entered a permanent injunction prohibiting Apple from continuing to engage in the challenged conduct. *See* Docs. #237, #286 in 12-cv-03394 (DLC).  Through the injunction and consent decrees entered by the Publisher Defendants, the States have already obtained the "relief necessary to protect the public from further anticompetitive conduct."  *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 170 (2004); *see also Hawaii v. Standard Oil Co. of Ca.*, 405 U.S. 251, 261 (1972) ("[T]he fact is that one injunction is as effective as 100, and, concomitantly, that 100 injunctions are no more effective than one.").

The Supreme Court has held that the States' inherent parens patriae authority includes "the right of a state to sue as parens patriae to prevent or repair harm to its 'quasi[-]sovereign' interests." *Id.* at 258. Thus, to invoke parens patriae standing, a State "must assert an injury to what has been characterized as a 'quasi-sovereign' interest." *Snapp*, 458 U.S. at 601; *Pennsylvania ex rel. Schapp v. Kleppe*, 533 F.2d 668, 673 (D.C. Cir. 1976) ("[S]tates suing parens patriae are limited to causes in which the state itself can be said to have a quasi-sovereign interest.").

Most commonly, a State's quasi-sovereign interests are implicated when the State seeks to protect its citizens from ongoing harms, like public nuisances that threaten their citizens' well-being. *See Missouri v. Illinois*, 180 U.S. 208, 241 (1901) ("It must surely be conceded that, if the health and comfort of the inhabitants of a State are threatened, the State is the proper party to represent and defend them" (in a case involving sewage discharge)); *see also North Dakota v. Minnesota*, 263 U.S. 365 (1923) (seeking injunction to prevent flooding); *Wyoming v. Colorado*, 259 U.S. 419 (1922) (diversion of water), *decree modified by* 353 U.S. 953; *New York v. New Jersey*, 256 U.S. 296 (1921) (water pollution); *Kansas v. Colorado*, 206 U.S. 46 (1907) (diversion of water); *Georgia v. Tenn. Copper Co.*, 206 U.S. 230, 237-39 (1907) (noxious gases); *Kansas v. Colorado*, 185 U.S. 125 (1902) (diversion of water). This is because "the State has [a quasi-sovereign] interest independent of and behind the titles of its citizens, in all the earth and air within its domain. It has the last word as to whether its mountains shall be stripped of their forests and its inhabitants shall breathe pure air." *Georgia*, 206 U.S. at 237 (Holmes, J.); *see also Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007) (describing quasi-sovereign interests as "'public or governmental interests that concern the state as a whole'") (quoting Richard H. Fallon, Jr. et al., Hart & Wechsler's The Federal Courts and the Federal System 289 (5th ed.

2003)).

In addition, the Supreme Court has held that States have a quasi-sovereign interest in protecting their citizens from certain types of ongoing economic harms. In *Georgia v. Pennsylvania Railroad*, 324 U.S. 439, for example, Georgia sought to enjoin a rate-fixing conspiracy that allegedly discriminated against Georgia consumers. The Court held that Georgia could sue as parens patriae for injunctive relief on the theory that the alleged conspiracy "limits the opportunities of her people, shackles her industries, retards her development, and relegates her to an inferior economic position among her sister States." *Id.* at 451. But even in that context, quasi-sovereign interests are limited to "matters of grave public concern in which [the State] has an interest *apart from that of particular individuals* who may be affected." *Id.* (emphasis added). As the Court explained more recently:

> The concept [of parens patriae standing] does not involve the States stepping in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves. In fact, if nothing more than this is involved—*i.e.*, **if the State is only a nominal party without a real interest of its own—then it will not have standing under the** parens patriae *doctrine*.

*Snapp*, 458 U.S. at 600 (emphasis added); *see also*, *e.g.*, *Kansas*, 206 U.S. at 99 (in a parens patriae action, the State "is not acting directly and solely for the benefit of any individual citizen"); *Louisiana v. Texas*, 176 U.S. 1, 19 (1900) (State has parens patriae standing only when the "gravamen [of the action] is not a special and peculiar injury such as would sustain an action by a private person").

The Second Circuit recently summarized the test for parens patriae standing in *Connecticut v. American Electric Power Co., Inc.*, 582 F.3d 309. According to the Second Circuit, in order to invoke parens patriae standing, "[a] state: (1) must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party; (2) must express a quasi-sovereign interest; and (3) must have alleged injury to a sufficiently

substantial segment of its population."  *Id.* at 335-36 (citations and internal quotation marks omitted).  Additionally, the court must "make a finding that individuals [upon whose behalf the state is suing] could not obtain complete relief through a private suit."  *Id.* at 336 (alteration in original, quotations and citation omitted); *see also Physicians Health Servs. of Conn.,* 287 F.3d at 119-20 (reviewing prerequisites for parens patriae standing, which include the absence of "adequate alternative means of civil enforcement by which individual plaintiffs may obtain complete relief" (citation and internal quotation marks omitted)); *W. Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1089 (2d Cir. 1971) ("quasi-sovereign interests" must be "wholly apart from recoverable injuries to individuals residing within the state").  Earlier this year, the Second Circuit reiterated the requirement that, "[t]o assert parens patriae standing, the State (or Commonwealth) must articulate a 'quasi-sovereign interest' distinct 'from the interests of particular private parties.'"  *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 215 (2d Cir. 2013); *see also id.* ("When the state merely asserts the personal claims of its citizens, it is not the real party in interest and cannot claim parens patriae standing." (quoting *In re Baldwin-United Corp.*, 770 F.2d 328, 341 (2d Cir. 1985))  (internal quotation marks and citations omitted)).

The Plaintiff States' damages claim fails that test.  Although the States vaguely claim that their "general economies . . . have sustained injury" as a result of the alleged conspiracy, SAC ¶ 118, there is no indication as to what those injuries might be *apart from the overcharges allegedly paid by individual citizens*.  And, in any event, a general allegation that the States' economies have "sustained injury" is hardly the type of "concrete and particularized" injury necessary for Article III standing.  The only "concrete and particularized" injury alleged in the complaint is an "increase in retail e-book prices across both the Defendants' frontlist and backlist titles."  *Id.* at ¶ 116.  The complaint makes clear that individual "consumers"—not the States—

are the victims who allegedly "paid . . . [these] overcharges." *Id.* at ¶ 5.  Indeed, the Prayer for

Relief demands "treble damages for *injury to natural persons* under Section 4c of the Clayton

Act," not for any injury to the States themselves.  *Id.*, Prayer for Relief, ¶ 4 (emphasis added).

Further, the Plaintiff States cannot dispute that there are "alternative means of civil

enforcement by which individual plaintiffs may obtain complete relief."  *Am. Elec. Power Co.,

Inc.*, 582 F.3d at 336 (quoting *Physicians Health Servs. of Conn.*, 287 F.3d at 119-20) (internal

quotation marks omitted).  The relevant question for purposes of this inquiry is whether the

individual plaintiffs would have standing to sue on their own behalf.  *See New York ex rel.

Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 40 (2d Cir. 1982) (allowing parens patriae action to

proceed on behalf of mentally handicapped citizens because it was "highly unlikely" that the

citizens "would be accorded standing in federal court" if they had filed their own civil rights

suit), *vacated in part on other grounds by* 718 F.2d 22 (2d Cir. 1983) (en banc).  There is no

question that any injured consumers the Plaintiff States seek to represent in this case would have

standing to pursue their own private antitrust actions—the existence of a parallel class action

seeking recovery for identical injuries to consumers in *other* States proves as much.[3]

In short, the Plaintiff States' damages claim seeks *only* a retrospective remedy for alleged

injuries to individual consumers, not for injury to the quasi-sovereign interests of the States

themselves.  Because the States have not alleged a cognizable injury to their quasi-sovereign

interests, they cannot proceed on the basis of parens patriae standing—the only basis on which

they purport to have suffered an injury-in-fact for Article III standing purposes.

---

[3]   Even if this Court denies class certification in that action, injured consumers would still
have standing to pursue their damages claims either individually or, potentially (if they satisfy
the requirements of Rule 23), in smaller classes.

## C.   Section 4c Of The Clayton Act Does Not Confer Article III Standing On The Plaintiff States For The Type Of Damages Action They Assert.

The Plaintiff States nevertheless contend that Section 4c of the Clayton Act grants them authority to bring damages actions as parens patriae on behalf of their citizens.  SAC ¶ 11 ("The Attorneys General of the Plaintiff States . . . are granted authority under federal antitrust law to bring actions . . . as parens patriae on behalf of consumers.").   But, even if Congress could authorize States to seek damages when the States assert a quasi-sovereign interest in recovering for injuries to their own economies, Congress may not authorize the type of damages action asserted here, whereby States seek to recover damages *only* for injuries suffered by their citizens.  Congress may not alter the standing requirements of Article III; therefore, it is powerless to declare something a "parens patriae" action simply to alleviate the States' burden to prove injury-in-fact, allowing them to act as plaintiffs while avoiding the "irreducible minimum" Article III standing requirements.  *Valley Forge Christian College v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).  Because the type of damages action that the Plaintiff States seek to assert in this case falls outside the bounds of the historical parens patriae doctrine, the Clayton Act cannot save this action from dismissal for lack of Article III standing.[4]

---

[4]   In his dissenting opinion in *Massachusetts v. EPA*, the Chief Justice described parens patriae standing as a "prudential" doctrine but notes that it cannot "somehow substitute for, or alter the content of, the 'irreducible constitutional minimum' requirements of injury in fact, causation, and redressability under Article III."  549 U.S. at 540 n.1 (citing *Lujan*, 504 U.S. at 560).  As the Chief Justice explained, "Far from being a substitute for Article III injury, *parens patriae* actions raise an additional hurdle for a state litigant; the articulation of a quasi-sovereign interest *apart* from the interests of particular private parties."  *Id.* at 538 (internal quotation marks omitted); *see also Maryland People's Counsel v. Fed. Energy Reg. Comm'n*, 760 F.2d 318, 321 (D.C. Cir. 1985) (Scalia, J.) ("[A] state, in its [traditional] *parens patriae* capacity, does qualify as personally suffering some actual or threatened injury," which is a "portion of what the Supreme Court has identified as the irreducible minimum of the Article III requirements." (internal quotation marks, citations, and alterations omitted)); *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 972 (9th Cir. 2009) (dismissing State's action "for lack of subject matter jurisdiction"

1.      **The So-Called "Parens Patriae" Action Described In Section 4c Of The Clayton Act Is Not Actually A Parens Patriae Action.**

The Plaintiff States assert their damages claims under the Hart-Scott-Rodino Antitrust Improvement Act of 1976 (the "Act"), Pub. L. 94-435, codified as Section 4c of the Clayton Act, which authorizes a state attorney general to "bring a civil action in the name of such state, as parens patriae on behalf of natural persons residing in such State . . . to secure monetary relief as provided in this section for injury sustained by such natural persons to their property." 15 U.S.C. § 15c(a)(1).  That provision was enacted in response to two *different* issues that had arisen in the federal courts' antitrust jurisprudence prior to 1976.

*First*, the Supreme Court held in 1972 that Section 4 of the Clayton Act, as the statutory language then read, did not authorize a State to recover damages as parens patriae in antitrust actions.  *Hawaii*, 405 U.S. at 252.  In that case, Hawaii had asserted a "parens patriae claim" for damages, invoking its "duty to protect the general welfare of the State and its citizens."  *Id.* at 255.  The claim alleged a traditional type of parens patriae injury to Hawaii's *own* quasi-sovereign interests:  According to Hawaii, a "conspiracy in restraint of trade . . . ha[d] injured and adversely affected the *economy and prosperity of the State of Hawaii*" by "wrongfully extract[ing]" revenues from its citizens; increasing taxes; restricting "opportunit[ies] in manufacturing, shipping, and commerce"; preventing "the full and complete utilization of the natural wealth of the State"; "preclud[ing] goods made [in Hawaii] from equal competitive access with those of other States to the national market"; frustrating "measures taken by the State to promote the general progress and welfare of its people"; and holding "the Hawaii economy . . . in a state of arrested development."  *Id.* at 255-56.  Thus, the Court explained, "[t]he question in the case is *not* whether Hawaii may maintain its lawsuit on behalf of its citizens, but rather

---

because the State's allegations did "not rise to the level of . . . injury against the state itself, that is independent from alleged harm to private parties").

whether the injury for which *it* seeks to recover is compensable under § 4 of the Clayton Act"—a purely statutory question.  *Id*. at 259 (emphasis added).  The Court decided that the statutory language of the Clayton Act did not support Hawaii's claim because "the injury asserted by Hawaii . . . is [not] an injury to its 'business or property'"—the only type of injury for which the Clayton Act then authorized damages.  *Id*. at 261.

*Second*, the Ninth Circuit in 1973 addressed "the question whether a state, as parens patriae, may sue and recover treble damages [under the Clayton Act] *on behalf of its citizen-consumers* for the injuries suffered *by them*."  *California v. Frito-Lay, Inc.*, 474 F.2d 774, 775 (9th Cir. 1973) (emphasis added).  The court explained that "[t]his is quite a different question from that presented in *Hawaii*," in which "Hawaii sought treble-damages recovery for injury to a quasi-sovereign interest of *the state itself*—in essence, an injury to the general economy of the state."  *Id.* (emphasis added); *see also W. Virginia*, 440 F.2d at 1089 ("quasi-sovereign interests have included . . . the general economy of the state").  The court explained that the type of injury being asserted by California on behalf of its citizens was not a parens patriae action at all: "Judicial recognition of such authority would be a substantial departure from the scope of *parens patriae* authority as it has been recognized in this country to date. . . .  *Parens patriae* has received no judicial recognition in this country as a basis for recovery of money damages for injuries suffered by individuals."  *Frito-Lay*, 474 F.2d at 775.  Thus, the court concluded that "the state is seeking to act here not as *parens patriae* . . .  but as guardian *ad litem*," and that the action was more properly described as "a Class Action Supplement."  *Id.* at 776 & n.9 (internal quotation marks omitted).  The court held that this novel type of action was prohibited because "[t]he class action safeguards of Fed. R. Civ. P. 23 are absent."  *Id.* at 776 n.9; *see also id.* at 777 ("[I]t is not the type of state action taken to afford the sort of benefit that the common-law

14

concept of *parens patriae* contemplates," but rather a pseudo-class action "free from the [Rule 23] safeguards which legislation and rule have thrown up," and therefore "constitute[s] state action of a sort that does not fit the common-law concept.").

When Congress passed the Hart-Scott-Rodino Antitrust Improvement Act of 1976, it purported to be authorizing "parens patriae" damages actions by the States (seemingly the type of action being asserted in *Hawaii*).  But, although it used the words "parens patriae," it *actually* authorized *only* the type of action being asserted in *Frito-Lay*—namely, "a civil action in the name of such State . . . *on behalf of natural persons* residing in such State . . . to secure monetary relief . . . for injury sustained *by such natural persons* to their property."  15 U.S.C. § 15c(a)(1) (emphasis added).  In effect, Congress purported to authorize States to bring pseudo-class actions to represent their citizens without satisfying any of the requirements of Rule 23.  *See Hawaii*, 405 U.S. at 266 ("Parens patriae actions may, in theory, be related to class actions, but the latter are definitely preferable in the antitrust area."); *Frito-Lay*, 474 F.2d at 777.  And that is precisely the type of action that the Plaintiff States are asserting here.  The Plaintiff States do *not* assert an injury to their *own* quasi-sovereign interests as Hawaii did; rather, they seek only to represent their citizens and recover damages for injuries suffered by their citizens, exactly as in the *Frito-Lay* case.  Thus, although their damages action is called a "parens patriae" action under Section 4c of the Clayton Act, in fact it is not.[5]

_____

[5]    If the Plaintiff States had asserted a quasi-sovereign injury to their own economies (with the level of specificity and detail of the claim asserted in *Hawaii*), they would likely have Article III standing under their inherent parens patriae authority.  The question would remain, however, whether Sections 4 or 4c of the Clayton Act permits that type of damages action—a question that would appear still to be governed by *Hawaii*, 405 U.S. at 260-64.  Further, even if the Clayton Act now permits that type of action, the Plaintiff States would be required to prove the amount of damages allegedly suffered by their economies, *not* the amount of damages allegedly suffered by certain citizens within their respective jurisdictions.

15

### 2.      Congress May Not Eliminate The Article III Standing Requirements.

Because the Plaintiff States are not asserting any injury to their own quasi-sovereign interests and are not seeking to recover damages within their inherent parens patriae authority, the question remains whether Section 4c of the Clayton Act nevertheless provides them with Article III standing *in the absence* of their own injury-in-fact.   The Supreme Court's recent standing jurisprudence makes it clear that the Clayton Act can do no such thing.

There is no question that Section 4c purports to authorize the very type of pseudo-class action being asserted by the Plaintiff States in this case, in which the States seek retrospective damages for antitrust injuries allegedly suffered by their citizens.   But even where Congress grants "a right of action to persons who otherwise would be barred[,] . . . the plaintiff still must allege a distinct and palpable injury *to himself*" in order to have Article III standing.   *Warth*, 422 U.S. at 501 (emphasis added).   Put differently, Congress may not bypass the requirements of Article III "simply by issuing to . . . parties who otherwise lack standing a ticket to the federal courthouse." *Hollingsworth*, 133 S. Ct. at 2667; *see also id.* ("The Article III requirement that a party invoking the jurisdiction of a federal court seek relief for personal, particularized injury serves vital interests going to the role of the Judiciary in our system of separated powers.").

The Supreme Court's recent decision in *Hollingsworth* is instructive.   There, the individual petitioners argued that "even if *they* ha[d] no cognizable interest in appealing the District Court's judgment, the State of California d[id], and they [could] assert that interest on the State's behalf." *Hollingsworth*, 133 S. Ct. at 2663.   The Court rejected this theory of standing, explaining that "[i]t is . . . a 'fundamental restriction on our authority' that '[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Id.* at 2663 (second alteration in original) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)).   Furthermore, even though

16

California law authorized the individuals to assert the State's interest, the Court rejected the notion that "mere authorization to represent a third party's interests is sufficient to confer Article III standing on private parties with no injury of their own." *Id.* at 2665.[6]

Congress may, of course, create new rights, "which in turn will confer standing to vindicate an injury caused to the claimant." *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. at 773. But that is not what happened here, for Section 4c "did not establish any new substantive liability." *Kansas v. UtiliCorp United, Inc.,* 497 U.S. 199, 219 (1990).[7] Rather, the Act "simply created a new *procedural device*" for the vindication of the existing rights of consumers. *Id.* (emphasis added); *see also* S. Rep. No. 94-803, at 6 (1976) (explaining that the Act was designed to create "an effective *mechanism* to permit consumers to recover damages for conduct which is prohibited by the Sherman Act" (emphasis added)); 122 Cong. Rec. 30,874 (1976) (statements of Rep. Rodino) ("Let me emphasize one thing. This bill creates no new antitrust liability. It merely provides for an effective procedural mechanism for enforcing our existing antitrust laws."); 122 Cong. Rec. 30,883 (1976) (statements of Rep. Flowers) ("We have always insisted that the bill is procedural and not substantive, and is simply designed to provide a

---

6   The standing requirements under the qui tam doctrine are consistent. In *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, the Court held that the United States could confer standing on a qui tam plaintiff, but only because the United States had assigned its own claim to the qui tam relator through the False Claims Act. 529 U.S. 765, 773-74 (2000); *see also Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,* 554 U.S. 269, 275 (2008) ("Assignees of a claim . . . have long been permitted to bring suit."). Congress may have the authority to assign the United States' own claims to a third party, but it does not have the authority to assign claims belonging to an individual consumer. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) (considering it "settled" that "a cause of action is a species of property protected by the Due Process Clause"); *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988) ("[A] cause of action . . . is property protected by the Fourteenth Amendment.").

7   The Court in *Kansas v. UtiliCorp* recognized that the statutory language of Section 4c authorizes "State attorneys general [to] bring actions on behalf of consumers who have [suffered an antitrust] injury," 497 U.S. at 219, but it was not presented with (and did not address) any question of Article III standing.

17

practical mechanism by which a State attorney general can step into the shoes of the consumers in the State to enforce their antitrust claims.").[8]

The cause of action provided in Section 4c therefore does not alleviate the Plaintiff States' need to prove injury-in-fact *to themselves* in order to have Article III standing—something the Plaintiff States do not allege here.[9]

\*     \*     \*

Because the Plaintiff States have not asserted any injury-in-fact to their own quasi-sovereign interests—pursuing instead a treble damages claim to recover retrospective damages for injuries suffered only by their citizens—their action is not a parens patriae action and they lack Article III standing.  And because their claims for injunctive and declaratory relief are no longer at issue, this Court lacks subject matter jurisdiction over the Plaintiff States' federal claims.  *See Purdue Pharma*, 704 F.3d at 220 n.11 ("[I]f we were to determine that Plaintiffs lacked parens patriae standing altogether . . . that determination would leave Plaintiffs . . . with no justiciable action at all." (internal citation omitted)).[10]  Thus, the Court should dismiss this action in its entirety.

---

[8]   Congress may also authorize States to bring actions against the federal Government that meet the "traditional criteria" of parens patriae actions, even though such actions would normally be precluded by "separation-of-powers concerns."  *Maryland People's Counsel*, 760 F.2d at 322. But that is also not what happened here.

[9]   Section 4c of the Clayton Act provides that the Court may award the States monetary relief or allow them to keep part of the money awarded for consumers, if they prevail. 15 U.S.C. § 15c(a)(2).  But the States' interest in recovering this prize is "unrelated to injury in fact" and therefore "is insufficient to give [them] standing."  *Vermont Agency*, 529 U.S. at 772.  "[A]n interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes."  *Id.* at 773.

[10]   Further, in the absence of any justiciable federal claims, there is no reason for this Court to exercise supplemental jurisdiction over the state-law claims.  *See* 28 U.S.C. § 1367(c)(3) (authorizing district courts to "decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction").

## II.   IF THIS ACTION PROCEEDS, THE COURT SHOULD REQUIRE THE PLAINTIFF STATES TO SEEK CLASS CERTIFICATION.

Even if the Court had subject matter jurisdiction over the Plaintiff States' damages action (which it does not), the action could not proceed unless and until the Plaintiff States establish that this case meets the requirements of Rule 23.  This so-called "parens patriae" action is merely a consumer class action by another name, in which the Plaintiff States seek damages as "representative parties" on behalf of e-book consumers in their respective jurisdictions.  Fed. R. Civ. P. 23(a).  Indeed, this action is nearly identical to the parallel consumer class action currently pending before this Court; thus, the prerequisites for representing the interests of absent consumers must be the same—commonality, typicality, numerosity, adequacy of representation, predominance, and superiority.  Moreover, failure to satisfy Rule 23 would give rise to insurmountable due process problems.  The Court should therefore compel the Plaintiff States to obtain class certification before permitting the claims to proceed.[11]

### A.   The Plaintiff States' So-Called "Parens Patriae" Action Is A Class Action That Is Governed By Rule 23.

"Rule 23 provides a one-size-fits-all formula for deciding the class-action question." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010).  Thus, anytime a plaintiff files a class action, Rule 23, "like the rest of the Federal Rules of Civil Procedure, . . . *automatically* applies." *Id.* at 400; *see also* Fed. R. Civ. P. 1 ("These rules govern the procedure in all actions and proceedings in the United States district courts, except as provided by Rule 81.").  There is no such thing as a *non*-Rule 23 class action in federal court.

---

[11]   For the reasons set forth in Apple's opposition to the putative class action plaintiffs' class certification motion, filed today, Apple does not believe that the Plaintiff States can meet the requirements of Rule 23.  Indeed, the Plaintiff States face even more hurdles than the putative class action plaintiffs because the States are not members of the class they seek to represent— they do not purport to have suffered any antitrust injury or damages at all.  Apple will present its arguments opposing class certification after the States file their class certification motion.

19

There can be no dispute that the so-called "parens patriae" action filed by the Plaintiff States is a functional class action—that is, an "action[ ] for damages designed to secure judgments binding on all class members save those who affirmatively elected to be excluded." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997); s*ee also* Black's Law Dictionary 284 (9th ed.) (defining "class action" as "[a] lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group").  That is precisely what the Plaintiff States seek to do here:  They seek to represent consumers in their respective jurisdictions who allegedly paid overcharges for e-books, *see* SAC ¶ 11, 116-18, and seek damages for any "injury to [those] natural persons," *id.*, Prayer for Relief, ¶ 4.  And it is precisely what Section 4c of the Clayton Act purports to authorize.  *See* 15 U.S.C. § 15c(a)(1) (authorizing states to "bring a civil action *on behalf of natural persons* . . . to secure monetary relief . . . for injury sustained *by natural persons* to their property" (emphasis added)); *id.* § 15c(b)(3) (a final judgment would be "res judicata as to any claim under section 15 of this title by any person on behalf of whom such action was brought"); *id.* § 15e (in the event that the court awards monetary relief, the court must "afford each person a reasonable opportunity to secure his appropriate portion of the net monetary relief").

The legislative history of the Hart-Scott-Rodino Antitrust Improvement Act of 1976 further confirms that the purpose of the parens patriae provision is to allow the Plaintiff States to represent the interests of their citizens and that the injured consumers are the real parties in interest.[12]  *See* 122 Cong. Rec. 30883 (statements of Rep. Flowers) ("We have always insisted that the bill is procedural and not substantive, and is simply designed to provide a practical

---

[12]  The real party in interest is the one who "by the substantive law, possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery."  *Illinois v. Life of Mid-Am. Ins. Co.*, 805 F.2d 763, 764 (7th Cir. 1986).

mechanism by which a State attorney general can *step into the shoes of the consumers* in the State to enforce their antitrust claims." (emphasis added)); *id.* (the language of the Act "makes crystal clear that the attorney general is simply being empowered to sue *on behalf of consumers* when and if he can demonstrate, in accordance with the standards applied under section 4, that *consumers have been injured* in their property" (emphasis added)).  In fact, the legislative history acknowledges that a Section 4c parens patriae action is nothing more than a consumer class action by another name, substituting the State as the named plaintiff.  *See* S. Rep. No. 94-803, p. 39 (the purpose of the Act is to create "an effective mechanism to permit *consumers* to recover damages for conduct which is prohibited by the Sherman Act, by giving State attorneys general a cause of action against antitrust violators" (emphasis added)).[13]

Thus, the requirements of Rule 23 apply.  If the Plaintiff States wish to serve as "representative parties," Fed. R. Civ. P. 23(a), on "behalf of natural persons," 15 U.S.C. § 15c(a)(1), then they must comply with the federal rule that governs such civil actions—namely, Rule 23.  Nothing in the text of the Clayton Act says otherwise.  Indeed, this Court and others "generally look to the standards used in approving class action settlements under Rule 23(e) of the Federal Rules of Civil Procedure" when deciding whether to approve "the settlement of a

---

[13]  The Second Circuit has explicitly recognized that Congress enacted the parens patriae provision "to *circumvent* the . . . requirements of Rule 23."  *New York ex rel. Vacco v. Reebok Int'l Ltd.*, 96 F.3d 44, 46 (2d Cir. 1996) (emphasis added); *see also Texas v. Scott & Fetzer Co.*, 709 F.2d 1024, 1025 (5th Cir. 1983) ("[T]he Act was aimed primarily at enlarging the potential for consumer recovery . . . by effectively bypassing . . . Rule 23"); S. Rep. No. 94-803, at 42 (1976) ("A direct cause of action is granted the States to avoid the inequities and inconsistencies of restrictive judicial interpretations [of Rule 23]."); *see also* 122 Cong. Rec. 30,879 (1976) (statements of Rep. Rodino) (parens patriae action "is a superior alternative to a rule 23(b)(3) class action" because it "does not incorporate the various requirements of rule 23(b)(3)."); 122 Cong. Rec. 29,342 (1976) (statements of Sen. Hart) (the Act was a way to get around "restrictive judicial interpretations of the notice and manageability provisions of Rule 23 of the FRCP, and the rights of consumers to recover damages under section 4 of the Clayton Act.").  But creating a functional class action that is immune from Rule 23 would violate due process, *see infra*, and thus exceeds Congress's powers.

parens patriae antitrust suit." *New York ex rel. Vacco v. Reebok Int'l Ltd.*, 903 F. Supp. 532, 535 (S.D.N.Y. 1995). Rule 23 applies equally outside the settlement context. *See Amchem*, 521 U.S. at 620. Accordingly, this Court should order the Plaintiff States to file a motion seeking class certification if they seek to vindicate the interests of injured consumers.

### B.   Allowing This Representative Action To Proceed Without Satisfying Rule 23 Would Violate Due Process.

Allowing the Plaintiff States' action to proceed *without* satisfying the requirements of Rule 23 would violate the due process rights of Apple and the absent consumers on whose behalf the States purport to sue. *See Pfizer, Inc. v. Lord*, 522 F.2d 612, 616 (8th Cir. 1975) (describing "due process implications" of allowing "governments . . . [to] sue on behalf of their citizens' antitrust damage claims as Parens patriae" without bringing "a Rule 23 class action"). As the Supreme Court has explained, the "procedural protections prescribed in . . . Rule 23" are "grounded in due process." *Taylor v. Sturgell*, 553 U.S. 880, 901 (2008).

Thus, neither Congress nor this Court may waive the rule's requirements. Rule 23(a), for example, "constitute[s] a multipart attempt to safeguard . . . due process rights." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 n.27 (3d Cir. 2001):

- "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quotation marks and citation omitted). Allowing a class action to proceed without ensuring commonality would be unconstitutional because it would eliminate "the right of defendants to challenge the allegations of individual plaintiffs," which would "result[ ] in a due process violation." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 232 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008); *see also Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) ("[T]he Due Process Clause prohibits a State from

22

punishing an individual without first providing that individual with an opportunity to present every available defense." (quotation marks and citation omitted)); *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("A defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right[.]").

- Typicality ensures that the res judicata effect of any final judgment will not extend to atypical claims of absent class members that were not put at issue in the litigation. *See In re General Motors Corp. Pick-Up Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 796 (3d Cir. 1995) ("[A] court cannot infer that the rights of the *entire* class were vindicated without having assured that commonality and typicality were satisfied."). This requirement is critical to protecting the due process rights of absent class members in light of "our 'deep-rooted historic tradition that everyone should have his own day in court." *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 798 (1996) (quoting *Martin v. Wilks*, 490 U.S. 755, 762 (1989)).

- Adequacy of representation also protects the due process rights of absent class members, who may only "be bound by a judgment . . . if [they] w[ere] adequately represented by a party who actively participated in the litigation." *Taylor*, 553 U.S. at 884; *see also Hansberry v. Lee*, 311 U.S. 32, 43 (1940) (due process permits a judgment to bind absent parties only where the absentees "are in fact adequately represented by parties who are present."). Representation by parties "whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires." *Id.* at 45; *see also Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 395 (1996) (Ginsburg, J., concurring in part and dissenting in part) ("[T]his Court [has] listed minimal procedural due process requirements a class action money judgment must meet if it is to

bind absentees; those requirements include . . . adequate representation.")

Moreover, so-called parens patriae actions under the Clayton Act pose unique due process concerns that can only be resolved through careful attention to Rule 23's requirements. The statute, for example, provides that a final judgment shall have res judicata effect on the claims of "*any person* on behalf of whom such action was brought," regardless of typicality or adequacy of representation.   15 U.S.C. § 15c(b)(3) (emphasis added).   But barring an injured consumer from pursuing his own Clayton Act claim would violate due process if the State that purported to represent the consumer was an inadequate representative or if the consumer had atypical claims.   *Cf. AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1751 (2011).   And lifting the res judicata effect as to that consumer would unfairly force the defendant to re-litigate an action it ostensibly already litigated.   This dilemma is solved only by ensuring that Rule 23 is satisfied.

Additionally, the Clayton Act does not require the States to have suffered the same injury as the consumers they seek to represent—or any injury at all, for that matter—calling into question the adequacy of the State's representation.   In fact, the Act creates a potential conflict of interest between the States and the injured consumers by granting district courts the discretion to declare unclaimed damages to be part of the States' "general revenues."   15 U.S.C. § 15e(2). Again, this concern requires close examination under Rule 23; if the States do not adequately represent the individual consumers, the case cannot proceed because the judgment cannot be given res judicata effect, notwithstanding Section 15c(b)(3).

Furthermore, the parens patriae provisions of the Clayton Act expressly permit damages to be "assessed in the aggregate by statistical or sampling methods . . . or by such other reasonable system of estimating aggregate damages . . . without the necessity of separately

proving the individual claim of, or amount of damage to, persons on whose behalf the suit was brought." 15 U.S.C. § 15d. But that is precisely the type of "Trial by Formula" that the Supreme Court recently and unanimously "disapproved" in *Dukes*. 131 S. Ct. at 2561; *see also McLaughlin*, 522 F.3d at 231 (extrapolating the "total amount of damages suffered" from an "initial estimate" "offend[s] both the Rules Enabling Act *and the Due Process Clause*" (emphasis added)). As the Second Circuit explained, when statistical sampling "is used to permit the mass aggregation of claims, the right of defendants to challenge the allegations of individual plaintiffs is lost, resulting in a due process violation." *Id.* at 232; *see also Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005, 1018 (2d Cir. 1973) (courts must "reject . . . as an unconstitutional violation of the requirement of due process of law," a procedure whereby "the 'class as a whole' is or can be substituted for the individual members of the class as claimants"), *vacated on other grounds*, 417 U.S. 156 (1974); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 343 (4th Cir. 1998) (the fact that a statistical "shortcut was necessary in order for th[e] suit to proceed as a class action should have been a caution signal to the district court"); 2 Joseph M. McLaughlin, McLaughlin on Class Actions § 8:16, at 8-95 (3d ed. Supp. Dec. 2006) ("Courts have repeatedly rejected the use of fluid recovery as a substitute for individualized proof when the class pursues claims that require proof of actual damages."). Again, this significant due process concern demands application of Rule 23 and the case law interpreting its requirements.

## CONCLUSION

This Court should dismiss the Plaintiff States' damages action for lack of jurisdiction or, at a minimum, require them to seek class certification under Rule 23.

Dated: November 15, 2013

New York, New York

GIBSON, DUNN & CRUTCHER LLP

By: _T Boutrous JR. / MGHz_____

Theodore J. Boutrous, Jr.

Daniel G. Swanson
333 South Grand Avenue
Los Angeles, California  90071
Telephone:  213.229.7000

Cynthia Richman
1050 Connecticut Avenue NW
Washington, D.C. 20036
Telephone: 202.955.8500

O'Melveny & Myers LLP
Howard Heiss
Edward Moss
1625 Eye Street, NW
Washington, DC  20006
Telephone:  202.383.5380

*Attorneys for Defendant Apple Inc.*