UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

This Document Relates to:

| | |
|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | No. 11-md-02293 (DLC)<br>ECF Case<br><br><u>CLASS ACTION</u> |
| THE STATE OF TEXAS, et al.,<br><br>                Plaintiffs,<br><br>    v.<br><br>PENGUIN GROUP (USA) INC., et al.,<br><br>                Defendants | Civil Action<br>No. 12-cv-03394 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF MACMILLAN AND PENGUIN
<u>SETTLEMENTS AND DISTRIBUTION PLAN</u>**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................1

II.  BACKGROUND ........................................................................................................2

    A.   Plaintiffs' Investigations ...............................................................................2

    B.   Litigation to Date ...........................................................................................3

    C.   Settlement Negotiations .................................................................................4

III. THE PROPOSED SETTLEMENTS ..........................................................................6

    A.   Monetary Payments and Distributions...........................................................6

        1.   Consumer Compensation ....................................................................6

        2.   Plaintiff States' Compensation ...........................................................6

    B.   Payment of Class Counsel Attorneys' Fees and Costs ..................................7

    C.   Participation Awards for the Named Plaintiffs...............................................7

    D.   Settlement Notice and Administration Costs..................................................7

    E.   Equitable Relief: Injunction...........................................................................8

    F.   Release of Claims ...........................................................................................8

IV.  THE APPROVED NOTICE WAS ADEQUATE AND SATISFIED DUE
     PROCESS ...................................................................................................................8

V.   THE SETTLEMENTS MEET THE STANDARDS FOR FINAL APPROVAL ............11

    A.   The Settlement Process was Procedurally Fair.............................................11

    B.   The Settlements are Reasonable, Adequate and Substantively Fair ......................12

        1.   The anticipated complexity, duration and expense of additional
            litigation..............................................................................................13

        2.   The reaction of the settlement group. .......................................................13

        3.   The stage of the proceeding and the amount of the discovery
            completed............................................................................................14

|   | 4. | The risks of establishing liability. | 14 |
|---|----|-------------------------------------|----|
|   | 5. | The risks of establishing damages. | 14 |
|   | 6. | The risks of maintaining the class action through trial. | 15 |
|   | 7. | The ability of the defendants to withstand a greater judgment. | 16 |
|   | 8. | The range of reasonableness of the settlement amount in light of the best possible recovery and in light of all attendant risks of litigation. | 16 |

VI. THE CONSUMER DISTRIBUTION PLAN MEETS THE STANDARDS FOR FINAL APPROVAL ............................................................................ 17

    A. Eligible Purchases and a Simplified and Reasonable Distribution Plan ........... 18

    B. Adequate and Reasonable Consumer Compensation Amounts ............................ 19

VII. THE PROPOSED CLASS MEETS ALL THE REQUIREMENTS OF RULE 23 .......... 21

VIII. PAYMENTS TO PLAINTIFF STATES ARE REASONABLE ...................................... 22

IX. THE TWO FILED OBJECTIONS LACK MERIT ........................................................ 24

    A. The Objections Do Not Change the Conclusion that the Settlements are Fair, Reasonable, and Adequate ............................................................... 24

        1. Bob Kohn's Objection that Consumers are Recovering Too Much Should be Rejected ........................................................................ 24

        2. Mr. Batman's Objections Should be Overruled on Both Procedural and Substantive Grounds ..................................................................... 26

    B. In the Event of an Appeal, Plaintiffs Will Request the Court Order Certain Actions and Payments Be Made by any Objector-Appellant ................. 28

X. CONCLUSION ............................................................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Am. Baptist Churches v. Thornburgh*
    760 F. Supp. 796 (N.D. Cal. 1991) ..................................................................30

*Barnes v. FleetBoston Fin. Corp.*
    2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006).......................................29

*Burke v. Guiney*
    700 F.2d 767 (1st Cir. 1983)...........................................................................29

*Cassese v. Williams*
    2012 U.S. App. LEXIS 23834 (2d Cir. Nov. 20, 2012)........................................27

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*
    504 F.3d 229 (2nd Cir. 2007)..........................................................................25

*City of Detroit v. Grinnell Corp.*
    495 F.2d 448 (2d Cir. 1974)............................................................................12

*Cronas v. Willis Group Holdings, Ltd.*
    2011 U.S. Dist. LEXIS 147171 (S.D.N.Y. Dec. 19, 2011) .................................8, 11

*Date v. Sony Elecs., Inc.*
    2013 WL 3945981 (E.D. Mich. July 31, 2013) ..................................................25

*Dewey v. Volkswagen of Am.*
    909 F. Supp. 2d 373 (D.N.J. 2012) ..................................................................25

*Ebbert v. Nassau County*
    2011 U.S. Dist. LEXIS 150080 (E.D.N.Y. Dec. 22, 2011) ...................................11

*Feder v. Elec. Data Sys. Corp.*
    248 Fed. Appx. 579 (5th Cir. 2007)..................................................................25

*Gould v. Alleco, Inc.*
    883 F.2d 281 (4th Cir. 1989) ..........................................................................26

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*
    2013 U.S. Dist. LEXIS 137946 (N.D. Cal. Sept. 19, 2013) ..................................15

*In re AremisSoft Corp. Sec. Litig.*
    210 F.R.D. 109 (D.N.J 2002)............................................................................8

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*
2003 U.S. Dist. LEXIS 25788 (D. Me. Oct. 7, 2003)..............................................29

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*
2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010).......................................16

*In re High-Tech Emps. Antitrust Litig.*
2013 U.S. Dist. LEXIS 153752 (N.D. Cal. Oct. 24, 2013).....................................15

*In re Ikon Office Solutions, Inc.*
194 F.R.D. 166 (E.D. Pa. 2000)...............................................................................19

*In re Marsh ERISA Litig.*
265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................................9

*In re Minolta Camera Prods. Antitrust Litig.*
668 F.Supp. 456 (D. Md.1987).................................................................................23

*In re Motor Fuel Temperature Sales Practices Litig.*
2012 WL 1415508 (D. Kan. Apr. 24, 2012).............................................................25

*In re Nexium (Esomeprazole) Antitrust Litig.*
2013 U.S. Dist. LEXIS 162276 (D. Mass. Nov. 14, 2013).....................................15

*In re PaineWebber Ltd. Partnerships Litig.*
171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................15, 17

*In re Toyota Motor Corp Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*
2013 U.S. Dist. LEXIS 94485 (C.D. Cal. June 17, 2013) .......................................27

*In re Toys "R" Us Antitrust Litig.*
191 F.R.D. 347 (E.D.N.Y. 2000) ........................................................................12, 23

*In re Wal-Mart Wage & Hour Emp. Practices Litig.*
2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010)............................................29

*In re Warner Commc'n Secs. Litig.*
618 F. Supp. 735 (S.D.N.Y. 1985) ...........................................................................23

*Maley v. Del Global Techs. Corp.*
186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................13, 17

*McReynolds v. Richards-Cantave*
588 F.3d 790 (2d Cir. 2009)......................................................................................25

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*
618 F.3d 988 (9th Cir. 2010) ....................................................................................27

*Meijer, Inc. v. 3M*
  2006 U.S. Dist. LEXIS 56744 (E.D. Pa. Aug. 15, 2006).........................................16

*New York ex rel. Koppel v. The Keds Corp.*
  1994 U.S. Dist. LEXIS 3362 (S.D.N.Y. Mar. 21, 1994) .........................................23

*New York v. Reebok Int'l Ltd.*
  903 F. Supp. 532 (S.D.N.Y. 1995) ...........................................................................23

*New York v. Salton, Inc.*
  265 F. Supp. 2d 310 (S.D.N.Y. 2003).......................................................................11

*Padberg v. Giuliani*
  295 Fed. Appx. 455 (2d Cir. 2008)...........................................................................29

*Park v. Thomson Corp.*
  2008 U.S. Dist. LEXIS 84551 (S.D.N.Y. Oct. 22, 2008) ........................................12

*Rosendin Elec., Inc. v. United Pac. Ins. Co.*
  42 F.3d 1401 (9th Cir. 1994) ....................................................................................29

*Slomovics v. All for a Dollar, Inc.*
  906 F. Supp. 146 (E.D.N.Y. 1995) ...........................................................................13

*Texas Indus., Inc. v. Radcliff Materials, Inc.*
  451 U.S. 630 (1981)...................................................................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*
  396 F.3d 96 (2d Cir. 2005).........................................................................................11

*Wellman v. Dickinson*
  497 F. Supp. 824 (S.D.N.Y. 1980) ...........................................................................12

*White v. National Football League*
  822 F. Supp. 1389 (D. Minn. 1993) ..........................................................................17

## FEDERAL STATUTES

15 U.S.C. § 15.........................................................................................................1, 8

28 U.S.C. § 1961(a) ...................................................................................................29

15 U.S.C. §15c........................................................................................................1, 11

15 U.S.C § 26..............................................................................................................1

## FEDERAL RULES

Federal Rule of Civil Procedure 23 ...................................................................... *passim*

Federal Rule of Appellate Procedure 38 ....................................................................30

Federal Rule of Appellate Procedure 39 ....................................................................29

## OTHER AUTHORITIES

Phillip Areeda & Herbert Hovenkamp, *Antitrust Law* (Third Ed. 2007) ......................................16

## I.   INTRODUCTION

On August 5, 2013, the Court preliminarily approved Settlement Agreements ("Settlements") between Plaintiffs (Plaintiff States[1] and Settlement Class[2]) and Settling Publishers (Holtzbrinck Publishers, LLC d/b/a Macmillan ("Macmillan") and Penguin Group (USA), Inc. ("Penguin")). Both Settlements impose injunctive relief and resolve claims for an alleged unlawful agreement to fix the prices of electronic books ("E-books") in violation of federal and state antitrust laws.

The Court also approved an Amended Notice Plan.[3]  Plaintiffs have provided direct notice to more than 23 million eligible consumers, together with general publication notices, in compliance with the Court's order.  In response to these notices, two objections and 72 requests to opt-out were received.  The fairness hearing for these Settlements is set for December 6, 2013.

Plaintiffs set forth below the notification process, responses to the notification and the legal and factual bases sufficient to conclude the Settlements are fair, adequate and reasonable. Accordingly,  pursuant to 15 U.S.C. §§ 15, 15c,  and 26 and Federal Rule of Civil Procedure 23, Plaintiffs now request the Court grant final approval of the Settlements, the Distribution Plan, and the Proposed Order and Stipulated Injunctions.

---

[1]   "Plaintiff States" are the District of Columbia, Puerto Rico and the U.S. States and Commonwealths of Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Mexico, New York, North Dakota, Ohio, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

[2]   "Settlement Class" includes all natural persons who have purchased E-books published by the Named Publishers during the period from April 1, 2010 until May 21, 2012, who resided in one of the following states, territories or commonwealths at the time of their E-books purchase: American Samoa, California, Florida, Georgia, Guam, Hawaii, Kentucky, Maine, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Jersey, North Carolina, Northern Mariana Islands, Oklahoma, Oregon, Rhode Island, South Carolina, U.S. Virgin Islands, Washington, or Wyoming.

[3]   Order Preliminarily Approving Macmillan and Penguin Settlements, *In re Electronic Books Antitrust Litig.*, Case No. 11-md-02293 (S.D.N.Y.) ("*E-books MDL*"), Aug. 6, 2013, ECF No. 373-1. Unless otherwise noted, ECF citations herein are to *E-books MDL.*

## II.     BACKGROUND

### A.     Plaintiffs' Investigations

The Settlement Agreements are the culmination of separate investigations initiated in April 2010 by counsel for Plaintiff States and by counsel for Settlement Class, together with more than a year of joint litigation and months of difficult settlement negotiations with defendants.

Settlement Class Counsel began its investigation after market prices for titles of E-books sold by publisher defendants increased by 30 to 50 percent – nearly simultaneously. Noting this highly suspicious pricing behavior, Class Counsel began analyzing the market and developing the facts. Class Counsel retained experts and investigators who, collectively, spent more than 200 hours analyzing the market and retrieving electronic pricing information.

The Lead States of Texas and Connecticut coordinated their pre-suit efforts with a similar investigation conducted by the United States Department of Justice ("DOJ").  Texas, Connecticut and the DOJ issued civil investigative demands for sworn statements and the production of documents.  The Lead States conducted numerous interviews and reviewed hundreds of interrogatory responses and hundreds of thousands of responsive documents.  The Lead States also conducted and attended sworn statements of various interested parties, including the CEOs and other executives of Hachette Book Group, Inc. ("Hachette"), HarperCollins Publishers LLC ("HarperCollins"), Simon & Schuster, Inc. ("Simon & Schuster"), Penguin, and Macmillan (collectively, "the Agency Five") and Apple Inc.("Apple").

During their investigation, Texas and Connecticut retained Professor Abraham Wickelgren, an expert economist and faculty member at the University of Texas, to assist in doing a preliminary estimate of damages caused by the conspiracy using a subset of data. Dr.

Wickelgren also assisted Plaintiff States in determining an appropriate allocation of the settlement monies among eligible consumers.

## B.    Litigation to Date

Based on the investigation by Class Counsel, Class was able to present robust factual allegations in the first civil litigation filed, *Petru, et al. v. Apple Inc., et al.*, No. 11-cv-03892-EMC (N.D. Cal.).  On December 9, 2011, the United States Judicial Panel on Multidistrict Litigation transferred all related actions to the Southern District of New York. On December 21, 2011, this Court appointed Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC as co-lead counsel for the plaintiff classes, after which they filed the consolidated Class Plaintiffs' Complaint.  Macmillan, Penguin, and their co-defendants moved to dismiss the Class Plaintiffs' Complaint. The Court denied the motions to dismiss on May 15, 2012.

The Attorneys General of 55 jurisdictions ("Settling States") settled with two defendants before filing suit, but were unable to settle with the others.[4] Consequently, 33 Attorneys General ("Litigating States") filed a Complaint on April 11, 2012, as *parens patriae*, against Simon & Schuster, Macmillan, Penguin, and Apple.  Soon thereafter the 55 Settling States settled with Simon & Schuster.  The 33 Litigating States then filed their Second Amended Complaint against the non-settling defendants on May 11, 2012.

Counsel for Class, Plaintiff States, the DOJ,[5] and defendants then began several months of coordinated discovery. Plaintiffs and the DOJ obtained and analyzed more than 1.6 million additional documents and detailed transactional data from the defendants and numerous third parties, and conducted more than 50 depositions.  In advance of the June 3, 2013 bench trial to

---

[4]    The 55 Attorneys General represented the District of Columbia, five U.S. territories, and all U.S. States and Commonwealths except Minnesota.

[5]    The DOJ filed a similar suit against the same defendants on April 11, 2012, *United States v. Apple, et al.*, Case No. 12-cv-2826 (S.D.N.Y.) ("*United States v. Apple*"), ECF No. 1.

determine liability and injunctive relief, Plaintiff States, Macmillan, and Penguin retained testifying expert economists who prepared reports analyzing the evidence of a conspiracy.

## C.     Settlement Negotiations

By June 2011, the Lead States and the DOJ began to discuss their antitrust concerns and afford the publishers the opportunity to resolve them. In a series of conference calls and in-person meetings over the next nine months, the parties discussed the States' rationale for the demanded injunctive relief, the appropriate amount of consumer damages and the defendants' potential defenses. During these discussions, the publishers were represented by some of the most capable and renowned law firms in the world, as well as expert economists and senior members of their management teams. The States successfully reached agreement with Hachette, HarperCollins and Simon & Schuster by April 2012 ("Previously Approved Settlements").[6]

The Litigating States and the remaining publisher defendants, Macmillan and Penguin, continued to communicate regarding potential settlement. In preparation for mediation with United States District Judge Kimba Wood in 2012, Macmillan and the States conducted multiple calls between the parties' trial counsel and economics experts. While the parties did not reach agreement during the December 19th mediation, negotiations thereafter intensified, and, on February 7, 2013, Macmillan and Texas, on behalf of the 33 Plaintiff States, executed a Memorandum of Understanding ("MOU").

Macmillan had been separately engaged in extensive negotiations with Class Counsel since the summer of 2012 regarding a settlement for consumers in the 23 states and territories not represented by Plaintiff States. During these negotiations, the parties were again represented by

---

[6]     This Court approved the settlements between the Attorneys General of 55 jurisdictions and Hachette, HarperCollins, and Simon & Schuster on February 8, 2013, *The State of Texas et al. v. Hachette Book Group, et al.*, Case No. 12-cv-6625 (S.D.N.Y.) ("*Texas v. Hachette*"), ECF No. 71.

experienced and knowledgeable lawyers and supported by expert economists who had access to the same data and documents available to the States. On February 7, 2013, Macmillan and Class Counsel reached an agreement for the represented class members ("Class Settlement").  In terms of recovery to consumers, the States' MOU and the Class Settlement were identical.

Using the settlement agreements underlying the Previously Approved Settlements as a template, counsel for the States, Class, and Macmillan executed the Macmillan Settlement Agreement on April 25, 2013.[7]

On March 7, 2013, the States and Penguin participated in a mediation session with Judge Wood.  This mediation prompted a meeting with Penguin, Class Counsel, and the States on May 16, 2013, which culminated in an agreement on the terms of a settlement. These terms were memorialized in the Penguin Settlement Agreement on May 20, 2013.[8] The Settlement Agreements were additionally reviewed and executed by each of the 33 Plaintiff States' Attorneys General.

The Attorney General of Minnesota did not join the initial settlements between the Settling States and Hachette, HarperCollins and Simon & Schuster.  Class Counsel, representing Minnesota residents who bought eligible E-books, reached a separate agreement with the three earlier-settling defendants on June 20, 2013 ("Minnesota-only Settlement").  Although a Motion for Final Approval of the Minnesota-only Settlement will be filed separately, the administration of the Minnesota-only Settlement, like the administration of the Previously Approved

---

[7]    June 21, 2013, ECF No. 235-1.
[8]    June 21, 2013, ECF No. 235-2.

Settlements (collectively the "Six Settlements"), is being consolidated into an aggregated distribution plan as explained below.[9]

## III.   THE PROPOSED SETTLEMENTS

The Settlements with Macmillan and Penguin are comprised of three components: (1) monetary payments, (2) equitable relief in the form of an injunction, and (3) releases.  If this Court grants final approval, these components will be implemented as follows:

### A.   Monetary Payments and Distributions

#### 1.   Consumer Compensation

The primary component of the Settlements is payment to natural-person consumers who purchased E-books from any Agency Five publisher from April 1, 2010 to May 21, 2012 ("Eligible Consumer"). Macmillan has paid $20 million and Penguin has paid $75 million into consumer compensation escrow accounts established by Plaintiff States' Escrow Agent.[10]

#### 2.   Plaintiff States' Compensation

Macmillan and Penguin have also paid $3 million and $7 million, respectively, into segregated State Compensation escrow accounts.  Upon Court approval, these funds are to be divided among the Plaintiff States as agreed among themselves for several purposes delineated in the Settlement Agreements, including reimbursements for costs of investigation, attorneys' fees, payments for experts and costs of on-going litigation against Apple, the sole non-settling defendant.

---

[9]   To summarize, the Six Settlements are as follows:  One settlement each between Settling States and Hachette, HarperCollins, and Simon & Schuster; one settlement between Macmillan and Litigating States and Class; one settlement between Penguin and Litigating States and Class; and one settlement between a Minnesota-only Class and Hachette, HarperCollins and Simon & Schuster.

[10]   The Ohio Attorney General contracted with Fifth Third Bank to act as Escrow Agent in the Previously Approved Settlements and has executed addenda to incorporate the Macmillan and Penguin Settlement Agreements.

**B.      Payment of Class Counsel Attorneys' Fees and Costs**

Macmillan and Penguin have agreed to pay to Counsel for the Settlement Class $2,475,000 and $8 million, respectively, for their attorneys' fees, costs of investigation, litigation, and other related costs. Class Counsel have filed a separate motion addressing their request for an award of attorneys' fees and costs.[11]

**C.      Participation Awards for the Named Plaintiffs**

Macmillan and Penguin agreed to pay a participation award for the 25 Settlement Class Plaintiffs up to a maximum of $1,000 each, (for a maximum of $2,000), or as otherwise awarded by the Court. Class Counsel and the named plaintiffs filed a separate motion requesting participation awards for 20 class representatives in amounts ranging from $396 to $2,000.[12]

**D.      Settlement Notice and Administration Costs**

Finally, Macmillan and Penguin agreed to pay all reasonable costs associated with administering the Settlements, including expert costs and the consumer notice and distribution program. Each has deposited the sum of $750,000 into a segregated escrow account. Funds have been disbursed from this account upon written direction by the State Liaison Counsel[13] and counsel for Settling Publishers. The Settling Publishers will make additional payments to this account as needed, upon notice from the State Liaison Counsel. If monies remain in this account at the conclusion of this matter, such monies will be returned to the Settling Publishers on a *pro rata* basis.

---

[11]    Memorandum in Support of Class Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Participation Awards for Named Plaintiffs ("Attorneys' Fees Mot."), Oct. 8, 2013, ECF No. 419.

[12]    *Id.*

[13]    Representatives from the states of Connecticut, Ohio and Texas have been designated by Plaintiff States as State Liaison Counsel to oversee the administration of the settlements.

E.     **Equitable Relief: Injunction**

Macmillan and Penguin have each agreed to the entry of injunctions that specifically

incorporate the terms and conditions of the DOJ's Final Judgments for these two defendants in

*United States v. Apple, Inc., et al.*, Case No. 12-cv-2826 (S.D.N.Y.), dated August 12, 2013 and

May 17, 2013, respectively.[14] The injunctions preclude further conspiratorial conduct, establish

a monitoring and reporting program, and impose certain requirements that must be met if the

publishers wish to conduct business with retailers under the agency model. These requirements

are intended to re-establish price competition in a market free from the taint of the prior

conspiracy.

F.     **Release of Claims**

Plaintiffs shall release the claims of individual consumers who purchased E-books from

any of the Agency Five publishers from April 1, 2010 to May 21, 2012, and who have not

excluded themselves. These releases will only be for claims against Macmillan and Penguin.

The Plaintiff States will also release their sovereign enforcement claims against

Macmillan and Penguin that arise from the conduct alleged in the complaints. Finally, the

Plaintiff State Attorneys General agree not to seek damages from or otherwise to establish

liability against Macmillan or Penguin based on the conduct set forth in the complaints.

IV.    **THE APPROVED NOTICE WAS ADEQUATE AND SATISFIED DUE PROCESS**

The notice of a *parens patriae* or class settlement must meet standards of procedural due

process.[15] For class settlements "notice to class members must be 'reasonably calculated under

---

[14]   These injunctions are attached hereto as Exhibit A, (Proposed Order and Stipulated Injunction for Macmillan) and Exhibit B, (Proposed Order and Stipulated Injunction for Penguin). These injunctions shall be modified to conform to any revisions made to the DOJ's Final Judgments.

[15]   The Clayton Act establishes the right of Attorneys General to bring antitrust *parens patriae* lawsuits. This statute expressly states that notice by publication is appropriate unless the court finds that such notice would violate due process. 15 U.S.C. § 15c(b)(1).

all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[16] In addition, the notice should "'fairly, accurately, and neutrally describe the claims and parties in the litigation, as well as the terms of the proposed settlement and the identity of persons entitled to participate in it.'"[17] To insure compliance with these legal standards, Plaintiffs utilized both the notice process and language used in the Previously Approved Settlements to the fullest extent possible.

Kinsella Media, LLC prepared the notices sent in the Previously Approved Settlements. Kinsella used those notices as the foundation for the present notices, having made edits to fully explain the Macmillan, Penguin, and Minnesota-only Settlements and the effects of the Previously Approved Settlements on the amount consumers were to receive.  These notices provided clear and comprehensive information concerning the proposed settlements, the consumer's options, and the procedures to follow.[18]

In order to provide these direct notices to as many Eligible Consumers as possible, Plaintiffs' Counsel worked again with the six largest E-book retailers: Amazon, Barnes & Noble, Apple, Kobo, Sony, and Google.  These retailers confirmed they had determined which of their customers are eligible consumers for purposes of all Six Settlements and had determined the eligible purchases of those customers.[19] Email notice was sent directly to more than 23 million unique email addresses identified by these retailers as eligible consumers. Because these retailers

---

[16]   *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 119 (D.N.J 2002); *see Cronas v. Willis Group Holdings, Ltd.*, No. 06 Civ. 15295, 2011 U.S. Dist. LEXIS 147171, at *13 (S.D.N.Y. Dec. 19, 2011). All internal citations are omitted, unless otherwise noted.

[17]   *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010).

[18]   Declaration of Katherine Kinsella in Support of Plaintiffs' Motion for Final Approval of Macmillan and Penguin Settlements and Distribution Plan ("Kinsella Decl."), Ex. C, filed herewith.

[19]   At the request of Plaintiffs' Counsel, these retailers included Minnesota residents in their updated search of eligible consumers.  Although Minnesota residents did not receive notice under the Previously Approved Settlements, they received separate notice pursuant to the Penguin, Macmillan, and Minnesota-only Settlements.

retailers collectively accounted for more than 98 percent of E-book sales during the relevant

period, Plaintiffs believe this direct notice apprised almost all interested parties of the

settlements. Details concerning the processes used by Rust Consulting and the retailers to

identify and notify eligible consumers are found in the declarations of representatives for Rust

Consulting, Amazon, Barnes & Noble, Apple, Kobo, Sony, and Google, which are attached

hereto, respectively, as Exhibits D through J.

To reach those relatively few eligible consumers who may not have received direct notice

from the Claims Administrator or their retailer, Kinsella Media placed web-based advertisements

on five online websites and networks, as well as two networks that serve ads to mobile devices.

Additionally, notices were included in ten newspapers specifically targeted to consumers in the

five settling territories, translated into Spanish as appropriate.[20] The detailed website utilized for

the Previously Approved Settlements was updated on August 30, 2013. It included all notices

and electronic forms for eligible consumers to use for claims, check requests, and exclusions.

More than 400,000 people viewed this website since its reactivation.[21] Users who clicked on the

related online, mobile, and RSS feed advertisements were connected to this website.

Notices for the Macmillan, Penguin, and Minnesota-only Settlements were sent out on or

about September 4, 2013. Pursuant to the Order of Preliminary Approval, eligible consumers

had a 45-day Notice Period to submit objections to the Settlements, request to opt-out from one

or more of the Settlements, request a check instead of a credit, or submit a claim form, if

---

[20]   Kinsella Decl., Ex. C, ¶¶ 17-20.

[21]   Declaration of Kim Schmidt in Support of Plaintiffs' Motion for Final Approval of
Macmillan and Penguin Settlements and Distribution Plan ("Schmidt Decl."), Ex. D, ¶ 20, filed
herewith.

necessary. Only 72 consumers requested exclusion from one or more of the current Settlements, and, importantly, only two objections to the current Settlements were timely filed.[22]

The Notice Plan, as implemented, exceeds the requirements of due process in this case: an overwhelming majority of eligible consumers received direct, clear, and comprehensive notices of the Settlements and their rights to participate in them.[23]

## V.    THE SETTLEMENTS MEET THE STANDARDS FOR FINAL APPROVAL

These Settlements include claims by Attorneys General as *parens patriae* for damages on behalf of natural-person residents of their states (pursuant to Section 4C of the Clayton Act, 15 U.S.C. §15c) and by the named Plaintiffs on behalf of residents of states and territories not otherwise represented by an Attorney General (the Settlement Class). Courts have adopted the same approval standards for both class action and *parens patriae* settlements: the Court will approve settlement agreements if they are fair, reasonable, and adequate and not a product of collusion.[24]

## A.    The Settlement Process was Procedurally Fair

The initial determination of fairness, often called "procedural fairness," focuses on the settlement process itself.[25] "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."[26]

Here, settlement discussions were initiated by experienced counsel for all parties only after the investigating States, Class and the DOJ had conducted two-year investigations, which

---

[22]   Schmidt Decl., Ex. D, ¶¶ 22-23.

[23]   Kinsella Decl., Ex. C, ¶ 32.

[24]   *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *New York v. Salton, Inc.*, 265 F. Supp. 2d 310, 313 (S.D.N.Y. 2003).

[25]   *Ebbert v. Nassau County*, No. 05-05445, 2011 U.S. Dist. LEXIS 150080, at *20 (E.D.N.Y. Dec. 22, 2011).

[26]   *Cronas*, 2011 U.S. Dist. LEXIS 147171, at *6-7

yielded voluminous, substantive, and meaningful pre-litigation disclosure and litigation discovery. The settlement discussions occurred haltingly over many months as counsel for Class and Plaintiff States, separately, provided defense counsel with market and expert information and legal arguments to support their positions. Negotiating counsel for both sides were well-prepared to analyze this complicated antitrust matter. The results of these settlement negotiations were then reviewed and approved by the Attorneys General in 33 jurisdictions.

As this Court has stated, "[a]pproval of the settlement by experienced counsel . . . and the participation in the negotiations . . . by a government agency committed to the protection of the public interest and its endorsement of the agreement are additional factors which weigh heavily on the side of approval of the settlement."[27] These Settlement Agreements are entitled to a presumption of procedural fairness.

**B.     The Settlements Are Reasonable, Adequate and Substantively Fair**

During the hearing for final approval for the Previously Approved Settlements, this Court noted that the well-known *Grinnell* factors[28] were "certainly inclusive of the factors [the Court] should appropriately consider in reviewing the settlement."[29] The factual and legal basis supporting the final approval for the Previously Approved Settlements also clearly apply to the Macmillan and Penguin Settlements, as review of each of the *Grinnell* factors attests.

---

[27]   *Wellman v. Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980), *aff'd*, 682 F.2d 355 (2d Cir. 1982); *see also In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 351 (E.D.N.Y. 2000). ("[T]he participation of the State Attorneys General furnishes extra assurance that consumers' interests are protected.").

[28]   *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

[29]   Transcript of February 8, 2013 fairness hearing for final approval of settlements with HarperCollins, Simon & Schuster and Hachette ("Hearing Tr.") at 6, *Texas v. Hachette*.

1.     **The anticipated complexity, duration and expense of additional litigation.**

"'[A]ntitrust cases, by their nature, are highly complex.'"[30] As this Court is well aware, this litigation is no exception. The complexities were amplified in this matter due to bifurcated proceedings: the first proceeding was a bench trial prosecuted by the DOJ and the Plaintiff States on the issues of liability and injunction and the second trial is being prosecuted by Plaintiff States and Class to a jury on the issue of damages. The Macmillan and Penguin Settlements, coming three and four months, respectively, before the first trial was scheduled, avoided some pretrial discovery and substantially reduced pretrial preparation and the number of pretrial filings and briefings. These Settlements drastically reduced the duration, complexity, expert analysis, and evidentiary issues for both the first proceeding and the scheduled second trial. They also remove all expense and delay which would accompany an expected appeal in absence of the settlement. Where litigation is potentially lengthy and will result in great expense, settlement is in the best interest of injured consumers.[31]

2.     **The reaction of the settlement group.**

"[T]he reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."[32] As noted, direct notice of the Settlements was sent to more than 23 million consumers. Other web-based notices, newspaper notices, and, for some, follow-up postcard notices, also ensured that a very high percentage of Eligible Consumers received important information about their legal rights relating to these Settlements. And yet, with this exceptional notice coverage, only 72 people have asked to be excluded from either of

---

[30] *Park v. Thomson Corp.*, No. 05 Civ. 2931, 2008 U.S. Dist. LEXIS 84551, at *7 (S.D.N.Y. Oct. 22, 2008).

[31] *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995).

[32] *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).

the Settlements and, significantly, only two objections were filed.[33]   "[T]he lack of objections may well evidence the fairness of the [s]ettlement."[34]

      3.    **The stage of the proceeding and the amount of the discovery completed.**

This factor weighs whether the litigation was developed sufficiently to provide counsel with an adequate appreciation of the merits of the case from which to fairly negotiate and settle the action. Here, prior to filing suit, Plaintiff States and Class engaged in substantial, separate investigations of the defendants' actions. Then, after filing separate complaints, Plaintiff States and Class jointly and vigorously prosecuted these lawsuits. As earlier noted, extensive discovery and expert analysis was conducted by both Plaintiffs and defendants, and all parties were well represented by experienced counsel who were well aware of the strengths and weaknesses of each other's case.   This factor strongly supports approval of the Settlements.

      4.    **The risks of establishing liability.**

Based on the 160-page Opinion and Order issued by this Court in favor of the DOJ and Plaintiff States after the June 2013 trial against Apple,[35] it is clear that Plaintiffs had a strong case, not only against Apple but also against the publishers.  But without the pre-trial Settlements, Plaintiffs would have still faced some uncertainties in proving all the necessary elements of conspiracy for the relevant period for both Penguin and Macmillan.

      5.    **The risks of establishing damages.**

Proving damages for each of the Settling Publishers would also have presented litigation risks.  Plaintiff States worked with Professor Wickelgren in developing a damages analysis for

---

[33]   The specifics of these two objections and their lack of merit are discussed in section IX, below.
[34]   *Maley*, 186 F. Supp. 2d at 362.
[35]   Opinion and Order, *The State of Texas v. Penguin Group (USA) Inc.*, No. 12-cv-03394 (S.D.N.Y.), July 10, 2013, ECF No. 237.

settlement purposes.[36] The Plaintiff States and the Class have also offered the report of Dr.

Roger Noll in support of both class certification and as a testifying expert in this action regarding

the damages caused by the conspiracy.[37] Although it is uncertain what the Settling Defendants

might have argued, Apple devotes most of its recent opposition to class certification to arguing

that Dr. Noll's model is "fatally flawed" and cannot measure damages on a class wide basis.[38] In

fact, under Apple's expert's opinion, consumers have received more than treble damages

already.[39] Even though Plaintiffs believe their expert's analyses are well-founded and substantial

damages will be provable at trial, as with any damages analysis, the use of experts involves

additional litigation costs and risks.

      6.    **The risks of maintaining the class action through trial.**

      The risk of establishing and maintaining class certification through trial and appeal exists

for the present settlements although it was not an issue when approving the previous *parens*

*patriae* settlements. Although it is uncertain what arguments may have been raised by Penguin

and Macmillan in opposition to class certification, in its recent papers, Apple has argued that a

heightened level of scrutiny applies to any class certification motion.[40] Numerous courts have

recently rejected many of Apple's exact arguments with certified classes with far more complex

---

[36]  *See* Declaration of Abraham L. Wickelgren, Ph.D. Regarding Damages to Elible [sic] Consumers from Settlements with Macmillan and Penguin and the Proposed Plan of Allocation ("Wickelgren Decl."), June 21, 2013, ECF No. 360-3.

[37]  *See* Corrected Declaration of Roger G. Noll ("Noll Decl."), Oct. 21, 2013, ECF No. 428.

[38]  *See* Defendant Apple Inc.'s Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Apple's Opposition") at 18, Nov. 15, 2013, ECF No. 443.

[39]  *See* Declaration of Jonathan Orszag in support of Apple's Opposition, filed Under Seal on Nov. 15, 2013.

[40]  Apple's Opposition at 6 (arguing that a "fundamental paradigm shift" has occurred "in the standards applied to the analysis of class certification in antitrust litigation").

pricing dynamics than present here.[41] The Class is confident that a class action is the correct and proper vehicle through which to litigate their claims, but a risk always exists that a court might disagree.

> 7.      **The ability of the defendants to withstand a greater judgment.**

Plaintiffs acknowledge that Settling Publishers could withstand a higher judgment but "this determination in itself does not carry much weight in evaluating the fairness of the Settlement."[42]  With all other factors being met in this case, this factor is insignificant.

> 8.      **The range of reasonableness of the settlement amount in light of the best possible recovery and in light of all attendant risks of litigation.**

"Fundamental to analyzing a settlement's fairness is 'the need to compare the terms of the compromise with the likely rewards of litigation.'"[43] Typically, the court will begin the analysis of these two factors by looking at an estimated benchmark damages amount measured by the comparison of the fixed or monopoly price against the "but for" price.[44]

Using the same data and methodology as he used in evaluating the Previously Approved Settlements, the Plaintiff States' economic expert for the purposes of settlement, Professor Wickelgren, calculated that the estimated, undiscounted damages attributable to Macmillan and Penguin sales is approximately $80.64 million. Under this analysis, the Macmillan and Penguin

---

[41] *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-02409, 2013 U.S. Dist. LEXIS 162276 (D. Mass. Nov. 14, 2013); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944, 2013 U.S. Dist. LEXIS 137946 (N.D. Cal. Sept. 19, 2013); *In re High-Tech Emps. Antitrust Litig.*, No. 11-cv-02509, 2013 U.S. Dist. LEXIS 153752 (N.D. Cal. Oct. 24, 2013).

[42] *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

[43] *Meijer, Inc. v. 3M*, No. 04-5871, 2006 U.S. Dist. LEXIS 56744, at *52 (E.D. Pa. Aug. 15, 2006) (citing cases).

[44] *See* Phillip Areeda & Herbert Hovenkamp, Antitrust Law, ¶394 (Third Ed. 2007).

Settlements would provide approximately 118 percent of estimated damages attributable to these defendants' sales.[45] Courts have approved settlements for much less.[46]

Even under the more recent analysis of Dr. Noll (the Settlement Class and Plaintiff States' damages expert), the settlement provides significant recovery to consumers. Dr. Noll's damages analysis shows that consumers suffered $17,013,854 in damages for purchases from Macmillan, and $105,779,666 for purchases from Penguin.[47] Even under this analysis, the settlements account for more than 77 percent of damages from the Settling Defendants.

Significantly, the settlement amounts for these Settlements exceed the Previously Approved Settlements as a percentage of publisher-specific, undiscounted damages. In approving the Previously Approved Settlements, the Court found the settlement funds provided consumers "slightly over half of the calculated [undiscounted] damages based on the sales made by the three settling publishers. . . ." The Court then found the total amount was an "utterly reasonable settlement amount."[48] The current Settlements provide a significantly larger percentage recovery while avoiding the risks of litigation, and accordingly deserve approval.

All the relevant facts surrounding these Settlements support the conclusion that these Settlements are fair, adequate, and reasonable.

## VI.    THE CONSUMER DISTRIBUTION PLAN MEETS THE STANDARDS FOR FINAL APPROVAL

The fair, adequate and reasonable standard also applies to the distribution of funds to consumers.[49] Upon final approval by the Court, the implementation of the Distribution Plan will

---

[45]   Wickelgren Decl., ¶¶ 15 and 21.
[46]   *See, e.g.*, *In re Flag Telecom Holdings. Ltd. Sec. Litig*, No. 02-CV-3400, 2010 U.S. Dist. LEXIS 119702, at *58-59 (S.D.N.Y. Nov. 8, 2010) *(*citing cases).
[47]   Noll Decl. at 26.
[48]   Hearing Tr. at 8, *Texas v. Hachette*.
[49]   *Maley*, 186 F. Supp. 2d at 367. *See also In re PaineWebber*, 171 F.R.D. at 132-33; *White v. National Football League*, 822 F. Supp. 1389, 1417 (D. Minn. 1993).

compensate the largest possible number of injured consumers in a way that makes it very simple

for them to participate and receive value.  The proposed Consumer Distribution Plan, attached

hereto as Exhibit K, generally tracks the provisions of the Distribution Plan approved in the

Previously Approved Settlements, with two main additions: (1) distribution amounts will be

based on aggregating consumer funds from the Six Settlements,[50] and (2) an accommodation is

made for Minnesota residents.[51]

## A.   Eligible Purchases and A Simplified and Reasonable Distribution Plan

An Eligible Consumer is any consumer, who, during the period April 1, 2010, to May 21,

2012 (inclusive): (1) purchased an E-book published by an Agency Five publisher, (2) was a

resident of the District of Columbia or any U.S. State, Commonwealth or Territory at the time of

his or her purchase, and (3) has not timely filed an exclusion with the Court.[52]  Eligible

Consumers and their eligible purchases were identified either by the retailer through whom the

consumer bought an E-book or by the consumer timely filing a claim form.

Depending on the retailer through which the Eligible Consumer bought the E-book, the

consumer will either receive an account credit or a check for the amount as calculated according

to the provisions of the Distribution Plan. Eligible Consumers who purchased through Amazon,

Barnes & Nobles, Apple, or Kobo will receive a credit in their current E-book account, which

they can use for additional purchases of E-books or print books, unless they timely requested a

---

[50]   While approving the earlier settlements, the Court also granted Plaintiff States' request to delay actual distribution pending future settlements. Final Judgment, *Texas v. Hachette*, Feb. 8, 2013, ECF No. 71, ¶ V.

[51]   *See* II.C, above for explanation of this accommodation.

[52]   Compensation is being provided to purchasers who bought books from all five publisher defendants because these consumers also have claims against each of these publishers under the well-established rule of joint and several liability for co-conspirators under the antitrust laws. *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 645-46 (1981). Only by providing compensation to those injured by all five publishers can Plaintiffs provide adequate release of claims for the Settling Publishers.  It is anticipated that any monies later recovered from Apple, whether through settlement or as a result of a judgment in the litigation, will similarly be distributed to purchasers of E-books from any of the Agency Five publishers.

check.[53] These consumers will receive their credits or requested checks without being required to file any claim or take any action other than activating or using their credits or cashing their checks. The Claims Administrator will provide a list of customers who have elected either to opt-out or receive a check to each retailer participating in the distribution of credits. After final approval, crediting retailers will credit customers' accounts and inform such customers that their credits are available to use. These retailers will also send an email reminder after six months to customers that have not used their credits. After a retailer has properly invoiced the credits used by its customers, the Claim Administrator will reimburse that retailer from the escrow funds. Unclaimed credits shall expire one year after they were made available.

Eligible Consumers who bought through Sony are in a unique position relative to others. Although Sony cannot provide account credits, Sony was able to provide the Claims Administrator with a comprehensive list of names of Eligible Consumers. Because of this, most eligible Sony customers received direct notice of the Settlements and will receive a check without having to file a claim form.

Eligible Consumers who bought from any other retailer (estimated to be less than 2 percent of all eligible consumers) are required to timely file a claim form and, once verified as eligible purchasers, will receive a check.

**B.   Adequate and Reasonable Consumer Compensation Amounts**

As discussed above, the total settlement amount provides reasonable and adequate compensation when compared to damages suffered. In addition, Professor Wickelgren calculated both consumer damage and consumer distribution separately for *New York Times*

---

[53]   An important provision of the Distribution Plan is that all Eligible Consumers have the choice to request a check, even if they qualify for a direct credit.

Bestsellers and non-*New York Times* Bestsellers.[54]   Such an allocation that reimburses consumers based on the type and extent of injury is reasonable.[55]

The specific amounts to be paid per book for both categories, and, separately for Minnesota and non-Minnesota consumers, as incorporated in the Distribution Plan, were calculated by Dr. Wickelgren.[56] These amounts are based on the total funds to be apportioned to non-Minnesota and Minnesota residents as well as on the actual number of Eligible Consumers and number of eligible books that were identified during the notice process for the Previously Approved Settlements.[57]

The Distribution Plan provides for the distribution of funds from all Six Settlements, not just the funds from the Macmillan and Penguin settlements.  This creates significant benefits for the settlement administration, for cooperating retailers and for most consumers.  Consumers will have fewer notices to review and only one payment or credit from any particular retailer to process instead of up to five payments or credits.

Because of the unique position of Minnesota residents, accommodation will be made in the Distribution Plan to ensure they receive their fair share of related settlements.  Therefore, $3.909 million from the settlement funds will be made available for distribution to Minnesota residents. This includes all consumer funds from the Minnesota-only Settlement and a percentage of the consumer funds from the Macmillan and Penguin Settlements that are

---

[54]   Wickelgren, Decl., ¶ 27.

[55]   *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000).

[56]   Wickelgren Decl., ¶¶ 23-27.

[57]   The number of eligible Minnesota consumers were not identified in the earlier settlements but have been extrapolated based on estimated sales to Minnesota consumers.

attributable to sales to eligible Minnesota residents.[58]  The remaining $162,249,426 will be made available for distribution to non-Minnesota residents.

Once the full amount of all residual monies is known, Plaintiffs will file a final status report, identifying the final disbursement amount, whether future distributions are possible, and any expected *cy pres* distribution.

## VII.   THE PROPOSED CLASS MEETS ALL THE REQUIREMENTS OF RULE 23

The Court has already conditionally certified the Settlement Class and appointed the class representatives and Class Counsel to represent the Settlement Class members.[59]  As set forth in Plaintiffs' motion for preliminary approval, the Settlement Class satisfies the requirements of class certification set forth in Rule 23(a) and Rule 23(b)(3).

The Settlement Class satisfies the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy for purposes of settlement. It is undisputed that millions of people in the Settlement Class purchased E-books, thus readily satisfying the numerosity requirement.

Commonality is satisfied through the common question of whether settlement class members were injured by defendants' conspiracy to stabilize the prices of E-books.

Class Plaintiffs contend, and Settling Defendants do not oppose for purposes of settlement, that the typicality requirement is met because the claims of the named Plaintiffs and the settlement class members are all based primarily on the same alleged core facts and underlying legal theories: defendants' violations of the Sherman Act through their conspiracy to eliminate price competition for E-books.

---

[58]   Inclusion of the Minnesota-only Settlement in the Distribution Plan also insures Minnesota residents will have to process only one credit or payment from a retailer as opposed to two or three.

[59]   Final Judgment, ECF No. 373, ¶ 4.

In addition, Class Plaintiffs contend, and Settling Defendants do not oppose for purposes of settlement, that the named plaintiffs are adequate to represent the Settlement Class, and that there is no conflict between the named plaintiffs' interests and those of the Settlement Class. Finally, with respect to Rule 23(a), class counsel Hagens Berman and Cohen Milstein are indisputably qualified and experienced in class action litigation, as the Court found when appointing lead counsel.[60]

Class Plaintiffs contend, and Settling Defendants do not dispute for purposes of settlement, that the Settlement Class also satisfies the requirement for certification under Rule 23(b)(3) that common questions predominate because many of the same alleged operative facts and legal issues apply to all of the Settlement Class members' claims. The overwhelming focus of Plaintiffs' evidence and theory of the case is the defendants' conscious commitment to a common scheme to elevate the prices of E-books, and each individual defendant's participation in that scheme. The documents, testimony, and data demonstrate that defendants agreed to raise retail prices for E-books and eliminate competition – and each piece of evidence focuses on the actions of defendants, rather than any individual class member.[61] Common issues predominate.

Accordingly, Class Plaintiffs respectfully request that the Court certify the Settlement Class.

## VIII.   PAYMENTS TO PLAINTIFF STATES ARE REASONABLE

The Penguin and Macmillan Settlement Agreements provide for the total payment by the two Settling Publishers of $10 million to Plaintiff States.  This payment is in addition to the consumer compensation funds discussed above and will not affect consumer recovery in any

---

[60]   Case Management Order, Dec. 21, 2011, ECF No. 23.

[61]   *See, e.g.*, Class Complaint, ¶¶ 5, 6, 18-19, 70, 79-82 (using defendants' public statements to demonstrate coordinated activities); ¶¶ 84-89 (using pricing data common to the class to demonstrate injury and damages); ¶¶ 152, 164 (meetings between defendants to implement the E-book price fix – evidence common to the class).

way.  By agreement, these funds are to be used by the Plaintiff States for several identified

purposes, including reimbursements for attorneys' fees and costs of investigation, attorneys' fees

incurred in obtaining approval of the Settlements, payment of experts and consultants, and

continuing costs of litigation against the non-settling defendant.[62]

Plaintiff States are entitled to compensation based on their previous and anticipated work

related to this case as well as the positive results they have obtained in this matter, both for their

consumers and as antitrust enforcement agencies.  Certain states were actively engaged in the

investigation of this matter for more than two years, participated in settlement discussions for

months, and prepared the documents necessary for court approval for five of the related

Settlements.  The involvement of State Liaison Counsel will continue for more than a year after

a final approval order is signed.  They will be responsible for overseeing distributions to millions

of consumers, with necessary follow-up for accountings, confirmations, and problem-solving.

They will also be responsible for ensuring all monies are fully distributed, which may require

future court filings and additional consumer disbursement and/or *cy pres* distribution.  State

Liaison Counsel, in coordination with Settling Publishers' counsel, also will oversee payments

for all administrative costs related to the implementation of the Distribution Plan.

Less tangible, but equally important to securing consumer recovery, is the Plaintiff

States' active and aggressive enforcement of the antitrust laws in this matter.  The compensation

provided by the Settlements will provide Plaintiff States additional resources to further

strengthen antitrust enforcement.

The total payment to the States is reasonable, not only in light of the States' work and

positive results achieved, but also relative to fee and cost awards in similar class action and

---

[62]  *See* Section VI.B of the Settlement Agreements for the complete list of delineated
purposes for which the State Compensation monies may be used.

*parens patriae* cases. Courts generally review an attorney fee request in terms of the percentage it represents of the total recovery. Courts in this Circuit and elsewhere have awarded fees in the 20-50 percent range in class actions.[63] The payment to the States is manifestly fair: it is 8.7 percent of the total amount of these Settlements and does not decrease the amount available for consumers.

State Attorneys General, acting in their *parens patriae* capacity, have been awarded fees, including attorneys' fees, provided for in settlement agreements without having to file fee petitions. Such was the case in the Previously Approved Settlements.[64]  Plaintiff States ask the Court to similarly approve the agreed-upon payment to Plaintiff States in this case.

## IX.    THE TWO FILED OBJECTIONS LACK MERIT

### A.    The Objections Do Not Change the Conclusion that the Settlements Are Fair, Reasonable, and Adequate

Only two of the more than 23 million Eligible Consumers have objected to the Settlements. One, Bob Kohn, seeks to have consumers recover nothing rather than the proposed $95 million. A second objector and Texas resident, Christopher Batman, objects to the fees to be paid to Class Counsel.

#### 1.    Bob Kohn's Objection that Consumers Are Recovering Too Much Should be Rejected

Bob Kohn is no stranger to this litigation. Mr. Kohn filed Tunney Act comments, amicus briefs, and attempted an appeal to the Second Circuit. Despite this Court already having heard and rejected his arguments, Mr. Kohn continues to argue that Amazon's pricing justifies

---

[63]    *See In re Warner Commc'n Secs. Litig.*, 618 F. Supp. 735, 749-50 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

[64]    Final Judgment, *Texas v. Hachette*, Oct. 8, 2013, ECF No.71, ¶VII. *See also Toys "R" Us* 191 F.R.D. at 347; *New York v. Reebok Int'l Ltd.*, 903 F. Supp. 532 (S.D.N.Y. 1995); *New York ex rel. Koppel v. The Keds Corp.*, No. 93 Civ. 6708, 1994 U.S. Dist. LEXIS 3362 (S.D.N.Y. Mar. 21, 1994); *In re Minolta Camera Prods. Antitrust Litig.*, 668 F. Supp. 456 (D. Md.1987).

defendants' conspiracy.[65] Mr. Kohn argues that (i) this Court erred in its ruling;[66] and (ii) *if*

higher prices benefited consumers "then the likely rewards of this litigation fall to zero."[67] Mr.

Kohn sought and was denied discovery into Amazon's pricing practices, and now seeks an order

rejecting Plaintiffs' Settlements with Macmillan and Penguin.

Mr. Kohn's objections are misplaced. *First*, Mr. Kohn seeks to essentially void the

Settlements by insisting that consumers should receive nothing, without even addressing the

substance of Plaintiffs' claims. The recovery for consumers in this case is substantial, and Mr.

Kohn does not suggest otherwise. Objecting to a claim is not a valid basis for objecting to a

settlement of that claim.[68] Indeed, arguing that Eligible Consumers should receive nothing

instead of $95 million illustrates that Mr. Kohn's interest conflicts with the interests of

consumers entitled to recover under the Settlements. Mr. Kohn made this conflict clear when he

declared to the Second Circuit that he has a "direct, personal financial interest" in this action as

the Chairman and CEO of RoyaltyShare, Inc., which loses an "easily quantifiable amount of

---

[65]   *See* Opinion & Order at 40, *United States v. Apple*, Sept. 5, 2012, ECF No. 113 ("even if Amazon *was* engaged in predatory pricing, this is no excuse for unlawful price fixing").

[66]   Notice of Intention to Appear in Opposition to the Settlement and Statement in Support of Dismissal with Prejudice of this Action, Oct. 18, 2013, ECF No. 426, at 8 n.12 ("Given that the thrust of this Objection is that the Court made a fundamental error in applying antitrust doctrine in this matter, this Court is urged to consider whether it can engage in a truly 'independent evaluation' of this Settlement.").

[67]   *Id.* at 10.

[68]   *Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *11  (E.D. Mich. July 31, 2013) (where objector argued that the case should be dismissed and the class should recover nothing, the Court found the objection to be directed at the filing of the case, rather than the settlement, and granted final approval); *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 389 (D.N.J. 2012) (where objector argued that the class was not entitled to any recovery, the Court found this objection was "not a reason to reject the settlement," reiterated that class members who "do not seek compensation may exclude themselves from the settlement," and granted final approval to the settlement); *In re Motor Fuel Temperature Sales Practices Litig.*, MDL 1840, 2012 WL 1415508 (D. Kan. Apr. 24, 2012) (finding objections to a class action settlement, including that the case was frivolous, the case should never have been filed, and the settlement includes improper rewards, to be without merit).

money" for every dollar in sales lost by settling defendant Hachette.[69] Defendant Macmillan is also a customer of Mr. Kohn's business.[70] In short, Mr. Kohn profits when consumers are charged more for E-books.

*Second*, Mr. Kohn's objection to Amazon's pricing is irrelevant to Plaintiffs' claims. Only relevant issues should influence whether to grant final approval of the Settlements. *Finally*, Mr. Kohn does not have standing to object to the recovery of the Settlement Class. As a New York resident, he is not a part of the Settlement Class,[71] is not represented by Class Counsel, and has no standing to object to the recovery of funds by Settlement Class consumers.[72]

2.   **Mr. Batman's Objections Should Be Overruled on Both Procedural and Substantive Grounds**

The second objector, Mr. Batman, objected on several grounds regarding the Settlement Class. Mr. Batman, however, is a resident of Texas and is not a member of the Settlement Class.[73] He is not represented by Class Counsel in these Settlements. Therefore, Mr. Batman lacks standing to object to the class counsel attorneys' fees or other class-related issues and these objections should be denied without further review.[74]

Mr. Batman's objections also lack any substantive merit. Mr. Batman objects "to the

---

[69]   Affidavit of Bob Kohn (CEO, RoyaltyShare) in Support of Kohn's Response to Motion to Dismiss, Case No. 12-4017 (2nd Cir.), ECF No. 45-2, ¶ 13.

[70]   *Id.*, ¶ 9.

[71]   *See* n.2, *supra.*

[72]   *See McReynolds v. Richards-Cantave*, 588 F.3d 790,794, n.1 (2d Cir. 2009) (noting that only class members have standing to object to the settlement of a class action); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2nd Cir. 2007) (holding that non-class member did not have an "affected interest" in the class plaintiffs' claims, so as to be able to assert its objections); *Feder v. Elec. Data Sys. Corp.*, 248 Fed. Appx. 579, 580-81 (5th Cir. 2007) ("only class members have an interest in the settlement funds, and therefore only class members have standing to object to a settlement. Anyone else lacks the requisite proof of injury necessary to establish the 'irreducible minimum' of standing"); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals.").

[73]   *See* n.2, *supra.*

[74]   *See* n.70, *supra.*

proposed award of attorneys' fees" and cites to the lack of detail in the email notice he received

of the Settlements. He states it is impossible to determine if requested fees or expenses are

excessive. Mr. Batman's assertion is demonstrably false. He acknowledges he accessed the

settlement website (noted in the email) and found the motion for attorneys' fees filed by Class.

This motion included (i) counsel's hourly fee; (ii) the number of hours expended; (iii) the names,

titles and biographies of the attorneys' involved; (iv) details regarding the type and amount of

expenses; and (v) details regarding the type of work undertaken by counsel.[75] Despite this

wealth of information, Mr. Batman provides no specific objection to counsel's fee or expenses.[76]

Such unsupported objections should be dismissed.[77]

  Mr. Batman also objects that Class Counsel failed to file the detailed application "within

a reasonable and adequate amount of time." Again, Mr. Batman is incorrect. Class Counsel filed

their request for attorneys' fees 14 days before the due date for objections – meeting the more

stringent requirements of certain Circuits, and exceeded the requirements in the Second Circuit.[78]

The public website addressing this settlement made these papers available to all Eligible

Consumers.[79] And the approved notice put all Eligible Consumers on notice that the States and

the Class would be seeking attorneys' fees, expenses and payments to the State Attorneys

---

[75] Attorneys' Fees Mot., Oct. 8, 2013, ECF No. 419; Steve W. Berman's Declaration in support of Attorneys' Fees Mot., Oct. 8, 2013, ECF No. 420; Kit A. Pierson's Declaration in support of Attorneys' Fees Mot., Oct. 8, 2013, ECF No. 421.

[76] With even less specificity, Mr. Batman references the payment to the State Attorneys General but does not state if it should be considered excessive or why.

[77] See, e.g., In re Toyota Motor Corp Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig., No. 8:10ML 02151, 2013 U.S. Dist. LEXIS 94485, at *221 (C.D. Cal. June 17, 2013) (dismissing objections to fees that do not provide "expert declaration or any other evidence undermining the Court's conclusions").

[78] See Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp. 618 F.3d 988 (9th Cir. 2010); Cassese v. Williams, No. 11-4333, 2012 U.S. App. LEXIS 23834 (2d Cir. Nov. 20, 2012), cert. denied, sub nom Komar v. Cassese, _U.S._, 133 S. Ct. 2023 (2013) (rejecting a similar objection to that raised in Mercury Interactive).

[79] Schmidt Decl., Exhibit D, ¶ 20.

General.[80]  Mr. Batman's laundry list of other objections – the release is overly broad, the class has not sustained their burden of proof under Rule 23, there are violations of Rule 23(e)(5) – lack any specificity that would allow more of a response than already provided to this Court in the preliminary approval papers, the request for an award of attorneys' fees and the detailed submissions accompanying this request for final approval.

**B.    In the Event of An Appeal, Plaintiffs Will Request the Court to Order Certain Payments Be Made by any Objector-Appellant**

An appeal by either of the two objectors in this case could delay settlement payments for over a year,[81] collectively depriving Eligible Consumers of the use of millions of dollars during that period.  In order to reduce this loss of use, if an appeal is taken, Plaintiffs will request approval to distribute all funds not subject to these objections as soon as practicable. At a minimum, these funds will include the consumer funds under the Previously Approved Settlements.  And, given the objectors' lack of standing to object to the class-related settlements because neither resides in a Settlement Class state, the funds from the Minnesota-only Settlement and those from the Macmillan and Penguin Settlements that are attributable to Eligible Consumers in the Settlement Class States may also be ripe for distribution upon this Courts' approval of the current Settlements. The Penguin and MacMillan settlements specifically provide

---

[80]    Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Macmillan and Penguin Settlement Agreements and of the Consumer Notice and Distribution Plans, Ex. D, June 21, 2013, ECF No. 360-4.

[81]    *See* Statistical Report: Statistics Co rt of Appeals, http://www.ca2.uscourts.gov/Reports/09/Statistics.pdf (last visited Nov. 20, 2013) (16.9 months from notice of appeal to final disposition as of September 30, 2009, the last year for which statistics are available).

this Court the discretion to approve distribution of settlement funds without affecting the terms of the settlement.[82]

Although such a partial distribution will benefit consumers overall, the delay and the need for multiple distributions will cause confusion. Since such confusion will be caused solely by the appeal of one or two baseless objections, Plaintiffs ask the Court order any appellant to pay for supplemental notice to impacted consumers to explain why full distribution has to be delayed. Plaintiffs have incorporated a provision requiring such payment into the proposed final judgment submitted with this motion.

If an appeal is filed, Plaintiffs also intend to request that the Court require the objectors to post a cost or supersedeas bond that will ensure the class is not injured further. Plaintiffs' request for a bond may include the following elements:

**Increased Costs of Distribution**: If the Court grants final approval to the pending Settlements, over $165 million will be available to class members. Allowing for at least partial distribution while an appeal is litigated (or after a motion to dismiss is granted by the Second Circuit) serves the best interests of all consumers. Plaintiffs will request that any objector be required to pay for any additional costs associated with distribution due to an appeal (such as time expended by retailers and by the Settlement Administrator in preparing, activating and

---

[82] Settlement Agreement by and Among Holtzbrinck Publishers, LLC, D/B/A Macmillan and Plaintiff States and Settlement Class at 16-17, June 21, 2013, ECF No. 360-1 ("any order or proceedings relating to the Distribution Plan shall not operate to terminate or cancel the Settlement Agreement or affect the finality of the Court's Final Judgment approving the Settlement Agreement and the settlement terms set forth therein, or any other orders entered pursuant to the Settlement Agreement."); Settlement Agreement by and Among Penguin Group (USA), Inc. and Plaintiff States and Settlement Class at 16 June 21, 2013, ECF No. 360-2 (same).

processing an additional distribution, and all costs related to the extended use of the settlement website and call center).[83]

**Post-judgment interest pursuant to 28 U.S.C. § 1961:** Section 1961 provides that "Interest shall be allowed on any money judgment in a civil case recovered in a district court." Although the Second Circuit has not yet decided whether such interest would apply to a Court-approved settlement,[84] other Courts have applied this provision in the settlement context.[85]

**Sanctions for frivolous appeals, pursuant to FRAP 38:** Mr. Kohn's willingness to repeatedly file and lose his arguments in both the District and Appeals Court and Mr. Batman's general, unsubstantiated and internally inconsistent objections may well be found frivolous by the appeals court.

**Additional damages suffered by Eligible Consumers,** such as loss of a settlement payment because the delay made it impossible to locate an eligible consumer or a current account.

---

[83]   *See, e.g., In re Wal-Mart Wage & Hour Emp. Practices Litig.,* No. 2:06-CV-00225, 2010 U.S. Dist. LEXIS 21466, at *18 (D. Nev. Mar. 8, 2010) ("While it is difficult to calculate with mathematical precision the duration of Objectors' appeal, or the administrative costs and interest costs to the potentially more than 3 million class members, or other costs reasonably incurred under Rule 39 of the Federal Rules of Appellate Procedure, the Court finds the sum of $500,000 per Objector to be reasonable."); *Barnes v. FleetBoston Fin. Corp.,* No. 01-10395, 2006 U.S. Dist. LEXIS 71072, at *8-9 (D. Mass. Aug. 22, 2006) (imposing interest on the settlement for one year as costs); *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* No. 2:01-CV-125, 2003 U.S. Dist. LEXIS 25788 (D. Me. Oct. 7, 2003) (imposing an appeal bond in the amount of $35,000 to cover bank fees from administering the class settlement).

[84]   *Padberg v. Giuliani,* 295 Fed. Appx. 455, 457 (2d Cir. 2008) ("we need not reach the broader issue of whether the federal post judgment interest statute, 28 U.S.C. § 1961(a) applies to court-approved settlements").

[85]   *Rosendin Elec., Inc. v. United Pac. Ins. Co.,* 42 F.3d 1401 (9th Cir. 1994) (remanding case for calculation of post-judgment interest on a Court-approved settlement under 28 U.S.C. § 1961, on a motion to enforce a settlement agreement); *Burke v. Guiney,* 700 F.2d 767, 774 (1st Cir. 1983) (finding plaintiff was entitled to interest upon settlement from date of judgment until date of payment of principal amount, pursuant to 28 U.S.C. § 1961); *Am. Baptist Churches v. Thornburgh,* 760 F. Supp. 796, 811 (N.D. Cal. 1991) (approving a class action settlement agreement, including post judgment interest pursuant to 28 U.S.C. § 1961).

## X.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court:

1.      Find that notice provided by Plaintiffs of the Settlements was fair, adequate, and reasonable and in compliance with due process, Rule 23 and the Court's prior orders;

2.      Grant final approval of the Settlement Agreements and Distribution Plan;

3.      Certify the proposed Class for the purpose of these Settlements;

4.      Authorize disbursement of the payments to Plaintiff States as provided in Paragraph IV.B of the Settlement Agreements;

5.      Authorize payment of service awards to named Plaintiffs;

6.      Enter the Proposed Order and Stipulated Injunctions; and

7.      Authorize Plaintiffs' Counsel to make disbursements to consumers of all consumer funds pursuant to the Distribution Plan, or, alternatively,  in the event of an appeal by one or more objectors, authorize Plaintiffs' Counsel to make disbursement to consumers  of all consumer funds not subject to such appeal(s)  to the extent possible and as soon as practicable pursuant to the Distribution Plan  and make additional disbursements to consumers if and when funds subject to such appeal(s) become available.

A Proposed Final Judgment for the Court's consideration is attached hereto as Exhibit L.

DATED: November 21, 2013                Respectfully submitted,

**STATE OF TEXAS**
GREG ABBOTT, ATTORNEY GENERAL

DANIEL HODGE
First Assistant Attorney General
JOHN B. SCOTT
Deputy Attorney General for Civil Litigation
JOHN T. PRUD'HOMME
Chief, Consumer Protection Division
KIM VAN WINKLE
Section Chief, Antitrust Section
Consumer Protection Division

By _Rebecca Fisher_____
      REBECCA FISHER (*Pro Hac Vice*)

Senior Assistant Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Phone (512) 463-1265
Rebecca.Fisher@texasattorneygeneral.gov

*Attorneys For The State of Texas*
*Liaison Counsel For Plaintiff States*

**STATE OF CONNECTICUT**
GEORGE JEPSEN, ATTORNEY GENERAL

MICHAEL E. COLE
Chief, Antitrust Department
W. Joseph Nielsen

By _____
        GARY M. BECKER (GB 8259)

Assistant Attorney General
55 Elm Street
Hartford, CT 06106
PH: (860) 808-5040
Gary.Becker@ct.gov

*Attorneys For The State of Connecticut*
*Liaison Counsel For Plaintiff States*

**STATE OF OHIO**
R. MICHAEL DEWINE,
ATTORNEY GENERAL

By _____
        EDWARD OLSZEWSKI (*Pro Hac Vice*)

Assistant Attorney General, Antitrust Section
Office of the Ohio Attorney General
150 E. Gay St. – 23rd Floor
Columbus, OH 43215
Tel: (614) 466-4328
edward.olszewski@ohioattorneygeneral.gov

*Attorneys For The State of Ohio*
*Liaison Counsel For Plaintiff States*

Case 1:12-cv-03394-DLC  Document 347  Filed 11/21/13  Page 41 of 43

**HAGENS BERMAN SOBOL SHAPIRO LLP**
JEFF D. FRIEDMAN
SHANA E. SCARLETT

By

          STEVE W. BERMAN (*Pro Hac Vice*)
715 Hearst Ave., Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
steve@hbsslaw.com
jefff@hbsslaw.com
shanas@hbsslaw.com

Kit A. Pierson (*Pro Hac Vice*)
Jeffrey Dubner (4974341)
COHEN, MILSTEIN, SELLERS & TOLL, PLLC
1100 New York Avenue, N.W.
South Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
KPierson@cohenmilstein.com
jdubner@cohenmilstein.com

*Attorneys For Settlement Class*

- 34 -

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2013, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

REBECCA FISHER

## EXHIBITS

Exhibit A          Proposed Order and Stipulated Injunction for Macmillan

Exhibit B          Proposed Order and Stipulated Injunction for Penguin

Exhibit C          Declaration of Katherine Kinsella for Kinsella Media, LLC.

Exhibit D          Declaration of Kim Schmidt for Rust Consulting

Exhibit E          Declaration of Charles S. Wright for Amazon.com

Exhibit F          Declaration of Bradley A. Feuer for Barnes & Noble, Inc.

Exhibit G          Declaration of Daniel Quinn for Apple, Inc.

Exhibit H          Declaration of Nicolas Catros for Kobo, Inc.

Exhibit I          Declaration of Natascha Helbig for Sony Electronics, Inc.

Exhibit J          Declaration of Stella Loh for Google, Inc.

Exhibit K          Consumer Distribution Plan

Exhibit L          Proposed Final Judgment