**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | No.  11-md-02293 (DLC)<br>ECF Case |
| This Document Relates to:<br><br>ALL ACTIONS | CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF**
**CLASS PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ............................................................................. 1

II.     PROCEDURAL HISTORY.............................................................................. 4

III.    STATEMENT OF FACTS .............................................................................. 6

IV.     LEGAL STANDARDS .................................................................................. 6

        A.      Summary Judgment Standard ............................................................... 6

        B.      Collateral Estoppel Standard............................................................... 8

V.      Class Plaintiffs Are Entitled to Summary Judgment or Partial Summary Judgment ....... 10

        A.      Collateral Estoppel Applies to Many of the Factual and Legal Findings in
                the Government Case and May Be Applied Fairly Against Apple...................... 10

        B.      There Is No Genuine Issue of Material Fact as to Whether Apple Violated
                Section One of the Sherman Act........................................................... 14

        C.      There Is No Genuine Issue of Material Fact Whether Apple's Antitrust
                Violation Caused Antitrust Injury to Plaintiffs...................................... 14

        D.      If the Court Grants Plaintiffs' Motion to Exclude the Testimony of Mr.
                Orszag, in Whole or in Part, Apple Has Either Failed to Produce Any
                Admissible Evidence Rebutting Dr. Noll's Damage Estimate or Conceded
                That the Average Agency Effect Was No Less Than 14.9 Percent ..................... 21

                1.      There is no admissible evidence in the record allowing the jury to
                        find damages of any amount other than $280,254,374. ......................... 21

                2.      At a minimum, there is no genuine dispute that damages are at
                        least $231,381,037.90, the amount calculated by Mr. Orszag. ................ 24

VI.     CONCLUSION.............................................................................................. 27

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*AEP Energy Serv. Gas Hldg. Co. v. Bank of Am., N.A.,*
    626 F.3d 699 (2d Cir. 2010)...........................................................................24

*AEP Energy Serv. Gas Hldg. Co. v. Bank of Am., N.A.,*
    2008 WL 3338203 (S.D.N.Y. Aug. 11, 2008 ........................................................24

*Ali v. Mukasey,*
    529 F.3d 478 (2d Cir. 2008)..............................................................................8

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986).........................................................................................6

*Bear, Stearns & Co. v. 1109580 Ontario, Inc.,*
    409 F.3d 87 (2d Cir. 2005)...............................................................8, 9, 11, 12

*Berk v. St. Vincent's Hosp. & Med. Ctr.,*
    380 F. Supp. 2d 334 (S.D.N.Y. 2005)...................................................................7

*Bogosian v. Gulf Oil Corp.*
    561 F.2d 434, 455 (3d Cir. 1977)...........................................................15, 18, 20

*Brown v. Cnty. of Nassau,*
    736 F. Supp. 2d 602 (E.D.N.Y. 2010) ...............................................................24

*Cent. States, Se. & Sw. Areas Pension & Health & Welfare Funds v. McNamara Motor*
    *Express, Inc.,*
    503 F. Supp. 96 (W.D. Mich. 1980) ............................................................8, 24

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426, 1433 (2013)...........................................................................22

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
    502 F.3d 91 (2d Cir. 2007).........................................................................1, 10

*Courtney v. LaSalle Univ.,*
    124 F.3d 499 (3d Cir. 1997)..........................................................................9, 13

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 . . . (1993)...........................................................4, 19, 20, 23

*Discover Fin. Servs. v. Visa U.S.A. Inc.,*
    598 F. Supp. 2d 394 (S.D.N.Y. 2008)............................................................ *passim*

-ii-

*Eastman Kodak Co. v. Image Technical Serv., Inc.*,
   504 U.S. 451 (1992) ........................................................................................7

*Emich Motors Corp. v. Gen. Motors Corp.*,
   340 U.S. 558 (1951) ........................................................................................9

*Freeland v. AT&T Corp.*,
   238 F.R.D. 130 (S.D.N.Y. 2006) ..........................................................15, 17

*GAF Corp. v. Eastman Kodak Co.*,
   519 F. Supp. 1203 (S.D.N.Y. 1981) ........................................11, 14, 17

*Greene v. United States*,
   79 F.3d 1348 (2d Cir. 1996) ........................................................................12

*Guardian Music Corp. v. James W. Guercio Enters., Inc.*,
   459 F. Supp. 2d 216 (S.D.N.Y. 2006) ......................................................7

*Holcomb v. Iona Coll.*,
   521 F.3d 130 (2d Cir. 2008) ........................................................................7

*Hoult v. Hoult*,
   157 F.3d 29 (1st Cir. 1998) ..................................................................9, 12

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
   602 F.3d 237 (3d Cir. 2010) ......................................................................19

*In re Alcoholic Beverages Litig.*,
   95 F.R.D. 321 (E.D.N.Y. 1982) ................................................................15

*In re Auction Houses Antitrust Litig.*,
   193 F.R.D. 162 (S.D.N.Y. 2000) ..............................................................15

*In re Bressman*,
   327 F.3d 229 (3d Cir. 2003) ........................................................................7

*In re Carbon Black Antitrust Litig.*,
   2005 WL 102966 (D. Mass. Jan. 18, 2005) ............................................15

*In re Cendant Corp. Sec. Litig.*,
   109 F. Supp. 2d 225 (D.N.J. 2000) ..........................................................25

*In re Chocolate Confectionary Antitrust Litig.*,
   289 F.R.D. 200 (M.D. Pa. 2012) ..............................................................22

*In re Domestic Air Transp. Antitrust Litig.*,
   137 F.R.D. 677 (N.D. Ga. 1991) ..............................................................21

-i-

*In re Fosamax Prods. Liab. Litig.*,
No. 06-md-1789, 2013 WL 174416 (S.D.N.Y. Jan. 15, 2013)................................................24

*In re Indus. Diamonds Antitrust Litig.*,
167 F.R.D. 374 (S.D.N.Y. 1996) .........................................................................................15

*In re Ivan Boesky Secs. Litig.*,
848 F. Supp. 1119 (S.D.N.Y. 1994)......................................................................................18

*In re NASDAQ Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) .........................................................................................16

*In re Polyester Staple Antitrust Litig.*,
2007 WL 2111380 (W.D.N.C. July 19, 2007)......................................................................15

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ...............................................................................................15

*In re Urethane Antitrust Litig.*,
2013 WL 2097346 (D. Kan. May 15, 2013) .........................................................................16

*In re Workers' Comp.*,
130 F.R.D. 99 (D. Minn. 1990)............................................................................................15

*Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*,
566 F. Supp. 296 (D.D.C. 1983) ..........................................................................................18

*Johnson v. Watkins*,
101 F.3d 792 (2d Cir. 1996).................................................................................................2

*Jolly v. Pittore*,
1993 WL 277284 (S.D.N.Y. July 16, 1993) .........................................................................7

*Kaempfer v. Lieb*,
2006 WL 508089 (D. Colo. Mar. 1, 2006) ......................................................................8, 25

*Kairys v. I.N.S.*,
981 F.2d 937 (7th Cir. 1992) ...............................................................................................17

*L.A. Unified School Dist. v. L.A. Branch of the NAACP*,
714 F.2d 935 (9th Cir. 1983) ...............................................................................................17

*Law v. Nat'l Collegiate Athletic Ass'n*,
185 F.R.D. 324 (D. Kan. 1999)............................................................................................16

*Lummus Co. v. Commonwealth Oil Ref. Co.*,
297 F.2d 80 (2d Cir. 1961)...................................................................................................10

-ii-

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ..................................................................................................7

*McDonald v. Batopilas Mining Co.*,
  8 F.R.D. 226 (E.D.N.Y. 1948) ................................................................................25

*Montana v. United States*,
  440 U.S. 147 (1979) ................................................................................................14

*MSF Holding Ltd. v. Fiduciary Trust Co. Int'l*,
  435 F. Supp. 2d 285 (S.D.N.Y. 2006) .......................................................................6

*O'Diah v. New York City*,
  2002 WL 1941179 (S.D.N.Y. Aug. 21, 2002) ........................................................10

*Oldham v. Pritchett*,
  599 F.2d 274 (8th Cir. 1979) ....................................................................................9

*Oneida Tribe of Indians of Wisc. v. AGB Props., Inc.*,
  2002 WL 31005165 (N.D.N.Y. Sept. 5, 2002) .........................................................9

*Parklane Hosiery Co., Inc. v. Shore*,
  439 U.S. 322 (1979) .................................................................................2, 9, 10, 11

*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2d Cir. 1997) ..........................................................................7, 19, 20

*Raytech Corp. v. White*,
  54 F.3d 187 (3d Cir. 1995) ......................................................................................12

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
  68 F.3d 1478 (2d Cir. 1995) ....................................................................................10

*Seijas v. Rep. of Arg.*,
  606 F.3d 53 (2d Cir. 2010) ......................................................................................22

*Sorano v. Taggart*,
  642 F. Supp. 2d 45 (S.D.N.Y. 2009) ..................................................................7, 23

*State v. Cedar Park Concrete Corp.*,
  1997 WL 306909 (S.D.N.Y. Mar. 21, 1997) ..............................................8, 18, 19

*United States v. Apple Inc.*,
  2013 U.S. Dist. LEXIS 96424 (S.D.N.Y. July 10, 2013) ............................... *passim*

*United States v. Int'l Bhd. of Teamsters*,
  905 F.2d 610 (2d Cir. 1990) ....................................................................................10

-iii-

*Webster v. Offshore Food Serv., Inc.*,
    434 F.2d 1191 (5th Cir. 1970) ........................................................................................24

*Wickham Contracting Co., Inc. v. Bd. of Educ. of City of N.Y.*,
    715 F.2d 21 (2d Cir. 1983)..............................................................................................9

*Williams v. Cnty. of Orange*,
    2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005) ........................................................24

## FEDERAL STATUTES

15 U.S.C. § 4 ...........................................................................................................................11

15 U.S.C. § 16(a) ....................................................................................................................11

## FEDERAL RULES

Fed. R. Civ. P. 16(c)(2).................................................................................................4, 7, 14

Fed. R. Civ. P. 26(a)(2)(B)(i)..............................................................................................24

Fed. R. Civ. P. 56...........................................................................................4, 6, 7, 14, 24

## SECONDARY AUTHORITIES

18 Wright, Miller & Cooper, Federal Practice and Procedure § 4417 n.2 (2d ed.) .............8, 12, 13

18 James Wm. Moore, et. al., Moore's Fed. Practice § 132.02 (3d ed. 1997) ...............................9

Class Plaintiffs seek summary adjudication of each of the three elements of their antitrust claims against Apple Inc. ("Apple").  In its July 10, 2013 Opinion and Order (the "July 10 Order") in *United States v. Apple Inc.* and *The State of Texas v. Penguin Group (USA), Inc.* (the "Government Case"), this Court found that Defendant Apple violated Section One of the Sherman Act.  Apple conspired with the five Publisher Defendants to raise retail e-book prices and eliminate retail price competition in the United States e-book market.[1] Class Plaintiffs in the instant parallel action allege the same conspiracy, with the same result: supra-competitive retail e-book prices causing harm to e-book purchasers. Because the legal issues and facts in dispute actually litigated and decided against Apple in the Government Case conclusively prove the first two elements of Class Plaintiffs' claims, Plaintiffs respectfully request that the Court apply collateral estoppel to grant summary judgment and preclude Apple from re-litigating this Court's legal judgment and the factual findings the Court views as necessary in reaching its conclusions. And because the July 10 Order and admissible evidence at trial demonstrate that there is no genuine issue of material fact as to the amount of damages, Class Plaintiffs respectfully request that the Court enter summary judgment in favor of Class Plaintiffs on their entire claim against Apple.

## I.      SUMMARY OF ARGUMENT

Class Plaintiffs must demonstrate three elements to prove their antitrust claim:  (1) Apple violated Section One of the Sherman Act; (2) class members suffered some injury as a result of the violation; and (3) the amount of damages sustained by purchasers of Publisher Defendants' e-books.[2] This case presents a textbook case for nonmutual offensive collateral estoppel to be

---

[1] *United States v. Apple Inc.*, Nos. 12-cv-2826 & 12-cv-3394, 2013 U.S. Dist. LEXIS 96424 (S.D.N.Y. July 10, 2013).

[2] *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007). All internal citations and quotations omitted and all emphasis added, unless otherwise noted.

applied to the first two elements of Class Plaintiffs' claim.[3]  The three cases pending before this Court allege the same conspiracy, by the same conspirators, with the same goals, methods, and effects. The Class suit raises issues identical to those already fully litigated and decided against Apple in the Government Case. Re-litigation of those issues only would waste the time and resources of this Court and the parties, as well as create the risk of inconsistent outcomes that could reflect negatively on the judicial system.[4]

As to the first element of the Class Plaintiffs' claims, the July 10 Order established "Apple conspired to restrain trade in violation of Section 1 of the Sherman Act."[5]  Accordingly, the Court should estop Apple from re-litigating any legal conclusion or factual findings necessarily decided and actually litigated, and grant Class Plaintiffs' summary judgment on this element.

As to the second element of Class Plaintiffs' claims – injury caused to class members – the Court made extensive factual findings that the conspiracy caused widespread antitrust injury to e-book consumers – *i.e.*, class members. The Court found that the conspirators raised the Publisher Defendants' e-book prices "across the board," imposing "large and essentially simultaneous" price increases on new releases, bestselling e-books, and backlist e-books, creating "an industry-wide shift in price upward."[6] The facts establishing the conspiracy's anticompetitive effects were central to the litigation.  And one of Apple's experts conceded the conspiracy caused widespread price increases for the Publisher Defendant e-books during a two-year period after the onset of agency pricing (calculating in the amount of seventeen percent 17%

---

[3] *See generally Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326-32 (1979).

[4] *See e.g.*, *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996).

[5] *Apple*, 2013 U.S. Dist. LEXIS 96424, at *185-*186; Class Plaintiffs' Statement of Undisputed Facts, ¶¶ 75, 77, concurrently filed herewith.

[6] *Apple*, 2013 U.S. Dist. LEXIS 96424, at *111, *138, *161; Statement of Undisputed Facts, ¶¶ 42, 46, 47.

over the first six months ).[7]

The testimony and factual findings about the effect of the conspiracy on industry prices were central to the Court's determination that the conspiracy existed and Apple's conduct violated the rule of reason. The Government carried its burden to show the agreements were anticompetitive.  The Government proved injury to competition by demonstrating the conduct's impact on consumers in the form of higher industry-wide e-book prices the Publisher Defendants charged. As such, the Court's findings of supra-competitive e-book prices were necessary and inextricably bound to the Court's determination of the anticompetitive effects that the conspiracy caused to consumers. Courts may use rulings predicated on injury to a particular class or entity to establish impact on that class or entity in subsequent litigation.[8] Thus, Apple is not entitled to contest this Court's findings that the conspiracy caused widespread price increases by re-litigating the underlying facts (including the admissions by its own expert, Dr. Burtis). Moreover, to the extent Apple tries to create a material issue of fact as to the element of antitrust impact to avoid the class from being certified, Class Plaintiffs have strongly reinforced this Court's findings of widespread increased prices through additional evidence, namely Dr. Roger Noll's hedonic econometric regression model.  Dr. Noll shows more than ninety-nine percent of the Defendant Publishers' e-book sales were sold at supra-competitive levels during the class period.[9]  The full record unequivocally demonstrates that no reasonable juror could find that the Class did not suffer widespread injury from the conspiracy.

With respect to the third element, the amount of damages, Class Plaintiffs predicate their

---

[7] Ex.16 at 2235:7-14 (June 18, 2013 Trial Tr.) and Ex.1 at 2298:21-24 (June 19, 2013 Trial Tr.), to the Declaration of Steve W. Berman in Support of Class Plaintiffs' Motion for Summary Judgment, and Statement of Undisputed Facts ("Berman Declaration"), concurrently filed herewith. All exhibit references hereto are to the Berman Declaration, unless otherwise stated.

[8] *See sources cited infra* pp. 18-19 & nn. 91-94.

[9] *See* Reply Declaration of Roger G. Noll ("Noll Reply Report") at 6, filed Under Seal, Dec. 18, 2013.

request for summary judgment on the record evidence, Class Plaintiffs' *Daubert* motions, and Apple's experts' admissions. If the Court grants Class Plaintiffs' *Daubert* motions, in whole or in part, Apple will not be able to meet its burden to present admissible evidence to demonstrate any material issue of disputed fact exists.  If Apple's expert testimony is excluded *in toto*, then Dr. Noll's testimony would be the only admissible evidence on damages and summary judgment in the amount of $280,254,374 would be appropriate. Alternatively, if the Court were to limit Mr. Orszag to testify only to his specific criticisms of Dr. Noll's control group (*i.e.*, too many publishers, covering too long a time period), partial summary judgment or an order limiting the damages issues for trial would be appropriate. In this circumstance, Apple's expert, Dr. Burtis, testified to calculating a 17% overcharge caused by the conspiracy.  And Mr. Orszag, Apple's sole expert witness who proposed a calculation of damages, estimated an average agency effect of 14.9%, equaling damages of $231,381,037.90. Thus, there would be no dispute that the amount of overcharges attributable to the conspiracy is at least that amount. In that case, pursuant to its authority under Federal Rules of Civil Procedure 56(g) and 16(c)(2), the Court could order that there is no controversy that the amount of overcharges is between $231,381,037.90 (Mr. Orszag's estimate) and $280,254,374 (Dr. Noll's estimate) and instruct the jury accordingly.

## II.    PROCEDURAL HISTORY

During a June 22, 2012 teleconference, Apple repeatedly stated its desire for "a DOJ-only case" to occur prior to a class trial.[10] Apple's counsel observed that "the DOJ-only case will have tremendous impact on follow-on litigation. . . . We would not anticipate the need for second trials," specifically referring to the class action and acknowledging that "a ruling by your Honor

---

[10] Ex. 2 at 21:9-10, 22:22-23, 25:9, 27:16-17, 59:11-13, 59:24-60:1, 60:25-6 (June 22, 2012 Hrg. Tr.).

. . . would drive the rest of the result."[11] Noting Apple's insistence on a DOJ-only case, the Court observed that "[i]f there is one theme that Apple has it is early trial and bench trial."[12] Penguin and Macmillan likewise suggested the parties proceed to a bench trial in the DOJ case, with Macmillan echoing Apple's expectation that "we will all find a way, based on the results of the bench trial, to dispose of the remaining claims that are still out there."[13] Shortly after the conference, the States expressed that they too were amenable to a government-only bench trial.[14]

The parties thereafter filed a Revised Joint Initial Report proposing a schedule consistent with Defendants' and the Department of Justice's stated interest in a June 2013 bench trial.[15] By September 10, 2012, the Court had determined that the DOJ action would proceed to trial in June 2013, with the States possibly joining that trial.[16]

The Government Case then proceeded as planned, with the Court presiding over a three-week joint bench trial in the DOJ and State actions against Apple in June 2013.[17] Among other evidence, Apple proffered the testimony of three expert witnesses and ten fact witnesses, and cross-examined each of the Government plaintiffs' witnesses.[18] The parties submitted 1300 exhibits, including nearly 450 pages of written direct testimony. At the conclusion of the trial, the Court published the July 10 Order, making detailed findings of fact and conclusions of law that supported its ultimate conclusion: "that the Publisher Defendants conspired with each other

---

[11] *Id.* at 22:22-23:2; *see also id.* at 59:24-60:15.

[12] *Id.* at 61:19-20; *see also id.* at 70:23-24 ("I have heard a desire by the defendants and Department of Justice for a June bench trial.").

[13] *Id.* at 66:24-67:2 (Penguin), 67:23-68:3 (Macmillan).

[14] Ex. 3 at 1 (June 26, 2012 Ltr. of Gabriel R. Gervey & Gary Becker).

[15] Revised Joint Initial Report,  July 6, 2012, ECF. No. 193-1.

[16] Ex. 4 at 21:18-22 (Sept. 10, 2012 Hrg. Tr.).

[17] Penguin and Macmillan settled with all parties prior to the trial.

[18] *Apple*, 2013 U.S. Dist. LEXIS 96424, at *6-*8.

to eliminate retail price competition in order to raise e-book prices, and that Apple played a

central role in facilitating and executing that conspiracy," with the consequence that "the prices

in the nascent e-book industry shifted upward, in some cases 50% or more for an individual

title."[19]

## III.   STATEMENT OF FACTS

Class Plaintiffs' Statement of Undisputed Facts sets out material facts relevant to this

motion.  Those facts are primarily – but not exclusively – the findings from, and necessary to, the

Court's July 10 Order.

## IV.   LEGAL STANDARDS

### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the

movant "shows that there is no genuine dispute as to any material fact and that the movant is

entitled to judgment as a matter of law." A material fact is one that "might affect the outcome of

the suit under the governing law," and a genuine issue exists as to a material fact when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."[20] This

standard "is designed to 'discover whether one side has no real support for its version of the

facts,' and thereby to avoid unnecessary trials."[21] Thus, "the mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment . . . ."[22] Although the facts must be viewed "in the light most favorable" to

---

[19] *Id.*, at *8-*9, *12.

[20] Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 258 (1986).

[21] *MSF Holding Ltd. v. Fiduciary Trust Co. Int'l*, 435 F. Supp. 2d 285, 292 (S.D.N.Y. 2006), *aff'd*, 235 Fed. Appx. 827 (2d Cir. 2007).

[22] *Liberty Lobby*, 477 U.S. at 247-48 (emphasis in original); *see also id.* at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient . . . .").

the non-moving party,[23] only ***reasonable*** inferences must be drawn in favor of the non-movant; the non-movant is not entitled to unreasonable inferences.[24] Additionally, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."[25]

Where the moving party bears the burden of proof at trial, "that party may discharge its burden of production by 'support[ing] its motion with credible evidence – using any of the materials specified in Rule 56(c) – that would entitle it to a directed verdict if not controverted at trial.'"[26] If the moving party brings forth such evidence, the burden of production shifts to the non-moving party, which must "either request additional time for discovery, or submit affirmative evidence that raises a genuine issue of material fact for trial."[27] Thus, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."[28]

Where a Court does not order summary judgment over the entirety of a claim, it may "enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case."[29] "The purpose of this rule is to establish plaintiffs' rights to an undisputed portion of amounts claimed, leaving the

---

[23] *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008*); see also Eastman Kodak Co. v. Image Technical Serv., Inc.*, 504 U.S. 451, 456 (1992).

[24] *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 345 (S.D.N.Y. 2005); *see also, e.g.*, *Jolly v. Pittore*, Nos. 92-cv-3595 & 92-cv-5244, 1993 WL 277284, at *2 (S.D.N.Y. July 16, 1993) ("[T]he non-movant cannot create a factual dispute out of whole cloth and unreasonable inferences need not be drawn in its favor.").

[25] *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).

[26] *Sorano v. Taggart*, 642 F. Supp. 2d 45, 50 (S.D.N.Y. 2009) (alteration in original); *accord, e.g., In re Bressman*, 327 F.3d 229, 237-38 (3d Cir. 2003) (collecting cases); *Guardian Music Corp. v. James W. Guercio Enters., Inc.*, 459 F. Supp. 2d 216, 221 (S.D.N.Y. 2006), *aff'd*, 271 Fed. Appx. 119 (2d Cir. 2008).

[27] *Sorano*, 642 F. Supp. 2d at 50.

[28] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986) (footnote omitted).

[29] Fed. R. Civ. P. 56(g); *see also* Fed. R. Civ. P. 16(c)(2) ("At any pretrial conference, the court may consider and take appropriate action on the following matters: (A) formulating and simplifying the issues, and eliminating frivolous claims or defenses; . . . (D) avoiding unnecessary proof and cumulative evidence . . . ; (P) facilitating in other ways the just, speedy, and inexpensive disposition of the action.").

-7-

disputed balances of any such claims for trial."[30] "In the order, the court may indicate the extent to which the amount of damages or other relief is not in controversy based on the pleadings as well as the documentary evidence and testimony presented at the hearing on the summary judgment motion."[31]

      B.     **Collateral Estoppel Standard**

      Collateral estoppel can be used to establish a litigant's right to summary judgment when some or all of the elements of a plaintiff's case can be established by findings actually and necessarily determined in a previous proceeding.[32] An issue may be precluded from being re-litigated when:

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.[33]

Both factual issues and legal issues can be subject to collateral estoppel.[34] Similarly, a legal conclusion in the subsequent proceeding can be established by the facts found in the prior proceeding, even if the legal conclusion itself was not at issue in the first proceeding.[35] For

---

[30] *Cent. States, Se. & Sw. Areas Pension & Health & Welfare Funds v. McNamara Motor Express, Inc.*, 503 F. Supp. 96, 100 (W.D. Mich. 1980).

[31] *Kaempfer v. Lieb*, No. 04-cv-1391, 2006 WL 508089, at *6 (D. Colo. Mar. 1, 2006) (citing 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2737 (3d ed.1998)).

[32] *See e.g.*, *Discover Fin. Servs. v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394 (S.D.N.Y. 2008).

[33] *Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005).

[34] *See, e.g.*, *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) ("The 'fundamental notion' of the doctrine of collateral estoppel, or issue preclusion, 'is that an *issue of law or fact* actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies.'") (emphasis in original); *see generally* 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4417 n.2 (2d ed.) ("An issue is a single, certain and material point arising out of the allegations and contentions of the parties. . . . It may concern only the existence or non-existence of certain facts, or it may concern the legal significance of those facts. . . . If the issues are 'merely evidentiary', they need only deal with the same past events to be considered identical.") (alteration in original).

[35] *See, e.g.*, *State v. Cedar Park Concrete Corp.*, No. 85-cv-1887, 1997 WL 306909, at *7 (S.D.N.Y. Mar. 21, 1997) *aff'd in rel. part sub nom. New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82 (2d Cir. 2000) ("Collateral estoppel applies even when the subsequent suit is based upon a different cause of action or legal theory."); *Discover*

collateral estoppel to apply to a given issue, that issue must be "necessary and essential" and "material" to the prior ruling;[36] that is, it must be "central to the route that led the factfinder to the judgment reached, even if the result 'could have been achieved by a different, shorter and more efficient route.'"[37] "In discovering what issues were determined by the judgment in a prior action, the court in the second action is free to go beyond the judgment roll, and may examine the pleadings and the evidence in the prior action."[38] This is especially the case where the judge is the same in both proceedings, as such a fact-finder is "in a particularly good position to determine what was actually litigated in the [prior] proceeding, and whether the [defendant] had a full and fair opportunity to assert" disputed issues.[39]

For "a litigant who was not a party to a prior judgment" to use that judgment "'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding,"[40] application of collateral estoppel must be "fair."[41] In analyzing fairness, courts consider whether the plaintiff had the opportunity to join the prior action, whether there are

_____

*Fin. Servs.*, 598 F. Supp. 2d at 400; 18 James Wm. Moore, et. al., Moore's Fed. Practice § 132.02(2)(j)(i) (3d ed. 1997) ("An issue in a prior adjudication should be found to be identical with an issue in a subsequent adjudication, if based on the procedural, factual, and legal contexts of the two actions, the substance of the issues is the same. No two issues are ever completely identical in every procedural, factual, and legal respect.").

[36] *Wickham Contracting Co., Inc. v. Bd. of Educ. of City of N.Y.*, 715 F.2d 21, 28 (2d Cir. 1983).

[37] *Hoult v. Hoult*, 157 F.3d 29, 32 (1st Cir. 1998); *see also, e.g.*, *Courtney v. LaSalle Univ.*, 124 F.3d 499, 504 (3d Cir. 1997) ("We have previously rejected the 'notion that an issue is not essential if, under some hypothetical resolution of the dispute, the issue could have been avoided.'"); *Oneida Tribe of Indians of Wisc. v. AGB Props., Inc.*, No. 02-cv-233, 2002 WL 31005165, at *7 (N.D.N.Y. Sept. 5, 2002). ("It is well established in the Second Circuit that for purposes of collateral estoppel an issue need not be the only determinative factor in a decision in order for it to be considered 'necessary' to that decision."); 18 Moore's Fed. Practice § 132.02(4)(b) ("Although a trial judge's findings must be made and reviewed in light of the applicable evidentiary burden, a trial judge may properly make findings that are more definitive than those couched only in terms of the applicable evidentiary standard.") (footnote omitted).

[38] 18 Moore's Fed. Practice § 132.03(4)(i); *see also, e.g.*, *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 571-72 (1951).

[39] *Oldham v. Pritchett*, 599 F.2d 274, 281 (8th Cir. 1979).

[40] *Parklane Hosiery*, 439 U.S. at 326.

[41] *Bear, Stearns*, 409 F.3d at 91.

inconsistent verdicts in previous cases against the defendant, whether the defendant had the same

procedural opportunities in the prior case, and whether the defendant had incentive to litigate the

prior case.[42] "The district court is generally accorded wide discretion to determine when

offensive collateral estoppel should be applied."[43]

## V.     CLASS PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

Class Plaintiffs must prove three elements to succeed on their claim: "(1) a violation of

antitrust law; (2) injury and causation; and (3) damages."[44]  Summary judgment is appropriate as

to each element here.

### A.     Collateral Estoppel Applies to Many of the Factual and Legal Findings in the Government Case and May Be Applied Fairly Against Apple

Apple concedes that offensive collateral estoppel is appropriate in this case as a general

matter.[45] This is correct, because the liability judgment is final for purposes of collateral

estoppel,[46] and the fairness inquiry of *Parklane Hosiery* is readily satisfied here.[47] First, Apple

---

[42] *See, e.g.*, *Parklane Hosiery*, 439 U.S. at 331-32.

[43] *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir. 1995); *accord Parklane Hosiery*, 439 U.S. at 331.

[44] *Cordes*, 502 F.3d at 105.

[45] *See, e.g.*, Ex. 5 at 13:19-14:2 (Aug. 9, 2013 Conf. Tr.) (The Court: "[A]re you disputing that the principle of collateral estoppel will apply to the class?" Mr. Snyder: "Only to those findings that are closely linked to elements of the government's claim. And the Court could, your Honor, for example based on the Court's per se violation ruling with respect to the class, could give collateral estoppel effect to its finding that Apple participated in, and facilitated, a horizontal price fixing conspiracy."); *id.* at 15:19-20 ("Our position is not that there would be zero collateral estoppel effect."); Ex. 2 (June 22, 2012 Conf. Tr.) at 59:25-60:15 (Mr. Floyd: "[W]e believe if we have a DOJ trial . . . that the result of that trial would be that there would be a way to resolve the other matters without the need for a second trial, that there are provisions in the rules, obviously for collateral estoppel, prima facie case."). *But see* Ex. 6 at 8 (Aug. 2, 2013 Defendant Apple Inc. Scheduling Proposal) ("Apple disagrees that the Court's findings may be used as collateral estoppel to establish liability in the class action.").

[46] *See, e.g.*, *United States v. Int'l Bhd. of Teamsters*, 905 F.2d 610, 621 (2d Cir. 1990) ("[T]he pendency of a[n] . . . appeal generally 'does not deprive a judgment of its preclusive effect'"; *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961) ("'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."); *O'Diah v. New York City*, No. 02-cv-274, 2002 WL 1941179, at *4 (S.D.N.Y. Aug. 21, 2002) ("[F]inality for purposes of *res judicata* is generally the same as that required for appealability under the final judgment rule.").

insisted on an early bench trial in the Government Case and asserted that class certification

before the June trial would potentially interfere with the statutory requirement that the

Department of Justice's suit "proceed, as soon as may be, to the hearing and determination of the

case."[48] Second, there exists no inconsistent ruling in another proceeding. Third, Apple had the

same procedural opportunities in the Government Case that it would have in this case.[49] Fourth,

Apple had every incentive to, and did fully, litigate its liability in the Government Case.[50]

Moreover, Apple explicitly acknowledged that the Government Case would have an estoppel

effect in the class action and relied on that fact in its successful request for an aggressive

schedule for the bench trial.[51] "[T]he issues for which [Class Plaintiffs] seek[] preclusion were

fully, fairly, and fiercely contested by [Apple] in the [Government] action, with full knowledge

that the day would come when [Class Plaintiffs] sought to use the [Government] findings to

[their] advantage."[52]

 Thus the only colorable dispute between the parties is **which** findings are suitable for

collateral estoppel under the criteria summarized in *Bear, Stearns*.[53] Class Plaintiffs' Statement

---

[47] *See generally Parklane Hosiery*, 439 U.S. at 330-32; *see also* Ex. 7 at 8 (Oct. 25, 2012 Joint Report) (Defendant Apple requesting to delay class certification until after trial of the Government Case.)

[48] 15 U.S.C. § 4.

[49] That the first proceeding was a bench trial, not a jury trial, has no effect on the propriety of collateral estoppel. *See Parklane Hosiery*, 439 U.S. at 332 n.19 (stating that "the presence or absence of a jury as factfinder is basically neutral" in considering the propriety of nonmutual offensive collateral estoppel); *see generally id.* at 332-37 (rejecting argument that Seventh Amendment bars applying results of bench trial to estop relitigation where party has a jury right).

[50] If the fairness test of *Parklane Hosiery* were in any way unsatisfied, findings that satisfied *Bear, Stearns* would still be entitled to treatment as prima facie evidence. *See* 15 U.S.C. § 16(a).

[51] *See* sources cited *supra* note 45.

[52] *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1217-18 (S.D.N.Y. 1981); *see id.* at 1216 (finding collateral estoppel appropriate where defendant "knew after [the trial judge] ordered separate trials that an adverse decision in [the first case] might well have collateral estoppel effect in other pending antitrust actions against [the defendant], especially [the second plaintiff's] suit").

[53] *See Bear, Stearns*, 409 F.3d at 91.

of Undisputed Facts identifies a concise group of 66 prior findings that are material to this case and may properly be established through collateral estoppel.[54]

Each of the proffered facts and legal conclusions satisfies *Bear, Stearns*. First, these issues are identical in the two cases, which both allege the same conspiracy consisting of the same conduct by the same parties, with the same goals and effects.[55] Second, each fact or issue was actually litigated and decided in the prior proceeding, given Apple's vigorous litigation of the entire case and the Court's explicit findings of fact. Third, Apple had a full and fair opportunity to litigate the Government Case, as observed by the Court in response to Apple's proposal to stay the class case.[56] Fourth, each legal finding was a core element to the Court's verdict against Apple, and the factual findings spell out the essential factual predicates "central to the route that led the factfinder to the judgment reached."[57] These are not matters that "c[a]me under consideration only collaterally or incidentally," but rather "express findings of fact and conclusions of law" by "a judge" that "show clearly what has been . . . decided."[58]

Apple has suggested it will argue that the ***only*** finding subject to collateral estoppel is the basic conclusion that it participated in a conspiracy that violated the Sherman Act.[59] This

---

[54] Undisputed facts subject to collateral estoppel are marked with an asterisk.  Class Plaintiffs reserve the right to identify additional facts subject to collateral estoppel, if necessary, and present those facts either through motions in limine or other procedure approved by the Court.

[55] *See, e.g., Discover Fin. Serv.*, 598 F. Supp. at 400 (collateral estoppel appropriate where claim "challenges the same conduct challenged by the DOJ in its action" and the "Court specifically held . . . that the harm to competition stemmed directly from competitive harm to [plaintiff in the second case]); *see generally Greene v. United States*, 79 F.3d 1348, 1353 (2d Cir. 1996) (identity requirement satisfied where "there is a substantial overlap in the evidence or argument between the two proceedings; . . . the same rule of law as that relied on in the prior proceeding is invoked in the second proceeding; and . . . the claims in the two proceedings are closely related"); *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995) ("To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be 'substantial.'"); 18 Wright & Miller § 4417.

[56] *See* Ex. 5 at 7:19-10:17 (Aug. 9, 2013 Hr'g Tr.).

[57] *Hoult*, 157 F.3d at 32.

[58] 18 Wright & Miller §§ 4420-21.

[59] *See, e.g.*, Ex. 8 (Sept. 27, 2013 Ltr. from Steve Berman) (during a teleconference with plaintiffs, "Apple conceded only that it would 'probably accept' that it was estopped from contesting its participation in 'some proper

-12-

artificial, cramped view of collateral estoppel is soundly disfavored. Issue preclusion does not attach "only to the narrowest definition of the issue that need be resolved to reach the same result under the same general legal theory"; rather, "[o]nce the issue actually decided has been identified, and it is shown that decision was treated as necessary, there is no need to inquire whether the first case could have been disposed of by resolving some narrower issue."[60] "[T]he final conclusion whether preclusive effect should be given to the subsidiary fact findings should not depend on manipulating the definition of the issues resolved. Common fact issues are involved, and any denial of preclusion as to such issues should rest on other grounds."[61] As to all of the findings identified in Class Plaintiffs' Statement of Undisputed Facts, "relitigation would present matters that clearly bore on ultimate issues that were raised in the first action or that would jeopardize significant interests of justifiable reliance or repose."[62] Thus, "application of collateral estoppel as to these determinations would serve judicial economy while remaining fair to Defendants."[63]

Strong judicial and congressional interests support Class Plaintiffs' proposed application of collateral estoppel here. "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by

---

formulation' of the proven conspiracy. But Apple would not acknowledge any other finding was subject to collateral estoppel.").

[60] 18 Wright & Miller § 4417; *accord id.* at § 4421 ("Courts occasionally have been tempted to speculate that a prior decision could have been rested on narrower grounds than those actually chosen, so that resolution of the broader issues was not necessary to the decision. For the most part, such speculation should be resisted.") (footnote omitted); *Courtney*, 124 F.3d at 504 ("We have previously rejected the '*notion that an issue is not essential if, under some hypothetical resolution of the dispute, the issue could have been avoided.*'").

[61] 18 Wright & Miller § 4417.

[62] *Id.* (footnote omitted).

[63] *Discover Fin. Servs.*, 598 F. Supp. 2d at 400.

-13-

minimizing the possibility of inconsistent decisions."[64] Congress explicitly provided collateral estoppel effect to governmental antitrust proceedings with the "avowed purpose of . . . 'permit[ting] application of the (collateral estoppel) doctrine to eliminate wasteful retrying of issues and reduce the costs of complex antitrust litigation to the courts and parties.'"[65]

Accordingly, Apple should be estopped from re-litigating the facts identified in Class Plaintiffs' Statement of Undisputed Facts and, as discussed below, the legal issues of liability and impact on e-book consumers.[66]

### B.   There Is No Genuine Issue of Material Fact as to Whether Apple Violated Section One of the Sherman Act

The Government Case conclusively established Apple's antitrust violation.  Even Apple does not appear to dispute it.[67] The Court explicitly held that "Apple violated Section 1 of the Sherman Act by conspiring with the Publisher Defendants to eliminate retail price competition and to raise e-book prices."[68] There can be no serious argument that Apple's violation of the Sherman Act was not actually litigated and necessarily decided. Nor is there any doubt that it is the same issue as in Class Plaintiffs' case; Class Plaintiffs allege the same conspiracy among the same Defendants, with the same goals, conduct, and effects.

### C.   There Is No Genuine Issue of Material Fact Whether Apple's Antitrust Violation Caused Antitrust Injury to Plaintiffs

The second element of Class Plaintiffs' case is proof that Apple's antitrust violation

---

[64] *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

[65] *GAF Corp.*, 519 F. Supp. at 1211 (quoting H.R. Rep. No. 96–874, 96th Cong., 2d Sess. at 3 (1980), reprinted in 1980 U.S. Code Cong. & Ad. News 2716, 2752, 2753).

[66] If the Court grants Class Plaintiffs' motion for summary judgment, there will be no need to approve the specific findings in the Statement of Undisputed Facts. However, if the Court denies Class Plaintiffs' motion in any respect, Class Plaintiffs request that the Court enter an appropriate order under Rules 16(c)(2) and 56(g) precluding Apple from contesting those facts at trial.

[67] *See, e.g.*, Ex. 9 at 2 (Sept. 27 Ltr. of Theodore J. Boutros Jr.) ("Apple does not propose to relitigate the core issue of conspiracy in the jury trial phase . . . ."); sources cited *supra* note 45.

[68] *Apple Inc.*, 2013 U.S. Dist. LEXIS 96424, at *131; Statement of Undisputed Facts, ¶ 75.

-14-

caused injury to direct purchasers of Publisher Defendants' e-books. It is axiomatic that "[p]rice fixing conspiracies, at least to the extent they succeed in fixing prices, almost invariably injure everyone who purchases the relevant goods or services."[69] For this reason, "as a general rule, 'an illegal price-fixing scheme presumptively impacts upon all purchasers of a price-fixed product in a conspiratorially affected market.'"[70] It is well established that "[i]f the price structure in the industry is such that nationwide the conspiratorially affected prices at the wholesale level fluctuated within a range which, though different in different regions, was higher in all regions than the range which would have existed in all regions under competitive conditions, it would be clear that all members of the class suffered some damage, notwithstanding that there would be variations among all [plaintiffs] as to the extent of their damage."[71] This element is shown by evidence that "the defendants conspired to interfere with the free-market pricing structure"[72] or, as this Court has put it, engaged in "'deliberate interference with market forces' that '[t]he economic laws of supply and demand . . . in tandem with the tenets of logic' would predict to have a direct marketwide impact on prices."[73]

There is no genuine issue of material fact that Apple's antitrust violation wrought widespread injury.[74] This conclusion is based both on collateral estoppel and because Apple

---

[69] *In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 166 (S.D.N.Y. 2000).

[70] *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 327 (E.D.N.Y. 1982); *see also, e.g., In re Carbon Black Antitrust Litig.*, No. 03-cv-10191, 2005 WL 102966, at *15 (D. Mass. Jan. 18, 2005) ("The defendants claim that [plaintiffs' expert] simply assumed impact here. As already noted, in a price-fixing conspiracy case, that is often a fair assumption."). The presumption is rebuttable. *See, e.g., In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 382 (S.D.N.Y. 1996) ("Antitrust defendants are free to argue, as many of them do, that their cases are exceptional because too many variables enter into setting prices in their industries to permit common proof of impact.").

[71] *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455 (3d Cir. 1977); *see also, e.g., In re Polyester Staple Antitrust Litig.*, No. 03-cv-1516, 2007 WL 2111380, at *19-*20 (W.D.N.C. July 19, 2007) (collecting cases).

[72] *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008).

[73] *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 151 (S.D.N.Y. 2006) (alteration in original); *see also, e.g., In re Workers' Comp.*, 130 F.R.D. 99, 109 (D. Minn. 1990) ("Such a showing may be made on a class basis if the evidence demonstrates that the conspiracy succeeded in increasing prices above the competitive level.").

[74] Plaintiffs need not show that *every* class member who purchased in the market was injured, so long as they

-15-

cannot offer competent or any probative, credible evidence to rebut Dr. Noll's showing of widespread injury. On this record, no reasonable jury could conclude otherwise.

First, the Court's findings and judgment in the Government Case relied in significant part on "the fact that the conspiracy succeeded. It not only succeeded, it did so in record-setting time and at the precise moment that Apple entered the e-book market."[75] That success consisted of "higher prices [that] were not the result of regular market forces but of a scheme in which Apple was a full participant."[76] These price increases were "across the board," "consistently higher than they had been," and "large and essentially simultaneous."[77] They applied to many of Publisher Defendants' "New Releases and [NYT] Bestsellers as well as [many of their] backlist titles."[78] Indeed, the overwhelming majority of new release and bestselling e-books were priced within 1% of the price caps in the agency agreements.[79] Apple's conduct "compel[led] an industry-wide shift in price upward."[80] The Court concisely summed up the "variety of ways" in which "consumers suffered . . . from this scheme to eliminate retail price competition and to raise e-book prices. Some consumers had to pay more for e-books; others bought a cheaper e-book rather than the one they preferred to purchase; and it can be assumed that still others deferred a

---

can show widespread injury to the class. *See, e.g.*, *In re Urethane Antitrust Litig.*, No. 04-md-1616, 2013 WL 2097346, at *5-*6 (D. Kan. May 15, 2013) ("[T]he law does not support [defendant's] argument that plaintiffs' claim fails if they do not show injuries and damages suffered by each and every class member."); *Law v. Nat'l Collegiate Athletic Ass'n*, 185 F.R.D. 324, 333 n.10 (D. Kan. 1999) (instructing the jury "so long as injury to the class was widespread, the fact that certain class members may have escaped injury altogether would not defeat a finding that members of the class suffered injury"); *cf. In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 523 (S.D.N.Y. 1996) ("Even if it could be shown that some individual class members were not injured, class certification, nevertheless, is appropriate where the antitrust violation has caused widespread injury to the class."); *see generally* Class Pls.' Reply in Supp. of Mot. for Class Certification at 3-7 ("Class Cert. Reply Br.").

[75] *Apple*, 2013 U.S. Dist. LEXIS 96424, at *168; Statement of Undisputed Facts, ¶ 36.

[76] *Apple*, 2013 U.S. Dist. LEXIS 96424, at *185; Statement of Undisputed Facts, ¶ 34.

[77] *Apple*, 2013 U.S. Dist. LEXIS 96424, at *111, *74, *139; Statement of Undisputed Facts, ¶¶ 46, 25, 42.

[78] *Apple*, 2013 U.S. Dist. LEXIS 96424, at *111 & *141-42; Statement of Undisputed Facts, ¶¶ 46, 83.

[79] *Apple*, 2013 U.S. Dist. LEXIS 96424, at *109-110; Statement of Undisputed Facts, ¶ 41.

[80] *Apple*, 2013 U.S. Dist. LEXIS 96424, at *161; Statement of Undisputed Facts, ¶ 47.

purchase altogether rather than pay the higher price."[81]

These demonstrable and undisputed price increases and other anti-competitive effects were necessary and essential to the Court's ultimate resolution of the Government Case in at least two respects. First, the Court viewed the conspiracy's success (in the form of supra-competitive market prices) as critical evidence of the conspiracy's existence.[82] Second, the substantial price increases were at the core of the anticompetitive effects discussed in the Court's rule of reason analysis.[83] Moreover, the parties actively and fiercely litigated the conspiracy's effect on retail e-book prices and e-book purchasers, even though Apple could not deny the existence or magnitude of Publisher Defendants' price increases.[84] The Court's findings on this topic are thus suitable for collateral estoppel in this case.

Given these findings, the Government Case conclusively establishes that Apple and its confederates "deliberate[ly] interfere[d] with market forces," producing "a direct marketwide impact on prices."[85] The conspiracy was designed to do exactly that: to eliminate "price competition at the retail level" and "increase significantly the prevailing price point for e-books."[86] And the Court found that it succeeded, producing "an industry-wide shift in price

---

[81] *Apple*, 2013 U.S. Dist. LEXIS 96424, at *114; Statement of Undisputed Facts, ¶ 63.

[82] *See, e.g.*, *Apple*, 2013 U.S. Dist. LEXIS 96424, at *138, *139 (describing the "large and essentially simultaneous" "rise in trade e-book prices" as circumstantial evidence of the conspiracy); *id.*, at *167, *168 (relying on "the fact that the conspiracy succeeded . . . in record-setting time and at the precise moment that Apple entered the e-book market" to reject Apple's claim that it "acted independently and as a lawful participant in a series of negotiations").

[83] *Id.* at *141-42; Statement of Undisputed Facts, ¶ 77.

[84] *See, e.g.*, *Kairys v. I.N.S.*, 981 F.2d 937, 941 (7th Cir. 1992) ("[F]actual determinations made by judge or jury in a case that is actually litigated are not deprived of collateral estoppel effect merely because the determinations rest in part on admissions or stipulations."); *L.A. Unified School Dist. v. L.A. Branch of the NAACP*, 714 F.2d 935, 945 (9th Cir. 1983) (collateral estoppel appropriate where party "raised, and had the opportunity fully to litigate" an issue but "chose not to do so as extensively as it might have"); *GAF Corp.*, 519 F. Supp. at 1213 (collateral estoppel available where "the decision to agree to certain facts was a decision made by [defendant] as part of its litigation strategy").

[85] *Freeland*, 238 F.R.D. at 151.

[86] *Apple*, 2013 U.S. Dist. LEXIS 96424, at *10; Statement of Undisputed Facts, ¶19.

-17-

upward."[87] This is precisely the kind of structural shift long recognized to cause impact to all consumers.[88] It shifted pricing authority from a competing group of powerful adversaries (including, but not limited to, Sony, Barnes & Noble, Amazon, and the entering Apple), led by a retailer with an avowed commitment to low prices (with which other retailers had to compete), to a cartel of manufacturers with an avowed commitment to raising prices and restraining competition.[89] Every tenet of logic and economics predicts (and the evidence showed) that this conspiracy would have the exact effect that the Court found: raising retail e-book prices across the board.

Because the Court found that e-book consumers suffered antitrust impact, they are entitled to summary judgment on this issue.  Summary judgment may be granted as to the question of causal injury based on facts conclusively determined in the prior Government Case.[90] For example, in *State v. Cedar Park Concrete Corp.*, the court held that a finding at sentencing that a conspiracy "left its mark across the face of [the] city" by, among other things, injuring "taxpayers who were required to pay higher bonding premiums for public projects" proved "an impact on the state" and thus entitled the state to "summary judgment . . . on the first two

---

[87] *Apple*, 2013 U.S. Dist. LEXIS 96424, at *161; Statement of Undisputed Facts, ¶47.

[88] *See, e.g.*, *Bogosian*, 561 F.2d at 455.

[89] *See, e.g.*, *Apple*, 2013 U.S. Dist. LEXIS 96424, at *119 ("Agency is anti-pricewar territory. We don't need to compete with other publishers on the price of our books."); *id.* ("Penguin executives told authors after signing the Apple Agreement that they had 'fought to protect high prices'"); *id.*, at *114 ("As Macmillan explained to Barnes & Noble, it would not agree to a proposed promotion because '[w]e worked hard to push the price of our new Ebooks up just a few dollars'") (alteration in original); *cf.* Ex. 10 (PX-0315) (explaining that the promotion resisted by Macmillan was "giv[ing] one backlist title away for one week if a customer comes into the store").

[90] *See, e.g.*, *Discover Fin. Servs.*, 598 F. Supp. 2d at 400 (finding that prior governmental action established harm to competitor); *Cedar Park Concrete*, 1997 WL 306909, at *8-*9 (finding that prior governmental action established impact on purchaser); *In re Ivan Boesky Secs. Litig.*, 848 F. Supp. 1119, 1124-26 (S.D.N.Y. 1994) (finding that prior governmental action established reliance by and loss causation to follow-on plaintiff); *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 566 F. Supp. 296, 301 (D.D.C. 1983), *rev'd on other grounds*, 744 F.2d 118 (D.C. Cir. 1984).

-18-

elements of its claim."[91] Similarly, in *Discover Financial Services v. Visa U.S.A. Inc.*, the court

found that injury to a follow-on plaintiff was established where the court's opinion "specifically

held . . . that the harm to competition stemmed directly from competitive harm to" the follow-on

plaintiff and another competitor.[92] In other words, a finding predicated on the anti-competitive

effect caused to a particular victim or class of victims can establish the impact element of a later

suit by that victim or class.[93]

       This is precisely the case here. The Court found that the conspiracy caused harm to

competition, impacting e-book consumers with higher e-book prices – "across the board" and

"industry-wide." Thus, the facts that Class Plaintiffs would need to prove to prevail against

Apple have already been established, satisfying the second element of their claim.

       Providing even further support that no reasonable jury could find for Apple that

competition was not harmed, evidenced by higher e-book prices, Dr. Noll buttresses this Court's

findings.  Dr. Noll estimated overcharges for 99.8% of e-book purchases.[94] As explained in Class

Plaintiffs' motion to exclude Dr. Kalt's testimony and opposition to Apple's *Daubert* motion,

Apple has not reliably contradicted Dr. Noll's testimony regarding the impact of the

conspiracy.[95] For purposes of this motion, therefore, his testimony stands unimpeached by

competent and reliable evidence.[96] Without any admissible, or sufficiently probative, rebuttal

---

[91] 1997 WL 306909, at *8-*9. The first two elements of the claim were that "(1) a bid rigging conspiracy occurred; [and] (2) the bid rigging Conspiracy [sic] had an impact on the state." *Id.*, at *7.

[92] 598 F. Supp. 2d at 400.

[93] *Compare Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 248 (3d Cir. 2010) (**purchaser** plaintiffs not entitled to collateral estoppel on the issue of antitrust impact on the basis of a proceeding establishing harm to **competitor** plaintiffs).

[94] Noll Reply Report at 17, 40. Dr. Noll observed two categories of e-books in which the range does not appear to have increased; for purchases in these categories, no damages will be awarded. *See id.* at 17.

[95] *See generally* Mem. of Law in Supp. of Class Pls.' Mot. to Exclude Opinions Offered by Dr. Joseph Kalt ("Class Kalt *Daubert* Br."), filed Under Seal, Dec. 18, 2013.

[96] *See, e.g.*, *Raskin*, 125 F.3d at 66-67 ("Under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 . . .

evidence on the issue of antitrust injury, Defendants cannot create a triable issue.[97]

To rebut the Court's findings and Dr. Noll's opinions, Dr. Kalt constructs elaborate arguments around the so-called "churn" and "price dispersion" in the e-book market. As explained in Dr. Noll's reply declaration and Class Plaintiffs' motion to exclude Dr. Kalt's opinion, Dr. Kalt's econometric methodology and understanding of the facts are unreliable and shed no light on price structures in the e-book market or the conspiracy's effect on retail prices.[98] Dr. Kalt's figures further reveal an unmistakable upshift in e-book prices throughout the market, proving Class Plaintiffs' point. For example, Dr. Kalt's Figures 25A and 25B in his opening report, and Figure 9 in his sur-reply report, show an increase in the **_level_** of the range within which the graphed e-books varied. Thus, Dr. Kalt has actually provided evidentiary support to Class Plaintiffs that prices "fluctuated within a range which . . . was higher . . . than the range which would have existed . . . under competitive conditions."[99] This is exactly the type of structural elevation long understood to create classwide impact.

Dr. Kalt's observation that prices vary does nothing to defeat the existence of antitrust injury. As one court observed in rejecting similar arguments about the diversity of airfare prices:

> [D]efendants' arguments focusing on the large variety and diversity among fares, origins and destinations, lengths of flights, and mix of passengers are largely irrelevant in that the conspiracy alleged by plaintiffs does not predict that all defendants' fares would have increased; rather, plaintiffs contend only that, under the conspiracy, every fare was higher than it otherwise would have been. [Plaintiffs' expert] asserts that a purchaser paying a decreased fare was

---

(1993), the district court functions as the gatekeeper for expert testimony . . . at the summary judgment phase as at trial; an expert's report is not a talisman against summary judgment.").

[97] *See, e.g.*, *Raskin*, 125 F.3d at 66 ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").

[98] *See, e.g.*, Class Kalt *Daubert* Br. at 3-14, 16-22; Noll Reply Report at 3-6, 9-40.

[99] *Bogosian*, 561 F.2d at 455.

nonetheless affected if the fare decline would have been greater in the absence of the conspiracy.[100]

Indeed, as Dr. Noll explained, "prices for e-books from the defendants exhibited fewer and smaller price cuts during the collusion period."[101]

Moreover, Apple has provided **no** evidence to contradict that these price increases had widespread impact on the class. Leaving aside the fatal unreliability of Dr. Kalt's testimony, Dr. Kalt does not deny that the proven impact was **widespread**; rather, his inquiry tries to show that not "*all* transactions had positive overcharges."[102] He provides no opinion or analysis of how many books actually had overcharges, what percent of new releases and bestsellers were moved to the caps in the agency agreements, or how much average prices increased,[103] even though he agrees that many books had overcharges and average prices increased.[104] Thus the only "non-metaphysical" facts proving the breadth of impact is the Court's findings and Dr. Noll's testimony.

      D.    **If the Court Grants Plaintiffs' Motion to Exclude the Testimony of Mr. Orszag, in Whole or in Part, Apple Has Either Failed to Produce Any Admissible Evidence Rebutting Dr. Noll's Damage Estimate or Conceded That the Average Agency Effect Was No Less Than 14.9 Percent**

           1.    **There is no admissible evidence in the record allowing the jury to find damages of any amount other than $280,254,374.**

The final element of Class Plaintiffs' claim is proof of damages. As the Supreme Court

---

[100] *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 690 (N.D. Ga. 1991); *see also id.* at 690 n.16 ("[Plaintiffs' expert] is the only witness who has provided any empirical evidence to address defendants' contention that differences . . . may be the result of mix rather than the alleged conspiracy. Although defendants proffered [expert] testimony . . . as contrary empirical evidence, it is not. . . . [Defendants' expert] did not present any empirical evidence to counter that of [plaintiffs' expert]. He merely attacked the methodology employed by [plaintiffs' expert] and suggested other explanations of the conclusions of plaintiffs' expert.").

[101] Noll Reply Report at 23; *see also, e.g.*, Ex. 11. 105-52 (Gilbert Report).

[102] Ex. 12, ¶ 118 (Kalt Report) (emphasis added); *see also* Ex. 13 (Kalt Depo.) at 19:19-20:9 ("Q . . . When you use the term 'common impact,' is there a numerical threshold that you have in mind when you use the word 'common'? . . . [A]: No; other than if the word 'common' is taken [at] its literal meaning, it would mean all.").

[103] *See, e.g.*, Ex. 13 at 52:12-60:20, 61:2-25, 65:7-66:8 (Kalt Depo.).

[104] *See, e.g.*, Ex. 13 at 33:20-34:15; 61:2-18; 65:7-20 (Kalt Depo.) .

reiterated in *Comcast Corp. v. Behrend*, "[c]alculations need not be exact" in a class action;[105] rather, damage awards must "roughly reflect the aggregate amount owed to class members."[106] This rule has particular force in antitrust cases, where, "[b]ecause of the practical difficulties in calculating damages based on an illusory 'but-for' world, courts do not require damages to be reduced to a mathematical certainty."[107]

Dr. Noll has provided a reasonable, reliable method of calculating damages, as detailed in his Report and Reply Report and further explained in Class Plaintiffs' opposition to Apple's motion to exclude Dr. Noll's testimony. Apple's experts have never denied that the $280,254,374 figure he calculated "roughly reflect[s] the aggregate amount owed to class members" and consumers the States represent.[108] Indeed, the overcharge percentage Dr. Noll finds – 18.1% of the total e-book sales of the publisher conspirators during the damages period[109] – is consistent and within the range found by Dr. Ashenfelter (16.8%) and Dr. Gilbert (18.6%).[110]

Apple cannot assert with a shred of credibility that there is a material dispute here. Indeed, Apple's own expert, Dr. Burtis, ratifies Dr. Noll's damage estimate – ***within one percentage point***.  Dr. Burtis conceded at trial that she calculated the conspiracy caused approximately a 17% overcharge.[111] Apple's counsel elicited the following testimony from Dr. Burtis:

> Q.    Now, did you ever calculate the extent to which the defendant publishers' prices went up on an average in the six months after April 1, 2010 compared to the six months before?

---

[105] _U.S._, 133 S. Ct. 1426, 1433 (2013).

[106] *Seijas v. Rep. of Arg.*, 606 F.3d 53, 58-59 (2d Cir. 2010); *see generally* Class Cert Reply Br. at 7-10.

[107] *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 222 (M.D. Pa. 2012).

[108] *Seijas*, 606 F.3d at 58-59.

[109] *See* Noll Reply Report, Ex. 2.

[110] *See* Ex. 14 ¶ 10 PX-1097 (Ashenfelter Decl.); Ex. 15,¶ 158 PX-1105 (Gilbert Decl.).

[111] Ex. 1 (June 19, 2013 Trial Tr.) at 2298:21-24.

-22-

A.      Yes.  It's about 17 percent.[112]

Thus, Dr. Noll and Apple's estimates have only one percentage point of daylight between each other.[113] Given that Apple's own expert expressly ratifies Dr. Noll's opinion within a single percentage point, the consideration of this evidence constitutes "credible evidence . . . that would entitle [Class Plaintiffs] to a directed verdict if not controverted at trial."[114]

Apple has not proffered any admissible evidence that could controvert Dr. Burtis's and Dr. Noll's testimony at trial, so that a reasonable jury could find in Apple's favor. Apple's expert testimony is riddled with methodological and factual flaws that render them wholly unreliable and inadmissible; in many cases, they are also legally irrelevant.[115]

Mr. Orszag's fundamental criticism of Dr. Noll's damages model is that he uses a control group with too many publishers and too long of a time period to arrive at an 18.1% average overcharge. But this is exactly the opposite of the criticism Apple directed at the government plaintiffs' experts through Dr. Burtis.[116] Accordingly, Dr. Noll's testimony will be left unopposed if the Court grants Plaintiffs' *Daubert* motions.

Courts "routinely award damages that are readily calculable based on the undisputed facts on summary judgment."[117] While "the grant of a motion for summary judgment is often

---

[112] *Id.* Dr. Burtis admitted that this increase was due to the adoption of the agency model. *See.* Ex. 16 (June 18, 2013 Trial Tr.) at 2235:11-14 ("Q.  Doctor, you even admit that the reason that the publisher defendants' average retail prices increased was because of their move to the agency model, correct? A.  I think that's true, yes.").

[113] As discussed below, Mr. Orszag's conclusions calculate an "average agency effect" of 14.9%. *See* Ex. 17, ¶ 125 (Orszag Report); Ex. 18 (Orszag Backup, Device Offset and Contribution Profits, Table – Offset).

[114] *Sorano*, 642 F. Supp. 2d at 50.

[115] *See generally* Class Kalt *Daubert* Br.; Mem. of Law in Supp. of Class Pls.' Mot. to Exclude the Expert Opinions Offered by Apple's Expert Jonathan Orszag ("Class Orszag *Daubert* Br."), filed Under Seal, Dec. 18, 2013.

[116] *See* Ex.16, at 2263:8-2265-8; Ex. 19, ¶ 17 (DX-721, Burtis Decl.).

[117] *AEP Energy Serv. Gas Hldg. Co. v. Bank of Am., N.A.*, 626 F.3d 699, 740 (2d Cir. 2010) (collecting cases); *see, e.g.*, *AEP Energy Serv. Gas Hldg. Co. v. Bank of Am., N.A.*, No. 05-cv-4248, 2008 WL 3338203, at *1 (S.D.N.Y. Aug. 11, 2008), *aff'd*, 626 F.3d 699 (granting summary judgment on damages; reducing the amount by one party's "reasonable measure" of costs where the other party's estimate was not "plausible").

-23-

inappropriate where the evidence bearing on crucial issues of fact is in the form of expert opinion testimony," a court may grant summary judgment where the non-movant "offer[s] no evidence in opposition to the motion tending to undermine [movant's expert's] qualifications or credibility" and "the trier of fact would not be at liberty to disregard arbitrarily the unequivocal, uncontradicted and unimpeached testimony of [the] expert witness."[118] All of Apple's evidence to undermine Dr. Noll depends on unreliable experts' analysis. Thus, no reasonable jury could find that Dr. Noll's calculations did not roughly reflect the aggregate damages. Accordingly, summary judgment should be entered in the amount of $280,254,374.

> ### 2. At a minimum, there is no genuine dispute that damages are at least $231,381,037.90, the amount calculated by Mr. Orszag.

Should the Court find Mr. Orszag's testimony admissible in some regard, his testimony must be limited to the opinions stated in Apple's expert reports.[119] To that end, Rule 56 empowers the Court to enter partial summary judgment or otherwise "make an order specifying which facts are without controversy, deeming these facts as established, and then proceed to trial. The purpose of this rule is to establish plaintiffs' rights to an undisputed portion of amounts claimed, leaving the disputed balances of any such claims for trial."[120] Specifically, Rule 56(g) provides: "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." "In the order, the court may indicate the extent to which the amount of damages or other relief is not in controversy based on the

---

[118] *Webster v. Offshore Food Serv., Inc.*, 434 F.2d 1191, 1193 (5th Cir. 1970); *accord, e.g.*, *Brown v. Cnty. of Nassau*, 736 F. Supp. 2d 602, 621 (E.D.N.Y. 2010) (referring to this as a "narrow exception").

[119] *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, No. 06-md-1789, 2013 WL 174416, at *3 (S.D.N.Y. Jan. 15, 2013); *Williams v. Cnty. of Orange*, No. 03-cv-5182, 2005 WL 6001507, at *2-*3 (S.D.N.Y. Dec. 13, 2005); *see generally* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring expert reports to contain "a complete statement of all opinions the witness will express and the basis and reasons for them").

[120] *Cent. States, Se. & Sw. Areas Pension*, 503 F. Supp. at 100 .

pleadings as well as the documentary evidence and testimony presented at the hearing on the summary judgment motion."[121] This order is not a final judgment but a pretrial adjudication, under which "[t]he facts determined . . . will be deemed established at the trial on the remaining issues."[122] Thus, where a defendant or a defendant's expert admits an amount of damages, but the plaintiff disputes whether a ***higher*** amount is owed, the court may order that plaintiff is entitled to no less than the conceded amount.[123] By the same token, the court may order that the method of calculating damages should be no less than a certain percentage, where the defendant has opined that a particular percentage amount is appropriate.[124]

Apple, through Mr. Orszag and Dr. Burtis, concede that the conspiracy caused overcharge between 15% (Mr. Orszag) and 17% (Dr. Burtis).[125]  On this record, the Court should enter an order limiting the jury's consideration to the difference between Apple's lower bound (15%) and Dr. Noll's estimate (18.1%). Mr. Orszag, the only Apple witness it is offering to provide damage calculations,[126] determined in his "Conclusion and Summary of Damages Calculations" that "the average agency effect was in the range of 15 percent."[127] Although Mr.

---

[121] *Kaempfer*, 2006 WL 508089, at *6 (citing 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2737 (3d ed.1998)).

[122] *Id.* (citing 10B Wright & Miller § 2737).

[123] *See, e.g.*, *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 225, 229 (D.N.J. 2000) (awarding partial summary judgment for $11,661,078.96, where defendant's expert admitted the amount was attributable to defendant's misconduct).

[124] *See, e.g.*, *McDonald v. Batopilas Mining Co.*, 8 F.R.D. 226, 227 (E.D.N.Y. 1948) (awarding partial summary judgment in the amount of 10% where parties disputed whether amount owed was 10% or 20%).

[125] *See* Ex. 17, ¶ 125 (Orszag Report); Ex. 18 (Orszag Backup, Device Offset and Contribution Profits, Table – Offset); Ex. 1 (June 19, 2013 Trial Tr.) at 2298:21-24.

[126] *See* Ex. 13 at 159:20-25 (Kalt Deposition) ("Q. Is it correct, Dr. Kalt, that your report does not estimate th[e] aggregate damages to the class resulting from Apple's unlawful conduct? A. No, I did not try to provide an estimate of aggregate damages. That was outside the scope of my work."); *id.* at 160:6-13 ("Q. Well, are you offering an opinion in this case about what the amount of aggregate damages to the class is? . . . A. Well, I find Mr. Orszag's analysis – I agree with that analysis, but I've not tried myself to do those calculations.").

[127] Ex. 17, ¶ 125(Orszag Report); *see also id.*, ¶ 41.

Orszag declined to identify the "likely average agency effect"[128] in his report with more precision than "in the range of 15 percent," his backup materials reveal that the exact percentage he used for his conclusions and damages calculations was 14.9%, for an exact dollar amount of $231,381,037.90.[129] There is therefore no genuine controversy that the amount of damages are no less than that amount, and the Court may enter an order establishing that as the lower bound.

Mr. Orszag offered a separate opinion that the overcharges should be offset by 12.9 percentage points.[130] As explained in Class Plaintiffs' and State Plaintiffs' motions to exclude Mr. Orszag's offset testimony, his figures (both the 12.9% device offset and the offsets in unspecified amounts) are unreliable and legally irrelevant. Mr. Orszag's conclusions on these points have no basis whatsoever in record evidence, and are actually contradicted by the evidence he cites;[131] his methodology for reaching them is pure speculation and lacks any rigorous economic or econometric analysis;[132] and his supposed offsets are barred as a matter of law.[133] These hypothesized offsets are effectively nullities, and do not take away from the import of Mr. Orszag's 14.9% calculation: Mr. Orszag, like Dr. Noll, Dr. Ashenfelter, Dr. Gilbert, and Dr. Burtis finds that the average overcharge is at least "in the range of 15 percent."[134]

There is therefore no **genuine** dispute that the overcharges were, at a minimum, 14.9% of e-book sales, and that amount may be taken as a conclusive lower bound to guide and streamline

---

[128] Ex. 17, ¶ 41(Orszag Report).

[129] Ex. 18 (Orszag Backup, Device Offset and Contribution Profits, Table – Offset). The dollar amount is determined by multiplying cell D22 ("Corrections to Noll's econometric model") and cell D18 ("e-Book sales from Publisher Defendants"), the same methodology Mr. Orszag uses to derive a $30.2 million dollar amount from cell D24 ("Price increase before other offsets"). *See also* Ex. 17, ¶ 128 (Orszag Report).

[130] Ex. 17, ¶¶ 126-27(Orszag Report).

[131] Class Orszag *Daubert* Br. at 11-24.

[132] *Id*. at 9-11, 15-16, 21-23.

[133] *Id*. at 2-4.

[134] Ex. 17, ¶ 125 (Orszag Report).

a jury trial.

Accordingly, the Court should enter summary judgment in the amount of $280,254,374; or, alternatively, should enter partial summary judgment in the amount of $231,381,037.90 and limit the jury's consideration of the amount of overcharges to the range of $231,381,037.90 to $280,254,374.

## VI.    CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request that the Court enter summary judgment and enter an order granting Class and State Plaintiffs $280,254,374 in damages. Plaintiffs will request this amount to be trebled, after which the parties will proceed to a distribution phase to divide damages among the States and Class members as specified in Exhibit 3 of Dr. Noll's Reply Report. To the extent the Court does not award summary judgment in its entirety, Class Plaintiffs respectfully request entry of an order of partial summary judgment as the Court deems appropriate.


DATED:  January 31, 2014                     HAGENS BERMAN SOBOL SHAPIRO LLP


                                             By      /s/ Steve W. Berman
                                                  STEVE W. BERMAN (*Pro Hac Vice*)

                                             George W. Sampson (GS-8973)
                                             1918 Eighth Avenue, Suite 3300
                                             Seattle, WA 98101
                                             Telephone:  (206) 623-7292
                                             Facsimile:  (206) 623-0594
                                             steve@hbsslaw.com
                                             george@hbsslaw.com

Jeff D. Friedman (*Pro Hac Vice*)
Shana Scarlett (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Kit A. Pierson (*Pro Hac Vice*)
Jeffrey Dubner (JD4545)
COHEN, MILSTEIN, SELLERS & TOLL, PLLC
1100 New York Avenue, N.W.
South Tower, Suite 500
Washington, D.C.  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699
kpierson@cohenmilstein.com
elevens@cohenmilstein.com
jdubner@cohenmilstein.com

Douglas Richards (JR6038)
COHEN, MILSTEIN, SELLERS & TOLL, PLLC
88 Pine Street, 14th Floor
New York, NY  10005
Telephone:  (212) 838-7797
Facsimile:  (212) 838-774
DRichards@cohenmilstein.com

*Co-Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2014, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

/s/ Steve W. Berman
STEVE W. BERMAN

010260-11  668694 V2