**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| THE STATE OF TEXAS, | : | |
| THE STATE OF CONNECTICUT, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| | : | |
| v. | : | 12 Civ. 3394 (DLC) |
| | : | |
| PENGUIN GROUP (USA) INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## APPLE INC.'S BRIEF REGARDING STATE CIVIL PENALTIES

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT .......................................................................................... 2

I.   To Avoid Serious Constitutional and Procedural Problems, The Court Should
     Follow Its Proposal to Assess Any Civil Penalties as a Portion of Treble Damages ............ 2

II.  This Court Is Not Authorized to Award State Civil Penalties on Top of Treble
     Damages ...................................................................................... 4

     A.   The Court Has Not Found Liability under Any of the Statutes on Which the
          States Base Their Civil Penalties Claims .................................................. 5

     B.   Some of the Statutes under Which the States Seek Civil Penalties Are Facially
          Distinct from the Sherman Act, Requiring Additional Factfinding ............................. 8

III. This Court Should Not Award State Civil Penalties Because Doing So Would Raise
     a Host of Other Constitutional and Statutory Problems ....................................... 10

     A.   Awarding Civil Penalties Would Violate Apple's Due Process Right to Fair
          Notice .................................................................................... 11

     B.   Awarding Civil Penalties Would Violate the Eighth and Fourteenth
          Amendments Because the Proposed Penalties are Disproportionate and Serve
          No Punitive Purpose ...................................................................... 12

     C.   Awarding Civil Penalties Would Create Impermissible Double Recovery ................. 15

CONCLUSION ....................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.X.M.S. Corp. v. Friedman*,
  948 F.Supp.2d 319 (S.D.N.Y. 2013) ................................................................ 6

*Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*,
  456 U.S. 556 (1982).................................................................. 13, 16, 18

*BE & K Constr. Co. v. N.L.R.B.*,
  536 U.S. 516 (2002)................................................................................ 15

*Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.*,
  409 F.3d 87 (2d Cir. 2005) ..................................................................... 9

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996)............................................................................... 13

*Brooks Fiber Communications of Tucson, Inc. v. GST Lightwave, Inc.*,
  992 F. Supp. 1124 (D. Ariz. 1997) .......................................................... 7

*DeClemente v. Columbia Pictures Indus., Inc.*,
  860 F. Supp. 30 (E.D.N.Y. 1994) ....................................................... 4, 5

*DeWeerth v. Baldinger*,
  836 F.2d 103 (2d Cir. 1987) ................................................................ 4, 5

*F.C.C. v. Fox Television Stations, Inc.*,
  132 S. Ct. 2307 (2012)........................................................................... 11

*Fineman v. Armstrong World Industries*,
  980 F.2d 171 (3d Cir. 1992) .................................................................. 16

*Hubbard v. Henrico Ltd. P'ship*,
  497 S.E.2d 335 (Va. 1998) .................................................................... 10

*Hudson v. United States*,
  522 U.S. 93 (1997)................................................................................. 13

*Ill. Brick Co. v. Illinois*,
  431 U.S. 720 (1977)................................................................................. 4

*Interstate Circuit v. United States*,
  306 U.S. 208 (1939)............................................................................... 12

*Journal Pub. Co. v. Hartford Courant Co.*,
  804 A.2d 823 (Conn. 2002) .................................................................... 4

*Lanzetta v. New Jersey*,
  306 U.S. 451 (1939)............................................................................... 11

*Maryland v. Dickson*,
  717 F. Supp. 1090 (D. Md. 1989).......................................................... 18

*New York v. Amfar Asphalt Corp.*,
   1986 WL 27582 (E.D.N.Y. Nov. 20, 1986) .......................................................... 18

*New York v. Salton, Inc.*,
   265 F. Supp. 2d 310 (S.D.N.Y. 2003) ................................................................... 17

*Newell Recycling Co., Inc. v. U.S. E.P.A.*,
   231 F.3d 204 (5th Cir. 2000) ................................................................................. 15

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979) ................................................................................................ 9

*People ex rel. Scott v. College Hills Corp.*,
   415 N.E.2d 1048 (Ill. Ct. App. 1981) ..................................................................... 5

*Pharaon v. Bd. of Governors of Fed. Reserve Sys.*,
   135 F.3d 148 (D.C. Cir. 1998) .............................................................................. 15

*Smalley & Co. v. Emerson & Cuming, Inc.*,
   808 F. Supp. 1503 (D. Colo. 1992) ......................................................................... 7

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ................................................................................. 15

*Toys "R" Us, Inc. v. Federal Trade Commission*,
   221 F.3d 928 (7th Cir. 2000) ................................................................................. 12

*Triple 7, Inc. v. Intervet, Inc.*,
   338 F. Supp. 2d 1082 (D. Neb. 2004) ..................................................................... 6

*United States v. Bajakajian*,
   524 U.S. 321 (1998) .............................................................................................. 13

*United States v. Brennan*,
   183 F.3d 139 (2d Cir. 1999) ................................................................................. 11

*United States v. Lanier*,
   520 U.S. 259 (1997) .............................................................................................. 11

*United States v. Mackby*,
   261 F.3d 821 (9th Cir. 2001) ................................................................................. 13

*Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*,
   144 F. Supp. 2d 558 (W.D. Va. 2001) ................................................................... 10

**Statutes**

15 U.S.C. § 15c ........................................................................................................... 1

15 U.S.C. § 15c(a)(2) ................................................................................................ 17

15 U.S.C. § 15e .................................................................................................... 1, 3, 4

15 U.S.C. § 15e(2) ...................................................................................................... 3

Ariz. Rev. Stat. § 44-1412 ......................................................................................... 7

Conn. Gen. Stat. § 42-110o ........................................................................................ 9

La. Stat. § 51:1407 ................................................................................................................. 15

Va. Code § 59.1-9.11 ............................................................................................................... 9

## PRELIMINARY STATEMENT

In its September 25, 2013 Order, this Court stated that any civil penalties awarded in this action would be assessed "as a portion of any treble damages."  Dkt. 299 at 4.  Apple takes this statement to mean exactly what it says:  After Apple's total liability is determined by trebling the amount of actual damages the Court finds in the second phase of the trial, the Court will award some portion of that amount to the states as civil penalties.  Plaintiffs' suggestion that the Court is not authorized to award a portion of the treble damages award as a civil penalty flatly contradicts the plain language of 15 U.S.C. § 15e.[1]  And assuming *arguendo* for purposes of this brief that the states are entitled to recover damages, Apple does not object to the Court's proposed procedure.[2]

Plaintiffs, however, advocate a very different approach.  In a footnote, they suggest that the Court's statement meant only that "any penalties should be proportional to the amount of damages awarded."  Pls.' Br. [Dkt. 399] at 20 n.23.  The Court should not accept Plaintiffs' invitation to change course on this issue, for several reasons.

First, the Court is not authorized to award civil penalties on top of trebled damages, as Plaintiffs propose.  The Court has never entered a finding of liability under any of the specific civil penalty statutes, and not even Plaintiffs have argued that liability follows automatically from a finding of a Sherman Act violation under any of the statutes under which they seek to

---

[1]  "Monetary relief recovered in a [*parens patriae* action] shall—
    (1) be distributed in such a manner as the district court in its discretion may authorize; or
    (2) be deemed a civil penalty by the court and deposited with the State as general revenues;
    subject in either case to the requirement that any distribution procedure adopted afford each person a reasonable opportunity to secure his appropriate portion of the net monetary relief."

[2]  Apple maintains that the states lack standing to seek damages as *parens patriae*, and that, at a minimum, the states should be required to demonstrate compliance with the class certification requirements of Rule 23.  *See* Dkt. 340.  But only for purposes of this briefing, Apple assumes *arguendo* that the Court will permit the states to recover under 15 U.S.C. § 15c.

recover.  Moreover, two of these statutes include additional elements that Plaintiffs were not required to prove to establish a Sherman Act violation.

Second, awarding civil penalties in addition to treble damages would raise a host of constitutional and other problems that the Court can and should avoid.  For example, imposing civil penalties based on the conduct at issue in this case would violate Apple's due process right to fair notice of what conduct would expose it to punishment.  Moreover, awarding civil penalties *on top of* the hundreds of millions of dollars Plaintiffs seek in treble damages would constitute an excessive and disproportionate punishment under both the Eighth and Fourteenth Amendments.  And it would subject Apple to double punishment—and permit the states to reap a double recovery—based on a single course of conduct.

The Court need not—and should not—wade into this minefield.  Instead, consistent with its September 25 order and the plain language of the Clayton Act, any civil penalties should be assessed as a portion of the overall treble damages awarded at the conclusion of the second phase of the trial in this action.

## ARGUMENT

**I.    To Avoid Serious Constitutional and Procedural Problems, The Court Should Follow Its Proposal to Assess Any Civil Penalties as a Portion of Treble Damages**

In its September 25, 2013 Order, this Court ruled that "[a]ny civil penalty award under a state statute . . . shall be assessed as a portion of any treble damages."  Dkt. 299 at 4.  Apple understands this statement to mean that the total amount of Apple's liability to Plaintiffs will be limited to treble damages under the Clayton Act, but that a portion of the recovery that would otherwise be characterized as treble damages may instead be awarded to the States as civil penalties.  That approach avoids the significant problems Apple identifies in this brief.  First, because imposition of civil penalties as a portion of treble damages is explicitly contemplated

under the Clayton Act, *see* 15 U.S.C. § 15e(2), the Court would not have to make any additional findings—including findings requiring proof of additional facts—in order to award civil penalties.  *See infra*, Section II.  Moreover, the due process and Eighth Amendment concerns Apple has raised would be substantially alleviated if it were not exposed to penalties that, in the aggregate, exceeded the damages to which it could be exposed under the Clayton Act.  *See infra*, Section III.A, B.  And the Court's approach would eliminate the risk of double punishment or double recovery, all without depriving any plaintiff of adequate compensation or depriving the Plaintiff states of revenue.  *See infra*, Section III.C.  Rather than reverse course and wade into Plaintiffs' constitutional and statutory morass, the Court should follow the approach it announced in its September 25, 2013 Order.

Plaintiffs' assertion that awarding a portion of the treble damages award as civil penalties under 15 U.S.C. § 15e would be "improper" is completely baseless.  The plain language of that statute explicitly permits "[m]onetary relief recovered" in a *parens patriae* action to be "deemed a civil penalty by the court and deposited with the State as general revenues."  15 U.S.C. § 15e. It is true, as Plaintiffs note, that Congress intended this provision to prevent antitrust violators from retaining money awarded to states as treble damages.  Pls.' Br. at 19; H.R. Rep. 94-499, pt 1, at 3.  But awarding civil penalties as a portion of the treble damages recovery would not frustrate this goal—Apple would not retain any of the money awarded in this action.  It is also true that Congress did not intend for recovery of civil penalties to prevent recovery by individuals who had actually been harmed.  Pls.' Br. at 19-20; H.R. Rep. 94-499 pt 1, at 16.  That is why, if the States recover civil penalties pursuant to § 15e, they will do so subject to the requirement that they "afford each person a reasonable opportunity to secure his appropriate portion of the net monetary relief."  15 U.S.C. § 15e.  There is no risk that the Court's proposed

resolution of the civil penalties issue will deprive any consumer of his or her fair share of the recovery.  Moreover, there is little risk that the States would be unable to retain the $8.7 million in civil penalties they seek.  As the Supreme Court has acknowledged, "'rarely, if ever, will all potential claimants actually come forward to secure their share of the recovery.'"  *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 747 n.31 (1977) (quoting H.R. Rep. 94-499, pt 1, at 16).  This Court is authorized to award civil penalties by the plain language of 15 U.S.C. § 15e, and it can do so without raising any of the significant constitutional and procedural problems that would result if it awarded penalties under the various state statutes.[3]

## II.   This Court Is Not Authorized to Award State Civil Penalties on Top of Treble Damages

If the Court were to change course and impose civil penalties pursuant to state statutes, rather than under 15 U.S.C. § 15e, it would have to adjudicate Apple's liability under any of the specific state statutes under which Plaintiffs seek civil penalties.  To do so, the Court must "apply the substantive law of the state and decide the issue of law according to the rule of law established by the highest court of the state."  *DeClemente v. Columbia Pictures Indus., Inc.*, 860 F. Supp. 30, 52 (E.D.N.Y. 1994).  This analysis requires a holistic "estimate of what the state's highest court would rule to be its law," considering "all of the resources that the [state's highest court] could use."  *DeWeerth v. Baldinger*, 836 F.2d 103, 108 (2d Cir. 1987) (internal quotation marks omitted).  And Plaintiffs bear the burden to establish liability under each and every civil penalties statute they invoke.  *E.g., Journal Pub. Co. v. Hartford Courant Co.*, 804 A.2d 823, 836 (Conn. 2002) (describing plaintiff's burden under the Connecticut Antitrust Act); *People ex*

---

[3]   To the extent Plaintiffs insist that, despite the plain language of the statute, the Court is not authorized to award civil penalties under 15 U.S.C. § 15e, the Court should not award civil penalties at all.  Whether penalties are available under federal law has no bearing on the fundamental flaws in Plaintiffs' state law civil penalties claims.

*rel. Scott v. College Hills Corp.*, 415 N.E.2d 1048, 1053 (Ill. Ct. App. 1981) ("Under Illinois law the anticompetitive effect must be pleaded and proved and will not be presumed.").

The Court cannot simply enter judgment based on a finding that some states' statutes are facially similar to the Sherman Act without actually applying those statutes to the facts of this case. And, as Plaintiffs admit (Pls.' Br. at 6), two of the statutes under which they seek civil penalties contain elements that are not necessary to a finding of liability under the Sherman Act.

### A.   The Court Has Not Found Liability under Any of the Statutes on Which the States Base Their Civil Penalties Claims

It is fundamental that a "federal court deciding a pendent state claim under its supplemental jurisdiction must apply the substantive law of the state according to the rule of law established by the highest court of the state." *DeClemente,* 860 F. Supp. at 52; *DeWeerth*, 836 F.3d at 108. Plaintiffs assert that this Court's July 10, 2013 Opinion (the "Opinion") satisfied this requirement by finding that "Apple conspired to restrain trade in violation of Section 1 of the Sherman Act and relevant state statutes to the extent those laws are congruent with Section 1." Dkt. 237 at 159. But the Opinion does not identify even one state statute that is supposedly "congruent" with the Sherman Act, much less apply any state statute to the Court's factual findings.

Plaintiffs argue that because some states' laws are "congruent" with the Sherman Act, and Apple was found to have violated the Sherman Act, they do not need to establish liability under any civil penalties statute. *See* Pls.' Br. at 4-5. But even if this shortcut for establishing liability were permissible in theory (and Plaintiffs point to no case that has condoned it), it is useless in practice. To establish that a state statute is "congruent" with the Sherman Act, Plaintiffs must demonstrate that the same result would obtain if the state statute were applied to

the facts of this case.  The only way to do that is to apply each state law to these facts—that is, to conduct precisely the kind of inquiry Plaintiffs seek to avoid.[4]

Plaintiffs raise three arguments against the proposition that they must establish liability under the actual statutes under which they seek to recover.  First, they assert that Apple "acknowledged in its pretrial briefing" that certain state statutes "would rise and fall with the Sherman Act claims."  Pls.' Br. at 5.  But Apple's May 17 submission did *not* admit that a finding of liability under the Sherman Act was *sufficient* to establish a violation of any state's statute.  Instead, accepting *arguendo* Plaintiffs' assertion that "the [state-law] claims parallel section 1 of the Sherman Act," Apple argued that a liability finding under the Sherman Act was *necessary* but not *sufficient*.  Dkt. 297, Ex. 2 at at 4; *see also id.* at 5 (table of state laws showing "Alleged Scope" of each); *id.* at 9 ("Since plaintiffs' section 1 claims are wholly without merit, the 29 state law claims *alleged* to parallel section 1 must also fail." (emphasis added)); *id.* at 10 ("[T]he Second Circuit has expressly discouraged the application of section 5 [of the Federal Trade Commission Act] to conduct that does not violate the Sherman Act.").  Apple's argument was that, even under Plaintiffs' flawed premise, a finding of no liability under the Sherman Act would defeat many of the state law claims against it.

Next, Plaintiffs suggest that some federal district courts have endorsed the sort of cursory analysis of state-law antitrust claims that they propose here.  *See* Pls.' Br. at 5.  But the court in *Triple 7, Inc. v. Intervet, Inc.*, 338 F. Supp. 2d 1082, 1087 (D. Neb. 2004), actually did consider state courts' constructions of the state statute at issue, and applied those specific legal principles

---

[4]   Illustrating the absurdity of their position, Plaintiffs contend that they are entitled to civil penalties under statutory provisions that they had not even identified in their pleadings when Apple's liability under those statutes was supposedly tried.  Pls.' Br. at 20-21.  Plaintiffs may not recover under statutes that they had not even alleged had been violated until after the trial.  *See A.X.M.S. Corp. v. Friedman*, 948 F.Supp.2d 319, 323 n.1 (S.D.N.Y. 2013) (rejecting "last minute request" for relief that had not been pleaded).

to the facts before it.  *See id.* (where plaintiff failed to allege "anything more than an ordinary breach of contract," allegations were insufficient to state a claim under Nebraska's consumer protection laws).  And to the extent that the courts in *Brooks Fiber Communications of Tucson, Inc. v. GST Lightwave, Inc.*, 992 F. Supp. 1124, 1130 (D. Ariz. 1997), and *Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F. Supp. 1503, 1516 (D. Colo. 1992), adopted the approach Plaintiffs suggest, they based their decisions on express language in each state's statutes that federal decisions should "guide" interpretation of those states' antitrust laws.  *Smalley & Co.*, 808 F. Supp. at 1516; *Brooks*, 992 F. Supp. at 1130 (citing Arizona Antitrust Act); *see also* Ariz. Rev. Stat. § 44-1412 ("It is the intent of the legislature that in construing this article, the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes.").  Yet even the court in *Smalley* recognized that federal antitrust law was "not controlling" under Colorado's antitrust statutes.  808 F. Supp. at 1516.  It is one thing to use federal antitrust law as a "guide"; it is quite another to treat a federal violation as an automatic violation of state law without any independent inquiry.

Finally, Plaintiffs suggest that the "issue of congruence" was "fully briefed prior to the liability trial."  Pls.' Br. at 5.  But nowhere in their exhaustive pre-trial review of state civil penalties statutes did Plaintiffs uncover even a single statute under which any act that violates section 1 of the Sherman Act *automatically* violates state law.  Dkt. 195.  Thus, a finding of Sherman Act liability, without more, cannot establish Apple's liability under any state civil penalties statute.  Plaintiffs themselves admit that the high courts of several states have explicitly held that their antitrust statutes may diverge from the Sherman Act.  For example, they have acknowledged that Connecticut "follow[s] federal precedent . . . unless the text of [its] antitrust statutes, or pertinent state law, requires" a different interpretation.  *Id.* at 6 (quoting *Westport*

*Taxi Serv., Inc. v. Westport Transit Dist.*, 664 A.2d 719, 728 (Conn. 1995)).  Similarly, they have acknowledged that New York's Donnelly Act should be "'given a different interpretation'" from the Sherman Act "'where State policy, differences in the statutory language, or the legislative history justify such a result.'"  Dkt. 195 at 28 (quoting *People v. Rattenni*, 613 N.E.2d 155, 158 (N.Y. 1993)).  And for some of the statutes under which Plaintiffs seek to recover, Plaintiffs have not even identified an interpretive principle suggesting that state courts would turn to federal law for guidance.  *E.g.*, Dkt. 195 at 10 ("There are no decisions from the Idaho Supreme Court interpreting and applying the present Idaho Code Section 48-104 to price fixing allegations."); *id.* at 33 ("There is no reported South Dakota court decision that sets forth the elements required to establish a violation of S.D. Codified Laws § 37-1-3.1 under the facts of this case.").  Plaintiffs have identified *no state* that *automatically* imposes civil penalties based on a Sherman Act violation.

### B.    Some of the Statutes under Which the States Seek Civil Penalties Are Facially Distinct from the Sherman Act, Requiring Additional Factfinding

Because Plaintiffs have not found a single state law that automatically imposes civil penalties for a Sherman Act violation, they must, at a minimum, identify findings in the Court's Opinion (or present evidence of additional facts) that entitle them to relief under each of the specific statutes on which they base their claim for civil penalties.  And in at least two cases— under the civil penalties statutes of Connecticut and Virginia—they must go one step further and establish "willfulness."

State statutes that require elements not necessary for a finding of liability under federal law are not "congruent" with the Sherman Act.  For example, Connecticut General Statutes section 42-110o, states that a violation of the Connecticut Unfair Trade Practices Act is punishable by civil penalty *only* if it is "wil[l]ful"—that is, if "the party committing the violation

knew or should have known that his conduct was a violation" of the Act.  Conn. Gen. Stat. § 42-110o.  Likewise, the Virginia Antitrust Act permits imposition of a civil penalty only for a "willful or flagrant violation."  Va. Code § 59.1-9.11.  Because "willfulness" is not a necessary element of a Sherman Act violation, any purported finding of "willfulness" cannot be given collateral estoppel effect here.  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979); *see also Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005).  To recover under statutes requiring "willfulness," then, Plaintiffs must present evidence establishing that element.

Even if each and every finding in the Court's Opinion were binding, however, Plaintiffs would still be unable to establish willfulness under either Connecticut or Virginia law.  Connecticut General Statutes section 42-110o requires that the defendant "knew or should have known that his conduct was a violation" of the Connecticut Unfair Trade Practices Act.  Yet Plaintiffs point to no evidence or finding that Apple knew or had reason to know its agreements violated the Sherman Act, let alone Connecticut law.  Indeed, before this Court's Opinion, no court had ever held that vertical, non-price agreements that facilitated entry into a concentrated market violate the antitrust laws.  As the Court explicitly noted, it did not find that "any . . . components of Apple's entry into the market," like agency agreements, most-favored-nation clauses ("MFNs") or pricing tiers, "were wrongful, either alone or in combination."  Dkt. 237 at 157.  Therefore, Apple cannot be charged with knowledge that its conduct violated either federal or state antitrust laws under the novel theory that underlies the Court's Opinion.

Plaintiffs' argument under Virginia law fails for much the same reason.  Plaintiffs correctly point out that the term "willful" in Code of Virginia section 59.1-9.11 is not defined in the statute and has not been explicitly interpreted by any court.  Yet citing a case affirming a

conviction for child neglect, Plaintiffs assert that "willful" must mean "'intentional, or knowing, or voluntary, as distinguished from accidental.'"  Pls.' Br. at 6 (quoting *Barrett v. Comm.*, 597 S.E.2d 104, 111 (Va. 2004)).  Such a scienter requirement, however, makes little sense in the antitrust context.  An "accidental" antitrust conspiracy is a contradiction in terms—it is the intent of the parties that creates an agreement subjecting them to liability in the first place.  *See Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 144 F. Supp. 2d 558, 589-90 (W.D. Va. 2001).  Reading Virginia's "willfulness" requirement to demand nothing more than an element that is already present in every antitrust conspiracy would render it surplusage, in violation of the "settled principle of statutory construction that every part of a statute is presumed to have some effect."  *Hubbard v. Henrico Ltd. P'ship*, 497 S.E.2d 335, 340 (Va. 1998).  The only way to avoid this result is to interpret Virginia's willfulness requirement just like Connecticut's—to require actual or constructive knowledge that the defendant's conduct was illegal.  And as shown above, this is a standard Plaintiffs cannot meet.

## III.   This Court Should Not Award State Civil Penalties Because Doing So Would Raise a Host of Other Constitutional and Statutory Problems

Even if the Court makes the findings necessary to establish liability under state civil penalties statutes, awarding civil penalties would raise constitutional and other statutory problems.  Most fundamentally, the imposition of civil penalties under the facts of this case would violate Apple's due process right to fair notice of what conduct would expose it to punishment:  Before this Court's opinion, no court had condemned analogous conduct—agency agreements that were necessary for entry into a concentrated market—under the Sherman Act (let alone under individual state statutes).  Moreover, when viewed in combination with the potential magnitude of the treble damages award here, an additional award of civil penalties amounts to an unreasonable and excessive fine in violation of due process and the Eighth

Amendment.  And any award of civil penalties on top of treble damages recovery under the *parens patriae* statute would constitute impermissible and unnecessary double recovery.

### A. Awarding Civil Penalties Would Violate Apple's Due Process Right to Fair Notice

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012).  This is particularly so where, as in *F.C.C. v. Fox*, the government seeks to impose monetary or other penalties for conduct without "giv[ing] . . . fair notice prior to" the conduct that it violated the law.  *Id.* at 2320.  Under this principle, no person may be "required at peril of . . . property to speculate as to the meaning of penal statutes," *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939), and "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope."  *United States v. Lanier*, 520 U.S. 259, 266 (1997); *see also United States v. Brennan*, 183 F.3d 139, 143, 150 (2d Cir. 1999) (concluding that a company's mail fraud conviction—which resulted in a fine and imposition of a monitorship committee—violated fair notice where "[t]he government [] pointed to no precedent for criminal liability" based on the defendant's conduct).

At trial, Apple was found liable for entering into agency agreements with the Publisher Defendants that featured MFNs and maximum price caps.  *See* Dkt. 237 at 11-12.  As the Court observed, "Plaintiffs have not argued and this Court has not found that any of these or other such components of Apple's entry into the market were wrongful, either alone or in combination."  *Id.* at 157.  And neither Plaintiffs nor the Court ever identified even a remotely analogous precedent in which a court found similar conduct to violate the Sherman Act (or any state antitrust law).  Although the Court pointed to "hub-and-spoke" conspiracy cases like *Toys "R" Us, Inc. v.*

11

*Federal Trade Commission*, 221 F.3d 928 (7th Cir. 2000), and *Interstate Circuit v. United States*, 306 U.S. 208 (1939), those cases involved dramatically different fact patterns.  Apple's conduct at issue here was focused on entry into a concentrated market—when Apple entered into agency agreements with the Publisher Defendants, it sold no e-books and had no market power whatsoever.  Conversely, in *Interstate Circuit*, the defendant exercised its already significant market power to *close* a market to new competitors.  306 U.S. at 231.  And in *Toys "R" Us*, the defendant leveraged its market power to prevent ascendant, lower-cost retail competitors from obtaining goods from manufacturers.  221 F.3d at 937.  Neither of these cases remotely resembles the conspiracy the Court found at trial, in which a retailer entered into individual agreements with content providers that allowed it to enter a new market and the evidence was "equivocal" on whether the retailer even desired to raise prices.  *See* Dkt. 237 at 151 n.68.  Apple had no warning that this conduct would subject it to civil penalties.

Contrary to Plaintiffs' assertions, Apple's fair notice argument is not an attempt to "re-litigate" the case.  Pls.' Br. at 16.  Its argument at this juncture is not that the Court was wrong (that argument is for Apple's appeal), but that its finding was unprecedented.  And under longstanding principles of due process, the Court's novel application of federal and state antitrust law to conduct that Apple could not have anticipated would subject it to liability prevents granting the purely punitive relief Plaintiffs seek here.

### B.    Awarding Civil Penalties Would Violate the Eighth and Fourteenth Amendments Because the Proposed Penalties are Disproportionate and Serve No Punitive Purpose

Even if the civil penalties sought by Plaintiffs did not violate Apple's due process right to fair notice (they do), they are undeniably excessive in light of the extraordinary treble damages recovery Plaintiffs and the class seek in the damages trial.  Like punitive damages awards, civil penalties are subject to scrutiny under the Eighth and Fourteenth Amendments, which require

that any penalty be proportional to the severity of the offense.  The Eighth Amendment reaches any "payment to a sovereign as punishment for some offense"—undeniably encompassing the payments Plaintiffs seek as civil penalties here.  *United States v. Bajakajian*, 524 U.S. 321, 327 (1998) (internal quotation marks omitted); *see also Hudson v. United States*, 522 U.S. 93, 103 (1997).  And "[e]lementary notions of fairness enshrined" in the Fourteenth Amendment "dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a state may impose."  *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996).  For this reason, punitive damages awards and other penalties that are disproportionate to the reprehensibility of the defendant's conduct or unrelated to the magnitude of the harm inflicted on plaintiffs are "grossly excessive" and violate due process.  *Id.* at 575.

Where a party seeks both treble damages and a civil penalties award, "the amount of one will no doubt bear upon the district court's excessive fines analysis with regard to the other." *United States v. Mackby*, 261 F.3d 821, 831 (9th Cir. 2001).  This is because "the Supreme Court has held numerous times that treble damages pursuant to antitrust statutes are not purely remedial," *id.*; instead, "antitrust treble damages were designed in part to punish past violations of the antitrust laws" and to "deter future antitrust violations."  *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575 (1982).  Thus, the total punishment to which an antitrust defendant is subjected—both as a result of imposition of treble damages and any additional civil penalties—is subject to proportionality review under the Eighth and Fourteenth Amendments.

Plaintiffs offer no reasonable explanation why the treble damages recovery they seek would be insufficient to punish Apple for its conduct.  First, they assert that Apple "knowingly and willfully" entered into agreements with the Publisher Defendants, which somehow established "Apple's bad faith."  Pls.' Br. at 8.  But Apple never knew, and had no reason to

know, that its entry into agency agreements was unlawful.  *See* Section III.A, *supra*.  Moreover, the evidence was "equivocal" as to whether Apple even desired e-book prices to increase, Dkt. 237 at 151 n.68, and Steve Jobs himself stated that, even under an agency model, he did not know at what price new-release New York Times bestsellers should be sold.  *Id.* at 80.  What is more, imposition of civil penalties based on Apple's pro-competitive entry into the e-books market would have the perverse effect of discouraging other firms from attempting to expand into new markets—actually impeding competition. *Cf. id.* at 155 ("Providing new entrants with the ability to access markets has long been a mainstay of our economy and any court should be wary of discouraging such access.").

Plaintiffs also assert that the multi-million dollars in trebled damages they seek are somehow insufficient "to serve as an effective deterrent," Pls.' Br. at 9, and argue that the Court should consider "the 'defendant's profits'" from the underlying offense when determining the amount of civil penalties.  *Id.* at 8-9 (quoting *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 399 (2d Cir. 2004)).  But Plaintiffs never even allege what, if any, profit Apple supposedly made on sales of e-books; instead, they gravely intone that Apple's profits were "significant," and point to Apple's *total assets* as though they somehow represent its e-books profits.  Pls.' Br. at 9.  Obviously, they do not, and Plaintiffs fail to offer any coherent explanation why treble damages are somehow insufficiently "'substantial'" for "'deterrence . . . to be achieved.'"  *Id.* (quoting *Reddy v. CFTC*, 191 F.3d 109, 125 (2d Cir. 1999)).

Next, Plaintiffs argue that Apple is "impenitent" and should be punished because it contested liability at trial and has made public statements regarding its appeal from this Court's judgment.  Pls.' Br. at 10.  But Apple cannot be punished for its constitutionally protected petitioning activity—including the arguments it made at trial.  *See BE & K Constr. Co. v.*

*N.L.R.B.*, 536 U.S. 516, 524-25 (2002) (the First Amendment "right to petition [is] one of the most precious of the liberties safeguarded by the Bill of Rights" and "the right of access to the courts is but one aspect of the right of petition") (internal alterations and quotation marks omitted).   Indeed, courts have acknowledged that not only actual petitioning conduct, but also conduct "incidental" to that activity is constitutionally protected.   *See, e.g.*, *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006).

Finally, Plaintiffs suggest that Apple may not seek constitutional review of any civil penalties imposed so long as those penalties are "within the range permitted by statute or regulation."   Pls.' Br. at 13.   But such a principle would eliminate *any* constitutional review of civil penalties, no matter how excessive:   Penalties that exceeded statutory maximums could be invalidated on state law grounds, and all other penalties would pass constitutional muster.   To the extent *Newell Recycling Co., Inc. v. U.S. E.P.A.*, 231 F.3d 204, 210 (5th Cir. 2000), supports this dubious proposition, the only authority on which it relies is a case upholding a fine only where it was *both* "proportional to [the defendant's] violation and well below the statutory maximum."   *Pharaon v. Bd. of Governors of Fed. Reserve Sys.*, 135 F.3d 148, 157 (D.C. Cir. 1998).[5]

### C.   Awarding Civil Penalties Would Create Impermissible Double Recovery

Antitrust "treble damages were designed in part to punish past violations of the antitrust laws," and also to serve the similarly non-compensatory purpose of "deter[ring] future antitrust violations."   *Am. Soc'y of Mech. Eng'rs*, 456 U.S. at 575.   Plaintiffs' proposed recovery of civil

---

[5]   Constitutional issues aside, Plaintiffs' request for a $1,000,000 civil penalty under Louisiana's statute is plainly higher than any penalty the legislature intended under that provision.   Although there is technically no maximum penalty for general violations of Louisiana Statutes section 51:1405, the maximum penalty for violations committed "*with the intent to defraud*" is $5,000.   La. Stat. § 51:1407 (emphasis added).   It would be anomalous for a finding of fraudulent intent to dramatically *reduce* the amount of penalties the state could seek.

penalties is thus duplicative of the punitive portion of treble damages the states already stand to recover.  As in any other case where plaintiffs seek to recover twice for the same wrong, Plaintiffs here should be required to choose whether to recover under state civil penalties statutes or under the treble damages provision of the *parens patriae* statute.

The court in *Fineman v. Armstrong World Industries*, 980 F.2d 171 (3d Cir. 1992), reached precisely this conclusion.  There, a publisher of marketing materials for floor covering distributors alleged that a competitor interfered with its prospective business relations, causing the publisher to fold and clearing the field for the competitor.  *Id.* at 180-81.  The publisher brought antitrust, contract, and tortious interference claims against the competitor.  The Third Circuit remanded for new trial on the tortious interference, contract and Sherman Act section 1 claims.  *Id.* at 217-18.  The court held that, on remand, the plaintiff "must elect between recovering under either tort law with any punitive damages or under its antitrust claim with its treble damages."  *Id.* at 218.  The plaintiff had argued that "recovery of both punitive damages and trebled antitrust damages would not constitute 'double recovery,'" because the two forms of damages served distinct purposes.  *Id.*  However, this view was "only partially correct."  *Id.* at 219.  "Although treble damages are not solely punitive in character," the court noted that they "do serve a penal and deterrent function in addition to a remedial one, and as a consequence do overlap somewhat with punitive damages."  *Id.*  And an election of remedies would not "undermine the remedial purpose of trebled antitrust damages"—if the antitrust damages were larger than the punitive damages award, the plaintiff would "simply choose the larger" award and elect to recover antitrust damages.  *Id.*

The same logic governs here.  The punitive purpose of trebled damages under the Clayton Act obviously overlaps with the punitive purpose of the various statutes under which

Plaintiffs seek civil penalties.  Permitting this duplicative recovery would punish Apple—and pay the states— twice for the same conduct.

Plaintiffs' efforts to distinguish *Fineman* are unavailing.  They first note, without attributing any significance to the distinction, that they are "governmental plaintiffs, not private parties."  Pls.' Br. at 17.  That non-reason aside, Plaintiffs assert that "[a]ny treble damages awarded will be distributed exclusively to injured consumers," supposedly obviating any concerns about double recovery.  *Id.*  But regardless of how Plaintiffs and the Court eventually structure the distribution of any treble damages (and distribution under the *parens patriae* statute often does include cy pres distribution to "governmental entities," *see New York v. Salton, Inc.*, 265 F. Supp. 2d 310, 312 (S.D.N.Y. 2003)), in the first instance the Clayton Act unambiguously directs courts to "award *the State* as monetary relief threefold the total damage sustained."  15 U.S.C. § 15c(a)(2) (emphasis added).  And even if Plaintiffs do find a way to avoid ultimately retaining any of the trebled damages they seek in this action, that will not solve the problem of double *punishment* for Apple.

Finally, Plaintiffs claim that "unlike in *Fineman*," their civil penalties claims are not mere "alternative theories of recovery," but instead are intended to "provide relief in addition to what is available under federal law."  Pls.' Br. at 17 (internal quotation marks omitted).  As an initial matter, Plaintiffs appear assume that every state's civil penalties statute is intended to permit duplicative recovery.[6]  Moreover, their theory has little to recommend it other than a single

---

[6]   Plaintiffs point to a judicial decision applying New York law and statutory provisions under Alaska, Illinois and Texas law that supposedly indicate that *those states'* statutes permit recovery in addition to treble damages; but they make no effort to establish a similar intent underlying the other 20 states' statutes under which they seek civil penalties.  Pls. Br. at 17 n.22; *see* Dkt. 297 Ex. 1.  And Plaintiffs' attenuated argument that Virginia law does not prohibit recovery of both treble damages and civil penalties relies on the erroneous notion that treble damages do not include a punitive component.  *See* Pls.' Br. at 18.  This is simply wrong.  *See, e.g., Am. Soc'y of Mech. Eng'rs*, 456 U.S. at 575.

federal district court case, *Maryland v. Dickson*, 717 F. Supp. 1090, 1106 (D. Md. 1989), which itself recognized that a "policy against duplicative punishment has [] appeared in anti-trust cases which have held that an award of treble damages is . . . duplicative of a punitive damage award." That case simply announced the reed-thin distinction between a punitive "*fine*" and punitive damages without giving any principled reason that a state may itself recover twice for the same harm, but may not authorize its own citizens to do so. *Id.* And even if this distinction had some reasoned basis, the "amount of the [treble damages] award" would have to be "taken into consideration in fixing the amount of the civil penalty"—in this case, that analysis flatly precludes imposition of civil penalties on top of the treble damages Plaintiffs seek. *New York v. Amfar Asphalt Corp.*, 1986 WL 27582, at *3 (E.D.N.Y. Nov. 20, 1986).

## CONCLUSION

For the foregoing reasons, the Court should not permit recovery of civil penalties except as a portion of any trebled damages.


Dated:  February 10, 2014                    Respectfully submitted,

                                     By:  *[signature]*

                                     Theodore J. Boutrous (*Pro Hac Vice*)
                                     Daniel G. Swanson (*Pro Hac Vice*)
                                     Gibson, Dunn & Crutcher, LLP
                                     333 South Grand Avenue
                                     Los Angeles, CA  90071
                                     (213) 229-7000
                                     tboutrous@gibsondunn.com

                                     Cynthia Richman (*Pro Hac Vice*)
                                     Gibson, Dunn & Crutcher, LLP
                                     1050 Connecticut Avenue, N.W.
                                     Washington, DC  20036
                                     (202) 955-8500


18

crichman@gibsondunn.com

Howard E. Heiss
Edward N. Moss
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY  10036
(212) 326-2000
hheiss@omm.com

*On behalf of Defendant Apple Inc.*