# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____ )
IN RE ELECTRONIC BOOKS ANTITRUST      )     No. 11-md-02293 (DLC)
LITIGATION                                                )     ECF Case
_____ )


This Document Relates to:

_____ )
                                                               )
THE STATE OF TEXAS, et al.,                         )
                                                               )
              Plaintiffs,                                   )
                                                               )     No. 12-cv-03394 (DLC)
              v.                                              )
                                                               )
PENGUIN GROUP (USA) INC., et al.,             )
                                                               )
              Defendants.                                )
_____ )


## PLAINTIFF STATES' REPLY BRIEF ON CIVIL PENALTIES

**<u>TABLE OF CONTENTS</u>**

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     ARGUMENT ............................................................................................... 1

        A.      The Court Has Determined that Apple Violated State Laws .................................. 1

        B.      Apple Had Fair Notice That Its Conduct Was Illegal ............................................. 4

        C.      The Civil Penalties Sought Would Not Violate the Eighth Amendment or Due
                Process ..................................................................................................... 6

        D.      Awarding Civil Penalties to the Plaintiff States Will Not Constitute an
                Impermissible "Double Recovery" ................................................................. 8

        E.      Awarding any Residue of the Clayton Act Treble Damages Recovery to the States
                Cannot Take the Place of the Civil Penalties Provided by State Law ................. 10

III.    CONCLUSION .......................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Certain Underwriters at Lloyd's, London, Subscribing to Policy No. 501/NB03ACMD v. Nance,*
 2007 WL 1302569 (D.N.M. Apr. 23, 2007) ...................................................................... 3

*Dickson v. Microsoft Corp.,*
 309 F.3d 193 (4th Cir. 2002) ........................................................................................... 3

*FCC v. Fox Television Stations, Inc.,*
 132 S. Ct. 2307 (2012) ..................................................................................................... 4

*Fineman v. Armstrong World Indus., Inc.,*
 980 F.2d 171 (3d Cir. 1992) ............................................................................................. 9

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
 455 U.S. 489 (1982) .......................................................................................................... 5

*Houseman v. U.S. Aviation Underwriters,*
 171 F.3d 1117 (7th Cir. 1999) ......................................................................................... 3

*In re: Innotron Diagnostics,*
 800 F.2d 1077 (Fed. Cir. 1986) ....................................................................................... 3

*Interstate Circuit v. United States,*
 306 U.S. 208 (1939) .......................................................................................................... 4

*Maryland v. Dickson,*
 717 F. Supp. 1090 (D. Md. 1989) ................................................................................... 9

*MCM Partners, Inc. v. Andrews-Bartlett & Assocs.,*
 62 F.3d 967 (7th Cir. 1995) ............................................................................................. 3

*Olin Corp. v. Am. Home Assur. Co.,*
 704 F.3d 89 (2d Cir. 2012) .............................................................................................. 3

*Parklane Hosiery Co, Inc. v. Shore,*
 439 U.S. 322 (1979) .......................................................................................................... 3

*SEC v. Lipson,*
 278 F.3d 656 (7th Cir. 2002) ........................................................................................... 7

*SEC v. Lorin,*
 76 F.3d 458 (2d Cir. 1996) .............................................................................................. 7

ii

*SEC v. Rosenthal*,
    426 F. App'x 1 (2d Cir. 2011) ........................................................................ 6

*Seghers v. SEC*,
    548 F.3d 129 (D.C. Cir. 2008) ...................................................................... 7

*St. Louis I.M. & S. Ry. Co. v. Williams*,
    251 U.S. 63 (1919) ........................................................................................ 6

*State Oil Co. v. Kahn*,
    522 U.S. 3 (1997) .......................................................................................... 5

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006) .......................................................................................... 5

*Toys "R" Us v. FTC*,
    221 F.3d 928 (7th Cir. 2000) ........................................................................ 4

*United States ex rel. Tyson v. Amerigroup Ill., Inc.*,
    488 F. Supp. 2d 719 (N.D. Ill. 2007) ............................................................ 8

*United States v. Apple Inc.*,
    952 F. Supp.2d 638 (S.D.N.Y. 2013) ................................................ 3, 4, 6, 9

*United States v. Bajakajian*,
    524 U.S. 321 (1998) ...................................................................................... 6

*United States v. Castello*,
    611 F.3d 116 (2d Cir. 2010) .......................................................................... 6

*United States v. Karron*,
    481 F. App'x 703 (2d Cir. 2012) .................................................................. 8

*United States v. Lanier*,
    520 U.S. 259 (1997) .................................................................................. 4, 5

*United States v. Mastellone*,
    2011 WL 4031199 (S.D.N.Y. Sept. 12, 2011) .............................................. 8

*United States v. Socony-Vacuum Oil Co.*,
    310 U.S. 150 (1940) ...................................................................................... 4

*Upton v. SEC*,
    75 F.3d 92 (2d Cir. 1996) .............................................................................. 5

**Statutes**

Alabama Deceptive Trade Practices Act
    Ala. Code § 8-19-11 ................................................................................................ 6

Alaska Unfair Trade Practices and Consumer Protection Act
    Alaska Stat. § 45.50.537 ......................................................................................... 8
    Alaska Stat. § 45.50.551 ...................................................................................... 6, 8

Alaska Restraint of Trade Act
    Alaska Stat. § 45.50.576 ......................................................................................... 8
    Alaska Stat. § 45.50.578 ......................................................................................... 8

Arizona Uniform State Antitrust Act
    Ariz. Rev. Stat. § 44-1407 ...................................................................................... 8
    Ariz. Rev. Stat. § 44-1408 ...................................................................................... 8

Clayton Act
    15 U.S.C. § 15 ........................................................................................................ 8
    15 U.S.C. § 15a ...................................................................................................... 8
    15 U.S.C. § 15c ...................................................................................................... 8
    15 U.S.C. § 15e .................................................................................................... 10
    15 U.S.C. § 16 ........................................................................................................ 8

Colorado Antitrust Act of 1992
    Colo. Rev. Stat. § 6-4-112 ...................................................................................... 6

Connecticut Antitrust Act
    Conn. Gen. Stat. § 35-35 ........................................................................................ 8
    Conn. Gen. Stat. § 35-38 ..................................................................................... 6, 8

Connecticut Unfair Trade Practices Act
    Conn. Gen. Stat. § 42-110o ..................................................................................... 3

Delaware Antitrust Act
    Del. Code tit. 6, § 2107 ........................................................................................... 8
    Del. Code tit. 6, § 2108 ........................................................................................... 8

Idaho Competition Act
    Idaho Code § 48-108 ............................................................................................... 8

Illinois Antitrust Act
    740 Ill. Comp. Stat. 10/7 ........................................................................................ 8

Louisiana Unfair Trade Practices and Consumer Protection Act
     La. Rev. Stat. § 51:1407 ............................................................................... 7

Maryland Antitrust Act
     Md. Code, Com. Law § 11-209 .................................................................... 8

Michigan Antitrust Reform Act
     Mich. Comp. Laws § 445.777 ...................................................................... 8
     Mich. Comp. Laws § 445.778 ...................................................................... 8

Nebraska Consumer Protection Act
     Neb. Rev. Stat. § 59-1614 ............................................................................ 6

New Mexico Antitrust Act
     N.M. Stat. § 57-1-3 ...................................................................................... 8
     N.M. Stat. § 57-1-7 ................................................................................... 6, 8

Donnelly Act
     N.Y. Gen. Bus. Law § 340 ........................................................................... 8
     N.Y. Gen. Bus. Law § 342-a ..................................................................... 6, 8

North Dakota Century Code, Uniform State Antitrust Act
     N.D. Cent. Code § 51-08.1-07 ..................................................................... 8
     N.D. Cent. Code § 51-08.1-08 ..................................................................... 8

Valentine Act
     Ohio Rev. Code § 1331.03 ........................................................................ 6, 8
     Ohio Rev. Code § 1331.08 ........................................................................... 8

Sherman Act
     15 U.S.C. § 1 ................................................................................................ 8

S.D. Codified Laws § 37-1-14.2 ......................................................................... 8
S.D. Codified Laws § 37-1-14.3 ......................................................................... 8
S.D. Codified Laws § 37-1-24 ............................................................................ 8

Texas Free Enterprise and Antitrust Act
     Tex. Bus. & Com. Code § 15.20 ............................................................... 6, 8
     Tex. Bus. & Com. Code § 15.21 .................................................................. 8

Vermont Consumer Fraud Act
     Vt. Stat. Ann. tit. 9, § 2465 ......................................................................... 8
     Vt. Stat. Ann. tit. 9, § 2458 ......................................................................... 8

v

Virginia Antitrust Act
    Va. Code § 59.1-9.11 .............................................................................. 8
    Va. Code § 59.1-9.12 .............................................................................. 8

West Virginia Antitrust Act
    W. Va. Code § 47-18-8 ....................................................................... 6, 8
    W. Va. Code § 47-18-9 ........................................................................... 8

Wisconsin Antitrust Act
    Wis. Stat. § 133.03 ................................................................................. 8
    Wis. Stat. § 133.18 ................................................................................. 8

## I.   PRELIMINARY STATEMENT

Apple's attempt to avoid the imposition of authorized (and in certain cases mandatory) state law civil penalties depends on its convincing this Court that the Court did not find Apple liable for violating any state laws. This is demonstrably false. All that remains for the Court to do is to set the amount of penalties to be assessed against Apple under each applicable statute, considering the relevant factors. Such penalties, paid to the States for violations of substantive state laws, are entirely independent of the damages to be recovered for distribution to injured consumers under federal law. Distinguishing between these remedies promotes constitutional principles of federalism and due process. With the hope of confusing the Court's straightforward task, Apple has raised a host of unpersuasive arguments, including that it was "unprecedented" to hold it liable for facilitation of and participation in a price fixing conspiracy. Apple's arguments deliberately misconstrue the Court's opinion, the Plaintiff States' positions, or both, and should be rejected. Apple violated the antitrust laws. It should be held accountable.

## II.   ARGUMENT

### A.   The Court Has Determined that Apple Violated State Laws

This Court concluded that Apple violated "Section 1 of the Sherman Act and relevant state statutes to the extent those laws are congruent with Section 1." *United States v. Apple Inc.*, 952 F. Supp. 2d 638, 709 (S.D.N.Y. 2013); *see also* ECF No. 299 at 3.[1] Each of the statutes pursuant to which the States seek civil penalties is congruent with section 1, *see* ECF No. 195, and with a few meritless exceptions, Apple does not dispute that this is the case. The Plaintiff States voluntarily dismissed, prior to trial, their claims under any state statute that even arguably was not congruent with section 1. *See* ECF Nos. 226-228. Apple's liability under the relevant

---

[1] Unless otherwise noted, all references to "ECF No." are to the docket in No. 12-cv-03394.

statutes has been established.[2]

Nevertheless, Apple postulates that the Court has not found it liable under the state statutes because the Court did not specifically enumerate in its opinion the statutes that Apple violated. *See* ECF No. 430 at 5-8. There is no such requirement. The Plaintiff States have already shown that each statute is modeled after federal law and is clearly intended to mirror it; that courts considering each state law use federal case law as an interpretive guide;[3] and that Apple's conduct as found by the Court – facilitating and participating in a horizontal price fixing conspiracy – would run afoul of each such state law. Indeed, Apple has never disputed that the conduct this Court found Apple to have engaged in constitutes a violation of the relevant state laws, just as it violated the Sherman Act.[4]

Apple also contends that the States cannot rely on the Court's factual findings from the liability trial to establish Apple's willfulness for purposes of penalties under the Connecticut Unfair Trade Practices Act and the Virginia Antitrust Act. ECF No. 430 at 8-9. Apple further asserts that, even if the factual findings could be used, they do not support a finding that Apple willfully violated the law because it believes the Court's holding to be "unprecedented," and it could not therefore have anticipated being held liable for its actions. These arguments are baseless.

Apple's appeal to the doctrine of collateral estoppel is a red herring. Collateral estoppel

---

[2] For ease of reference, attached hereto as Exhibit 1 is a chart listing the statutes pursuant to which Apple is liable for civil penalties. This chart is similar to that attached to the States' September 20, 2013 letter to the Court (ECF No. 297) with the addition of a column listing the maximum penalty amount requested pursuant to each statute.

[3] Apple contends that the Plaintiff States did not establish that courts should look to federal law in interpreting the Idaho and South Dakota statutes. *See* ECF No. 430 at 8. This is wrong. *See* ECF No. 195 at 10-11, 33.

[4] Apple suggests that the analysis of certain conduct pursuant to New York or Connecticut law might differ from that under federal law if required by statutory text or some state policy. *See* ECF No. 430 at 7-8. However, Apple has not identified any differences in the text of the applicable laws or state policies that would mandate a different result than what was obtained under federal law in this case, based on the facts as found by the Court.

bars relitigation in a "subsequent action" of certain issues decided against a party in a "prior action." *See, e.g., Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012) (internal quotation marks and citation omitted); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326-32 (1979). But the findings Apple asks the Court to ignore were made by *this* Court, in *this* action, after a trial on the merits at which Apple defended itself against *these* claims, made by *these* plaintiffs. There is nothing collateral about this Court's findings. For purposes of this lawsuit, these issues have been decided. Apple "cannot continue to litigate" them and "does not get two tries" at convincing the Court that its conduct was not willful. *Certain Underwriters at Lloyd's, London, Subscribing to Policy Number 501/NB03ACMD v. Nance*, 2007 WL 1302569 at *11 (D.N.M. Apr. 23, 2007); *see also In re: Innotron Diagnostics*, 800 F.2d 1077, 1085-86 (Fed. Cir. 1986) (issues determined in first phase of bifurcated action binding in second trial); *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1127 (7th Cir. 1999) (same).

Even if Apple were correct, the States could still rely on the Court's findings to establish that Apple violated the law willfully.[5] While it is not always necessary to prove that a defendant knowingly violated the law to make out a violation of section 1 of the Sherman Act, the Court held that it is necessary to prove that a vertical player knowingly violated the law to hold it liable for its role in a horizontal conspiracy. *See Apple*, 952 F. Supp. 2d at 690 ("Where a vertical actor is alleged to have participated in an unlawful horizontal agreement, plaintiffs must demonstrate

---

[5] Conn. Gen. Stat. § 42-110o(b) states that a "willful" violation of the Connecticut Unfair Trade Practices Act occurs "when the party committing the violation knew or should have known that his conduct was a violation" of the Act. Apple argues that the term "willful" in Virginia's statute should be given a similar meaning. It argues that interpreting it to only require a party to violate the law intentionally or voluntarily would render the requirement surplusage because it is impossible to have an accidental antitrust conspiracy. *See* ECF No. 430 at 10. However, it is possible to hold a conspirator liable under the antitrust laws in cases where it cannot be said that it joined the conspiracy voluntarily, such as in cases where a party joins as a result of coercion from other members of the conspiracy. *See Dickson v. Microsoft Corp.*, 309 F.3d 193, 205 (4th Cir. 2002) (quoting *MCM Partners, Inc. v. Andrews-Bartlett & Assocs.*, 62 F.3d 967, 973 (7th Cir. 1995)). Thus, the "willful" requirement in the Virginia statute could be aimed at excusing such violators from paying civil penalties. Nevertheless, the Court need not resolve the meaning of the term in the Virginia statute because, even under the definition in the Connecticut statute, Apple clearly violated the law willfully.

both that a horizontal conspiracy existed and that the vertical player was a knowing participant in that agreement and facilitated the scheme."). The Court found that the Plaintiffs made this showing. *See id.* at 691 ("The Plaintiffs have also shown that Apple was a knowing and active member of [the] conspiracy. Apple not only willingly joined the conspiracy, but also forcefully facilitated it.").

Finally, Apple argues that it could not have knowingly or willfully violated the Sherman Act or state laws because the Court's opinion was "unprecedented." This is merely a variation on Apple's fair notice argument (discussed in greater detail below) and thus is based on the faulty premise that Apple's liability arose solely from its entry into the agency agreements with the Publisher Defendants. But Apple knows this to be false. The Court condemned Apple's use of its contracts in facilitating a horizontal conspiracy among the Publisher Defendants to eliminate price competition in the retail market for e-books. *See id.* at 692-93. There are clear precedents establishing the illegality of horizontal price fixing arrangements, *see, e.g.*, *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940), and holding an entity at one level in the distribution chain liable for its facilitation of, and participation in, an unlawful horizontal conspiracy among competitors at a different level of the distribution chain, *see, e.g.*, *Interstate Circuit v. United States*, 306 U.S. 208, 225-29 (1939); *Toys "R" Us v. FTC*, 221 F.3d 928, 934, 936 (7th Cir. 2000). Apple therefore should have known that its conduct was illegal.

**B.      Apple Had Fair Notice That Its Conduct Was Illegal**

Due process requires that laws give "fair notice of conduct that is forbidden or required," *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012), and courts should not apply a statute to "conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997). However, the measure of

4

fair notice varies; the test for economic regulation is less strict, civil statutes are judged less stringently than criminal statutes, and laws that inhibit the exercise of constitutionally protected rights are subjected to harsher scrutiny than others. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982); *see also Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996) (the concept of fair notice applies with less force in the civil context). Even in the criminal context, the Supreme Court has upheld convictions "despite notable factual distinctions between the precedents relied on [to supply fair notice that certain conduct is illegal] and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated" the statutes. *Lanier*, 520 U.S. at 269-70.

Apple cannot plausibly claim that it was unaware that its conduct could be found to violate the antitrust laws. Section 1 of the Sherman Act clearly condemns conspiracies and other agreements that unreasonably restrain trade or commerce, *see State Oil Co. v. Kahn*, 522 U.S. 3, 10 (1997), and horizontal price fixing conspiracies, such as the one Apple was found to have facilitated, so plainly unreasonably restrain trade that they are considered illegal *per se*. *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). There is therefore no question that Apple had notice that the horizontal conspiracy among the Publisher Defendants that it joined was illegal and that, even though it was in a vertical relationship to the other members of the conspiracy, it could be held liable for its facilitation and participation under the standards established by *Interstate Circuit* and *Toys "R" Us.*

Apple's attempt to distinguish those cases is ineffective, redundant,[6] and ultimately irrelevant. Apple argues that *Interstate Circuit* and *Toys "R" Us* differ from this case because

---

[6] Apple continues to assert that it "was found liable for entering into agency agreements with the Publisher Defendants that featured MFNs and maximum price caps." ECF No. 430 at 11. Such statements depend on willful ignorance of the Court's detailed factual findings about Apple's role in knowingly joining and facilitating the conspiracy that is the subject of this case.

they condemned an industry participant with market power who used that power to disadvantage competitors, whereas Apple was a new competitor, employing collusive means to enter a concentrated market. *See* ECF No. 430 at 12. But the Court has already properly rejected this distinction. *Apple*, 952 F. Supp. 2d at 707. Apple had the constitutionally required fair notice.

## C.   The Civil Penalties Sought Would Not Violate the Eighth Amendment or Due Process

The Eighth Amendment and principles of due process forbid the imposition of punishments that are grossly excessive compared to the gravity of the defendant's offense. *See United States v. Bajakajian*, 524 U.S. 321, 334 (1998); *St. Louis I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919). The defendant challenging a penalty has the burden of establishing its unconstitutionality. *United States v. Castello*, 611 F.3d 116, 120 (2d Cir. 2010).

Apple's constitutional claims amount to an assertion that the Plaintiff States have failed to prove that the treble damages to be recovered on behalf of injured consumers are insufficient to serve as an effective deterrent.  *See* ECF No. 430 at 13. But that is neither the Plaintiff States' burden nor the appropriate test. The state laws that Apple violated clearly provide for the imposition of penalties to be paid to the States, separate and apart from damages paid to injured consumers.[7] If Apple wishes to avoid these penalties, the burden is on Apple to show that such legislatively dictated penalties are grossly disproportional. This is a burden it cannot meet if this Court considers the appropriate factors in determining the penalties to be assessed. *See, e.g., SEC v. Rosenthal*, 426 F. App'x 1, 4-5 (2d Cir. 2011); ECF No. 399 at 11-14.

---

[7] In many cases, the imposition of penalties is mandatory upon a finding that the relevant statute has been violated. *See* Tex. Bus. & Com. Code § 15.20(a) ("Every person adjudged to have violated any of these prohibitions **shall** pay a fine . . .") (emphasis added); Colo. Rev. Stat. § 6-4-112 ("The court, upon finding a violation of this article, **shall** impose a civil penalty . . .) (emphasis added); Conn. Gen. Stat. § 35-38 ("Any other person who has been held to have violated any of the provisions of this chapter **shall** forfeit and pay to the state a civil penalty . . .") (emphasis added); Ala. Code § 8-19-11(b); Alaska Stat. § 45.50.551(b); Neb. Rev. Stat. § 59-1614; N.M. Stat. § 57-1-7(A); N.Y. Gen. Bus. Law § 342-a; Ohio Rev. Code § 1331.03; W. Va. Code § 47-18-8.

The Plaintiff States have established that Apple knowingly and willfully joined the conspiracy; that its conduct inflicted widespread and significant harm on consumers, some of which cannot adequately be calculated and remedied by the recovery of damages; that Apple is able to pay a large penalty;[8] and that Apple refuses to accept responsibility for its actions.[9]  ECF No. 399 at 8-10. Apple cannot show that the award of the modest amount of civil penalties the States seek in this case – which at maximum would be only $8.7 million – would be out of proportion to the serious violation of the antitrust laws that it committed, much less that it would be grossly excessive. Plaintiffs are seeking hundreds of millions of dollars in damages; it is absurd to argue that an additional $8.7 million in penalties transforms Apple's total liability into something "grossly excessive."[10] The States are asking the Court to assess appropriate civil penalties after the completion of the damages trial, when the magnitude of the harm caused by the conspiracy will have been determined. Apple has manifestly failed to carry its burden to establish that the mere fact of any imposition of civil penalties against it in this case would be unconstitutional.

---

[8] Reference to Apple's total assets in the States' opening brief was made in support of establishing Apple's ability to pay substantial penalties, not, as Apple misleadingly suggests, as a proxy for the amount of Apple's profits from the conspiracy. *See* ECF No. 430 at 14.

[9] Apple's argument that consideration of its refusal to accept responsibility in setting the amount of the civil penalties unconstitutionally punishes it for its petitioning activity is unfounded. A defendant's refusal to accept responsibility is routinely considered in determining the propriety of penalties and other remedies. *See, e.g., Seghers v. SEC*, 548 F.3d 129, 136-37 (D.C. Cir. 2008); *SEC v. Lipson*, 278 F.3d 656, 664 (7th Cir. 2002); *SEC v. Lorin*, 76 F.3d 458, 461 (2d Cir. 1996).

[10] With respect to Louisiana's penalty statute, La. Rev. Stat. § 51:1407, Apple argues that the maximum requested penalty of $1 million exceeds any penalty that could have been intended by the legislature. *See* ECF No. 430 at 15 n.5. Its argument is based on a misreading of the statute. As Apple concedes, the amount of the civil penalty for violations of the statute is not capped, but is within the trial court's discretion. La. Rev. Stat. § 51:1407(B). Where the violation was done with the intent to defraud, the court may impose an *additional* penalty that may not exceed $5,000. *Id.* Similarly, where the violation was committed against an elderly or disabled person, the court may impose an additional penalty of up to $5,000. *Id.* § 51:1407(C).

**D.     Awarding Civil Penalties to the Plaintiff States Will Not Constitute an Impermissible "Double Recovery"**

Apple argues that civil penalties would duplicate the punitive aspect of the treble damages sought by the Plaintiff States on behalf of their citizens and that the Plaintiff States should therefore be forced to choose either civil penalties or treble damages. ECF No. 430 at 15-16. In short, Apple erroneously argues that it is never permissible to subject a defendant to two different remedies with punitive components – even where those remedies are provided for under distinct statutory schemes consistent with principles of dual sovereignty. *Id.* at 16-17.

This argument is deeply flawed. It is routine for federal and state statutes to provide for penalties to be paid to the government in addition to damages awards available to civil plaintiffs, even where those damages awards include an arguably punitive component. The Sherman Act itself does just that, allowing for the imposition of criminal fines and follow-on civil actions entailing treble damages. *See* 15 U.S.C. §§ 1, 15, 15a, 15c; *see also* 15 U.S.C. § 16(a) (criminal antitrust conviction given preclusive effect in civil actions seeking treble damages). The rule is no different where Congress or a state legislature has provided for civil penalties. *See, e.g.*, *United States v. Karron*, 481 F. App'x 703, 703 (2d Cir. 2012); United *States v. Mastellone*, 2011 WL 4031199, at *3-4 (S.D.N.Y. Sept. 12, 2011); *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 488 F. Supp. 2d 719, 739-40 (N.D. Ill. 2007). And, though the States here seek damages only under federal law, the vast majority of the state statutory schemes pursuant to which the States seek civil penalties expressly provide for the recovery of treble damages as well.[11]

---

[11] *See* Ohio Rev. Code §§ 1331.03 (penalty), 1331.08 ("In addition to the civil and criminal penalties provided . . . the person injured . . . may sue . . . and recover treble the damages sustained"); Alaska Stat. §§ 45.50.578 (penalty), 45.50.576(1) (treble damages); Alaska Stat. §§ 45.50.551 (penalty), 45.50.537 (treble damages); Ariz. Rev. Stat. §§ 44-1407 (penalty), 44-1408 (B) (treble damages); Conn. Gen. Stat. §§ 35-38 (penalty), 35-35 (treble damages); Del. Code tit. 6, §§ 2107 (penalty), 2108(c) (treble damages); Idaho Code §§ 48-108(1)(d) (penalty), 48-108(2)(a) (treble damages); 740 Ill. Comp. Stat. 10/7(4) (penalty), 10/7(2) (treble damages); Md. Code, Com. Law §§ 11-209(a)(4) (penalty), 11-209(b)(4)-(5) (treble damages); Mich. Comp. Laws §§ 445.777 (penalty), 445.778(2) (treble damages); N.M. Stat. §§ 57-1-7(A) (penalty), 57-1-3 (treble damages); N.Y. Gen. Bus. Law §§ 342-a (penalty), 340 (treble

The only case that Apple cites in support of its argument against the imposition of both treble damages and civil penalties, *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171 (3d Cir. 1992), does not stand for the broad principle that Apple advances. Instead, the case stands for the much narrower proposition that, to prevent a windfall recovery, a single private plaintiff should not be awarded duplicative treble damages and punitive damages under alternative legal theories as applied to the same conduct. *Fineman*, 980 F.2d at 218.

As *Maryland v. Dickson*, 717 F. Supp. 1090 (D. Md. 1989), reflects, that principle has no application in this case. In *Dickson*, the court noted that cases like *Fineman* were distinguishable from actions where a state seeks to recover both a civil penalty and damages with a punitive element because the funds will not ultimately be retained by the same entity. 717 F. Supp. at 1106 ("The instant case is distinguishable because plaintiffs are requesting a state law *fine*, as opposed to punitive damages for the victims under state common law."). The award of both forms of relief therefore presented no danger of a windfall or "double recovery." The same is true here. Though Apple takes pains to note that the treble damages in this case will be awarded to the Plaintiff States, ECF No. 430 at 17, these funds are indisputably being recovered for, and will be distributed to, consumers. There is no danger of "double recovery" or of a windfall.[12]

---

damages); N.D. Cent. Code §§ 51-08.1-07 (penalty), 51-08.1-08(2) (treble damages); S.D. Codified Laws §§ 37-1-14.2 (penalty), 37-1-14.3 and 37-1-24 (treble damages); Tex. Bus. & Com. Code §§ 15.20(a) (penalty), 15.21(a)(1) (treble damages); Vt. Stat. Ann. tit. 9, §§ 2458(b)(1) (penalty), 2465(a) (treble damages); Va. Code §§ 59.1-9.11 (penalty), 59.1-9.12(b) (treble damages); W. Va. Code §§ 47-18-8 (penalty), 47-18-9 (treble damages); Wis. Stat. §§ 133.03(3) (penalty), 133.18(1) (treble damages).

[12] Moreover, certain components of the harm caused by Apple's conspiracy are not included in the States' damages estimate, such as the harm to the States' economies incurred when consumers did not buy their preferred books because of the price increase (either buying cheaper books or not buying at all). *See Apple*, 952 F. Supp. 2d at 685. To the extent civil penalties are attributed to this otherwise unaddressed harm, any recovery cannot possibly be considered duplicative of treble damages.

**E.**   **Awarding any Residue of the Clayton Act Treble Damages Recovery to the States Cannot Take the Place of the Civil Penalties Provided by State Law**

The Plaintiff States have never argued that the Court is not authorized to award any residue of the treble damages they recover for violations of federal law as a civil penalty pursuant to 15 U.S.C. § 15e(2). Instead, we maintain that carving out a portion of the federal treble damage award as a substitute for civil penalties *under state law* is inappropriate, and could deny consumers the right to full recovery of their loss. But that is precisely what Apple seeks.

The approach Apple advocates would undermine the authority of state legislatures to prescribe appropriate penalties for violations of duly enacted state laws, some of which, as set forth above, are mandatory in nature. As explained in our opening brief, *see* ECF No. 399 at 18-20, there is no basis for carving out a portion of any treble damage recovery as a substitute for civil penalties to be awarded under the distinct state statutes Apple has been found to have violated. The Court should, therefore, proceed at the conclusion of the damages trial with the award of civil penalties pursuant to the state statutes listed on Exhibit 1.

## III.   CONCLUSION

The Plaintiff States are entitled to an award of civil penalties pursuant to state law that is separate from any award of damages on behalf of consumers pursuant to the Clayton Act. Though Apple has raised a flurry of arguments against their imposition, none of them ultimately stick. The Court should reject Apple's continued attempts to escape accountability and should award state law civil penalties as appropriate at the conclusion of the damages trial.

Dated: March 7, 2014

Respectfully Submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JOHN SCOTT
Deputy Attorney General for Civil Litigation

JOHN T. PRUD'HOMME
Chief, Consumer Protection Division

KIM VAN WINKLE
Chief, Antitrust Section

By: _____
Eric Lipman (EL-6300)
Gabriel Gervey (*pro hac vice*)
David Ashton (*pro hac vice*)
Kayna Stavast-Piper (*pro hac vice*)
Assistant Attorneys General
P.O. Box 12548
Austin, TX 78711-2548
Phone: 512-463-1579
Fax:  512-320-0975
Eric.Lipman@texasattorneygenereal.gov
Gabriel.Gervey@texasattorneygeneral.gov
David.Ashton@texasattorneygeneral.gov
Kayna.Stavast-Piper@texasattorneygeneral.gov

**Attorneys for the State of Texas**
*On Behalf of the Plaintiff States*

11

GEORGE JEPSEN
Attorney General of Connecticut

MICHAEL E. COLE
Chief, Antitrust Department

By: _W. Joseph Nielsen /ej_

W. Joseph Nielsen (*pro hac vice*)
Gary M. Becker (GB-8259)
Assistant Attorneys General
55 Elm Street
Hartford, CT 06106
Phone:  860-808-5040
Fax:  860-808-5033
Michael.Cole@ct.gov
Joseph.Nielsen@ct.gov
Gary.Becker@ct.gov

**Attorneys for the State of Connecticut**
*On Behalf of the Plaintiff States*