## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | ) ) ) | No. 11-md-02293 (DLC) ECF Case |

**This Document Relates to:**

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 12-cv-03394 (DLC) |
| PENGUIN GROUP (USA) INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF STATES' MEMORANDUM IN OPPOSITION TO APPLE INC.'S MOTION TO DISMISS FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE, TO COMPEL THE PLAINTIFF STATES TO SEEK CLASS CERTIFICATION**

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................1

II. ARGUMENT

    A.  Section 4C of the Clayton Act is Constitutional.............................. 3

        1.  Congress Properly Authorized States to
            Pursue Damages on Behalf of Their Citizens
            under Section 4C of the Clayton Act................................... 4

        2.  The *Parens Patriae* Cases Cited by
            Apple are Inapposite……………………………………...…… 6

        3.  The Supreme Court Has, in Other Contexts,
            Affirmed Congress's Power to Authorize
            Representative Suits for Damages……………………………... 7

    B.  The States Have Suffered Injury Sufficient to
        Confer Article III Standing……………………………………………… 11

        1.  The States Have Alleged an Injury to their
            Quasi-Sovereign Interests…………………………………… 11

        2.  Recovery of Treble Damages Will Further the
            States' Interests………………….…………………………… 13

    C.  The States Should Not be Compelled to Seek
        "Class Certification"…………………………………………………… 15

        1.  The States' Section 4C Action is Not a
            "Class Action" and is Not Subject to Rule 23…………….…… 15

        2.  The Procedures for Actions
            under Section 4C Comply with Due
            Process Requirements……………………………………….… 17

III. CONCLUSION……………………………………………………….… 19

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
    458 U.S. 592 (1982)................................................................................7, 11

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977)...................................................................................14

*California v. Frito-Lay, Inc.,*
    474 F.2d 774 (9th Cir. 1973) ................................................................4, 16

*Connecticut v. Am. Elec. Power Co.,*
    582 F.3d 309 (2d Cir. 2009), *rev'd,* ___U.S.___, 131 S. Ct. 2527 (2011) ................7

*Connecticut v. Physicians Health Servs. of Conn., Inc.,*
    287 F.3d 110 (2d Cir. 2002), *cert. denied,* 537 U.S. 878 (2002)................................7

*EEOC v. Frank's Nursery & Crafts, Inc.,*
    177 F.3d 448 (6th Cir. 1999) ......................................................................9

*Flast v. Cohen,*
    392 U.S. 83 (1968)......................................................................................4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000)...................................................................................13

*General Tel. Co. of the Northwest, Inc. v. EEOC,*
    446 U.S. 318 (1980)....................................................................................9

*Georgia v. Pennsylvania R.R.,*
    324 U.S. 439 (1945)...................................................................................11

*Hollingsworth v. Perry,*
    ___U.S.___, 133 S. Ct. 2652 (2013)..........................................................10

*Hunt v. Washington State Apple Adver. Comm'n,*
    432 U.S. 333 (1977).....................................................................................8

*Illinois v. Abbott & Assocs.,*
    460 U.S. 557 (1983)..............................................................................15, 18

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720 (1977)...................................................................................14

**Page(s)**

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003)...................................................................................15

*In re DeFelice*,
   77 B.R. 376 (Bankr. D. Conn. 1987) ........................................................................14

*In re Grand Jury Investigation of Cuisinarts, Inc.*,
   665 F.2d 24 (2d Cir. 1981), *cert. denied*, 460 U.S. 1068 (1983)...............................18

*In re Mid-Atlantic Toyota Antitrust Litig.*,
   525 F. Supp. 1265 (D. Md. 1981), *aff'd*, 704 F.2d 125 (4th Cir. 1983) ....................5

*In re Montgomery County Real Estate Antitrust Litig.*,
   452 F. Supp. 54 (D. Md. 1978)............................................................................4, 16

*In re Montgomery County Real Estate Antitrust Litig.*,
   1988 WL 125789 (D. Md. July 17, 1988)..................................................................19

*In re Petroleum Products Antitrust Litig.*,
   1978 WL 1294 (C.D. Cal. Jan. 25, 1978) ...................................................................6

*In re Toys R Us Antitrust Litig.*,
   191 F.R.D. 347 (E.D.N.Y. 2000)..............................................................................15

*Kelley v. Carr*,
   442 F. Supp. 346 (W.D. Mich. 1977), *aff'd in part*,
   *rev'd in part on other grounds*, 691 F.2d 800 (6th Cir. 1980)..................................12

*Louisiana ex rel. Ieyoub v. Borden, Inc.*,
   1995 WL 59548 (E.D. La. Feb. 10, 1995) ................................................................12

*Maryland People's Counsel v. FERC*,
   760 F.2d 318 (D.C. Cir. 1985).....................................................................................9

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
   701 F.3d 796 (5th Cir. 2012), *cert. granted*, 133 S. Ct. 2736 (2013) .......................17

*Mistretta v. United States*,
   488 U.S. 361 (1989).....................................................................................................3

**Page(s)**

*New Mexico v. Scott & Fetzer Co.*,
    1981 WL 2167 (D.N.M. Dec. 22, 1981)........................................................................6

*New York v. Microsoft Corp.*,
    209 F. Supp. 2d 132 (D.D.C. 2002) ...................................................................3, 12

*New York ex rel. Abrams v. 11 Cornwell Co.*,
    695 F.2d 34 (2d Cir. 1982), *modified on other grounds*,
    718 F.2d 22 (2d Cir. 1983)..............................................................................7

*New York ex rel. Abrams v. General Motors Corp.*,
    547 F. Supp. 703 (S.D.N.Y. 1982) .........................................................................12

*New York ex rel. Vacco v. Reebok Int'l Ltd.*,
    96 F.3d 44 (2d Cir. 1996)..................................................................................18

*Pennsylvania v. Budget Fuel Co.*,
    122 F.R.D. 184 (E.D. Pa. 1988).............................................................................19

*Pennsylvania v. Mid-Atlantic Toyota Distribs.*,
    704 F.2d 125 (4th Cir. 1983) ....................................................................5, 13, 14

*Pennsylvania ex rel. Shapp v. Kleppe*,
    533 F.2d 668 (D.C. Cir.), *cert. denied*, 429 U.S. 997 (1976) ...................................11

*Purdue Pharma L.P. v. Kentucky*,
    704 F.3d 208 (2d Cir. 2013)...........................................................................7, 17

*Roche v. John Hancock Mut. Life Ins. Co.*,
    81 F.3d 249 (1st Cir. 1996)..................................................................................13

*Service Employees Int'l Union Health & Welfare Fund v. Philip Morris Inc.*,
    249 F.3d 1068, 1073 (D.C. Cir.), *cert. denied*,
    534 U.S. 994 (2001)........................................................................................9

*Shahriar v. Smith & Wollensky Rest. Group*,
    659 F.3d 234 (2d Cir. 2011)...............................................................................13

*South Carolina v. AU Optronics Corp.*,
    2011 WL 4344079 (D.S.C. Sept. 14, 2011), *aff'd*,
    699 F.3d 385 (4th Cir. 2012) ............................................................................14

**Page(s)**

*Tennessee ex rel. Leech v. Highland Mem'l Cemetery, Inc.*,
    489 F. Supp. 65 (E.D. Tenn. 1980)................................................................6

*Texas v. Scott & Fetzer Co.*,
    709 F.2d 1024 (5th Cir. 1983) ...............................................................14

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
    517 U.S. 544 (1996)...........................................................................7, 8

*Warth v. Seldin*,
    422 U.S. 490 (1975).............................................................................8

*Washington v. Chimei Innolux Corp.*,
    659 F.3d 842 (9th Cir. 2011) .................................................................17

*West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*,
    646 F.3d 169 (4th Cir. 2011), *cert. denied*, ___U.S.___,
    132 S. Ct. 761 (2011)..........................................................................17

**Statutes**

Clayton Act
    15 U.S.C. § 15c ......................................................................... *passim*

    15 U.S.C. § 15d..................................................................................17

28 U.S.C. § 1367...........................................................................................13

Worker Adjustment and Retraining Notification Act
    29 U.S.C. §§ 2101-2109 .......................................................................8

**Rules**

Federal Rules of Civil Procedure
    23(a) ..................................................................................... *passim*

**Other Authorities**

IIA Phillip E. Areeda & Herbert Hovenkamp,
    *Antitrust Law* ¶ 355 (3d ed. 2007) .........................................................13

**Page(s)**

Irving Scher, *Emerging Issues Under the Antitrust
    Improvements Act of 1976*, 77 Colum. L. Rev.
    679 (1977) .......................................................................................16, 19

13B Charles Alan Wright, Arthur R. Miller & Edward
    H. Cooper, *Federal Practice and Procedure*
    § 3531.11.1 (3d ed. 2008) ..............................................................6

118 Cong. Rec. 4941 (1972) ...........................................................9

122 Cong. Rec. 30868, at 30879 (1976) .........................................19

H.R. Rep. No. 94-499, at 2574-75 (1975) .......................................16

H.R. Rep. No. 94-499, at 2584-85 (1975) ................................17, 18

S. Rep. No. 94-803, at 60 (1976) ...................................................17

## I.    PRELMINARY STATEMENT

After a three-week bench trial, this Court found that Apple violated the antitrust laws and harmed consumers by facilitating and joining a conspiracy to raise the price of E-books. Now, Apple seeks to avoid the consequences of its illegal conduct by way of a curious motion to dismiss. Apple's motion is a broadside attack on the constitutionality of section 4C of the Clayton Act and on *parens patriae* actions in general. According to Apple, Congress lacked the power to authorize states to seek antitrust damages on behalf of their consumers as part of the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("the HSR Act"). Under Apple's theory, the States thus lack standing to bring their damages claims and, in fact, can *never* have standing to pursue monetary relief on behalf of natural persons injured by a defendant's conduct.

Courts have unanimously rejected this argument. Congress has the power to authorize states to act as representatives of their consumers, and to seek damages on their behalf. The actions permitted by section 4C of the Clayton Act satisfy the requirements of Article III of the Constitution. Apple's quibbles about whether the States' claims meet the historical definition of "*parens patriae*" do not detract from the fact that the law is clear: section 4C of the Clayton Act is constitutional, and the States have standing to pursue claims on behalf of consumers.

In any event, the States have alleged – and proven – an injury to their own quasi-sovereign interests sufficient to independently support their standing to pursue all of the relief sought in both phases of this bifurcated action. Economic harm to a state's residents, especially the market distortions inflicted by defendants who violate the antitrust laws, has long been understood to implicate such quasi-sovereign interests. These interests include the interest in securing compliance with the antitrust laws and deterring future violations, a pursuit that is furthered by the imposition of treble damages. The States' right to vindicate these interests in the

courts is well-recognized. That the damages the States seek to recover will ultimately be distributed to the consumers harmed by Apple's conduct does not deprive the States of standing.

The States are not mere bystanders, pressing the claims of third parties. Rather, the States have been deemed, by Congress and by the courts, to be not only appropriate representatives of their citizens in antitrust damages actions, but superior representatives. Giving credence to Apple's argument would require this Court to ignore the States' historic role in enforcement of the antitrust laws. Undoubtedly, individual citizens have an interest in a market that operates free of the effects of price-fixing and other illegal conduct, and an interest in being made whole when such conduct causes them injury. But this does not render the States' enforcement authority superfluous, let alone unconstitutional. The States have the requisite "direct stake" in the outcome of this action and are not acting as mere "agents" for their respective citizens or for anyone else. Apple's attempt to analogize the States' posture to that of private citizens seeking to defend a statute when government officials decline to do so must fail.

In the event its Motion to Dismiss is denied, Apple alternatively moves to "compel the Plaintiff States to seek class certification." Such an order would be novel, to say the least. *Parens patriae* actions brought by the States pursuant to section 4C of the Clayton Act are not class actions, and therefore are not subject to Federal Rule of Civil Procedure 23. Apple cites no authority to the contrary, because none exists. Courts, including the Supreme Court, have universally acknowledged that Rule 23 does not apply in section 4C cases, and that section 4C was enacted for the express purpose of precluding arguments like those Apple proffers here. The statute itself incorporates all necessary procedural safeguards, and the Court should not take up Apple's invitation to morph a Congressionally-authorized state enforcement action into a Rule 23 private party suit. Apple's effort to do so is tautological, relying solely on a combination of

2

case law predating the enactment of section 4C and case law interpreting Rule 23 itself. Though the States and the putative class in these related actions both seek antitrust damages, there are well-established, distinct mechanisms by which each is authorized to obtain such relief.

Apple's brief reveals that even Apple understands that the relief it seeks is not supported by existing law. Apple's motion is a fourth-quarter "Hail Mary," lofted in hopes of avoiding accountability for its role in a price-fixing conspiracy that injured consumers. The motion should be denied.

## II.   ARGUMENT

### A.   Section 4C of the Clayton Act is Constitutional

The constitutionality of section 4C of the Clayton Act is well-established.[1] Numerous courts have addressed the precise issues raised by Apple and have confirmed that Congress possessed the authority to enact the statute.[2] And in other contexts, the Supreme Court has confirmed that Congress has the authority to enact similar statutes allowing a representative to bring suit to recover damages on behalf of others who have been harmed. Apple's arguments to the contrary have been uniformly rejected as applied to state antitrust damages actions under section 4C, as well as in analogous contexts.[3]

---

[1] Federal statutes are, of course, presumed to be constitutional, and where a court is "asked to invalidate a statutory provision that has been approved by both Houses of Congress and signed by the President, particularly an Act of Congress that confronts a deeply vexing national problem, it should only do so for the most compelling constitutional reasons." *Mistretta v. United States*, 488 U.S. 361, 384 (1989) (internal quotation marks and citation omitted).

[2] Apple does not even cite any of these cases in its brief, let alone attempt to distinguish them.

[3] In its answer to the States' Second Amended Complaint, Apple admitted that the Court has subject matter jurisdiction over the States' claims, and thus, that the States have standing to bring them. *See* ECF No. 105 ¶¶ 7-8. Apple does not identify any intervening event that it contends divested the Court of its jurisdiction. That the States proceeded to trial in conjunction with the United States in the liability and injunction phase of this bifurcated action does not change the analysis of the States' standing to bring their claims as applied to the States' action as a whole. *See New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 147-48 (D.D.C. 2002).

1.    **Congress Properly Authorized States to Pursue Damages on Behalf of Their Citizens under Section 4C of the Clayton Act**

A federal court's Article III jurisdiction is limited to disputes "presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Flast v. Cohen*, 392 U.S. 83, 101 (1968). The States bring such a case here. Under section 4C of the Clayton Act, the States may represent and recover damages on behalf of their citizens for Apple's violation of the Sherman Act, a right authorized by Congress and recognized by courts.

Constitutional challenges to section 4C were brought – and rejected by the courts – beginning shortly after the statute took effect. In *In re Montgomery County Real Estate Antitrust Litigation*, 452 F. Supp. 54 (D. Md. 1978), a price-fixing action brought by the state of Maryland, the defendants raised the precise arguments Apple presents here. In particular, the defendants argued that section 4C of the Clayton Act violated Article III of the Constitution to the extent it allowed a state to pursue damages on behalf of its consumers when the state had failed to allege an injury to the state itself. *Id.* at 60-61. In rejecting the defendants' argument, the court concluded:

> Plainly, this action is, and has been, presented in an adversary context. Moreover, representative type suits have historically been permitted by the courts. Here the state, as a statutory representative, stands in the shoes of its injured citizens. Viewing its position as such, there is no constitutional barrier to its maintenance of this action. *Congress certainly has the power to appoint the state as an advocate for wrongs perpetrated upon its citizenry, particularly where those wrongs might otherwise go unredressed.*

*Id.* at 61 (emphasis added). The court noted that the procedural device created by Congress in section 4C was analogous "to the state acting as 'guardian ad litem.'" *Id.* (quoting *California v. Frito-Lay, Inc.*, 474 F.2d 774, 776 (9th Cir. 1973)).[4]

---

[4] As discussed below, the court in *Frito-Lay* held that states could not recover antitrust damages as *parens patriae* on behalf of their citizens under the Clayton Act as it existed at the time. It was precisely this holding that prompted Congress to adopt section 4C, establishing the mechanism for states to pursue such claims. *See* pp. 15-16, *infra*.

Another challenge to the constitutionality of section 4C was rejected by a district court three years later. In *In re Mid-Atlantic Toyota Antitrust Litigation*, 525 F. Supp. 1265 (D. Md.), *modified on other grounds*, 541 F. Supp. 62 (D. Md. 1981), a price-fixing action brought by the states of Maryland, Delaware, West Virginia, and Pennsylvania, and the District of Columbia, the court found that the case was presented in the necessary adversary context because the states were required to prove the injury sustained by the individuals they represented. Noting the states' position as a "stand-in to manage the litigation" for their citizen-consumers, the court concluded that the "underlying case or controversy still exist[ed]," even though it was "carried on in a representative capacity by the state attorney general." *Id.* at 1284 (citations and internal quotation marks omitted). The court explicitly rejected the notion that a state suing under section 4C must prove it suffered an injury apart from that of its citizens, holding that, "even though the states allege no injury to themselves, they can establish standing as representatives of their residents who have been injured in fact and could have brought suit in their own right. . . . *The parens patriae provisions comport with recognized Article III standing requirements.*" *Id.* (citations omitted) (emphasis added).

The Fourth Circuit affirmed, concluding that, "[u]ndoubtedly, a state can have a legitimate public interest in ensuring the economic well-being of its citizens – and in directly promoting a smoothly functioning economy freed of antitrust violations – even though the most obvious beneficiaries may be individual consumers who ultimately recoup money damages." *Pennsylvania v. Mid-Atlantic Toyota Distribs., Inc.*, 704 F.2d 125, 132 (4th Cir. 1983) (citations omitted). The court held that the states could maintain their actions under section 4C even if they were not acting in their quasi-sovereign capacity. *Id.* at 132 n.14.

Every court to address the issue has reached the same result. *See* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3531.11.1 (3d ed. 2008) ("A number of courts have concluded that [section 4C] is consistent with the requirements of Article III, and it would be difficult to support a contrary conclusion.") For example, the Central District of California held that, when Congress passes "legislation giving a state attorney general the right to institute an action, as a 'stand-in' or a *parens patriae*, on behalf of an individual consumer who cannot afford to pursue his own remedies, the ensuing litigation presents the same case or controversy" as would a claim brought by the consumer. *In re Petroleum Products Antitrust Litig.,* 1978 WL 1294 at *1 (C.D. Cal. Jan. 25, 1978). "This is precisely what has happened [in section 4C], as the wording of the statute suggests and the legislative history clearly confirms." *Id. See also New Mexico v. Scott & Fetzer Co.*, 1981 WL 2167 at *2 (D.N.M. Dec. 22, 1981) (rejecting defendant's argument that there is no justiciable case or controversy); *Tennessee ex rel. Leech v. Highland Mem'l Cemetery, Inc.*, 489 F. Supp. 65, 68 (E.D. Tenn. 1980) (action brought by state under section 4C "presents a case or controversy under federal law").

In this action, the States brought suit as representatives of their respective citizens that purchased E-books at supracompetitive prices as a result of Apple's conduct. The adversarial nature of the dispute between the States and Apple is plain, and the remaining aspects of the dispute are ripe for judicial resolution. In other words, this action presents a case or controversy under Article III of the Constitution.

### 2.    The *Parens Patriae* Cases Cited by Apple are Inapposite

Apple devotes a substantial portion of its brief to its argument that the cause of action authorized by Congress in section 4C of the Clayton Act is not a true "*parens patriae*" action in

the historical sense of the term. From that premise, Apple asserts that the States should be forced to comply with the more stringent, judicially-created standing requirements for common law *parens patriae* actions, which require states to prove that they were injured separate and apart from the injury suffered by the state's citizens. However, this case involves a statute where Congress expressly conferred standing upon the states to recover damages on behalf of their citizens, without having to meet those requirements.

Not one of the cases Apple cites in its memorandum of law addresses the question of whether section 4C of the Clayton Act is constitutional, or whether a state pursuing a claim under section 4C must demonstrate a quasi-sovereign interest or injury separate and distinct from the injury to its citizens. None of the cases Apple cites were brought pursuant to an express grant of Congressional authority to sue. *See* Apple's Memorandum of Law in Support of its Motion to Dismiss ("Apple Mem.") at 9-11, 16.[5] The standing analysis conducted by courts necessarily differs where Congress, with the requirements of Article III well in mind, has affirmatively spoken. That is the case here.

### 3.    The Supreme Court Has, in Other Contexts, Affirmed Congress's Power to Authorize Representative Suits for Damages

The Supreme Court has upheld Congressional authority to grant representatives standing to sue for damages on behalf of others, even when the representatives have not suffered the same injury or, indeed, have not suffered any injury at all. For example, in *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544 (1996), the Supreme Court

---

[5] *See, e.g., Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309 (2d Cir. 2009) (common law nuisance claim by states), *rev'd*, ___U.S.___, 131 S. Ct. 2527 (2011); *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110 (2d Cir.) (state lacked common law standing or *parens patriae* standing to bring suit under ERISA; "When determining whether a state has *parens patriae* standing under a federal statute, we ask if Congress *intended* to allow for such standing."), *cert. denied*, 537 U.S. 878 (2002); *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 215 (2d Cir. 2013) (claim that defendant violated state law); *New York ex rel. Abrams v. 11 Cornwell Co.*, 695 F.2d 34 (2d Cir. 1982) (state had standing to sue as *parens patriae* on behalf of citizens in light of its interest in the health and well-being of its residents in general), *modified on other grounds*, 718 F.2d 22 (2d Cir. 1983) (en banc); *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982).

analyzed the constitutionality of the Worker Adjustment and Retraining Notification Act

("WARN Act"), 29 U.S.C. §§ 2101-2109, which authorized unions to sue for back pay on behalf

of their members in certain circumstances. In particular, the Court analyzed "whether, in

enacting the WARN Act, Congress intended to abrogate . . . otherwise applicable standing

limitation[s] so as to permit the union to sue for damages running to its workers, and, if it did,

whether it had the constitutional authority to do so." *United Food*, 517 U.S. at 546. The Court

answered both questions in the affirmative. *Id.*

     To determine whether Congress had the constitutional power to authorize unions to sue

for damages on behalf of their members under the WARN Act, the Supreme Court analyzed the

associational standing doctrine under *Hunt v. Washington State Apple Advertising Commission*,

432 U.S. 333 (1977), and *Warth v. Seldin*, 422 U.S. 490 (1975). Under the associational standing

test, an association's suit on behalf of its members would be barred when "the claim asserted [or]

the relief requested requires the participation of individual members in the lawsuit." *United

Food*, 517 U.S. at 546 (quoting *Hunt*, 432 U.S. at 343). The Court held that this was a prudential

requirement, observing that "'the general prohibition on a litigant's raising another person's legal

rights' is a 'judicially self-imposed limi[t] on the exercise of federal jurisdiction,' not a

constitutional mandate." *Id.* at 557 (alteration in original). "Congress may abrogate the

impediment" against limitations on representative actions; "[a]s [the Court] noted in *Warth*,

prudential limitations are rules of 'judicial self-governance' that 'Congress may remove . . . by

statute.'" *Id.* at 558 (quoting *Warth*, 422 U.S. at 509).[6]

     Courts have reached analogous conclusions in yet other contexts. For example, courts

have also recognized Congress's power to authorize representative suits in the employment

---

[6] The Court held that "[i]f these provisions for representative actions were generally resulting in nonadversarial actions that failed to resolve the claims of the individuals ultimately interested, their disservice to the core Article III requirements would be no secret." *United Food*, 517 U.S. at 558.

discrimination context. The Civil Rights Act of 1964 established the Equal Employment Opportunity Commission ("EEOC") but initially only authorized the EEOC to investigate charges of discrimination and seek voluntary compliance by the alleged wrongdoers. *See EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999). Recognizing that the EEOC needed broader enforcement authority, in 1972 Congress amended Title VII of the Civil Rights Act to "expand the EEOC's enforcement powers by authorizing the EEOC to bring a civil action in federal district court against private employers reasonably suspected of violating Title VII." *General Tel. Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 325 (1980). The Supreme Court recognized that Congress had empowered the EEOC to bring representative actions to enforce federal law and to "obtain[] appropriate relief" for injured employees. *Id.* In bringing these actions the EEOC seeks to "secure specific relief, such as hiring or reinstatement . . . or damages for backpay . . . on behalf of discrimination victims," though "the agency is guided by 'the overriding public interest in equal employment opportunity . . . asserted through direct Federal enforcement.'" *Id.* at 326 (quoting 118 Cong. Rec. 4941 (1972)).

Several kinds of representational standing have been acknowledged and endorsed by the courts. Limitations on *parens patriae* standing are prudential in nature, and do not go to any core Article III standing requirements. *See, e.g., Maryland People's Counsel v. FERC*, 760 F.2d 318, 321 (D.C. Cir. 1985) (limitation on *parens patriae* standing is prudential, "*i.e.,* an element that courts must dispense with if Congress so provides"); *Service Employees Int'l Union Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1073 (D.C. Cir.) ("the doctrine of *parens patriae* is merely a species of prudential standing"), *cert. denied*, 534 U.S. 994 (2001). Accordingly, Congress can change or abrogate these limitations, as it did in enacting section 4C.

Apple's reliance on *Hollingsworth v. Perry*, ___ U.S. ___, 133 S. Ct. 2652 (2013), is misplaced. In *Hollingsworth*, the Court held that the official proponents of a California ballot initiative banning same-sex marriage ("Prop 8") had no standing to appeal a district court's order holding Prop 8 unconstitutional. The petitioners in that case sought to defend on appeal Prop 8's constitutionality when California officials – including its Attorney General – refused to do so. The Court held that the petitioners did not have standing to appeal because, among other reasons, they had "no official authority," indeed, "no role—special or otherwise—in the enforcement of Proposition 8." *Id.* at 2663 (citations omitted). The Court emphasized that petitioners lacked any statutory authority to enforce the law, and thus were pursuing merely a "generalized grievance," rather than seeking to redress a concrete and particularized injury. The Court rejected California's attempt to "issue to *private parties* who otherwise lack standing a ticket to the federal courthouse," in conjunction with a challenge to a duly enacted state law. *Id.* at 2666-67 (emphasis added).

*Hollingsworth* has no relevance to this case. The States have been authorized by Congress to bring suit under section 4C. The States are not merely "concerned bystanders," but have a well-recognized "special role" in the enforcement of the antitrust laws, one that Apple would have the Court ignore completely. *Id.* at 2663. The States, through their respective attorneys general (recognized in *Hollingsworth* as the "typical" parties to bring suit on a state's behalf), bring this suit to seek redress not of a "generalized grievance," but of the concrete and particularized injury caused by Apple's conspiracy.

Congress had the authority, to the extent necessary, to dispense with otherwise prudential limitations and permit the States standing to sue for damages on behalf of their citizens under section 4C of the Clayton Act. This would be true even if the States themselves had not suffered

any injury (though they have, as set forth below). Apple's arguments that section 4C of the Clayton Act is unconstitutional are meritless.

**B.      The States Have Suffered Injury Sufficient to Confer Article III Standing**

Though not required under section 4C or the Constitution, the States have alleged that their quasi-sovereign interests in the health of their respective economies were injured by Apple's violations of the antitrust laws. Such injuries are sufficient to confer standing. Moreover, the treble damages and other relief still at issue in connection with the upcoming trial are related to the redress of the States' injuries.

**1.      The States Have Alleged an Injury to their Quasi-Sovereign Interests**

As set forth above, the States need not allege an injury separate and apart from those to their citizens for purposes of a section 4C action. However, the States have alleged, and the Court has found, such injury. In their Second Amended Complaint, the States alleged that the price-fixing conspiracy in which Apple participated deprived "*the Plaintiff States and their consumers* of the benefits of [] competition," and that, as a result, "the general economies of the Plaintiff States have sustained injury . . . ." ECF No. 95, ¶¶ 117-18 (emphasis added). Such injuries implicate a "recognized category of quasi-sovereign interests." *See Pennsylvania ex rel. Shapp v. Kleppe*, 533 F.2d 668, 674 (D.C. Cir.) *cert. denied*, 429 U.S. 997 (1976).

Courts have long recognized a state's quasi-sovereign interest in protecting its economy from injury inflicted by price-fixing conspiracies. *See Georgia v. Pennsylvania R.R.*, 324 U.S. 439, 450-51 (1945). Indeed, as Apple acknowledges, "a state has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982). More specifically, courts have recognized a state's quasi-sovereign interest in an "honest marketplace" for business

transactions, *New York ex rel. Abrams v. General Motors Corp.*, 547 F. Supp. 703, 705 (S.D.N.Y. 1982), and in "securing the integrity of the marketplace," *Louisiana ex rel. Ieyoub v. Borden, Inc.*, 1995 WL 59548 at *2 (E.D. La. Feb. 10, 1995). "[M]aintenance of the integrity of markets" and ensuring a state's economic welfare are two of the "most basic of a state's quasi-sovereign interests." *Kelley v. Carr*, 442 F. Supp. 346, 356-57 (W.D. Mich. 1977), *aff'd in part, rev'd in part on other grounds*, 691 F.2d 800 (6th Cir. 1980). A state's concern for the "continuing prosperity of [its] econom[y]," as expressed in an allegation that "anticompetitive conduct has significantly hampered competition," thus satisfies Article III's standing requirements. *See New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 150 (D.D.C. 2002).

Apple suggests that the States "arguably had standing to pursue" the injunctive relief already granted by the Court, but maintains that they lack standing to recover damages under section 4C. *See* Apple Mem. at 7 n.2. But "[i]t is the nature of the state's interest, not the remedy it seeks, that governs whether a *parens patriae* action lies." *Borden*, 1995 WL 59548 at *4. The *Borden* court concluded that the state's choice to seek damages as a remedy to vindicate its quasi-sovereign interest, rather than an injunction, did nothing to change the nature of the state's claims. *Id.* Seeking damages and other remedies in addition to injunctive relief, as the States have done in this case, "does not make this any less a *parens patriae* action," and does not deprive the States of standing. *Id.* The nature of the States' quasi-sovereign interests in protecting their respective economies is the same with regard to all relief sought in this action, and has not changed since the States' suit was brought, either when the action was bifurcated or when the Court issued its liability ruling. As discussed below, recovery of treble damages on behalf of consumers furthers those interests, and thus supports the States' standing.[7]

---

[7] Civil penalties, also still at issue in this action, similarly further the States' interests in securing compliance with law and deterring antitrust violations, as recognized in a case cited by Apple. *See Friends of the Earth, Inc. v.*

## 2. Recovery of Treble Damages Will Further the States' Interests

The States seek damages to make injured citizens whole and to restore and promote the well-being of their state economies. The Clayton Act contemplates this type of relief by specifically providing a mechanism in section 4C by which a state may seek treble damages to address harm suffered by its citizens due to antitrust violations. *See* 15 U.S.C. § 15c; *see also* IIA Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 355 (3d ed. 2007) ("In a second type of parens patriae suit, a state seeks damages for the injuries suffered directly by its citizens when, for example, they paid inflated prices in buying from price-fixing conspirators.")

In enacting section 4C, Congress "fully recognized" that enabling the States to recover damages to be distributed to their respective injured citizens promotes not only enforcement of the federal antitrust laws, but also promotes "a state's public interest in protecting its citizens from violations of these laws." *Pennsylvania v. Mid-Atlantic Toyota Distribs., Inc.*, 704 F.2d 125, 132 (4th Cir. 1983). Recovery of damages furthers a state's interest in "a smoothly functioning economy freed of antitrust violations – even though the most obvious beneficiaries may be individual consumers who ultimately recoup money damages" *Id.* at 132 (citations

---

*Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185-87 (2000). Apple does not challenge the States' standing to seek such penalties, but only suggests that the Court should decline supplemental jurisdiction over the state law claims. *See* Apple Mem. at 18, n.10. The States' state law claims are indisputably part of the same "case or controversy" as the federal claims, and thus the Court's discretion to decline supplemental jurisdiction is limited to situations where one of the enumerated bases in 28 U.S.C. § 1367(c) applies. *See Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234, 245-46 (2d Cir. 2011). The only such basis Apple asserts is § 1367(c)(3), which permits a court to decline supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction." Of course this Court has not dismissed all of the States' federal claims. Rather, the Court held a trial and found Apple liable for violating both the Sherman Act and the state laws under which penalties are to be awarded. *See* ECF No. 237 at 159. Even were § 1367(c) applicable, courts should exercise supplemental jurisdiction where doing so would promote convenience, fairness and judicial economy. *See Shahriar*, 659 F.3d at 245, 250 n.9; *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 257 (1st Cir. 1996) (supplemental jurisdiction appropriately exercised where "litigation had matured well beyond its nascent stages, discovery had closed, the summary judgment record was complete, the federal and state claims were interconnected, and powerful interests in both judicial economy and fairness tugged in favor of retaining jurisdiction").

omitted).[8] *See also, e.g., In re DeFelice*, 77 B.R. 376, 380 (Bankr. D. Conn. 1987) ("The fact that individual consumers would also benefit from the Attorney General's action does not subvert that quasi-sovereign interest."). A *parens patriae* suit is "not merely a suit on behalf of individual citizens; it is an action on behalf of the state in which the attorney general seeks to vindicate the rights of [the state's] citizens." *Texas v. Scott & Fetzer Co.*, 709 F.2d 1024, 1027 (5th Cir. 1983).

Of course, damages recovered in this action will compensate the States' citizens harmed by the conspiracy. But when a state seeks damages, the remedy does more than reimburse the individual consumers to whom the monies accrue; the benefits "generally inure to all the residents of [the state] by making it less likely these defendants will engage in future price-fixing and by recovering taxpayer money paid to the defendants as overcharges." *South Carolina v. AU Optronics*, 2011 WL 4344079 at *6 (D.S.C. Sept. 14, 2011), *aff'd*, 699 F.3d 385 (4th Cir. 2012). *See also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 (1977) ("treble damages also play an important role in penalizing wrongdoers and deterring wrongdoing"); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 747 (1977) (treble damages are intended to compensate antitrust victims, deprive violators of "the fruits of their illegality," and deter future violations) (internal citations omitted). The States seek damages on behalf of injured consumers not only to make those consumers whole, but also to deter future antitrust violations and ensure competitive markets within their jurisdictions. The damages sought address not only the harm to individual citizens of the States, but also to the States' general economies.

---

[8] The Fourth Circuit deemed this interest "public," rather than "quasi-sovereign," but held that it was, in any event, sufficient to support the states' standing. *Mid-Atlantic Toyota*, 704 F.2d at 132.

**C.      The States Should Not be Compelled to Seek "Class Certification"**

Apple alternatively seeks to require the States to move for class certification, a request as baseless as its motion to dismiss. Apple acknowledges in its own brief that section 4C of the Clayton Act was intended to obviate the need for consumers represented by state attorneys general to satisfy Federal Rule of Civil Procedure 23. Nevertheless, Apple contends that the States should be forced to comply with that rule. However, the States' action is not is a class action subject to Rule 23, and section 4C does not violate Due Process.

**1.      The States' Section 4C Action is Not a "Class Action" and is Not Subject to Rule 23**

As the Supreme Court has recognized, Rule 23 is inapplicable to a state's action brought under section 4C. *See Illinois v. Abbott & Assocs.*, 460 U.S. 557, 573 n. 29 (1990). Rather, the relevant provisions of the HSR Act were "designed to enhance the effectiveness of antitrust enforcement on behalf of small consumers" by, among other things, "exempt[ing section 4C] suits from the class action requirements of Rule 23." *Id.*; *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 204 (D. Me. 2003) ("Rule 23 is inapplicable to *parens patriae* actions, because Attorneys General are specifically authorized by statute to sue on behalf of natural persons residing in their respective states."); *In re Toys R Us Antitrust Litig.*, 191 F.R.D. 347, 351 (E.D.N.Y. 2000).

In considering and enacting the HSR Act, Congress made abundantly clear its intent to provide for a procedure that was something other than a Rule 23 class action. The Act's legislative history confirms the distinction that courts have recognized. Congress passed the HSR Act to provide a *parens patriae* procedure that satisfies not only practical but also constitutional considerations. The Act was, in part, a response to the Ninth Circuit's dismissal of a common

law *parens patriae* suit brought by the State of California seeking antitrust damages on behalf of its citizens. *See California v. Frito-Lay, Inc.*, 474 F.2d 774 (9th Cir. 1973). In *Frito-Lay*, the court cited a concern that the class action safeguards of Rule 23 were absent in such a suit and that no alternative guidelines for suits brought by a state existed. *Frito-Lay*, 474 F.2d at 776-77. The court invited Congress to provide for such *parens patriae* suits, and give "careful consideration" to the necessary "conditions and procedures" for such litigation. *Id. See also* H.R. Rep. No. 94-499, at 2574-75 (1975). That is precisely what Congress did, as Apple acknowledges. *See* authorities cited in Apple Mem. at 21 n.13.

Courts have, not surprisingly, recognized and respected Congress's intent. For example, the court in *In re Montgomery County Real Estate Antitrust Litigation*, reviewing the legislative history of the HSR Act in some detail, confirmed that the history "clearly shows that [§] 4C(a)(1) was designed . . . to overrule *Frito-Lay*, thereby allowing the state to maintain the representative type of parens patriae action which was disallowed in that case," and that "Congress intended to allow state attorneys general to sue on behalf of the state's injured consumer regardless of the existence or non-existence of injury to the general economy." 452 F. Supp. 54, 59 (D. Md. 1978).

The legislative history of the Act belies Apple's argument that section 4C was intended merely to create a "functional class action" or that, in a section 4C action, consumers were viewed as the real parties in interest. On the contrary, the legislation was drafted with the intent that "a new *parens patriae* action should [be] created which would be *wholly independent* of both Federal Rule 23 and section 4 of the Clayton Act." Irving Scher, *Emerging Issues Under the Antitrust Improvements Act of 1976*, 77 Colum. L. Rev. 679, 720 (1977) (emphasis added).

Simply put, section 4C actions brought by states are not class actions.[9] Thus, they are not subject to Rule 23.

### 2.   The Procedures for Actions under Section 4C Comply with Due Process Requirements

Apple would have the Court believe that absent an application of Rule 23 to the present case, the States' *parens patriae* damages claims operate in a "no man's land" with no due process protections to safeguard Apple's interest or those of consumers. This is simply incorrect. The Clayton Act provides procedural safeguards to address applicable due process concerns. For example, section 4C contains clear notice provisions by which injured consumers may opt out of a state's case and bring an individual suit. *See* 15 U.S.C. § 15c(b)(2). The district court may direct notice to consumers beyond publication alone where necessary. *See id.* at § 15c(b)(1). Duplicative recovery is prohibited. *See id.* at § 15c(a)(1)(A). And although the Act permits assessment of aggregate damages by statistical or sampling methods in price-fixing cases, mere speculation will not suffice. *See* 15 U.S.C. § 15d; H.R. Rep. No. 94-499, at 2584-85 (1975).

With respect to the aggregate damages provision of the Clayton Act, 15 U.S.C. § 15d, Apple contends that this results in impermissible "trial by formula," depriving defendants of their right to challenge the damages claims of the individuals who were injured by the illegal conduct. Congress considered and rejected similar arguments before passing the law. *See, e.g.*, S. Rep. No. 94-803, at 60 (1976) (statement of Professor Arthur Miller) ("[c]ertainly Congress has the power to . . . implement any cause of action it creates by prescribing any mode of proof it

---

[9] Courts addressing the issue of whether *parens patriae* actions brought under state law are "class actions" for purposes of the Class Action Fairness Act have reached the same conclusion. *See, e.g., Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 212 (2d Cir. 2013) ("every circuit to consider this precise issue . . . has reached the same conclusion we reach today: *parens patriae* suits are not removable as 'class actions' under CAFA"); *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 846 (9th Cir. 2011); *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 172 (4th Cir.), *cert. denied*, ___U.S.___, 132 S. Ct. 761 (2011). *Cf. Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796 (5th Cir. 2012) (agreeing that state law *parens patriae* action was not a class action for CAFA purposes, but finding it removable as a "mass action"), *cert. granted*, 133 S. Ct. 2736 (2013).

believes desirable" consistent with due process; "[t]o insist upon the incredibly cumbersome and mind-boggling procedure of having a separate jury deliberation on each and every consumer's [antitrust] claim . . . would be to strike through the substance of the jury right and wallow in its form."). *See also* H.R. Rep. No. 94-499, at 2584-85 (1975).

In advancing this argument, Apple again ignores the "special place" reserved for state governments in enforcing the federal antitrust laws, which motivated the Clayton Act revisions embodied in the HSR Act to allow efficient pursuit of *parens patriae* claims. *See In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 35 (2d Cir. 1981), *cert. denied*, 460 U.S. 1068 (1983). The *Cuisinarts* court noted the "difficulty" in achieving class certification under Rule 23 and the "complexity" of determining and distributing damages to consumers in class actions, and recognized that Congress made revisions to the Clayton Act "to overcome obstacles to private class actions through enabling state attorneys general to function more efficiently as consumer advocates." *Id.* at 32-33. Similarly, in *New York ex rel. Vacco v. Reebok Int'l Ltd.*, 96 F.3d 44 (2d Cir. 1996), the court stated that "Congress empowered state attorneys general to investigate and prosecute antitrust abuses on behalf of consumers stymied by Rule 23's certification and notification hurdles." *Id.* at 46. The Supreme Court, too, has acknowledged that the aggregate damages provision is one method by which Congress sought to "enhance the effectiveness of antitrust enforcement on behalf of small consumers." *Illinois v. Abbott & Assocs.*, 460 U.S. 557, 573 n.29 (1983).

Congress determined that the provisions of the HSR Act should apply to section 4C cases, rather than the provisions of Rule 23, to enhance both the enforcement of the federal antitrust laws and the procedures for recovery by consumers with small claims. Congress provided for all necessary constitutional safeguards, but did not otherwise replicate the provisions of Rule 23

18

because most of them so clearly would not apply to the *parens patriae* suits authorized by the Act. Instead, Congress made a legislative determination that a *parens patriae* suit is superior to other methods for seeking relief and that state attorneys general would more than adequately represent the citizens of their states. *See* 122 Cong. Rec. 30868, at 30879 (1976) (testimony of Chairman Rodino) (section 4C is "a superior alternative to a rule 23(b)(3) class action" and Rule 23 provisions were not incorporated because the statute "represents the legislative conclusion that the State's attorney general is the best representative conceivable for the States' consumers – as the courts have repeatedly recognized"); *see also Scher*, 77 Colum. L. Rev. at 719 n. 240. This superiority determination has also been endorsed by the courts following the enactment of the HSR Act. *See, e.g., Pennsylvania v. Budget Fuel Co.*, 122 F.R.D. 184, 185-86 (E.D. Pa. 1988) ("A *parens patriae* action is superior to a class action as a means of adjudication of collective claims."); *In re Montgomery County Real Estate Antitrust Litig.*, 1988 WL 125789 at *2 (D. Md. July 17, 1988). Requiring the States to comply with the dictates of Rule 23 in addition to those of the HSR Act would frustrate Congress's intent and would require the Court to ignore legislative and judicial determinations as to the States' proper role in enforcement of the antitrust laws.

## III.   CONCLUSION

The Court should deny Apple's motion to dismiss the States' action and deny Apple's alternative request that the States be compelled to seek class certification.

Dated: December 6, 2013

Respectfully Submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JOHN SCOTT
Deputy Attorney General for Civil Litigation

JOHN T. PRUD'HOMME
Chief, Consumer Protection Division

KIM VAN WINKLE
Chief, Antitrust Section

By: _____
Gabriel Gervey (*pro hac vice*)
David Ashton (*pro hac vice*)
Eric Lipman (EL-6300)
Assistant Attorneys General
P.O. Box 12548
Austin, TX 78711-2548
Phone:  512-463-1262
Fax:  512-320-0975
Gabriel.Gervey@texasattorneygeneral.gov
David.Ashton@texasattorneygeneral.gov
Eric.Lipman@texasattorneygenereal.gov

**Attorneys for the State of Texas**
*On Behalf of the Plaintiff States*

GEORGE JEPSEN
Attorney General of Connecticut

MICHAEL E. COLE
Chief, Antitrust Department

By: _W. Joseph Nielsen_

W. Joseph Nielsen (*pro hac vice*)
Gary M. Becker (GB-8259)
Assistant Attorneys General
55 Elm Street
Hartford, CT 06106
Phone:  860-808-5040
Fax:  860-808-5033
Michael.Cole@ct.gov
Joseph.Nielsen@ct.gov
Gary.Becker@ct.gov

**Attorneys for the State of Connecticut**
*On Behalf of the Plaintiff States*