**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | x<br>:<br>:<br>:<br>: | 11-md-02293 (DLC) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| THE STATE OF TEXAS,<br>THE STATE OF CONNECTICUT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PENGUIN GROUP (USA) INC., *et al.*,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | 12 Civ. 3394 (DLC) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT APPLE INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR A STAY PENDING APPEAL**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 2

LEGAL STANDARD.............................................................................................................. 3

ARGUMENT .......................................................................................................................... 6

I.     Apple Will Suffer Irreparable Harm Absent a Stay.................................................... 6

II.    Apple Is Likely to Prevail on Appeal ...................................................................... 9

III.   A Stay Is in the Public Interest ............................................................................... 18

CONCLUSION...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013) ........................................................................ 15

*Am. Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) ............................................................................ 15

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................ 14

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
   133 S. Ct. 1184 (2013) ........................................................................ 15

*Apple, Inc. v. Superior Court*,
   2013 Cal. LEXIS 2577 (Cal. Mar. 27, 2013) ......................................... 5

*Bell Atl. Corp v. AT&T Corp.*,
   339 F.3d 294 (5th Cir. 2003) ............................................................... 11

*Brenntag Int'l Chems., Inc. v. Bank of India*,
   175 F.3d 245 (2d Cir. 1999) .............................................................. 4, 8

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) ......................................................... 12, 14

*Brown v. Wal-Mart Stores, Inc.*,
   2012 WL 5818300 (N.D. Cal. Nov. 15, 2012) ............................ 6, 7, 8, 9

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013) ............................................................... 10

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
   598 F.3d 30 (2d Cir. 2010) ................................................................... 4

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ........................................................... 11, 16, 17

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) ................................................................. 10

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ............................................................... 10

### TABLE OF AUTHORITIES *(cont.)*

**Page(s)**

*Estate of Heiser v. Deutsche Bank Trust Co.*,
  2012 WL 2865485 (S.D.N.Y. July 10, 2012) ........................................ 18

*Gray v. Golden Gate Nat'l Recreational Area*,
  2011 WL 6934433 (N.D. Cal. Dec. 29, 2011) ........................................ 5

*Hanover Shoe, Inc. v. United Show Machinery Corp.*,
  392 U.S. 481 (1968) ................................................................. 14

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ................................................................. 4

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) ........................................................ 11

*In re Initial Public Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006) ...................................................... 15, 16

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  208 F.R.D. 1 (D.D.C. 2002) ....................................................... 5, 18

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
  522 F.3d 6 (1st Cir. 2008) ......................................................... 11

*In re OSB Antitrust Litig.*,
  2007 WL 2253425 (E.D. Pa. Aug. 3, 2007) ........................................... 11

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  286 F.R.D. 88 (D.D.C. 2012) .......................................... 6, 7, 9, 11, 16, 18

*In re Urethane Antitrust Litig.*,
  2006 WL 3021126 (D. Kan. Oct. 23, 2006) ........................................... 6, 9

*In re World Trade Ctr. Disaster Site Litig.*,
  2007 U.S. App. LEXIS 8728 (2d Cir. Mar. 9, 2007) ................................... 3

*Jenkins v. Hyundai Motor Financing Co.*,
  2008 WL 2268319 (S.D. Ohio June 2, 2008) .......................................... 19

*Kotrous v. Goss-Jewett Co. of N. Cal., Inc.*,
  2005 WL 2452606 (E.D. Cal. Oct. 4, 2005) .......................................... 5

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
  791 F.2d 1356 (9th Cir. 1986) ...................................................... 14

*LaRouche v. Kezer*,
  20 F.3d 68 (2d Cir. 1994) .......................................................... 4

## TABLE OF AUTHORITIES *(cont.)*

**Page(s)**

*Lindsey v. Normet,*
   405 U.S. 56 (1972) ........................................................................................ 10

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ...................................................................................... 10

*McLaughlin v. Am. Tobacco Co.,*
   522 F.3d 215 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phoenix &*
   *Indem. Co.*, 553 U.S. 639 (2008) ................................................................ 10

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.,*
   2000 WL 1424931 (E.D.N.Y. Sept. 26, 2000) ............................................. 3

*New York v. Hendrickson Bros., Inc.,*
   840 F.2d 1065 (2d. Cir. 1988) ...................................................................... 16

*Ortiz v. Fibreboard Corp.,*
   527 U.S. 815 (1999) ...................................................................................... 14

*Parko v. Shell Oil Co.,*
   739 F.3d 1083 (7th Cir. 2014) ...................................................................... 16

*Peritz v. Liberty Loan Corp.,*
   523 F.2d 349 (7th Cir. 1975) ........................................................................ 15

*Philip Morris USA, Inc. v. Scott,*
   131 S. Ct. 1 (2010) ......................................................................................... 8

*Plummer v. Quinn,*
   2008 WL 383507 (S.D.N.Y. Feb. 12, 2008) ................................................ 3

*Register.com, Inc. v. Verio, Inc.,*
   356 F.3d 393 (2d Cir. 2004) ...................................................................... 4, 7

*Se. Milk Antitrust Litig. v. Sweetwater Valley Farm, Inc.,*
   2011 U.S. Dist. LEXIS 5590 (E.D. Tenn. Jan. 19, 2011) .......................... 5, 9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
   559 U.S. 393 (2010) ...................................................................................... 16

*Story Parchment Co. v. Paterson Parchment Co.,*
   282 U.S. 555 (1931) ...................................................................................... 17

*United States v. Apple Inc.,*
   952 F. Supp. 2d 638 (S.D.N.Y. 2013) .......................................................... 17

## <u>TABLE OF AUTHORITIES</u> *(cont.)*

**Page(s)**

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .......................................................................... 10, 12, 14, 16

**Statutes**

15 U.S.C. § 1 .................................................................................................... 2

28 U.S.C. § 1407(e) ........................................................................................ 9

28 U.S.C. § 2072(b) .................................................................................. 10, 13

**Other Authorities**

Chris Reidy, *Deal Benefits E-book Customers*,
  Boston Globe, Mar. 27, 2014 ...................................................................... 18

Jay Greene, *E-book Buyers Given Credits in Settlement*,
  Chicago Tribune, Mar. 26, 2014 .................................................................. 18

Manual for Complex Litigation (4th) § 21.28 ............................................. 6

Defendant Apple Inc. respectfully moves this Court for a stay of all proceedings, or, at a minimum, an order staying dissemination of class notice.  Apple also requests the Court order an administrative stay of class notice pending the Court's ruling on Apple's motion.[1]

## PRELIMINARY STATEMENT

Over the past nine months, this Court has entered a series of significant rulings in this litigation, all against Apple, and all involving highly contentious, controversial legal issues that Apple is likely to prevail on before the Second Circuit.  Indeed, should Apple prevail on *either* its appeal from the underlying merits *or* its forthcoming Rule 23(f) appeal from class certification, the entire landscape of this litigation will radically change, and the damages phase ordered by this Court will be mooted or require a retrial.  Accordingly, the Court should exercise its discretion and stay these proceedings pending Apple's appeals to prevent irreparable harm to Apple, confusion to consumers, and waste of the parties' and the public's resources.

Courts routinely stay class notice pending interlocutory appeals, given the irreparable harm it causes defendants and the needless confusion it causes absent class members and the public when new notifications have to be sent out after the certification order is reversed or modified on appeal.  Here, the anticipated harm to Apple is particularly acute, given that plaintiffs seek to notify millions of current or prospective Apple customers that they may have been subjected to a price-fixing scheme that resulted in higher prices for e-books.  Apple's reputation would be damaged by this class notice in a way that cannot be repaired if Apple prevails on appeal.  That irreparable harm and the needless confusion to the absent class members from an erroneous class notice warrant a stay here.

---

[1]  Should the Court deny Apple's motion, Apple requests that the Court stay dissemination of notice for at least 72 hours so Apple can seek relief from the Second Circuit.

Accordingly, Apple respectfully requests that this Court stay notification of members of the class (as well as the damages phase of the trial) until the Second Circuit rules on Apple's appeals from the Court's final judgment and injunction and the Court's class-certification order.

## BACKGROUND

After Apple's entry into the market as an e-book retailer, five publishers increased the prices of certain e-books offered by Apple and other e-book retailers, and the Department of Justice and several State Attorneys General filed civil antitrust actions alleging that Apple and the publishers conspired to raise, fix, and stabilize e-book prices in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. *See* 12-cv-2826, Dkt. 1 ¶¶ 94-95 (S.D.N.Y.); 12-cv-3394, Dkt. 95 ¶¶ 3, 127, 128 (S.D.N.Y.). The Court scheduled a trial on injunctive relief in both cases, with a trial on damages claims in the states' action to follow if necessary. 12-cv-2826, Dkt. 71. After a three-week bench trial, the Court on July 10, 2013, found that Apple violated section 1 and congruent state statutes. *United States v. Apple, Inc.*, 952 F. Supp. 2d 638 (S.D.N.Y. 2013). On September 5, 2013, the Court entered its final judgment in the United States' case and ordered injunctions in both actions; no damages claims were addressed or resolved. *United States v. Apple, Inc.*, No. 12-cv-2826, 2013 WL 4774755 (S.D.N.Y. 2013). Apple noticed its appeals from the district court's judgment and injunctions (12-cv-2826, Dkt. 379; 12-cv-3394, Dkt. 307), and filed its opening appellate brief with the Second Circuit on February 25, 2014 (13-3741, Dkt. 157 (2d Cir.)).

A number of putative class actions were also filed raising the same allegations and seeking damages. The cases from outside this District were transferred to this Court by the United States Panel on Multidistrict Litigation. Dkt. 1 at 2.

On March 28, 2014, the Court certified a class consisting of millions of consumers in 23 jurisdictions who purchased e-books published by any of the publisher defendants from any retailer after the agency model was adopted but before May 21, 2012.  Dkt. 585.  The Court found that "[v]irtually all class members paid inflated prices for e-books as a result of a centralized price-fixing conspiracy, and they have proffered a sophisticated damages model to reliably determine damages."  *Id.* at 2.  In the same order, the Court denied Apple's *Daubert* motion to exclude plaintiffs' expert, Dr. Roger Noll, and its request for a hearing on that motion on the ground that Apple had deposed Dr. Noll.  Dkt. 585 at 83, 85.  In a separate order, the Court excluded the testimony of Apple's experts, Dr. Joseph Kalt and Mr. Jonathan Orszag, and denied Apple's request for a *Daubert* hearing on those motions.  Dkt. 586.  Pursuant to Federal Rule Civil Procedure 23(f), Apple will file with the Second Circuit a petition for permission to appeal this Court's certification order.

## LEGAL STANDARD

This Court has "judicial discretion" to stay the proceedings pending Apple's appeals. *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks omitted); *see also In re World Trade Ctr. Disaster Site Litig.*, 2007 U.S. App. LEXIS 8728 (2d Cir. Mar. 9, 2007) (granting motion for a stay of trial as well as pre-trial proceedings pending appeal); *Plummer v. Quinn*, 2008 WL 383507, at *2 (S.D.N.Y. Feb. 12, 2008) (granting stay pending defendant's appeal).  This discretion extends to stays pending interlocutory appeals brought pursuant to Rule 23(f).  *See Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 2000 WL 1424931, at *2 (E.D.N.Y. Sept. 26, 2000) (granting Rule 23(f) stay because "the rule was designed to accommodate the need for quick appellate review of class certification decisions").

A motion for a stay "is a motion, not to [the court's] inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Nken*, 556 U.S. at 434 (internal quotation marks omitted). Accordingly, in determining whether to issue a stay pending appeal, this Court examines four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id*. at 426 (internal quotation marks omitted).

To warrant a stay, Apple must show only that it has "a substantial possibility, although *less than a likelihood*, of success on appeal." *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) (emphasis added) (internal quotations omitted); *see also Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37 (2d Cir. 2010) (*Nken* "did not suggest that this factor requires a showing that the movant is 'more likely than not' to succeed on the merits").

A party establishes irreparable harm where, "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). And while "the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest," "[t]hese factors merge when the Government is the opposing party," as in this case. *Nken*, 556 U.S. at 435. The Second Circuit has held that "loss of reputation, good will, and business opportunities" constitutes irreparable harm. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004).

The primary purposes of an interlocutory appeal under Rule 23(f) are to ensure effective appellate review of class-certification decisions and to relieve the parties from expending

litigation resources on a class action that may be altered substantially on appeal.  In keeping with these goals, district courts routinely stay proceedings pending the outcome of a Rule 23(f) petition.  *See*, *e.g.*, *Gray v. Golden Gate Nat'l Recreational Area*, 2011 WL 6934433, at *3 (N.D. Cal. Dec. 29, 2011) ("The public interest lies in proper resolution of the important issues raised in this case, and issuance of a stay would avoid wasting resources on a class action litigation which might be changed in scope on appeal"); *Kotrous v. Goss-Jewett Co. of N. Cal., Inc.*, 2005 WL 2452606, at *5 (E.D. Cal. Oct. 4, 2005) (holding that a stay of the proceedings "will promote economy of time and effort for both the parties and the court" since the issue before the circuit court could be dispositive of class claims); *In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 5-6 (D.D.C. 2002) (staying proceedings pending Rule 23(f) appeal because "this Court has the very real potential of unnecessarily wasting significant resources of all parties").  A stay of class notice is particularly appropriate, given that it could lead to confusion and unnecessary costs should the appellate court order decertification or modification of the certified class.  *See*, *e.g.*, *Se. Milk Antitrust Litig. v. Sweetwater Valley Farm, Inc.*, 2011 U.S. Dist. LEXIS 5590, at *40 (E.D. Tenn. Jan. 19, 2011) ("Although it is unknown when the Sixth Circuit might rule on the petition, the Court agrees with defendants that the most prudent course of action is to delay notice to class members of the certification of the class until the Sixth Circuit has ruled on the petition"); *see also Apple, Inc. v. Superior Court*, 2013 Cal. LEXIS 2577 (Cal. Mar. 27, 2013) (granting stay of class action "pending consideration and disposition of a related issue [in a different case]").

## ARGUMENT

**I.     APPLE WILL SUFFER IRREPARABLE HARM ABSENT A STAY**

Sending out class notification while Apple's appeal is pending would be premature and would cause a completely avoidable and irreparable injury to Apple and confusion for consumers.   Indeed, it is common practice to stay class notice pending a 23(f) appeal.   *See* Manual for Complex Litigation (4th) § 21.28 ("If the appeal is from a grant of certification, the district court should ordinarily stay the dissemination of class notice to avoid the confusion and the substantial expense of re-notification that may result from appellate reversal or modification after notice dissemination"); *see also*, *e.g.*, *Brown v. Wal-Mart Stores, Inc.*, 2012 WL 5818300, at *5 (N.D. Cal. Nov. 15, 2012); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 94 (D.D.C. 2012); *In re Urethane Antitrust Litig.*, 2006 WL 3021126, at *2-3 (D. Kan. Oct. 23, 2006); *Dukes v. Wal-Mart Stores, Inc.*, No. 01-2252 (N.D. Cal. Sept. 27, 2004) (ordering "disclosures and discovery stayed until the appeal of the order granting class certification is resolved by the Ninth Circuit").

Class notice should not be taken lightly—it is a bell that cannot be unrung; once sent, it cannot be recalled.   Indeed, if the Second Circuit decertifies or modifies the class *after* class notice is dispatched, it would result in duplicative notices to millions of customers, resulting not only in widespread confusion to the class members, but also in needless time and expense to the parties and the Court.   *See In re Urethane Antitrust Litig.*, 2006 WL 3021126, at *2 (staying class notice because "the court is persuaded that the potential confusion that could result if the Tenth Circuit were to vacate or modify the class certification order after notice has already been disseminated to class members counsels against proceeding to issue notice").

Dissemination of class notice would undoubtedly and irreparably harm Apple's business. Plaintiffs desire to "inform" millions of Apple customers that they are part of a class purportedly

injured by a price-fixing scheme and that they have supposedly overpaid for e-books.  In fact, the Court's approved notice to putative class members explains that plaintiffs are seeking "$280 million" in damages attributable to Apple's conduct.  Dkts. 594, 596.  This would be the first class notice to consumers stating that Apple violated the law in connection with its entry into the e-books market, as the settlement notices they already received make clear that the publishers denied any wrongdoing and that Apple was proceeding to trial.  Apple indisputably possesses one of the most valuable brands in the world, and plaintiffs' class notice risks damaging the goodwill and reputation that Apple has spent many years creating.  *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) ("loss of reputation, good will, and business opportunities" constitutes irreparable harm).

If the Second Circuit reverses the certification of the class, then notice would have been unnecessarily sent to Apple's customers, and the parties would have to undertake another notification process in order to correct the prior notices.  This would impose unnecessary burden and expense, and it would require Apple to deal with more inquiries and questions from many confused customers, adding to the true cost of the class notice.  *See Brown*, 2012 WL 5818300, at *4 (staying class notice and holding that a "curative notice to the class, perhaps many months or more after the initial class notice was disseminated ... would not be sufficient to stem the confusion that would arise in the event of a change to the class definition or decertification of the class altogether").  Indeed, the Second Circuit need not actually reverse certification for confusion to ensue; if the Second Circuit grants Apple's 23(f) petition for review, that intermediate ruling alone will throw the class into limbo, creating confusion and necessitating another round of class notifications.  *See In re Rail Freight*, 286 F.R.D. at 94 ("Defendants

correctly note that proceeding with class notice while the Rule 23(f) petition is pending could lead to confusion among the public and the absent class members").

Premature class notice irreparably harms not only Apple, but *class members* as well, as the process of identifying class members and disseminating class notices inevitably burdens customers and infringes on their privacy interests.  Acknowledging the importance of protecting these privacy interests and recognizing the irreparable harm that premature class disclosure would cause, the court in *Brown* concluded that "[d]isclosing … sensitive personal information before resolution of Defendant's Rule 23(f) petition and possible appeal unnecessarily risks the intrusion of individuals' privacy who may not ultimately belong to the class, if any class remains."  2012 WL 5818300, at *4.

Another way in which Apple will be irreparably harmed absent a stay is that it will have been forced to spend millions of dollars—that it will be unable to recoup—to litigate the damages phase of the trial during the pendency of the appeal.  "Normally the mere payment of money is not considered irreparable, but that is because money can usually be recovered from the person to whom it is paid.  If expenditures cannot be recouped, the resulting loss may be irreparable."  *Philip Morris USA, Inc. v. Scott*, 131 S. Ct. 1, 4 (2010) (Scalia, J. in chambers) (internal citations omitted); *see also Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (irreparable harm exists where "there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied").  Preparing for the damages phase will be costly and time-consuming and will absorb the parties' and the Court's resources.  Apple will suffer irreparable injury if it expends these resources and then prevails in an appeal that defeats the claims of the States and the putative class.

Accordingly, the Court should follow the numerous other courts that have stayed class notice pending appeal. *See, e.g.*, *Brown*, 2012 WL 5818300, at *5; *In re Rail Freight*, 286 F.R.D. at 94; *Se. Milk Antitrust Litig.*, 2011 U.S. Dist. LEXIS 5590, at *41; *In re Urethane Antitrust Litig.*, 2006 WL 3021126, at *2-3.

## II.    APPLE IS LIKELY TO PREVAIL ON APPEAL

Apple has appealed several of this Court's rulings to the Second Circuit, which if reversed would be dispositive of any further proceedings in this case. In particular, Apple's likelihood of success on appeal from the Court's class-certification order warrants a stay, because, *inter alia*, the certified class contains individuals who indisputably suffered no harm as a result of their transactions and therefore have no valid claim yet will recover a windfall; there are intractable differences among the class members; the Court resolved merits issues prior to the commencement of the opt-out period and in doing so failed to "rigorously analyze" whether plaintiffs satisfied Rule 23's requirements; and the damages model is impermissibly inconsistent with plaintiffs' liability theory. Any one of these errors will require reversal of the certification order.[2]

1. The certification of a class containing members who have suffered no harm—and depriving Apple of its ability to defend itself against the claims of those individuals—violates Rule 23, the Rules Enabling Act, and due process.

---

[2] Apple previously sought a stay based on its likelihood of success on appeal from the final judgment and injunction (12-cv-2826, Dkt. 338 at 3-8), but the Court denied Apple's request (12-cv-2826, Dkt. 356 at 11:25). Apple maintains that it is likely to succeed in that appeal as well, and that a stay is warranted as a result. Moreover, if the Court were to deny Apple's Motion for Suggestion of Remand to the Judicial Panel for Multidistrict Litigation (Dkt. 549), Apple would appeal to the Panel (*see* R. Proc. J.P.M.L. 10.1(b)), and, if necessary, the Second Circuit (*see* 28 U.S.C. § 1407(e)), providing yet another reason to stay proceedings.

There is no "widely recognized" principle that a class may include persons who have not suffered any injury from the defendant's conduct, as the Court suggested.  Dkt. 585 at 58-59.  To the contrary, the Second Circuit has expressly held that bringing a suit as a class action does not relax the standing requirement, and that "no class may be certified that contains members lacking Article III standing."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006).  Standing indisputably requires "injury in fact."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Likewise, as this Court acknowledged, under section 4 of the Clayton Act, an individual plaintiff must prove that he "suffered an 'antitrust injury.'"  Dkt. 585 at 36.  Therefore, in an individual case, Apple could challenge a plaintiff's claim that he was harmed when he purchased certain of the publisher defendants' e-books.  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007).  By certifying this class, however, the district court has altered the substantive law by depriving Apple of its right to make such individualized challenges, and ensured that uninjured class members will receive a windfall, in violation of *Dukes*, the Rules Enabling Act, and due process.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011); 28 U.S.C. § 2072(b); *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231-32 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phoenix & Indem. Co.*, 553 U.S. 639 (2008); *see also Lindsey v. Normet*, 405 U.S. 56, 66 (1972).  This use of the class action device to prohibit Apple from contesting liability as to individual class members who have suffered no injury is manifestly erroneous.  *See Dukes*, 131 S. Ct. at 2561.

Accordingly, in several antitrust cases courts have held that a class may not be certified where some class members suffered no harm.  The Court here distinguished the D.C. Circuit's

recent decision in *In re Rail Freight*, 725 F.3d at 244, on the ground that there the plaintiffs admitted their expert's regression model produced false positives.  Dkt. 585 at 58.  But Dr. Noll too admitted that his model calculates not individual overcharges but rather artificial group *averages* that assign the exact same overcharge to thousands of different e-books.  As the court conceded (but disregarded), Dr. Noll's model "cannot explain much of the variation in the prices of a given e-book title."  Dkt. 555 at 74.  And in any case, the D.C. Circuit's underlying holding will compel reversal here:  Plaintiffs must "show that they can prove, through common evidence, that all class members were in fact injured by the alleged conspiracy."  *In re Rail Freight*, 725 F.3d at 252.  Several other cases set forth this same rule.  *See, e.g.*, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) ("every class member must prove at least some antitrust impact [individual injury] resulting from the alleged violation"); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 28 (1st Cir. 2008) (plaintiffs must have "some means of determining that each member of the class was in fact injured"); *Bell Atl. Corp v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("where fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance"); *In re OSB Antitrust Litig.*, 2007 WL 2253425, at *7 (E.D. Pa. Aug. 3, 2007) ("Plaintiffs must show, exclusive of any 'short cut,' that they can prove actual classwide impact at trial").  *Comcast*'s holding that "'calculations need not be exact'" in antitrust cases, a repeated refrain throughout the Court's opinion (*see, e.g.*, Dkt. 585 at 44-45, 68-69 (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013)), relates to the issue of *quantifying damages* and does not excuse plaintiffs from demonstrating that each class member suffered some *injury*.  *Compare* Dkt. 538-1 at Fig. 6.

2.  The Court's finding that the class was uniformly injured is disproved by dissimilarities among the millions of putative class members.

For example, Dr. Richard Gilbert, who testified on behalf of plaintiffs in the first trial, and whose work is cited by the Court (Dkt. 585 at 14-15) and relied upon by Dr. Noll (Dkt. 555 at 39), found that approximately 17% of e-book sales prices either stayed the same or fell upon adoption of agency agreements.  Dkt. 538 ¶ 60.  And while prices of some e-books increased after the switch to agency, many of those prices dropped shortly afterward.  *See* Dkt. 481 ¶ 80(f). When taken with the fact that approximately 60% of iBooks Store customers download only one or two e-books (Dkt. 481-1, Fig. 8), it is clear that any injury turns on the identity of the titles each consumer purchased and the timing of those purchases.

In light of all these individualized issues, Dr. Noll's damages model is not capable of showing "class-wide anticompetitive harm."  Dkt. 585 at 23.  Indeed, his model does not even attempt to demonstrate injury for each class member.  Dr. Noll calculates an *average* overcharge for e-books within each category he created, which does not necessarily say anything about the effect of agency on any given title or purchaser.  By applying the same average percentage overcharge to every purchase—even when the purchased title *decreased* in price—he attributes damages to class members who paid *less* for their e-books than they would have without the agency agreements.  This analysis represents a classic trial-by-formula method for determining injury and damages, treating the putative class as a "fictional composite" and masking "the disparate individuals behind the composite creation."  *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998).  The Supreme Court has squarely rejected this method of class adjudication.  *See Dukes*, 131 S. Ct. at 2561.

The Court's conclusion that Dr. Noll's model could prove that 99.8% of class members suffered an injury was erroneous.  That figure is based on flawed categorical averages and not individual book titles that customers actually purchased.  The Court's assertion that "[e]ach e-book title and its history has been accounted for" by Dr. Noll's model (Dkt. 585 at 40) is simply not true.  His model explains virtually nothing about the variation in the prices of a given e-book title and does not indicate that the price of *every* title increased.  Consumers who purchased only titles that did not increase as a result of agency were indisputably not injured.

Evidence of offsetting benefits adds several additional layers of individualized issues.  For example, Apple's entry resulted in many e-books being made available for *free*.  Dkt. 488 ¶¶ 96, 104-110, n.166.   And many putative class members who purchased some of the publisher defendants' e-books at higher prices during the proposed class period *also* purchased other e-books at prices that were lower (and sometimes zero) as a result of Apple's entry into the market.  Dkt. 481 ¶¶ 88-90.  Even the named plaintiffs admitted they received a significant benefit from these free e-books.  Dkt. 480-4 at 102:21-103:6; Dkt. 480-3 at 147:23-148:3.   Many class members suffered no net injury as a result of agency once these benefits are considered, and under the Court's class-certification order Apple has no way of raising this defense at trial.

The Court dismissed evidence of offsets as "invit[ing] speculation" and "add[ing] unnecessary complexity to the trial."  Dkt. 585 at 51.  But the Court's conclusion of what is "speculative" is wholly and inappropriately dictated by its view of the evidence presented in the previous trial.  Moreover, unavoidable "speculation" about the but-for world, and the resulting uncertainty about any individual injury, renders certification inappropriate.   When a court concludes that parties are left to speculate on these issues, class certification must be denied because courts may not distort the substantive law to make the proceedings manageable as a

class action.  28 U.S.C. § 2072(b); *Dukes*, 131 S. Ct. at 2561; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997); *Broussard*, 155 F.3d at 345.

At a minimum, Apple is likely to prevail in arguing that it should be allowed to offset a customer's overcharge incurred on a publisher defendant's e-book against an undercharge enjoyed on another publisher defendant's e-book.  *See, e.g., L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1367 (9th Cir. 1986) ("An antitrust plaintiff *may recover only to the 'net' extent of its injury*; if benefits accrued to it because of an antitrust violation, those benefits must be deducted from the gross damages caused by the illegal conduct") (emphasis added).  The case this Court relied on in rejecting this theory, *Hanover Shoe, Inc. v. United Show Machinery Corp.*, 392 U.S. 481 (1968), involves the pass-on defense—a completely unrelated concept.  *Hanover Shoe* has no bearing on Apple's argument that when the alleged conspiracy raises prices for some purchases and lowers prices for others, a customer is injured only if he paid more *in total* than he would have in the but-for world.

3. The Court erred in resolving a central merits issue before the opt-out period even began, abdicating its duty to "rigorously analyze" plaintiffs' proof before certifying the class.

The district court resolved key merits questions—indeed, some of the most central issues in this case—in its certification order.  In the very first paragraph of its order, the Court declared that "[v]irtually all class members paid inflated prices for e-books as a result of a centralized price-fixing conspiracy."  Dkt. 585 at 2.  This is the third time the Court has prejudged a key merits issue against Apple.  In 2012, before any meaningful proceedings had even taken place, the Court said it could not see what arguments Apple could possibly raise against class certification.  12-cv-2826, Dkt. 78 at 18:15-19.  And this past January, the Court declared that

14

Apple had caused consumers to suffer "hundreds of millions" of dollars in damages.   12-cv-2826, Dkt. 437 at 62-63.  The Court has decided not only that class-wide injury is a common question, but that the purported common injury *actually occurred*.

Rule 23 proceedings cannot short-circuit a jury trial by resolving merits questions unrelated to certification.  *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class"); *In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (consideration of the merits is "preclude[d]" "when a merits issue is unrelated to a Rule 23 requirement").  Resolution of this issue before the opt-out period for the class had even commenced, along with the Court's simultaneous exclusion of Apple's expert testimony, which it acknowledged was *not* necessary for the class-certification ruling (Dkt. 585 at 3), creates a fatal one-way intervention problem.  Class members cannot "determine whether participation would be favorable to their interests" on the basis of merits rulings.  *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 537 (1974).  The Court's resolution of these merits issues before the class has an opportunity to opt out precludes class certification.  *See Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 354 (7th Cir. 1975).

Because the Court had already concluded that "[v]irtually all class members" were injured, it did not "rigorously analyze" plaintiffs' proof before certifying the class.  Rule 23 "imposes stringent requirements for certification that in practice exclude most claims."  *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013).  Here, however, the Court adopted a presumption in favor of class certification in antitrust cases.  Dkt. 585 at 35 ("Predominance is readily shown in certain cases alleging violations of the antitrust laws") (internal quotation marks omitted).   There is no special presumption in favor of class

certification for antitrust claims.  *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010) ("Rule 23 provides a one-size-fits-all formula for deciding the class-action question").   The Court's erroneous presumption placed Apple in the untenable (and legally unjustified) position of disproving predominance, thereby resurrecting the "some showing" and "not fatally flawed" standards that have been squarely rejected by *In re IPO*, *Dukes*, and *Comcast*.  *In re IPO*, 471 F.3d at 42 ("our conclusions necessarily preclude the use of a 'some showing' standard"); *id.* ("we also disavow the suggestion in *Visa Check* that an expert's testimony may establish a component of a Rule 23 requirement simply by being not fatally flawed"); *see also Dukes*, 131 S. Ct. at 2550; *Comcast*, 133 S. Ct. at 1432.

The Court's improper burden-shifting is also evident from its failure to take "a hard look at the soundness of [Dr. Noll's] statistical model[]" as "command[ed]" by Rule 23.  *Rail Freight*, 725 F.3d at 255; *see also Parko v. Shell Oil Co.*, 739 F.3d 1083, 1086 (7th Cir. 2014) (court "should have investigated the realism of the plaintiffs' ... damage model in light of the defendants' counterarguments").  Dr. Noll's model is inaccurate and unreliable because he fails to properly identify the but-for world for any of the e-book titles at issue.  Dkt. 445 at 10-13; Dkt. 514 at 7-9.  Rather than engaging in a thorough examination of his report in light of these criticisms, however, the Court asserted that "antitrust jurisprudence … expressly refuses to impose extraordinary burdens on plaintiff to construct the but-for price[,]" and that "[w]here the but-for price is uncertain, 'the plaintiff's burden of proving damages is, to an extent, lightened[.]'"  Dkt. 585 at 44 (quoting *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1077 (2d. Cir. 1988)).  But *Comcast* explicitly rejected the notion that "at the class-certification stage any method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary."  133 S. Ct. at 1433.  A contrary rule would "reduce Rule 23(b)(3)'s predominance

requirement to a nullity." *Id*.  And even if the *amount of damages* need only be proven with reasonable certainty (*Story Parchment Co. v. Paterson Parchment Co.*, 282 U.S. 555, 563 (1931)), plaintiffs must still be able to prove *fact of injury* for each class member.  Dr. Noll's model fails to satisfy this burden.

The Court impermissibly accepted Dr. Noll's assertion that his model "explains 90% of the variation in the prices among e-book titles" (Dkt. 585 at 74), even though Dr. Noll's revised report did not disclose *any* $R^2$ value.  Indeed, Dr. Kalt showed that Dr. Noll's revised model explained only 5% of the relevant variance.  The Court simply ignored the only evidence on the point and applied an irrefutable presumption in favor of Dr. Noll.  Dkt. 585 at 74.

4. Class certification was improper under *Comcast* because plaintiffs' damages model does not match their theory of liability.  Plaintiffs' theory of liability was that Apple and the publisher defendants conspired to attack the "industry standard" $9.99 price point favored by Amazon.  Dkt. 432 (Amended Complaint) ¶ 13; *see also United States v. Apple Inc.*, 952 F. Supp. 2d 638, 701 (S.D.N.Y. 2013) (Court referring to $9.99 as "industry norm").  But Dr. Noll admitted he did not know, and did not regard as an important question, how many of the predicted but-for prices in his model are $9.99.  Dkt. 480-1 at 184:10-185:23.  Indeed, the model generated by Dr. Noll showed almost no e-books would have been sold at (and very few near) $9.99 in his but-for world.  *See* Dkt. 538 ¶ 81.  This too precludes certification, because *Comcast* holds that "any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation."  133 S. Ct. at 1433 (internal quotation marks omitted).  Dr. Noll's "model does not even attempt" to tie plaintiffs' theory to their damages calculation, and it therefore "cannot possibly establish that damages are susceptible of measurement across the entire class."  *Id.*

17

### III.    A STAY IS IN THE PUBLIC INTEREST

The States and class plaintiffs will not be substantially injured during the appeal; indeed, consumers represented by the States and class representatives are already receiving the $166 million settlement with the defendant publishers *amounting to over 76% of alleged damages on plaintiff States' calculation*.  No. 12-cv-03394, ECF No. 242 at 2 (S.D.N.Y. July 23, 2013); *see also* Jay Greene, *E-book Buyers Given Credits in Settlement*, Chicago Tribune, Mar. 26, 2014, at C3 ("Amazon.com Inc. e-book customers received credits Tuesday as part of the $166 million price-fixing settlement"); Chris Reidy, *Deal Benefits E-book Customers*, Boston Globe, Mar. 27, 2014, at B8 (reporting that customers receive $3.17 for every New York Times best-seller purchased, and 73 cents for other books).  Further, Apple, as well as the publisher defendants, are operating under consent decrees and injunctions.[3]

Moreover, the public has an interest in the judicial economy and efficiency that would result from a stay.  *See Estate of Heiser v. Deutsche Bank Trust Co.*, 2012 WL 2865485, at *5 (S.D.N.Y. July 10, 2012).  *All* parties and the judiciary risk wasting enormous amounts of time and resources preparing for the second phase of trial when the determination in the first trial and the propriety of class adjudication are under appellate review.  A retrial would also require the court to empanel a second jury.

A stay of class notice is also in the public interest.  "Proceeding with class notice while the Rule 23(f) petition is pending could lead to confusion among the public and the absent class members."  *In re Rail Freight*, 286 F.R.D. at 94.  It is for this reason that courts have concluded that "th[e] public interest consideration counsels in favor of staying class notice until after the

---

[3]  In either case, any harm to plaintiffs from a brief stay, "when juxtaposed to the potential magnitude of a decision by the Court of Appeals on the issues before it, is simply *de minimis*."  *In re Lorazepam*, 208 F.R.D. at 6.

court of appeals has acted on the [23(f)] petition." *Id.*; *see also*, *e.g.*, *Jenkins v. Hyundai Motor Financing Co.*, 2008 WL 2268319, at *5 (S.D. Ohio June 2, 2008) (recognizing the public interest in minimizing potential confusion that could result from potentially erroneous notices, and staying notice to class).

## CONCLUSION

This Court should stay all proceedings pending Apple's appeals, or, at a minimum, stay notice to class members pending resolution of Apple's 23(f) petition and any resulting appeal.


Dated:  April 4, 2014                           Respectfully submitted,

                                                s/ Theodore J. Boutrous
                                                _____
                                                  Theodore J. Boutrous, Jr.
                                                  Daniel G. Swanson

                                                  Gibson, Dunn & Crutcher LLP
                                                  333 South Grand Avenue
                                                  Los Angeles, CA  90071
                                                  (213) 229-7000
                                                  tboutrous@gibsondunn.com


                                                  Cynthia Richman
                                                  Gibson, Dunn & Crutcher LLP
                                                  1050 Connecticut Avenue, N.W.
                                                  Washington, DC  20036
                                                  (202) 955-8500

                                                  *On behalf of Defendant Apple Inc.*

19