**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
THE STATE OF TEXAS, *et al*.                                 :
                                                             :
        Plaintiffs,    :
                                                             :
   v.                                           x  12-CV-03394 (DLC)
                                                             :
PENGUIN GROUP (USA), INC., *et al*.,                         :
                                                             :
        Defendants.    :
                                                             :
------------------------------------------------------------ x

**DEFENDANT APPLE INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO CERTIFY INTERLOCUTORY APPEAL**
**PURSUANT TO 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ........................................................................................... 1

II.  THE COURT SHOULD CERTIFY ITS APRIL 15, 2014 ORDER FOR
     INTERLOCUTORY APPEAL ............................................................................................. 1

     A.   Whether The States Have Article III Standing To Pursue Their Clayton Act
          Damages Claim is a "Controlling Question of Law" ..................................................... 2

     B.   There Are "Substantial Grounds For Difference Of Opinion" On The
          Controlling Questions Of Law Addressed In The Court's Order ................................. 2

          1.   There Are Substantial Grounds For Difference Of Opinion As To
               Whether The States Have Article III Standing ................................................. 2

          2.   There Are Substantial Grounds For Difference Of Opinion As To
               Whether The States Must Satisfy Rule 23's Requirements ............................. 6

     C.   Interlocutory Appeal Of The Court's Order Would Materially Advance The
          Litigation ........................................................................................................................ 8

III. CONCLUSION .................................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bridge v. Phx. Bond & Indem. Co.*,
    553 U.S. 639 (2008) .................................................................................................. 7

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) ...................................................................................... 7

*Connecticut v. Am. Elec. Power Co.*,
    582 F.3d 335 (2d Cir. 2009) ...................................................................................... 3

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) .................................................................................................. 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .................................................................................................. 6

*Georgia v. Pennsylvania R. Co.*,
    324 U.S. 439 (1945) .................................................................................................. 5

*Hawaii v. Standard Oil Co. of Cal.*,
    405 U.S. 251 (1972) .................................................................................................. 5

*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013) ...................................................................................... 2, 4, 5

*In re Duplan Corp.*,
    591 F.2d 139 (2d Cir. 1978) ...................................................................................... 8

*Isra Fruit Ltd. v. Agrexco Agricultural Export Co. Ltd.*,
    804 F.2d 24 (2d Cir. 1986) ........................................................................................ 9

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990) ........................................................................................ 2

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996) ...................................................................................... 1

*Louisiana v. Texas*,
    176 U.S. 1 (1900) ...................................................................................................... 5

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ............................................................................................... 3, 4

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) ...................................................................................... 7

## TABLE OF AUTHORITIES

                                                            **Page(s)**

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
    134 S. Ct. 736 (2014) .................................................................................................. 6

*New York City Health and Hospitals Corp. v. Blum*,
    678 F.2d 392 (2d Cir. 1982) ........................................................................................ 2

*Philip Morris USA v. Williams*,
    549 U.S. 346 (2007) .................................................................................................... 7

*Powers v. Ohio*,
    499 U.S. 400 (1991) .................................................................................................... 5

*Primavera Familienstifung v. Askin*,
    139 F. Supp. 2d 567 (S.D.N.Y. 2001) ......................................................................... 9

*Purdue Pharma L.P. v. Kentucky*,
    704 F.3d 208 (2d Cir. 2013) ........................................................................................ 3

*SEC v. Credit Bancorp, Ltd.*
    103 F. Supp. 2d 223 (S.D.N.Y. 2000) ......................................................................... 8

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
    690 F. Supp. 170 (S.D.N.Y. 1987) .............................................................................. 8

*W. Virginia v. Chas. Pfizer & Co.*,
    440 F.2d 1079 (2d Cir. 1971) ...................................................................................... 3

*Weber v. United States*,
    484 F.3d 154 (2d Cir. 2007) ........................................................................................ 1

**Statutes**

15 U.S.C. § 15c(a)(1) ......................................................................................................... 6

28 U.S.C. § 1292(b) ........................................................................................................... 1

Fed. R. Civ. P. 23(a) .......................................................................................................... 7

Fed. R. Civ. P. 23(f) ........................................................................................................... 8

**Other Authorities**

Black's Law Dictionary (9th ed.) ....................................................................................... 6

I.     **PRELIMINARY STATEMENT**

Apple seeks certification of this Court's April 15 order (12-cv-3394, Dkt. 500) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  The Court's order addresses important and unresolved issues of federal jurisdiction and the requirements of due process.  Whether the States have Article III standing is a case-dispositive question, and the Supreme Court's recent decision in *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013), casts doubt on the States' standing to pursue such relief.  Further, the question whether the States may, consistent with due process, pursue this representative action without satisfying the requirements of Rule 23 involves many of the same issues addressed in Apple's Rule 23(f) petition pending before the Second Circuit.  Interlocutory review of the Court's April 15 order will therefore save judicial resources by potentially avoiding the need for a costly trial and burdening the Second Circuit with duplicative appeals on related issues.

II.    **THE COURT SHOULD CERTIFY ITS APRIL 15, 2014 ORDER FOR INTERLOCUTORY APPEAL**

Section 1292(b) provides that a district judge may certify an otherwise non-appealable order when the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b).  "Congress passed § 1292(b) to 'avoid protracted litigation'" and "to assure the prompt resolution of knotty legal problems." *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007) (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 864 (2d Cir. 1996)).  The Court's Order of April 15, 2014, easily satisfies Section 1292(b)'s criteria, and certifying the order would serve its purposes.

1

### A. Whether The States Have Article III Standing To Pursue Their Clayton Act Damages Claim is a "Controlling Question of Law"

"Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (citations omitted). This standard is easily met when "the order involve[s] issues of . . . *subject matter jurisdiction*." *Id.* (emphasis added). There can be no doubt that the Court's order denying Apple's motion to dismiss the States' parens patriae claims for lack of standing involves a "controlling question of law." *New York City Health and Hospitals Corp. v. Blum*, 678 F.2d 392, 396 (2d Cir. 1982) ("Since a litigant cannot maintain his cause of action without demonstrating his standing, disposition of that issue often presents the type of controlling question suitable for interlocutory review."). Because reversal of the order "would terminate the action" (*Klinghoffer*, 921 F.2d at 24), the court's order involves a "controlling question of law."

### B. There Are "Substantial Grounds For Difference Of Opinion" On The Controlling Questions Of Law Addressed In The Court's Order

#### 1. There Are Substantial Grounds For Difference Of Opinion As To Whether The States Have Article III Standing

Apple argued in its motion to dismiss that the States lack Article III standing to pursue their damages claim because they are seeking damages *only* for injuries allegedly suffered by others—namely, individual consumers in their respective jurisdictions. But the Supreme Court has recently reiterated that a plaintiff must *itself* "have suffered a concrete and particularized injury" before it can invoke a federal court's jurisdiction. *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659 (2013). Here, the States have not alleged injury in their proprietary or sovereign capacity—they purport to sue solely in their capacity as parens patriae. *See* 12-cv-3394, Dkt. 95 ¶ 11 ("The Attorneys General of the Plaintiff States . . . bring [these] actions . . . as parens patriae

2

on behalf of consumers[.]"). Thus, to satisfy the injury-in-fact requirement, the States must show an injury to their quasi-sovereign interests. *See Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 335 (2d Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 2527 (2011) (describing the "test for parens patriae standing," which "ensure[s] that a state . . . properly asserts a case or controversy sufficient for Article III standing purposes"); *see also id*. at 338 ("injury to a state as a quasi-sovereign is a sufficiently concrete injury to be cognizable under Article III").

Quasi-sovereign interests are "'public or governmental interests that concern the state as a whole.'" *Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007) (quoting Richard H. Fallon, Jr. et al., Hart & Wechsler's The Federal Courts and the Federal System 289 (5th ed. 2003)). A state's "quasi-sovereign interests" must be "wholly apart from recoverable injuries to individuals residing within the state." *W. Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1089 (2d Cir. 1971); *see also Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 215 (2d Cir. 2013) ("To assert parens patriae standing, the State (or Commonwealth) must articulate a quasi-sovereign interest *distinct from the interests of particular private parties*." (emphasis added) (citation and internal quotation marks omitted)).

The States have not articulated any quasi-sovereign interest—much less an *injury* to that interest—distinct from the interests of the allegedly injured consumers. The only "concrete and particularized" injury alleged in the complaint is an "increase in retail e-book prices across both the Defendants' frontlist and backlist titles." Dkt. 95 ¶ 116. And the complaint makes clear that individual "consumers"—*not* the States—are the victims who allegedly "paid . . . [these] overcharges." *Id.* ¶ 5. Indeed, the Prayer for Relief demands "treble damages for injury to natural persons under Section 4c of the Clayton Act," *not* for any injury to the States themselves. *Id.*, Prayer for Relief, ¶ 4.

3

Notwithstanding the absence of any alleged injury to a quasi-sovereign interest, this court held that Article III is satisfied because Congress authorized the States to bring such actions, citing 15 U.S.C. § 15c(a)(1). Dkt. 500 at 9 ("Congress has specifically authorized the filing of an antitrust lawsuit by a State as *parens patriae* to recover damages for injury to its citizens.") But the question presented by Apple's motion is whether Congress has the *authority* to confer such standing on non-injured parties. In *Hollingsworth*, the Supreme Court suggested that the answer to that question is no; it held that legislatures may not use their lawmaking authority to give uninjured entities a "ticket to the federal courthouse." 133 S. Ct. at 2667. Furthermore, this Court's reliance on *Massachusetts* is flawed because, in that case (unlike this one), the State alleged concrete injury to its *own* sovereign interests in the form of rising tides that threatened its coastline and other environmental damage. 549 U.S. at 522 ("Because the Commonwealth owns a substantial portion of the state's coastal property, it has alleged a particularized injury in its capacity as a landowner."). Thus, there are substantial grounds for differences of opinion as to whether Congress may authorize a state to sue in its parens patriae capacity even though the state has not alleged an injury to its quasi-sovereign interests.

There are also substantial grounds for difference of opinion as to what constitutes an injury to a quasi-sovereign interest sufficient for Article III standing. This question is not nearly as clear as the court's April 15 order would indicate. In finding that overcharges paid by citizens necessarily constitute "injury in fact to [the States'] economies" (Dkt. 500 at 12), the court begs the very question at issue. Apple *agrees* that "[c]ourts have long found that *harm to States' economies* caused by restraints of trade in violation of the antitrust laws constitute injuries that are cognizable in federal court," *id.* (emphasis added), and does not dispute that a state would have parens patriae standing where an unlawful restraint of trade actually *harmed its economy*.

4

Indeed, that is the holding of *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439 (1945).  But the States here do not seek to recover *any* damages as a result of *any* alleged harm to their respective economies.

The Supreme Court's opinion in *Georgia* illustrates Apple's point.  There, the State sought to enjoin a rate-fixing conspiracy that allegedly discriminated against Georgia consumers.  The conspiracy thus threatened, *inter alia*, to "relegate[ Georgia] to an inferior economic position among her sister States." *Id.* at 451.  In other words, because the rate-fixing conspiracy was targeted at Georgia, it threatened concrete harm to Georgia's economy. *Id.* at 450-51.  The same was true in *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251 (1972), where the state alleged that the conspiracy, *inter alia*, "precluded goods made [in Hawaii] from equal competitive access with those of other States to the national market," thereby keeping "the Hawaii economy . . . in a state of arrested development." *Id.* at 255-56.  Contrary to this Court's assertion, neither *Georgia* nor *Hawaii* announced a general rule that a state's economy is harmed by *every* unlawful restraint of trade that harms the state's citizens.

Moreover, under this Court's reasoning, a state would have standing to sue for damages for *any* economic injury suffered by its citizens.  But that has never been the law. *See Louisiana v. Texas*, 176 U.S. 1, 19 (1900) (state has parens patriae standing only when the "gravamen [of the action] is not a special and peculiar injury such as would sustain an action by a private person"); *Hollingsworth*, 133 S. Ct. at 2663 ("It is . . . a 'fundamental restriction on our authority' that '[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" (second alteration in original) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991))).  Accordingly, there are substantial grounds for difference of opinion as to whether the States have

5

Article III standing to pursue their Clayton Act claim for damages suffered only by their respective citizens.[1]

### 2. There Are Substantial Grounds For Difference Of Opinion As To Whether The States Must Satisfy Rule 23's Requirements

Apple also argued that allowing the States to sue for damages in a representative capacity without satisfying Rule 23 would violate due process. The Court rejected this argument, relying in part on *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 744 (2014), for the proposition that "a lawsuit by a State is not a class action." Dkt. 500 at 21. But *AU Optronics* addressed only the *statutory* definitions of "mass action" and "class action" provided by the Class Action Fairness Act ("CAFA"). 134 S. Ct. at 741-44. The issue here is whether the States' parens patriae claim is, functionally, a class proceeding—not whether it meets the special definition provided under CAFA. *AU Optronics* has nothing to say about that question. To the contrary, there is strong support for Apple's argument that the States' parens patriae action is, in effect, a class action. *See* Black's Law Dictionary 284 (9th ed. 2009) (defining "class action" as "[a] lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group"); 15 U.S.C. § 15c(a)(1) (authorizing states to "bring a civil action . . . on behalf of natural persons . . . to secure monetary relief . . . for injury sustained *by such natural persons* to their property" (emphasis added)).

Furthermore, with respect to Apple's due process argument, the court asserts that "the Clayton Act contains no provision for incorporating Rule 23's requirements into Section 15c"

---

[1] The Court states that Apple has conceded that the States had standing to pursue injunctive relief (Dkt. 500 at 15), but Apple did nothing of the sort. Apple merely noted that the States' standing to pursue injunctive relief is irrelevant because standing must be established "for each claim" (*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)) and "for each form of relief sought" (*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

and that requiring "States to seek certification of a class would . . . override the express intent of Congress." Dkt. 500 at 21. But Apple's argument is that obviating the need for class certification violates due process. When presented with an argument that Congress has acted unconstitutionally, it is no answer to say that Congress has acted. As with the standing issue, the question is whether Congress *has the authority* to authorize a functional class action without requiring the representative party—here, the States—to satisfy Rule 23's requirements, including numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

The Court also holds that the Act does not violate due process because it provides for "notice and opt-out provisions." Dkt. 500 at 23. But even if the Act protects the due process rights of absent class members, the Act also must protect *Apple*'s due process rights. Allowing a class action to proceed without ensuring commonality, for example, is unconstitutional because it eliminates "the right of defendants to challenge the allegations of individual plaintiffs," which would "result[ ] in a due process violation." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 232 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008); *see also Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) ("[T]he Due Process Clause prohibits a State from punishing an individual without first providing that individual with an opportunity to present every available defense." (citation and internal quotation marks omitted)); *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("A defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right[.]") Apple's motion to dismiss raises precisely this issue. Apple contends that certification of the States' functional class action would violate due process for the same reasons that it contends the Class Plaintiffs' action should not be certified—the States cannot prove commonality in light of the inherently individualized

questions of injury and damages. Allowing the parens patriae action to proceed on behalf of millions of consumers, many of whom suffered no injury, violates Apple's due process rights. Thus, there are substantial grounds for difference of opinion as to whether the States should be required to satisfy Rule 23's requirements before representing millions of consumers.

### C. Interlocutory Appeal Of The Court's Order Would Materially Advance The Litigation

Certification is warranted where "early appellate review 'might avoid protracted and expensive litigation.'" *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000) (quoting *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F. Supp. 170, 172 (S.D.N.Y. 1987)). "[I]n practice," "the question of whether there is a controlling issue of law" and "the question of whether certification would materially advance the ultimate termination of the litigation" "are closely connected." *Id.* "[T]he critical requirement is that it (an interlocutory appeal) have the potential for substantially accelerating the disposition of the litigation." *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (citation and quotation marks omitted). That standard is easily satisfied here.

*First*, resolving the question of the States' Article III standing would materially advance the litigation by addressing a dispositive issue before substantial resources are expended by the Court and the parties on a lengthy and complicated trial.

*Second*, by allowing the States to proceed on their parens patriae claims, the Court has functionally certified a class of consumers represented by the States. Because of the enormous stakes involved, class certification orders are the rare interlocutory orders that are immediately appealable. *See* Fed. R. Civ. P. 23(f). The stakes involved in allowing the States to represent millions of citizens are every bit as high as those involved in letting the Class Plaintiffs represent millions of class members. And the same reasons militating in favor of interlocutory review of

8

the order certifying the Rule 23(b)(3) class action apply to the order denying Apple's motion to require the States to seek class certification. Furthermore, if the Second Circuit ultimately reverses this Court's order and requires the States to seek certification, the States may well fail to obtain certification on remand, rendering the entire trial a waste of judicial resources.

### III.     CONCLUSION

For the reasons set forth above, the Court should certify its April 15, 2014 Order for interlocutory appeal. And "insofar as it [would be] helpful to the [Second] Circuit" (*Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 571 (S.D.N.Y. 2001) (citing *Isra Fruit Ltd. v. Agrexco Agricultural Export Co. Ltd.*, 804 F.2d 24, 25 (2d Cir. 1986))), Apple suggests that the Court enumerate the following two questions in its certification order:

(1) Whether the States have Article III standing to sue as parens patriae under the Clayton Act, where they seek *only* damages for alleged overcharges paid by consumers in those states; and

(2) Whether the States suing as parens patriae under the Clayton Act should be required to satisfy Rule 23's requirements for class certification before being allowed to seek damages on behalf of millions of allegedly injured consumers.

Dated:  April 23, 2014                                              Respectfully submitted,

                                                                                         /s/ Theodore J. Boutrous, Jr.
                                                                          Theodore J. Boutrous, Jr.
                                                                          Daniel G. Swanson
                                                                          Gibson, Dunn & Crutcher, LLP
                                                                          333 South Grand Avenue
                                                                          Los Angeles, CA  90071
                                                                          (213) 229-7000
                                                                          tboutrous@gibsondunn.com

                                                                          Cynthia Richman
                                                                          Gibson, Dunn & Crutcher, LLP

1050 Connecticut Avenue, N.W.
Washington, DC  20036
(202) 955-8500

*On behalf of Defendant Apple Inc.*