UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

This Document Relates to:

| | |
|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | No. 11-md-02293 (DLC) ECF Case <br><br> <u>CLASS ACTION</u> |
| THE STATE OF TEXAS, et al., <br><br>      Plaintiffs, <br><br>      v. <br><br> PENGUIN GROUP (USA) INC., et al., <br><br>      Defendants | Civil Action <br> No. 12-cv-03394 |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY <u>APPROVAL OF SETTLEMENT WITH APPLE INC.</u>

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................1

II.     PROCEDURAL HISTORY.........................................................................3

        A.      Plaintiffs' Investigations ...............................................................3

        B.      Litigation to Date ...........................................................................3

        C.      Settlement Negotiations .................................................................5

III.    THE PROPOSED SETTLEMENT ............................................................6

        A.      Payment Contingencies Defined....................................................6

        B.      Distribution of Consumer Compensation ....................................7

        C.      Payment to Plaintiff States .............................................................7

        D.      Payment to Class Counsel...............................................................7

        E.      Payment of Settlement Notice and Administration Costs..........7

        F.      Release of Claims ............................................................................8

IV.     THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMARY
        APPROVAL .................................................................................................8

V.      CONSUMER NOTICE................................................................................12

        A.      Recommendation to Provide Notice to Consumers After the Outcome of the
                Liability Finding Appeal is Known ..............................................12

        B.      Description of Anticipated Notice Plan .......................................13

VI.     CONSUMER COMPENSATION DISTRIBUTION PLAN........................15

        A.      Recommendation to Defer Submission of Distribution Plan................15

        B.      Description of Anticipated Distribution Plan ...............................16

VII.    THE CLASS SHOULD REMAIN CERTIFIED FOR SETTLEMENT
        PURPOSES..................................................................................................16

        A.      Definition of the Proposed Apple Settlement Class .................17

        B.      The Class Meets the Prerequisites of Rule 23(a)........................17

       1.    Numerosity ................................................................................17

       2.    Commonality ............................................................................17

       3.    Typicality .................................................................................18

       4.    Adequacy ..................................................................................18

   C.    The Requirements of Rule 23(b)(3) Are Satisfied .................................19

VIII.   CONCLUSION ....................................................................................20

**EXHIBITS**

Exhibit A          Apple Settlement Agreement

Exhibit B          Declaration of Kim Schmidt for Rust Consulting

Exhibit C          Proposed Order Preliminarily Approving Apple Settlement

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)..........................................................................................................19

*Harman v. Lyphomed, Inc.,*
   1989 WL 6558 (N.D. Ill. Jan. 25, 1989) ...........................................................................13

*In re Currency Conversion Fee Antitrust Litig.,*
   2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006).....................................................9

*In re J.P. Morgan Chase Cash Balance Litig.,*
   242 F.R.D 265 (S.D.N.Y. 2007) ........................................................................................18

*In re Lloyd's Am. Trust Fund Litig.,*
   2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002)..................................................15

*In re Playmobil Antitrust Litig.,*
   35 F. Supp. 2d 231 (E.D.N.Y. 1998) .................................................................................18

*In re Toys "R" Us Antitrust Litig.,*
   191 F.R.D. 347 (E.D.N.Y. 2000).........................................................................................8

*In re Visa Check/MasterMoney Antitrust Litig.,*
   280 F.3d 124 (2d Cir. 2001)..............................................................................................19

*In re Vitamin C Antitrust Litig.,*
   279 F.R.D. 90 (E.D.N.Y. 2012) .........................................................................................18

*In re Vitamins Antitrust Litig.,*
   2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 31, 2000)...............................................10, 16

*McBean v. City of New York,*
   228 F.R.D. 487 (S.D.N.Y. 2005) .......................................................................................13

*v. Stolt-Nielsen S.A.,*
   270 F.R.D. 80 (D. Conn. 2010)..........................................................................................17

*Nieves v. Cmty. Choice Health Plan of Westchester, Inc.,*
   2012 U.S. Dist. LEXIS 37720 (S.D.N.Y. Feb. 24, 2012)....................................................9

*Tylka v. Gerber Prods. Co.,*
   182 F.R.D. 573 (N.D. Ill. 1998).........................................................................................13

*United States v. Apple Inc.,*
   952 F. Supp. 2d 638 (S.D.N.Y. 2013)...............................................................................1, 4

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982)...................................................................................8

*Wolfson v. Solomon,*
    54 F.R.D. 584 (S.D.N.Y. 1972) ......................................................................13

## FEDERAL STATUTES

15 U.S.C. § 15...............................................................................8, 13, 14, 15

28 U.S.C. § 455(b)(4)-(5) .................................................................................17

## FEDERAL RULES

Federal Rule of Civil Procedure 23 ................................................... *passim*

## SECONDARY AUTHORITIES

7AA Wright & Miller, Federal Practice & Procedure § 1788 (3d ed.)..........................................13

Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 12.10 (3d ed. 1992) ...............16

# I.    INTRODUCTION

Plaintiff States[1] and the Certified Class[2] ("Plaintiffs") respectfully submit this Memorandum in Support of their Motion for Preliminary Approval of their settlement with Apple Inc. ("Apple"). Plaintiffs strongly believe this Court's liability finding against Apple should, and will, be affirmed. If it is affirmed and if this settlement is approved, compensation for E-book purchasers will total $566 million: $400 million from Apple and $166 million already recovered from the publishers in earlier settlements.[3] This outcome would represent a consumer recovery of more than 200 percent of the maximum estimated consumer damages,[4] placing this case among the exceedingly rare cases that provide consumers nationwide with double the amount of their estimated damages.

Recognizing the effect of this Court's finding that Apple conspired to restrain trade in violation of Section 1 of the Sherman Act[5] ("Liability Finding") and Apple's appeal therefrom, the parties have fashioned a settlement that provides for three outcomes, depending on the resolution of the appeal. First, if the Court's Liability Finding is ultimately affirmed, Apple will pay $400 million to consumers (and $50 million more in attorneys' fees and payment to States). Second, if the Liability Finding is either vacated and remanded or reversed and remanded for

---

[1]     "Plaintiff States" are the States and Commonwealths of Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Mexico, New York, North Dakota, Ohio, Pennsylvania, Puerto Rico, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

[2]     "Certified Class" means Consumers in any State, Commonwealth or Territory of the United States, other than Plaintiff States, at the time of their E-book purchase as defined in the Order certifying class which was entered on March 28, 2014 (*In re Electronic Books Antitrust Litigation*, No. 11-md-02293 (S.D.N.Y), ECF No. 585) ("Class Certification Order").

[3]     This amount does not include payment of attorneys' fees and costs and payment to the States, all of which are being paid in addition to the consumer compensation and all of which represent an additional benefit Plaintiffs have secured on consumers' behalf.

[4]     Plaintiffs' expert economist, Dr. Roger Noll, estimates consumers' damages to be $280,254,374. *See* Reply Declaration of Roger G. Noll, No. 11-md-02293, ECF No. 555 at 87.

[5]     *United States v. Apple Inc.*, 952 F. Supp. 2d 638 (S.D.N.Y. 2013).

reconsideration or retrial on the merits, Apple will pay $50 million to consumers (and $20 million more in attorneys' fees and payment to States). Third, if the Liability Finding is reversed, Apple will make no payments for consumer compensation, for attorneys' fees or to Plaintiff States.

This settlement potentially provides for exceptional consumer recovery and ensures an efficient use of judicial resources. It allows Apple to press its positions regarding liability while obviating the need to expend significant Court resources to proceed with a jury trial on damages in these civil actions. And, by focusing on the Liability Finding and Apple's appeal, the parties have fashioned a settlement that accounts for the fact that the viability of any damages award would be dependent on the outcome of the appeal of the Liability Finding. The proposed settlement addresses this important procedural posture while weighing the potential outcomes and risks involved in further proceedings.

The Plaintiffs, in conjunction with Apple, also request the Court to defer notice to consumers of the settlement until resolution of Apple's appeal of the Liability Finding. Deferring notice guarantees that when consumers receive notice of this settlement, the total recovery will be known. Rather than being presented with a list of hypothetical alternative settlement amounts, a consumer will be able to make the informed decision whether to remain an Eligible Consumer or exclude himself or herself from the settlement based on a known recovery.

This pragmatic settlement is the result of hard-fought litigation between the parties and months of negotiations among sophisticated counsel, as well as multiple mediation sessions, both with an officer of this Court and a highly respected private mediator. Plaintiffs respectfully request that this Court preliminarily approve the settlement, and order that notice to consumers be deferred until the applicable settlement amount is known.

## II.    PROCEDURAL HISTORY

### A.    Plaintiffs' Investigations

As was previously detailed for this Court,[6] the States of Texas and Connecticut,

beginning in April 2010, conducted a two-year investigation to determine if Apple Inc. and E-

book publishers had entered into an unlawful conspiracy in violation of state and federal antitrust

laws. The investigation was coordinated with a separate investigation simultaneously conducted

by the United States Department of Justice ("DOJ").

Class Counsel also began its investigation in April 2010, after market prices for the

publisher defendants' E-books increased 30 to 50 percent nearly simultaneously. This highly

suspicious pricing behavior caused Class Counsel to retain experts and investigators to analyze

the market and defendants' pricing behavior.

### B.    Litigation to Date

Class Counsel first filed civil litigation in this matter as *Petru, et al. v. Apple Inc., et al.*,

No. 11-cv-03892-EMC (N.D. Cal.).  On December 9, 2011, the United States Judicial Panel on

Multidistrict Litigation transferred all related class actions to the Southern District of New York

as *In re Electronic Books Antitrust Litigation,* No. 11-md-02293 (S.D.N.Y.) ("Class

Action"). Thereafter, this Court appointed Hagens Berman Sobol Shapiro LLP and Cohen

Milstein Sellers & Toll PLLC as co-lead counsel for the plaintiff classes. Plaintiff States'

Original Complaint was filed on April 11, 2012, in the U.S. District Court for the Western

District of Texas and then transferred to the Southern District of New York as *Texas, et al., v.*

*Penguin Group (USA) Inc., et al.*, No. 12-cv-003394 (S.D.N.Y.) on April 30, 2012 ("Plaintiff

---

[6]    See *Texas, et al. v. Hachette Book Group, Inc. et al.*, No.12-cv-6625 (S.D.N.Y.), States' Memoranda for Preliminary and Final Approval of the Hachette, HarperCollins and Simon and Schuster settlements (ECF Nos.11 and 68) and *Texas, et al., v. Penguin* Group (USA) Inc., *et al.*, No. 12-cv-3394, Plaintiffs' Memoranda for Preliminary and Final Approval of Macmillan and Penguin settlements (ECF Nos. 235 and 452).

States' Action").[7]  Both Plaintiff States' and Class's Complaints allege that Apple and five major E-book publishers entered into a successful and unlawful conspiracy to raise and fix the prices of E-books to consumers.

In conjunction with the DOJ, the parties began several months of coordinated discovery. Plaintiffs obtained and analyzed more than 1.6 million documents and detailed transactional data from the defendants and third parties, conducted more than 50 depositions, and engaged expert economists to analyze economic evidence of a conspiracy and calculate damages therefrom. On July 10, 2013, following a three-week bench trial in the DOJ and Plaintiff States' Actions, the Court issued its Liability Finding, concluding that "Apple conspired to restrain trade in violation of Section 1 of the Sherman Act and relevant state statues to the extent those laws are congruent with Section 1."[8]

On September 5, 2013, the Court entered injunctions against Apple in the DOJ and Plaintiffs States' actions.[9]  On October 14, 2013, Apple filed notices of appeal of the Liability Finding and the entry of the injunctions.   These appeals have been consolidated in the Second Circuit Court of Appeals as *United States v. Apple Inc.*, No 13-3741 ("Liability Appeal").

Beginning in the fall of 2013, the Parties engaged in extensive additional discovery on the appropriate measure of damages suffered by consumers as a result of Apple's illegal conduct and on issues raised as to whether the class should be certified.  The Court granted class certification on March 28, 2014, and ordered that notice of the litigation against Apple be sent to consumers. A jury trial to assess the amount of damages was scheduled to begin August 25, 2014, in the Plaintiff States and Class Actions. Both the dissemination of consumer notices and

---

[7]     DOJ also filed suit on April 11, 2012, against these same defendants for injunctive relief in *United States v. Apple Inc., et al.*, No. 12-cv-2826 (S.D.N.Y.) ("DOJ Action").

[8]     *United States v. Apple Inc.*, 952 F. Supp. 2d at 709.

[9]     *United States v. Apple Inc., et al.*, No. 12-cv-2826, ECF No. 374.

the damages trial have been suspended pending the Court's review and approval of the Apple Settlement.

**C.    Settlement Negotiations**

The Attorneys General of 55 jurisdictions reached settlements with Hachette Book Group, Inc., HarperCollins Publishers LLC, and Simon & Schuster, Inc., which were approved by the Court on February 8, 2013.[10]  Settlements among Plaintiffs, Holtzbrinck Publishers, LLC d/b/a Macmillan and Penguin Group (USA) Inc., were approved by the Court on December 6, 2013.[11]  An additional settlement between Class Counsel representing residents of Minnesota and Hachette, HarperCollins, and Simon & Schuster was also approved on December 6, 2013. (Collectively, "Prior Settlements").

Settlement discussions among Plaintiffs and Apple did not occur until both sides had fully developed their factual understanding of the case. Although Plaintiff States offered to discuss settlement with Apple before and after the filing of their Complaint, no substantive negotiations occurred. The Court ordered Plaintiff States, DOJ, and Apple into mediation with the Honorable Kimba M. Wood, U.S. District Judge for the Southern District of New York, a month before the June 2013 trial was scheduled to begin. Class Plaintiffs also participated in this May 21, 2013, mediation but no settlement was reached.

After the Court issued its Liability Finding, the Court again directed the parties to mediate on the remaining issues. The parties agreed to mediation and retained the widely respected and experienced mediator, Antonio Piazza. This mediation, scheduled for two days in November 2013, was terminated after one day when the Parties were unable to reach an agreement. While preparing the scheduling Order for the damages trial, the Court asked the

---

[10]  *Texas v. Hachette,* ECF No. 71.

[11]  *Texas v. Penguin,* ECF No. 365.

parties to return to mediation and they did so with Mr. Piazza in May 2014.  While the parties did not reach agreement during the May mediation, the session provided the foundation for additional, serious negotiations resulting in the execution of a Memorandum of Understanding on June 16, 2014. Counsel for Plaintiff States, Settlement Class, and Apple immediately began work to finalize the Apple Settlement, using the Prior Settlements as a template. Counsel for the parties executed the Apple Settlement Agreement on July 10, 2014.[12]

### III.    THE PROPOSED SETTLEMENT

The Settlement Agreement with Apple contemplates compensation payments to consumers, as well as separate payments to Plaintiff States and to Class Counsel. However, as more fully described below, these payments are contingent upon the final outcome of Apple's appeal of the Court's Liability Finding. Apple will also pay the administration costs incurred to finalize the settlement and will receive releases of claims.

### A.    Payment Contingencies Defined

Depending on the outcome of the pending appeal of the Liability Finding, settlement payments by Apple will be as follows:

1. <u>Affirmance of Liability Finding.</u>  If the Court's Liability Finding is affirmed, and that decision is final,[13] Apple will pay $400 million into a consumer compensation escrow account established by Plaintiffs' Escrow Agent.[14] Apple will also pay $20 million to Plaintiff States, and $30 million to Class Counsel.

2. <u>Remand of Liability Finding.</u>  If the Liability Finding is either vacated and remanded, or reversed and remanded with instructions for reconsideration or for retrial, and that decision is final, Apple will pay $50 million into the

---

[12]    The Settlement Agreement is attached hereto as Exhibit A ("Apple Settlement").  Unless otherwise defined herein, definitions in the Apple Settlement Agreement are adopted and incorporated herein.

[13]    All parties will have the right to appeal a decision related to the Liability Finding. Such decisions will be final as delineated in the Apple Settlement Agreement. (*See* Paragraph I.M).

[14]    The Ohio Attorney General contracted with Fifth Third Bank to act as Escrow Agent in the Prior Settlements and will execute an addendum to incorporate the Apple Settlement Agreement funds.

consumer compensation escrow account. Apple will also pay $10 million to Plaintiff States and $10 million to Class Counsel. This contingency is not triggered by a remand on administrative or non-substantive grounds that could not implicate the Liability Finding. Under those circumstances, Apple is to make the payments described in Paragraph III.A.1, above.

3. <u>Reversal of Liability Finding.</u>  If the Liability Finding is reversed, and that decision is final, Apple will make no payments for consumer compensation or to Plaintiff States or Class Counsel.

**B.      Distribution of Consumer Compensation**

If payment is made for consumer compensation as set forth in A.1 or A.2, above, such monies will be distributed to natural-person consumers who purchased qualifying E-books from any settling publisher from April 1, 2010, to May 21, 2012 ("Eligible Consumers"). These funds, together with any accrued interest, will be distributed according to a Consumer Distribution Plan, as discussed in Section VI. The escrow funds are intended to be qualified settlement funds within the meaning of Treas. Reg. Sections 1.468B-1, *et seq*.

**C.      Payment to Plaintiff States**

If payment is made to Plaintiff States as set forth in A.1 or A.2, above, for attorneys' fees, investigation and litigation costs and for release of enforcement claims, such funds will be divided among the Plaintiff States as agreed among themselves for several delineated purposes as listed in the Apple Settlement Agreement.

**D.      Payment to Class Counsel**

If payment to Class Counsel for attorneys' fees and expenses is triggered under A.1 or A.2, above, Class Counsel will submit a fee petition for Court approval.

**E.      Payment of Settlement Notice and Administration Costs**

Apple will pay all reasonable costs to administer the Apple Settlement including costs of the consumer notice and distribution program. Within ten (10) business days of the execution of the Apple Settlement, Apple will make a payment of $2 million into an administrative costs

escrow account at Fifth Third Bank. Apple will make a supplemental deposit upon notice by

counsel for Plaintiffs that additional funds are necessary for settlement administration costs. Any

funds not ultimately expended from this account will be returned to Apple.

**F.    Release of Claims**

After Apple has made the required payments, if any, and after the Effective Date of the

Settlement has passed, Apple will be released from all Claims (as defined in the Settlement

Agreement) that were asserted or could have been asserted on behalf of all Eligible Consumers

who have not excluded themselves from the Apple Settlement. At that time, each Plaintiff State

shall be deemed to have also released all Claims that were asserted or could have been asserted

in the Second Amended Complaint by each Attorney General in his or her sovereign capacity as

chief law enforcement officer of the state, except for Plaintiff States' claims for injunctive relief

against Apple, which are currently under appeal in the Liability Appeal.


## IV.    THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMARY APPROVAL

Attorneys General of Plaintiff States brought their lawsuit in their capacities as *parens*

*patriae* under Section 4C of the Clayton Act, 15 U.S.C. § 15c. Class Counsel brought their action

under the authority of Section 4 of the Clayton Act, 15 U.S.C. § 15, and as a class action

pursuant to Rule 23 of the Federal Rules of Civil Procedure. Settlements in such actions require

judicial approval, which will be given if the Court concludes the settlements are fair, reasonable

and adequate.[15]

This approval process begins with the Court granting preliminary approval.  Preliminary

approval does not require a full fairness hearing. Rather, "[w]here the proposed settlement

---

[15]    *See, e.g., In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 351 (E.D.N.Y. 2000); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

appears to be the product of serious, informed, non-collusive negotiations, has no obvious

deficiencies, does not improperly grant preferential treatment to class representatives or

segments of the class, and falls within the range of possible approval, preliminary approval is

granted."[16] "Preliminary approval of such settlements, in contrast to final approval, 'is at most a

determination that there is what might be termed "probable cause" to submit the proposal to class

members and hold a full-scale hearing as to its fairness.'"[17]

The Apple Settlement clearly meets these requirements for preliminary approval. All

counsel are extremely well-informed, particularly given the fact that a trial on liability and on

related claims for injunctive relief was conducted in 2013. The parties have been heavily

engaged in preparing for a damages trial to occur in the summer of 2014, including thorough

discovery of each other's damages experts. Settlement negotiations and mediation were

conducted before the liability trial and continued subsequent to the Liability Finding. Each side

has fully articulated its positions on numerous occasions.

This Settlement has no "obvious deficiencies" nor does it grant preferential treatment.

Consumers will be compensated using the same formula approved in the Prior Settlements: a

modified *pro rata* distribution depending on whether a consumer purchased a New York Times

Bestseller, or non-New York Times Bestseller book title. All Eligible Consumers will be

reimbursed the same per-book amounts. Consumer benefit from consumer compensation is

maximized because such funds will be used solely to pay Eligible Consumers throughout the

United States. Any payment to Plaintiff States or Class Counsel will be paid in addition to any

---

[16]    *In re Currency Conversion Fee Antitrust Litig.*, No. 1409, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

[17]    *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, No. 08 CV 321 (VB)(PED), 2012 U.S. Dist. LEXIS 37720, at *12 (S.D.N.Y. Feb. 24, 2012) (quoting *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010)).

consumer compensation payment.[18] Apple will also separately bear the administrative costs of settlement.

Importantly, the potential payments all fall well within the range of possible approval. The parties – each represented by experienced antitrust counsel – agreed upon a set of contingencies which takes into account the litigation risks associated with the appeal of the Court's Liability Finding, as well as the risks associated with continuing to litigate damages through a jury trial and probable appeal.

The unique posture of this multi-faceted litigation (civil actions by the DOJ, by the State Attorneys General and by Class Plaintiffs), combined with the various procedural complexities of the litigation, supports the proposed settlement. Plaintiffs firmly believe in the merits of their case, and in each of the legal positions they have advocated.  They believe the evidence clearly established Apple's liability under Section 1 of the Sherman Act and that the Court's Liability Finding is correct. Plaintiffs further believe that a final damages award against Apple would be significant - in the range of $500 to $625 million, after a jury award has been trebled and offset by the $166 million from the Prior Settlements.

But Plaintiffs also recognize litigation outcomes are uncertain and risks exist associated with:

- the amount of damages a jury would ultimately award;

- any appeal of the jury damages award; and

- the numerous additional grounds for appeal asserted by Apple in connection with the Court's rulings on class certification, exclusion of expert opinions, limitations

---

[18]   A separate fund for payment of attorneys' fees provides the beneficiaries of the settlement greater certainty because the amount of money each will receive is not reduced by an award of attorneys' fees. *In re Vitamins Antitrust Litig.,* No. 99-197 (TFH), 2000 U.S. Dist. LEXIS 8931, at *21 n.3 (D.D.C. Mar. 31, 2000).

on discovery, the scope of *parens patriae* authority, and disputes regarding venue for trial.

Given these risks, the settlement terms are very favorable for consumers. If the Court's Liability Finding is affirmed, as Plaintiffs believe will happen, Apple's $400 million consumer payment will represent more than 140 percent of maximum estimated single damages and, when combined with the consumer payments from the Prior Settlements, return consumers more than two times their damages. This is an extraordinary outcome rarely seen in antitrust cases.

If the Liability Finding is reversed and remanded or vacated and remanded with instructions, for retrial or for reconsideration, Apple will pay $50 million to consumers, representing more than 17 percent of maximum estimated single damages. Combined with monies already received from Prior Settlements with publisher defendants, consumers will recover slightly more than 77 percent of single damages. This payment contingency is a reasonable appraisal of the possible consequences of a negative ruling from the Second Circuit or the Supreme Court. Such a ruling could put Plaintiffs in a more difficult litigation posture and significantly alter both the nature of the evidence to be considered and the legal standard to be applied thereto. These additional litigation risks, as well as the risk of a jury determination of damages, render this contingent consumer payment also well within the range for possible approval. Finally, if the Liability Finding is reversed and the case dismissed, consumers will receive nothing from this settlement, just as they would if no settlement were reached or approved.

As set forth above, the settlement negotiations and substantive terms of the Apple Settlement meet all requirements necessary for the Settlement Agreement to receive preliminary approval.

## V.   CONSUMER NOTICE

**A.   Recommendation to Provide Notice to Consumers After the Outcome of the Liability Finding Appeal is Known**

Typically, after preliminary approval is granted, notice to affected consumers is provided relatively quickly and according to a Court-approved Notice Plan. However, Plaintiffs and Apple jointly recommend that consumer notices in this case be distributed after the Final Liability Decision has issued. By deferring the notice until then, Eligible Consumers will be provided with more precise information that should substantially reduce the possibility of consumer confusion. If Apple is required to make a payment, deferred notice would allow Eligible Consumers to know the total amount of consumer compensation to be paid by Apple (whether $400 million, or $50 million), as well as the amount of the per-book compensation. Equipped with these facts, Eligible Consumers will be better able to make a fully-informed decision whether to remain a part of, or opt out of, the settlement. In contrast, if consumers receive notice now, when the outcome is uncertain, they will not have the same clarity as to their expected compensation. Counsel negotiated this proposed timing of notice on behalf of consumers as the preferred way to educate Eligible Consumers.

In addition, distributing notice after the outcome of the Final Liability Decision is known may allow Plaintiffs to aggregate undistributed consumer compensation from the Prior Settlements with any consumer compensation amount paid by Apple, thereby maximizing the consumer distributions.[19]

---

[19]    The residue amount from the Prior Settlements will not be known until after the expiration date for redemption of credits and checks on March 25, 2015.

Scheduling the distribution of notice of this settlement as proposed above is well within the discretion of this Court.[20] In general, settlement notice, like class certification notice, "should be sent as soon as practicable…"[21] But "the court may decide to postpone giving formal notice under Rule 23(c)(2) if there is a reason for the delay and it would not prejudice those class members who are not before the court."[22] Courts may defer giving notice until after discovery has taken place,[23] where "one party may be harmed by the notice,"[24] or, potentially, where "[d]eferring notice will allow [settlement] negotiations a full and fair opportunity to proceed."[25] While acknowledging that a court can combine class certification notice and settlement notice where settlement came after certification, the Rule 23 advisory committee notes point out that a "decision to remain in the class is likely to be more carefully considered and is better informed when settlement terms are known."[26] Similarly, pursuant to Section 4c of the Clayton Act, the timing of the notice to be given in a *parens patriae* case is subject to the court's discretion.[27] Here, Eligible Consumers will be best informed after the Final Liability Decision is rendered.

**B.    Description of Anticipated Notice Plan**

Plaintiffs anticipate that notice for the Apple Settlement will conform, in large measure, to the Notice Plans used in the Prior Settlements. Plaintiffs also intend to continue using the

---

[20]    *See McBean v. City of New York*, 228 F.R.D. 487, 504-05 (S.D.N.Y. 2005) ("Under Rule 23(c)(2)(B), the Court must "direct to class members the best notice practicable under the circumstances for any class certified under Rule 23(b)(3), but the timing of that notice is committed to its discretion.").

[21]    7AA Wright & Miller, Federal Practice & Procedure § 1788 (3d ed.).

[22]    *Id.*

[23]    *See, e.g.*, *Wolfson v. Solomon*, 54 F.R.D. 584, 593 (S.D.N.Y. 1972).

[24]    *See, e.g.*, *Tylka v. Gerber Prods. Co.*, 182 F.R.D. 573, 579 (N.D. Ill. 1998).

[25]    *Harman v. Lyphomed, Inc.*, No. 88 C 0476, 1989 WL 6558, at *1 (N.D. Ill. Jan. 25, 1989) (noting that effect of settlement discussions on timing of notice was a "legitimate concern" but declining to defer notice on facts before the court).

[26]    Federal Rule of Civil Procedure 23, Notes of Advisory Committee on 2003 amendments.

[27]    15 U.S.C. §15c(b)(1).

- 13 -

same notice and claims administrators – Rust Consulting, Inc. and Kinsella Media LLC – to disseminate notice of the Apple Settlement. However, because timing of deferred notice is unknown and could be more than a year in the future, Plaintiffs believe a Notice Plan (and the accompanying notices), should be submitted for Court approval only after the Final Liability Decision has issued. Plaintiffs can then update the Notice Plans used in the Prior Settlements to ensure that the most inclusive, informative notice can be provided, using the then-best means available.

The Notice Plans of the Prior Settlements were found by this Court to meet the requirements of due process, 15 U.S.C. §15, and Rule 23. They provided for direct email notice from retailers which accounted for more than 95% of eligible E-Book purchases. In the Prior Settlements, six retailers (Amazon, Barnes & Noble, Apple, Kobo, Sony, and Google) assisted in providing notice emails to the 23.27 million individual customers who purchased qualifying E-books. To assist with effective future notice of the Apple Settlement, four of these retailers (Amazon, Barnes & Noble, Kobo, and Google) have agreed to either maintain the contact information for Eligible Consumers in their own internal systems, or, should circumstances change, they will provide Counsel for Plaintiffs with notice and the opportunity to determine an alternative method of maintaining the information. For the two remaining retailers (Apple and Sony), the Claims Administrator has and will retain all necessary contact information for Eligible Consumers during the pendency of this litigation. Plaintiffs will also direct the Claims Administrator to allow Eligible Consumers to update their contact information through the settlement website during the pendency of this litigation to assure the best practicable notice to

Eligible Consumers.[28] These procedures assure that direct notice will remain a viable option regardless of the length of time required for the exhaustion of appeals.

In the Prior Settlements, direct notice was supplemented with publication and internet notices, as well as a call center and a settlement website. The various notices informed Eligible Consumers of the proposed settlements and their rights thereunder, including the right to exclude themselves and the opportunity to be heard.[29] Plaintiffs believe a slightly modified version of the same Notice Plan and notices will similarly meet all necessary requirements for this Court's approval. Plaintiffs propose submitting a notice plan and draft notices for this Court's approval within 30 days of the Final Liability Decision.

## VI.   CONSUMER COMPENSATION DISTRIBUTION PLAN

### A.   Recommendation to Defer Submission of Distribution Plan

As with the Notice Plan, Plaintiffs believe submission of the Distribution Plan in this matter would best be postponed until after the contingencies have been decided. At that time, the Distribution Plan can include more complete and updated information. At the very least, a later-prepared Plan would allow for inclusion of the per-book amounts to be paid to consumers; a calculation that cannot be made before the Final Liability Decision is known. In addition, the Plan could potentially take advantage of technology not currently available for more efficient distribution for some or all of the participating retailers (including the automatic crediting of consumer accounts).

---

[28]   *See* Exhibit B, Declaration of Kim Schmidt for Rust Consulting.

[29]   *See* 15 U.S.C. § 15c(b)-(c); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002).

**B.      Description of Anticipated Distribution Plan**

Plaintiffs will use the Distribution Plans approved by the Court and used in the Prior

Settlements as the template for the Distribution Plan for the Apple Settlement.

The previous Distribution Plans required that all Eligible Consumers were treated

equally, applying the same calculations, terms, conditions and limitations to all consumers. The

prior Distribution Plans also provided for compensation on purchases of New York Times

Bestseller E-books and non-New York Times Bestseller E-books proportionate to the estimated

harm for each, a type of apportionment that has been repeatedly been deemed fair and reasonable

by courts.[30] Plaintiffs expect the anticipated Distribution Plan, which will update the prior

Distribution Plans to reflect the realities of the market at the time of distribution, will also meet

with the Court's approval.

**VII.     THE CLASS SHOULD REMAIN CERTIFIED FOR SETTLEMENT PURPOSES**

This Court has already exhaustively addressed the propriety of certifying a class, not only

in its Class Certification Order, to which Apple objected, but also in its previous orders

approving the Prior Settlements. As this Court noted, the decision to certify a class here was not

a close call: "If certification were not appropriate here, no antitrust class action could be

certified."[31] Notably, the Second Circuit denied Apple's petition for interlocutory appeal of the

Class Certification Order.[32]  None of the facts underlying these previous decisions have changed.

---

[30]     *Vitamins Antitrust Litig.*, 2000 U.S. Dist. LEXIS 8931, at *32 (citing *Beecher v. Able*, 575 F.2d 1010, 1013-14 (2d Cir. 1978)); *see also* Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 12.10 (3d ed. 1992) (noting that settlement agreements may provide for pro rata distributions based on the fraction of a claimant's loss to the total aggregate recognized loss); Fed. Judicial Ctr., Manual for Complex Litig., 246-48 (3d ed. 1995).

[31]     Class Cert. Order at 2.

[32]     Order, *In re Electronic Books Antitrust Litig.*, No. 14-1092 (2d Cir. May 29, 2014), ECF No. 61.

**A.      Definition of the Proposed Apple Settlement Class**

The proposed settlement class is the same as the class certified by the Court in the

litigation, and in the Prior Settlements: all natural persons who purchased E-books published by

Hachette, HarperCollins, Macmillan, Penguin, or Simon & Schuster, from April 1, 2010 through

May 21, 2012, who resided in one of the following states, territories or commonwealths at the

time of their E-book purchase: American Samoa, California, Florida, Georgia, Guam, Hawaii,

Kentucky, Maine, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Jersey,

North Carolina, Northern Mariana Islands, Oklahoma, Oregon, Rhode Island, South Carolina,

U.S. Virgin Islands, Washington, and Wyoming. Excluded from the Class are Defendants, their

employees, co-conspirators, officers, directors, legal representatives, heirs, successors, and

wholly or partly owned subsidiaries of affiliated companies, as well as the Honorable Denise

Cote and persons described in 28 U.S.C. § 455(b)(4)-(5). Except for geographical distinctions,

this Class mirrors the Eligible Consumers of the *parens patriae* action.

**B.      The Class Meets the Prerequisites of Rule 23(a)**

As already determined by this Court, the class meets the four requirements of Rule 23(a)

– numerosity, commonality, typicality and adequacy.

**1.   Numerosity**

The class here contains millions of consumers, easily meeting the first requirement of

Rule 23(a). Apple has never disputed that numerosity exists here.[33]

**2.   Commonality**

The Rule 23(a)(2) requirement of common questions of law or fact is "not a demanding

standard" and "is established so long as the plaintiffs can identify some unifying thread among

---

[33]    Class Cert. Order at 30.

the [class] members' claims."[34] Here, "a host of common issues [exist] that will generate common answers in this litigation," including the impact of the Liability Opinion on issues to be litigated in the damages trial and the applicability of Dr. Noll's damages model.[35]

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "does not require 'that the factual background of each named plaintiff's claim be identical to that of all class members.'"[36] Rather, the named plaintiff's claims must "arise from the same course of events."[37] Here, the claims of the three class representatives arise from the same conduct as that of the class: "Apple's conspiracy with the Publisher Defendants to fix e-book prices, which caused the prices of e-books to rise."[38] Each class member will make similar arguments as to liability and damages. And each class member will make similar legal arguments regarding the extent to which collateral estoppel applies. Apple has not disputed the existence of typicality in this class.[39]

### 4. Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."[40] This Court has previously found both the three representatives and class counsel to be qualified, experienced, and able to conduct this litigation.[41] Nothing has

---

[34]   *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 90 (D. Conn. 2010) (alteration in original).

[35]   Class Cert. Order at 31.

[36]   *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D 265, 272-73 (S.D.N.Y. 2007). *See also In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998) ("Typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff[s]. Personal traits or variables . . . are irrelevant to the typicality criterion.'").

[37]   *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 105 (E.D.N.Y. 2012).

[38]   Class Cert. Order at 32.

[39]   *Id.* at 33.

[40]   Fed. R. Civ. P. 23(a)(4).

[41]   Class Cert. Order at 34.

changed to undermine this finding. Plaintiffs therefore request that this Court again appoint Anthony Petru, Thomas Friedman, and Shane S. Davis as the class representatives and confirm the appointment of Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC as class counsel.

## C.    The Requirements of Rule 23(b)(3) Are Satisfied

The proposed class's claims also meet the standards of Rule 23(b)(3), which requires the plaintiff to show that questions of law or fact common to the members of the class predominate and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.    Predominance

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."[42] Predominance is readily shown "in certain cases alleging . . . violations of the antitrust laws."[43] And as this Court noted, this is precisely such a case where a single policy by the defendant has led to a commonality of the violation and the harm.[44] Here, "Apple conspired with the five Publisher Defendants to fix national e-book prices. Working together, the e-book prices of the Publisher Defendants rose precipitously and with one exception, simultaneously, after their adoption of Apple's Agreements."[45]

---

[42]    *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (alterations in original; internal citations omitted).

[43]    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

[44]    Class Cert. Order at 35.

[45]    Class Cert. Order at 35-36 (footnote omitted).

## 2.  Superiority and Ascertainability

Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Where individual class members' possible recoveries are so small that no other practical method of adjudication exists, superiority is often satisfied.[46] Here, as this Court has already found, where millions of class members have suffered injury, on average, of less than $7, a class action is the superior method for adjudicating these claims.[47]

The class is also readily ascertainable. Detailed transaction records exist for class members – records already used to notify and distribute funds from the settlements with the Publisher Defendants. Due to the existence of these digital transaction records, class members in this lawsuit are readily ascertainable.[48]

## VIII.   CONCLUSION

Plaintiffs respectfully request that the Court (1) find that the Apple Settlement Agreement satisfies the requirements for preliminary approval; (2) grant preliminary approval of the Apple Settlement Agreement; (3) grant conditional class certification for settlement purposes; and (4) approve Plaintiffs' request that notification to Eligible Consumers of the Apple Settlement be deferred until further order of the Court. A proposed Preliminary Approval Order for the Court's consideration is appended as Exhibit C.

---

[46]   *Amchem*, 521 U.S. at 617.

[47]   Class Cert. Order at 61.

[48]   *Id.* at 63.

DATED:  July 16, 2014               Respectfully submitted,

STATE OF TEXAS
GREG ABBOTT, ATTORNEY GENERAL

DANIEL HODGE
First Assistant Attorney General
JOHN B. SCOTT
Deputy Attorney General for Civil Litigation
JOHN T. PRUD'HOMME
Chief, Consumer Protection Division
KIM VAN WINKLE
Section Chief, Antitrust Section
Consumer Protection Division

By  _____
     REBECCA FISHER

Senior Assistant Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Phone (512) 463-1265
Rebecca.Fisher@texasattorneygeneral.gov

**ATTORNEYS FOR THE STATE OF TEXAS**
**LIAISON COUNSEL FOR PLAINTIFF**
**STATES**

STATE OF CONNECTICUT
GEORGE JEPSEN, ATTORNEY GENERAL

MICHAEL E. COLE
Chief, Antitrust Department
W. Joseph Nielsen

By _____
    GARY M. BECKER (GB8259)

Assistant Attorney General
55 Elm Street
Hartford, CT 06106
PH: (860) 808-5040
Gary.Becker@ct.gov

**ATTORNEYS FOR THE STATE OF
CONNECTICUT
LIAISON COUNSEL FOR PLAINTIFF
STATES**

STATE OF OHIO
R. MICHAEL DEWINE,
ATTORNEY GENERAL

By _____
    DOREEN JOHNSON

Assistant Chief, Antitrust Section
Office of the Ohio Attorney General
150 E. Gay St. – 23rd Floor
Columbus, OH 43215
Tel: (614) 466-4328
Doreen.Johnson@ohioattorneygeneral.gov

Edward J. Olszewski
Matthew McKinley
Assistant Attorneys General

**ATTORNEYS FOR THE STATE OF OHIO
LIAISON COUNSEL FOR PLAINTIFF
STATES**

- 22 -

HAGENS BERMAN SOBOL SHAPIRO LLP
SHANA E. SCARLETT


By _____
STEVE W. BERMAN
Hagens Berman Sobol Shapiro LLP
1918 Eighth Ave, Suite 3300
Seattle, Washington 98101


By _____
JEFF D. FRIEDMAN

715 Hearst Ave., Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
steve@hbsslaw.com
jefff@hbsslaw.com
shanas@hbsslaw.com


Kit A. Pierson (*Pro Hac Vice*)
Jeffrey Dubner (4974341)
COHEN, MILSTEIN, SELLERS & TOLL, PLLC
1100 New York Avenue, N.W.
South Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
KPierson@cohenmilstein.com
jdubner@cohenmilstein.com

**ATTORNEYS FOR SETTLEMENT CLASS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2014, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

REBECCA FISHER